# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

## CONSOLIDATED APPEALS NOS. 23-7002, 23-7005

JOHN HOLTMAN,
Petitioner-Appellant,

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
Respondent-Appellee

*On Appeal from the U.S. District Court for the District of Columbia*
Case No. 2:22-cv-0852
The Hon. Amit P. Mehta

JAMES OWENS,
Petitioner-Appellant,

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
Respondent-Appellee

*On Appeal from the U.S. District Court for the District of Columbia*
Case No. 2:22-cv-0901
The Hon. Amit P. Mehta

## OPENING BRIEF OF PETITIONERS-APPELLANTS

Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
sliss@llrlaw.com
*Counsel for Petitioners-Appellants*

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

**(A) Parties.** The parties who appeared before the district court, and all parties in this court are:

> 1)  John Holtman, Petitioner-Appellant
> 2)  James Owens, Petitioner-Appellant
> 3)  International Business Machines Corp., Respondent-Appellee

**(B) Rulings Under Review.** Petitioner-Appellant Holtman seeks review of District Court Judge Amit P. Mehta's order and opinion, dated December 9, 2022, granting Respondent's Motion to Confirm Arbitration Award, and denying Petitioner's Motion to Vacate Arbitration Award. Judge Mehta's order and opinion can be found in the Appendix on pages 211-222.

Petitioner-Appellant Owens seeks review of District Court Judge Amit P. Mehta's order and opinion, dated December 9, 2022, granting Respondent's Motion to Confirm Arbitration Award, and denying Petitioner's Motion to Vacate Arbitration Award. Judge Mehta's order and opinion can be found in the Appendix on pages 428-439.

**(C) Related Cases.** The case has not previously been before this court. Petitioner-Appellant Holtman's and Petitioner-Appellant Owens' cases are related and have been consolidated by this court. This case is also related to the following matters currently pending in other Unites States Courts of Appeals:

> 1)  *Chandler v. International Business Machines Corp.*, Case No. 22-1733 (2d Cir.)
> 2)  *In re: IBM Arbitration Agreement Litigation*, Case No, 22-1728 (2d Cir.)
> 3)  *Lodi v. International Business Machines Corp.*, Case No, 22-1737 (2d Cir.)
> 4)  *Tavenner v. International Business Machines Corp.*, Case No. 22-2318 (2d Cir.)
> 5)  *Washbish v. International Business Machines Corp.*, Case No. Case No. 23-479 (2d Cir.)
> 6)  *Smith v. International Business Machines Corp.*, Case No, 22-11928 (11th Cir.)

# TABLE OF CONTENTS

INTRODUCTION.................................................................................1

JURISDICTIONAL STATEMENT .......................................................7

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................8

STATEMENT OF THE CASE................................................................8

    I.    Nature of the Case .........................................................8

    II.    Factual and Procedural Background....................................9

    III.    The *Rusis* Named Plaintiffs' EEOC Charges ...................11

    IV.    The Timeliness Dispute in Petitioners' Arbitration ...........11

STANDARD OF REVIEW ...................................................................14

SUMMARY OF THE ARGUMENT ....................................................14

ARGUMENT .......................................................................................17

    I.    This Court Should Vacate the Arbitration Award, Because the Arbitrator Failed to Weigh Evidence Presented by Petitioners Demonstrating that their Arbitration Demands Were Timely Filed ...........................................................17

    II.    The Court Should Vacate the Arbitration Award, because the Arbitrator Exceeded His Authority by Failing to Apply the Remedies Available to Petitioners Under Federal Law, Namely Equitable Tolling................................................25

    III.    The District Court Erred by Holding that the Timeliness Provision was Enforceable Even Though it Truncated the Time that Petitioners had to Submit their ADEA Claims in Arbitration ....................................................................27

        A. The Arbitration Agreement's Timeliness Provision is Unenforceable to the Extent that it Purports to Preclude Petitioners from Using the Piggybacking Rule...........................................................................28

    B. The District Court's Rationale in Rejecting the
       Application of the   Piggybacking Rule is
       Unsupported by Law ............................................................... 36

CONCLUSION ............................................................................. 41

CERTIFICATE OF COMPLIANCE .................................................... 43

CERTIFICATE OF SERVICE ........................................................... 44

## TABLE OF AUTHORITIES

**Cases**

Adams v. Philip Morris, Inc.
   67 F.3d 580 (6th Cir. 1995). ....................................................................35

Tempo Shain Corp. v. Bertek, Inc.
   120 F.3d 16 (2d Cir. 1997) ......................................................................18

Berklee College of Music v. Berklee Chapter of Mass. Fed. of Teachers
   858 F.2d 31 (1st. Cir. 1988).....................................................................26

BG Group, PLC v. Republic of Argentina
   572 U.S. 25 (2014)..................................................................................14

Bogacz v. MTD Products, Inc.
   694 F. Supp. 2d 400 (W.D. Pa. 2010).....................................................36

Bragdon v. Abbott
   524 U.S. 624 (1998)..........................................................................33, 39

Butcher v. Gerber Prods. Co.
   8 F. Supp. 2d 307 (S.D.N.Y. 1998) .........................................................34

Calloway v. Partners Nat. Health Plans
   986 F.2d 446 (11th Cir. 1993) .................................................................31

Campbell v. National R.R. Passenger Corp.
   163 F.Supp.2d 19 (D.D.C. 2001).............................................................29

Chandler v. International Business Machines Corp.
   C.A. No. 21-CV-6319 (S.D.N.Y.) ...........................................................28

Confinco, Inc. v. Bakrie & Bros., N.V.
   395 F. Supp. 613 (S.D.N.Y. 1975) ....................................................18, 19

Cooperwood v. Farmer
   315 F.R.D. 493 (N.D. Ill. 2016)........................................................21, 24

Cronas v. Willis Group Holdings Ltd.
   2007 WL 2739769 (S.D.N.Y. 2007).......................................................30

Davis v. Mills
   194 U.S. 451 (1904)................................................................................33

EEOC v. Comm. Office Prods. Co.
   486 U.S. 107 (1988)........................................................................33, 38

Emory v. United Air Lines, Inc.
   720 F.3d 915 (D.C. Cir. 2013)....................................................30

Emory v. United Air Lines, Inc.
   821 F. Supp. 2d 200 (D.D.C. 2011)............................................30

Fed. Exp. Corp. v. Holowecki
   552 U.S. 389 (2008)....................................................................33, 39

First Options of Chicago, Inc. v. Kaplan
   514 U.S. 938 (1995)....................................................................14

Foster v. Gueory
   655 F.2d 1319 (D.C. Cir. 1981)..................................................30

Gilmer v. Interstate/Johnson Lane Corp.
   500 U.S. 20 (1991).....................................................................28, 31

Grayson v. K Mart Corp.
   79 F.3d 1086 (11th Cir. 1996) ...................................................5, 30

Guaranty Trust Co. v. York
   326 U.S. 99 (1945).....................................................................39

Hammaker v. Brown & Brown, Inc.
   214 F. Supp. 2d 575 (E.D. Va. 2002) .......................................40

Harvey Aluminum v. United Steelworkers of America, AFL-CIO
   263 F. Supp. 488 (C.D. Cal. 1967) ...........................................18

Hoteles Condado Beach v. Union de Tronquistas de Puerto Rico, Loc. 901
   588 F. Supp. 679 (D.P.R. 1984) ................................................19, 24

Hoteles Condado Beach, La Concha and Convention Center v. Union De
   Tronquistas Local 901
   763 F.2d 34 (1st Cir. 1985)..............................................4, 15, 18, 19, 24

In re Hughes Aircraft Co. Electronic and Space Technicians Union, Local No.
   1553 1987 WL 1482436 (Richman, Arb. 1987).................................5, 26

In Re: IBM Arbitration Agreement Litigation
   C.A. No. 21-CV-6296 (S.D.N.Y.) ........................................................... 28

In the Matter of Arbitration Between Kinsella and Baker Hughes Oilfield
   Operations LLC, et al., 2022 WL 1038061 (Wickliff, Arb. Feb. 9, 2022) ........ 5, 26

Innovatit Seafood Sys., LLC v. Commr. For Patents
   240 F.R.D. 23 (D.D.C. 2007) ................................................................... 20

Iran Air v. Kugelman
   996 F.2d 1253 (D.C.Cir.1993) ................................................................. 20

Johnson v. Directory Assistance, Inc.
   797 F.3d 1294 (11th Cir. 2015) ................................................................. 3

Jones v. American Postal Workers Union
   192 F.3d 417 (4th Cir. 1999) ............................................................... 33, 39

Kareem v. F.D.I.C.
   811 F. Supp. 2d 279 (D.D.C. 2011) .......................................................... 20

Kruchowski v. Weyerhaeuser Co.
   446 F.3d 1090 (10th Cir. 2006) ............................................................... 34

Kubiak v. S.W. Cowboy, Inc.
   2017 WL 1080000 (M.D. Fla. 2017) ........................................................ 24

Kurke v. Oscar Gruss & Son, Inc.
   454 F.3d 350 (D.C. Cir. 2006) ................................................................ 15

Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
   481 F.3d 813 (D.C. Cir.  2007) ............................................................... 18

Lodi v. International Business Machines Corp.
   C.A. No. 21-CV-6336 (S.D.N.Y.) ........................................................... 28

Logan v. MGM Grand Detroit Casino
   939 F.3d 824 (6th Cir. 2019) ................................................................. 33

Loksen v. Columbia Univ.
   2013 WL 5549780 (S.D.N.Y. 2013) ........................................................ 34

Marie v. Allied Home Mortgage
   402 F.3d 1 (1st Cir. 2005) ...................................................................... 26

Marmolejos v. Holder
    555 Fed. Appx. 2 (D.C. Circuit 2014) ..................................................... 14

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.
    473 U.S. 614 (1985) .............................................................................. 25

Mwabira-Simera v. Howard U.
    692 F. Supp. 2d 65 (D.D.C. 2010) ......................................................... 20

O'Connor v. Uber Techs., Inc.
    2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) .......................................... 2

Oubre v. Entergy Operations, Inc.
    522 U.S. 422 (1998) .............................................................................. 34

Republic of Argentina v. BG Grp. PLC
    665 F.3d 1363 (D.C. Cir. 2012) ............................................................. 14

Rupert v. PPG Industries, Inc.
    2009 WL 596014 (W.D. Pa. 2009) ......................................................... 36

Rusis v. International Business Machines Corp.
    529 F. Supp. 3d 178 (S.D.N.Y. 2021) ................................................... 37

Rusis v. International Business Machines Corp.
    Civ. Act. No. 1:18-cv-08434 (S.D.N.Y.) ....................................... 6, 10, 11

Smith v. Int'l Bus. Machines Corp.
    No. 22-11928, 2023 WL 3244583 (11th Cir. May 4, 2023) ................... 34

Sowers v. U.S.
    141 F. Supp. 3d 471 (E.D. Va. 2015) .............................................. 21, 24

Sun Oil Co. v. Wortman
    486 U.S. 717 (1988) .............................................................................. 39

Syverson v. International Business Machines Corp.
    472 F.3d 1072 (9th Cir. 2007) .............................................................. 36

Tavenner v. International Business Machines Corp.
    C.A. No. 21-CV-6345 (S.D.N.Y.) .......................................................... 28

Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 506 v.
  E.D. Clapp Corp.
    551 F. Supp. 570 (N.D.N.Y. 1982) ......................................................... 18

Thiele v. Merrill Lynch, Pierce, Fenner & Smith
    59 F. Supp. 3d 1060 (S.D. Cal. 1999) .................................................... 40

Thomforde v. International Business Machines Corp.
    406 F.3d 500 (8th Cir. 2005) ................................................................ 36

Thompson v. Fresh Products, LLC
    985 F.3d 509 (6th Cir. 2021) ...............................6, 7, 17, 32, 33, 36, 37, 38, 39, 40

Thompson v. Fresh Products, LLC
    2020 WL 1160190 (6th Cir. Mar. 2, 2020) ........................... 6, 33, 35, 38

Tolliver v. Xerox Corp.
    918 F.2d 1052 (2d Cir. 1990) .......................................... 5, 27, 30, 31

Vernon v. Cassadaga Valley Cent. School Dist.
    49 F.3d 886 (2d Cir. 1995) .................................................................. 39

Washington v. Washington Metro. Area Transit Auth.
    160 F.3d 750 (D.C. Cir. 1998) ............................................................. 25

Zipes v. Trans World Airlines, Inc.
    455 U.S. 385 (1982) ........................................................ 4, 5, 16, 25, 26

**Statutes**

28 U.S.C. § 1291 ...................................................................................... 7

28 U.S.C. § 1331 ...................................................................................... 7

29 C.F.R. § 1625.22(b) ........................................................................... 36

29 C.F.R. § 1625.22(f) ............................................................................ 34

29 U.S.C. § 621 ............................................................................... 1, 6, 7, 8

29 U.S.C. § 626(f) ........................................................... 8, 34, 36, 40

29 U.S.C. §§ 626(d) ............................................................................... 29

29 U.S.C. §§ 633(b) ............................................................................... 29

42 U.S.C. § 2000e-5(e) .................................................................................29

9 U.S.C. § 1 ...................................................................................................7

9 U.S.C. § 10(a) .............................................................3, 8, 15, 16, 17, 18

## Other Authorities

*Cutting 'Old Heads' at IBM* (ProPublica, March 2018)
    https://features.propublica.org/ibm/ibm-age-discrimination-american-
    workers/.........................................................................................................10

*Making 'Dinobabies' Extinct: IBM's Push for a Younger Work Force* (The New
    York Times, Feb. 2022)
    https://www.nytimes.com/2022/02/12/business/economy/ibm-age-
    discrimination.html ......................................................................................9

# **INTRODUCTION**

In these consolidated appeals, Petitioners-Appellants John Holtman and

James Owens (hereinafter "Petitioners") seeks the reversal of the District

Court's Order that declined to vacate and instead confirmed the Awards in

Petitioners' arbitration proceedings against Respondent International Business

Machines Corp. (hereinafter "IBM"). In the Awards, the Arbitrator held that

Petitioners' arbitrations were time-barred, because even though Petitioners

indisputably timely initiated the arbitration with JAMS, service of the demand

on IBM was delayed ***by one day*** due to logistical issues that arose during the

height of the pandemic.

Petitioners were terminated in 2020 through a reduction-in-force,

referred to by IBM as a "Resource Action."  At the time of his termination,

Petitioner Holtman had worked for IBM for over 30 years and was 60 years

old.  At the time of his termination, Petitioner Owens had worked for IBM for

over 20 years and was 50 years old.

Each Petitioner submitted an arbitration demand alleging that his

termination constituted unlawful discrimination in violation of the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

According to IBM, the arbitration provision required Petitioners to initiate

1

arbitration within 180 days of the date he was notified of his termination. As

described *infra*, Petitioners dispute this reading of the arbitration provision;

however, Petitioners, through their counsel, did in fact file his demand with JAMS

by this deadline, November 17, 2020, 180 days after they were each informed of

his impending termination. Indeed, there is no dispute that Petitioners' claims

were timely filed, even under IBM's preferred reading of the parties' agreement.

IBM's arbitration agreement also indicated that the demand should be

mailed to IBM.[1] Because of logistical issues posed by the COVID-19 pandemic

and Petitioners' counsel operating entirely remotely, although the demands were

timely filed with JAMS on November 17, 2020, the demands were mailed to IBM

the following day, on November 18, 2020. Even though Petitioners indisputably

filed their arbitration demand with JAMS by the prescribed deadline, IBM moved

to dismiss the demands as untimely because it was mailed to IBM the next day, or

one day after the alleged 180-day deadline. Petitioners' cases were both assigned

---

[1]     This requirement is unusual for a technology-based company like IBM, and
at odds with the online filing process used by JAMS. In a case involving another
company that claims to be a technology company (Uber Technologies, Inc.), a
federal court *ordered* Uber to accept arbitration-related communications through
email and not just traditional mail. O'Connor v. Uber Techs., Inc., 2013 WL
6407583, at *1, *6-*7 (N.D. Cal. Dec. 6, 2013) (holding opt-out provision
"extremely onerous" and unenforceable where "opting out required users to send a
letter via hand delivery or overnight mail to Uber's general counsel, clearly
indicating an intent to opt out" and noting that "[o]ther, less burdensome, means—
*e.g.,* email . . . could credibly have accomplished the same end.").

to the same Arbitrator.  In each arbitration, the Arbitrator granted IBM's Motion to Dismiss and then denied Petitioner's Motion for Reconsideration.

The Arbitrator's decisions, however, were fundamentally flawed, and the Awards should be vacated for several reasons.  The Arbitrator refused to consider material evidence and unilaterally re-wrote the parties' contract by refusing to entertain remedies like equitable tolling that were contractually available to Petitioners.  This is sufficient to justify vacatur of the award, as described further below.  It was clear error on the part of the District Court to permit this award to stand and to confirm the award.

To begin, the Arbitrator refused to consider critical evidence that demonstrated that Petitioners' arbitration demands should have been deemed timely.  Vacatur is appropriate under § 10(a)(3) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(3), "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  *See Johnson v. Directory Assistance, Inc.*, 797 F.3d 1294, 1299 (2015) (quoting 9 U.S.C. § 10(a)(3)).  Here, the Arbitrator ignored the fact that Petitioners filed their arbitration demands with JAMS timely, and that the only transgression was a one-day delay in serving the demands on IBM.  Likewise, the Arbitrator ignored the evidence of the logistical hurdles created by the November 2020

3

peak in the COVID-19 pandemic, which necessitated that Petitioners'

counsel's office remain closed and caused same-day mailing to be logistically

unavailable.  Further, the Arbitrator ignored the stark contrast between IBM's

mailing requirement and the prevailing standard for conducting business

electronically, which is notable given the fact that IBM is a technology company

that relies heavily on electronic communication.

In dismissing the case, the Arbitrator afforded no weight to this evidence,

which was crucial to Petitioners' argument and warrants vacatur.  *See Hoteles

Condado Beach, La Concha and Convention Center v. Union De Tronquistas

Local 901*, 763 F.2d 34, 40 (1st Cir. 1985).  In rubber-stamping the Arbitrator's

conclusions, the District Court took the position that Petitioners' arguments

demonstrated a mere disagreement with the Arbitrator.  As will be explained

below, however, the Arbitrator blatantly failed to consider and afforded no weight

to crucial evidence, meaning that the Awards should be vacated.

Moreover, it is well settled that in court, the requirement for a timely charge

of discrimination to be filed with the Equal Employment Opportunity Commission

("EEOC") is not jurisdictional and is thus subject to equitable tolling.  *See Zipes v.

Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  Indeed, arbitrators routinely

grant the remedy of equitable tolling in arbitration.  *See, e.g.*, *In the Matter of*

*Arbitration Between Kinsella and Baker Hughes Oilfield Operations LLC, et al.*,
2022 WL 1038061 (Wickliff, Arb. Feb. 9, 2022); *In re Hughes Aircraft Co.
Electronic and Space Technicians Union, Local No. 1553*, 1987 WL 1482436, at
*4-5 (Richman, Arb. July 1, 1987).  Nevertheless, the Arbitrator and the District
Court erred in concluding that equitable tolling under *Zipes* was inapplicable, since
the arbitration agreement did not require Petitioners to file an EEOC charge as a
predicate to filing the arbitration demands. App. 217-18.  However, the District
Court clearly erred, as the arbitration agreement expressly incorporates the
limitations period of the ADEA, which necessarily includes the potential for
equitable tolling in light of *Zipes*, 455 U.S. at 393.

Lastly, the District Court erred when it declined to hold that the arbitration
agreement's timeliness provision is unenforceable to the extent that it supposedly
waives Petitioners' ability to use the single filing or "piggybacking" rule under the
ADEA.  Under this rule, plaintiffs may file claims of discrimination years after
they suffered discrimination by "piggybacking" onto earlier-filed claims, which
put the company on notice of allegations that it engaged in illegal discrimination
that affected a broad class of workers.  *See Grayson v. K Mart Corp.*, 79 F.3d
1086, 1103 (11th Cir. 1996); *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057-59 (2d
Cir. 1990).  Here, Petitioners should have been permitted to "piggyback" onto

EEOC charges filed by the named plaintiffs in an earlier-filed class action age

discrimination case against IBM in court, *Rusis v. International Business Machines*

*Corp.*, Civ. Act. No. 1:18-cv-08434 (S.D.N.Y.), without any concern regarding

timeliness of his claim, meaning that his arbitration demand must be deemed

timely submitted.

      The Arbitrator refused to apply the piggybacking rule, which in effect meant

that Petitioners had significantly less time to submit their ADEA claims than they

would have had in Court.  However, in *Thompson v. Fresh Products, LLC*, 985

F.3d 509, 521 (6th Cir. 2021), the Sixth Circuit made clear that the ADEA

limitations period is a substantive right that cannot be abridged by contract.  In

reaching this conclusion, the Sixth Circuit relied on the interpretive expertise of the

EEOC, which submitted an amicus brief taking the same position.  *See Thompson*

*v. Fresh Products, LLC*, EEOC Brief, 2020 WL 1160190, at *19-23 (6th Cir. Mar.

2, 2020).  Additionally, because the ADEA limitations period – and thus also the

piggybacking rule – is a substantive right, it is protected by the Older Workers'

Benefits Protection Act ("OWBPA"), 29 U.S.C. § 621(f)(1).  The OWBPA

mandates strict requirements that an employer must meet before an employee can

waive any "right or claim" under the ADEA, including a requirement that

employers must provide disclosures to its terminated employees regarding the ages

of employees selected and not selected for layoff.  *See* 29 U.S.C. § 626(f)(1).

Therefore, even if it were possible to abridge the ADEA limitations period by

contract (it is not, under *Thompson*), IBM would have had to first meet the

requirements of the OWBPA in order to validly do so, which it did not do. As

such, to the extent that the arbitration agreement prevents Petitioners from utilizing

the piggybacking rule, it is unenforceable.

     For all these reasons, and as explained below, this Court should reverse

the District Court's confirmation of the arbitrator's awards and instead vacate

the Awards.

## JURISDICTIONAL STATEMENT

     The District Court had subject matter jurisdiction pursuant to 28 U.S.C.

§ 1331, as each case presents a claim under the Age Discrimination in

Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* and the Federal Arbitration

Act 9 U.S.C. § 1 *et. seq.*  This Court has appellate jurisdiction pursuant to 28

U.S.C. § 1291, because the order being appealed from and the accompanying

judgment constitute a final judgment by a district court within this circuit.  The

District Court issued the Judgment these cases case on December 9, 2022.  *See*

Aoo. 232, 439.  Petitioners filed timely Notices of Appeal on January 9, 2023.

*See* App. 233, 440.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court erred by declining to vacate the Arbitration Awards in these matters pursuant to 9 U.S.C. §10(a)(3), because the Arbitrator failed to consider the material factual evidence presented by Petitioners demonstrating that the arbitration demand was timely filed;

2.      Whether the District Court erred by declining to vacate the Arbitration Awards in this matter pursuant to 9 U.S.C. § 10(a)(4), because the Arbitrator refused to apply the doctrine of equitable tolling;

3.      Whether the District Court erred by holding that the arbitration agreement's timeliness provision was enforceable, despite the fact that it purports to waive the ability of Petitioners to utilize the single-filing or "piggybacking" rule under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, which is a non-waivable substantive right protected by the Older Workers' Benefits Protection Act, 29 U.S.C. § 626(f)(1).

## STATEMENT OF THE CASE

### I.    Nature of the Case

Petitioners were terminated in 2020 through a reduction-in-force, referred to by IBM as a "Resource Action."  At the time of his termination, Petitioner Holtman had worked for IBM for over 30 years and was 60 years old.  App. 011. At the time of his termination, Petitioner Owens had worked

8

for IBM for over 20 years and was 50 years old. App. 235.  Each Petitioner

alleged in arbitration that IBM's decision to lay him off was driven by

unlawful age discrimination and that therefore IBM violated the ADEA.  *See*

App. 011, 235.[2]  Despite the fact that Petitioners filed their arbitration demands

with JAMS within the time allotted by the arbitration agreement, the Arbitrator

held that the demands were one-day late and that, as a result, Petitioners had

waived his age discrimination claim against IBM.  App. 103-112; 327-336.

Petitioners each moved to vacate the Arbitrator's Award before the District

Court pursuant to § 10(a) of the FAA, which the District Court denied. This

appeal asserts that the District Court erred when it declined to vacate the

arbitration awards.

## II.     Factual and Procedural Background

On May 21, 2020, each Petitioner was informed that he was being

terminated through a Resource Action, IBM's term for a "layoff".  Petitioners

alleged that IBM used these Resource Actions to systematically reduce its

---

[2]      Indeed, the EEOC investigated IBM's companywide practices and issued a
letter of determination on August 31, 2020, finding reasonable cause to conclude
that IBM had been engaged in an aggressive discriminatory campaign to reduce the
number of its older workers and replace them with younger ones.  App. 018-019,
244-245. IBM's discriminatory scheme has been widely reported on, and internal
IBM documents have revealed top IBM executives referring to older workers as
"dinobabies" that need to be made an "extinct species." *See*
https://www.nytimes.com/2022/02/12/business/economy/ibm-age-
discrimination.html.

employment of older workers in order to build a younger workforce, pushing out

thousands of older workers while hiring younger workers (which IBM often refers

to as "Early Professional Hires" or "New Collar" workers), in order to better

compete with newer and hipper technology companies, such as Google, Facebook,

Amazon, and others.[3]  This discriminatory scheme is detailed in the First Amended

Complaint in *Rusis v. International Business Machines Corp.*, Civ. Act. No. 18-cv-

08434, Dkt. 11 (S.D.N.Y. Dec. 11, 2018), which Petitioners incorporated into their

arbitration demands.  *See* App. 022-042; 247-267.

    Although IBM has sought – both through its arbitration process and in the

*Rusis* case – to cabin each individual employee's separation as if it existed in a

vacuum, the EEOC issued a letter of determination on August 31, 2020, that found

otherwise.  *See* App. 018-019; 244-245.  Following a two-year investigation of

allegations of class-wide discrimination against IBM, the EEOC found that

reasonable cause existed to believe that IBM had engaged in an aggressive

campaign over a five-year period to reduce the number of older workers at the

company and replace them with younger workers, thereby discriminating against

---

[3]    Indeed, in an article published by *ProPublica* following an investigation of IBM"s hiring practices, *ProPublica* reported that it estimates that "in the past five years alone, IBM has eliminated more than 20,000 American employees ages 40 and over, about 60 percent of its estimated total U.S. job cuts during those years." Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, *ProPublica* (March 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/.

its older workers in violation of the ADEA. *Id.* The EEOC's determination

pertained to fifty-eight (58) charging parties "and a class of similarly situated

parties" who alleged that they were discharged based on their age and was based

on data from IBM's Resource Actions between 2013 and 2018. *Id.*

### III.    The *Rusis* Named Plaintiffs' EEOC Charges

As a predicate to filing the *Rusis* lawsuit, lead plaintiff Edvin Rusis filed a

class EEOC charge on May 10, 2018, which states:

> IBM is discriminating against its older workers, both by laying them off
> disproportionately to younger workers and not hiring them for open
> positions. Indeed, over the last several years, IBM has been in the process of
> systematically laying off its older employees in order to build a younger
> workforce. IBM has laid off at least 20,000 employees over the age of forty
> in the last five years. I am 59 years old, and I am being laid off by IBM
> effective June 27, 2018. Since receiving notice of my layoff, I have applied
> for several other open positions within IBM, for which I am eminently
> qualified, but I have not been hired for any of these positions, despite my
> lengthy service and successful experience as an employee for IBM. I believe
> that I and thousands of other employees have been discriminated against by
> IBM on the basis of age.

*See* App. 072; 296. Other *Rusis* plaintiffs (Henry Gerrits and Phil McGonegal)

subsequently filed class charges with similar language on July 2, 2018. *See* App.

074; 076; 300; 302.

### IV.    The Timeliness Dispute in Petitioners' Arbitration

When Petitioners were terminated in May 2020, each signed an arbitration

agreement in exchange for a modest severance payment. Petitioners did not

receive OWBPA disclosures from IBM in connection with signing their severance

agreements, which would have described the ages and of other workers being laid

off and retained by the company.[4]

     With respect to the time limit for filing an arbitration demand against the

company, the arbitration agreement states:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not timely submitted, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern though the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

App. 048; 272.

     In compliance with this provision, Petitioners filed their arbitration demand

electronically with JAMS on November 17, 2020.  *See* App. 024; 248.  IBM does

not dispute that the November 17, 2020, filing was within the 180-days required by

its reading of the timing provision and that the demand was therefore timely.

     Because the agreement provides only a mailing address for submitting an

arbitration demand to the IBM Arbitration Coordinator, Petitioners had no choice

---

[4]    On its face, the agreement does not purport to release ADEA claims and therefore IBM takes the position that OWBPA disclosures are not required. However, as described in Section III, *infra*, the timing provision in IBM's arbitration agreement results in an effective waiver of Petitioners' ADEA claims, without providing these required disclosures.

but to physically mail the arbitration demand to IBM.  *See* App. 048; 272.  No

attorneys or staff were working at Petitioners' counsel's office in November 2020

in light of the COVID-19 pandemic, and there was no USPS pickup or drop-off

mechanism in place.  App. 086-087; 310-311.  As a result, the arbitration demand,

which had been timely filed, was mailed to IBM the next day, November 18, 2020.

*Id.*

IBM filed a motion to dismiss Petitioner Owens' demand as untimely on

May 21, 2021.  App. 313.  Petitioner Owens filed his opposition on June 4, 2021.

App. 317.   IBM filed a motion to dismiss Petitioner Holtman's demand as

untimely on June 30, 2021. App. 089.  Petitioner Holtman filed his opposition on

July 14, 2021. App. 093.   The Arbitrator issued his decision granting IBM's

motions to dismiss in both cases on the same day, November 9, 2021.  *See* App.

103-112; 327-336.

In both cases, Petitioner filed a timely motion for reconsideration (pursuant

to the arbitration agreement's provisions) on December 8, 2021.  *See* App. 115;

339.  The Arbitrator denied the motions on January 6, 2022. App. 145; 369.

Petitioner Holtman timely filed his Petition to Vacate the Arbitration Award

before the District Court on March 30, 2022, *see* App. 7, along with an

accompanying Motion to Vacate.  Petitioner Owens timely filed his Petition to

Vacate the Arbitration Award before the District Court on April 4, 2022, *see* App.

13

231, along with an accompanying Motion to Vacate.  In both cases, IBM submitted an Opposition to the Motion, along with a Motion to Confirm the Arbitration Award.

In a single order covering both of these cases, the District Court denied Petitioners' Motions to Vacate the arbitration award and instead confirmed the awards on December 9, 2022.  Petitioners timely filed their appeals.  *See* App. 211-221; 428-438.   This Court consolidated Petitioners' appeals *sua sponte* on March 6, 2023.

## STANDARD OF REVIEW

This Court "should apply ordinary, not special, standards when reviewing district court decisions upholding arbitration awards." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995)).  As such, this Court's review of "the district court's findings of fact is for clear error and [its] review of questions of law is *de novo."* Republic of Argentina v. BG Grp. PLC, 665 F.3d 1363, 1369 (D.C. Cir. 2012), rev'd, 572 U.S. 25, 134 S. Ct. 1198, 188 L. Ed. 2d 220 (2014), and vacated on other grounds, 555 F. App'x 2 (D.C. Cir. 2014).  The same standard applies to both confirmations of awards and decisions denying motions to vacate awards.  *See id.*

## SUMMARY OF THE ARGUMENT

The District Court erred in denying Petitioners' Petitions to Vacate and

instead confirming the awards. 9 U.S.C. § 10 provides that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration" in four separate scenarios, including, where "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced" or where "an arbitrator exceeds his authority or executes his duties as an arbitrator so imperfectly to deprive the parties of a definite and final resolution of the dispute". 9 U.S.C. § 10(a)(3)-(4). In addition to the statutory grounds, "arbitration awards can be vacated ... if they are in manifest disregard of the law." Kurke v. Oscar Gruss & Son, Inc., 454 F.3d 350, 354 (D.C. Cir. 2006). Here, there are at least three reasons that the District Court should have vacated the Awards under § 10(a):

*First,* § 10(a)(3) provides that vacatur is appropriate "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). Even where an Arbitrator has received the evidence in question, § 10(a)(3) is implicated where the Arbitrator refuses to give crucial evidence any weight. *See Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas*

15

*Local 901*, 763 F.2d 34, 40 (1st Cir. 1985). The Arbitrator here refused to ascribe any weight to several pieces of evidence that demonstrate that Petitioners' arbitration demands were timely filed. While the District Court construed Petitioners' argument as merely disagreeing with the Arbitrator, in fact, the Arbitrator ***ignored important evidence***, ultimately depriving Petitioners of a full and fair hearing.

*Second*, § 10(a)(4) provides that vacatur is appropriate where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The arbitration agreement in this case affords the Arbitrator authority to grant the parties the full remedies that are available were the case in a court of competent jurisdiction, which includes equitable tolling for the filing of ADEA claims. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Arbitrator, however, rejected Petitioners' equitable tolling argument, as did the District Court. In fact, equitable tolling was applicable because the arbitration agreement's timeliness provision incorporated the ADEA's limitations period.

*Third*, the District Court incorrectly held that the timeliness provision of IBM's arbitration agreement was enforceable, even to the extent that it

16

purports to the waive the piggybacking rule of the ADEA.  To the extent that

the arbitration agreement purports to waive the ability of Petitioners to utilize the

piggybacking rule, the waiver is unenforceable because it abridges Claimant's

ADEA limitations period, which is a substantive, non-waivable right. *See*

*Thompson*, 985 F.3d at 521. At the very least, to truncate Petitioners' ADEA

limitations period in this manner in the arbitration agreement, IBM would have had

to provide disclosures required by the OWBPA, which IBM did not do.

## **ARGUMENT**

### I.    **This Court Should Vacate the Arbitration Award, Because the Arbitrator Failed to Weigh Evidence Presented by Petitioners Demonstrating that their Arbitration Demands Were Timely Filed**

In each of these cases, the Arbitrator granted IBM's Motion to Dismiss,

concluding that Petitioners' arbitration demand was submitted untimely and

affording no weight to the evidence that demonstrated that in fact the demand

was submitted timely to JAMS – it was only a pandemic-necessitated ***one-day***

delay in service of the demand to IBM that IBM seized upon to argue that it

was untimely.  The District Court erred in concluding that the Arbitrator did

not ignore the crucial factual evidence submitted by Petitioners.  The issue is

that the Arbitrator chose to completely ignore the evidence that Petitioners

submitted, which justifies vacating the Award under 9 U.S.C. § 10(a)(3).

It is well settled that "[v]acatur [of an arbitration award] is appropriate

where the arbitrator refuses to consider evidence 'pertinent and material to the controversy.'" Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 481 F.3d 813, 816 (D.C. Cir. 2007) (quoting 9 U.S.C. § 10(a)(3)). The failure to consider evidence is especially concerning where, as here, it is "central and decisive" to the party's position, because ignoring such evidence is "destructive of [the party's] right to present [their] case." *See Hoteles Condado Beach*, 763 F.2d at 40; *see also Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997) (vacating arbitration award because the arbitration panel excluded crucial testimony); *Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 506 v. E.D. Clapp Corp.*, 551 F. Supp. 570, 577 (N.D.N.Y. 1982) (vacating arbitration award where "the hearing ended without both sides being allowed to fully present all of their evidence via documents and/or testimony."); *Confinco, Inc. v. Bakrie & Bros., N.V.*, 395 F. Supp. 613, 615-16 (S.D.N.Y. 1975) (vacating an arbitration award on the grounds of refusal to hear pertinent evidence); *Harvey Aluminum v. United Steelworkers of America, AFL-CIO*, 263 F. Supp. 488, 495 (C.D. Cal. 1967) (noting that a party to an arbitration would not receive a fair hearing where crucial testimony is disregarded).

Importantly, in *Hoteles Condado Beach*, which this Court cited approvingly in *Lessin*, 481 F.3d at 818, the First Circuit affirmed vacatur because even though the arbitrator had admitted evidence, **he refused to give**

**the admitted evidence any weight**. *See Hoteles Condado Beach*, 763 F.2d at 40. In vacating the arbitrator's award in *Hoteles*, the lower court had found that "it is clear that the arbitrator palpably relied on faulty judgment in order to exclude and disregard the crucial . . . evidence presented by plaintiff to prove its case." *Hoteles Condado Beach v. Union de Tronquistas de Puerto Rico, Loc. 901*, 588 F. Supp. 679, 685 (D.P.R. 1984). When the arbitrator dismissed the evidence which was "the only evidence before him, [he] acted in violation of procedural safeguards, thereby substantially prejudicing the rights of the plaintiff." *Id.* The First Circuit affirmed the lower court's decision, holding that the arbitrator's ignoring of the evidence before him, even though it was admitted to the record, denied the plaintiff a full and fair hearing on the dispute which altered the provisions of their agreement permitting vacatur. *See Hoteles Condado Beach*, 763 F.2d at 42; *see also Confinco*, 395 F. Supp. at 615 ("It makes no difference that the [arbitrator] may have acted only in neglectful disregard rather than by explicitly 'refusing' to the hear the evidence. The fundamental right to be heard was grossly and totally blocked.").

Like in *Hoteles Condado Beach*, the Arbitrator here failed to ascribe any weight to Petitioners' crucial evidence. The Arbitrator side-stepped the key, undisputed fact in this case, that Petitioners **did timely file** their arbitration

demands with JAMS,[5] even accepting IBM's unnecessarily cramped reading of the timeliness provision to require the demand to have been filed within 180 days of the date that Petitioners were notified of their termination.[6]  Instead of giving serious consideration to this fact, and the fact that Petitioners' demands were promptly mailed out to IBM *on the following day* (because same-day mailing was logistically unavailable on the same day), the Arbitrator reached the harsh conclusion that Petitioners' claims were time-barred.

But this alleged single-day delay of service on IBM was not jurisdictional and does not operate to automatically bar Petitioners' claims.  In court, claims are routinely allowed to proceed where a complaint is timely filed but then not

---

[5]     Statutes of limitations are almost universally based on the date of filing, so that Petitioners' filing of their arbitration demands with JAMS within the 180-day period unquestionably rendered their claims timely.  See, e.g., Innovatit Seafood Sys., LLC v. Commr. For Patents, 240 F.R.D. 23 (D.D.C. 2007) (holding that "for the purposes of the statute of limitations, the filing date is the date that the complaint is tendered to the clerk"); Kareem v. F.D.I.C., 811 F. Supp. 2d 279, 283 (D.D.C. 2011) ( ("It is well settled that 'the date on which the complaint was received by the clerk of court for filing is the critical filing date for statute of limitations purposes,'" not on the date it was mailed) (quoting Mwabira-Simera v. Howard U., 692 F. Supp. 2d 65, 71 (D.D.C. 2010)); Iran Air v. Kugelman, 996 F.2d 1253 (D.C.Cir.1993) (concluding that the complaint was timely when filed within the statute of limitations, even if the defendant was not served until after the statute of limitations ended).

[6]     As explained in Section III *infra*, IBM is incorrect that Petitioners only had 180 days to file their demands, because the piggybacking rule of the ADEA must be applied under which their claims would still have been timely, notwithstanding the alleged one-day delay.

immediately served, or sometimes even when a complaint itself is not timely submitted.  *See, e.g., Cooperwood v. Farmer*, 315 F.R.D. 493, 497-99 (N.D. Ill. 2016) (refusing to dismiss a complaint where service of the complaint on the defendant was delayed by nine months); *Sowers v. U.S.*, 141 F. Supp. 3d 471, 475-76 (E.D. Va. 2015) (refusing to dismiss an amended complaint even where the plaintiff filed it three weeks past the court's deadline).

Relatedly, the Arbitrator ignored the facts underlying this dispute.  His original decision did not even refer to the arguments Petitioners made about their counsel's office being closed due to the pandemic, and his decision denying Petitioners' motions for reconsideration simply dismissed the issue out of hand, noting that Petitioners were able to mail the demand a day later. App. 153; 377. The Arbitrator's decision gave no consideration to the facts laid out in Petitioners' Opposition, nor the drastically altered landscape created by the COVID-19 pandemic.

Indeed, the fact that Petitioners' counsel was able to accomplish service by mail on November 18, 2020, does not mean it was feasible or possible the day before.  As Petitioners set out in their Oppositions to IBM's Motion to Dismiss and their Motions for Reconsideration, Petitioners' counsel's office was operating entirely on a remote basis through most of 2020, including at the time the arbitration demand was filed, as was true for most law firms around the country.

21

In addition, most courts, including the District Court, had postponed deadlines several times throughout 2020 in light of the pandemic, and had authorized remote proceedings.[7]  Therefore, in November 2020, there were no attorneys or staff reporting to the office and no system in place for USPS pickup or drop-off.  *See* App. 086; 087; 310-311.  Mailings were necessarily limited by COVID-19 concerns.  *See id.*  At the same time, USPS service was facing delays and disruptions, including carryover delays following the presidential election.  *See* App. 098; 322.  As a result, while Petitioners' demand was filed with JAMS within the 180-day deadline, it was simply mailed out one day later, as mailing was not possible on the 180th day.

Petitioners also detailed – and the Arbitrator failed to consider – the stark contrast between IBM's mailing requirement and the prevailing standard for conducting business electronically. It is noteworthy that: (1) Petitioners could initiate their demands by filing them online with JAMS; (2) their interactions with IBM, ***including signing their separation agreement***, took place electronically; and

---

[7]     In September 2020, for example, this Court issued an order noting the continued suspension of in-person oral arguments.  See In re: Court Operations in Light of the COVID-19 Pandemic, Standing Order No. 20-3, Sept. 6, 2020.  This restriction was not lifted until December 1, 2021.  See Update to Court Operations, October 15, 2021, available at https://www.cadc.uscourts.gov/internet/home.nsf/Content/Announcement+-+In-Person+Oral+Arguments+to+Resume+December+1+2021/$FILE/NoticeCourtOps20211015.pdf

(3) Petitioners' law firm (again, like most others around the country) had been largely conducting business electronically, particularly in light of the pandemic, as courts, administrative offices, and law firms remained closed and work was conducted remotely.

Instead of seriously considering this evidence, along with Petitioners' *timely* filing of their demands with JAMS, as persuasive reasons to deem Petitioners' demand timely, the Arbitrator glossed over Petitioners' arguments about the impact of the COVID-19 pandemic. The Arbitrator's refusal to consider this evidence is especially egregious, given that even the federal courts were making allowances with respect to deadlines due to the pandemic.  In addition to ignoring the fundamental changes and risks posed by the pandemic, the Arbitrator's failure to take Petitioners' evidence into account severely prejudiced Petitioners, resulting in the dismissal of their claim based on their having timely filed their arbitration demands but simply having their law firm mail it out to IBM the next day.

The District Court, in turn, incorrectly held that the fact that the Arbitrator referenced the pandemic demonstrates that the Arbitrator adequately considered Petitioners' evidence. App. 218; 434.  However, the Arbitrator's discussion reflects only a flat refusal to consider this evidence, stating only that the fact that mailing was possible on one day means it must have been possible the day prior.  App. 153; 377.  The Arbitrator made an unfounded assumption

23

unsupported by any evidence – that mailing was equally available to Petitioners' counsel's staff on November 17, 2020, as it was on November 18, 2020. Id.  This decision gives no weight to the facts laid out in Petitioners' filings, nor the evidence of a drastically altered landscape created by COVID-19.  The Arbitrator did not actually weigh the evidence presented by Petitioners but instead deemed the evidence not worth considering.  Id.  Like in *Hoteles Condado Beach*, "it is clear that the arbitrator palpably relied on faulty judgment in order to exclude and disregard the crucial . . . evidence . . . ." *Hoteles Condado Beach*, 588 F. Supp. at 685.

In fact, courts routinely weigh this type of evidence and find that *de minimis* delays which do not prejudice the opposing party, even when the delay may have been in the filing party's control, should not waive any potential rights.  *See, e.g.*, *Kubiak v. S.W. Cowboy, Inc.*, 2017 WL 1080000, at *4 (M.D. Fla. Mar. 22, 2017).  Here, by contrast, the delay was ***not*** in the filing party's control and was the result of extraordinary circumstances brought about by the global pandemic. Likewise, as explained in *supra* p. 22, courts can and do frequently excuse delays in serving or filing the complaint.  *See Cooperwood*, 315 F.R.D. at 497-99; *Sowers*, 141 F. Supp. 3d at 475-76.

In refusing to consider pertinent evidence of pandemic-related challenges

24

to mailing the demand on November 17, 2020, the arbitrator and the District

Court effectively denied Petitioners a full and fair hearing.

## II. The Court Should Vacate the Arbitration Award, because the Arbitrator Exceeded His Authority by Failing to Apply the Remedies Available to Petitioners Under Federal Law, Namely Equitable Tolling

The parties' agreement is unequivocal that "the arbitrator(s) is authorized to

award any party the **full remedies** that would be available to such party if the

Covered Claim had been filed in a court of competent jurisdiction."  App. 048; 272

(emphasis added).  It is settled law that equitable tolling is a remedy available to

ADEA plaintiffs.  *See Washington v. Washington Metro. Area Transit Auth.*, 160

F.3d 750, 752 (D.C. Cir. 1998); *see also Zipes*, 455 U.S. at 393 (holding that

timely filing an EEOC charge is not a jurisdictional prerequisite to filing suit and is

subject to equitable tolling);

The Arbitrator's manifest failure to apply the equitable tolling doctrine given

Petitioners' timely filing of their claims with JAMS and the mailing of the

demands the next day contravened the terms of the separation agreement and

improperly deprived Petitioners of the remedies that would be available to them in

a court of law.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473

U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not

forgo the substantive rights afforded by the statute; it only submits to their

resolution in an arbitral, rather than a judicial, forum.").  Equitable tolling would

have been amply appropriate in this case given that Petitioners timely filed their demands with JAMS electronically and mailed the demands to IBM **one day later** as the result of logistical hurdles caused by a global pandemic.

Rather than addressing this point, the District Court held that because "[f]iling a charge with the EEOC is not at issue here, nor is it a prerequisite for arbitration under the agreement therefore, *Zipes* is inapposite. App. 218; 435. However, the arbitration agreement itself expressly incorporates the limitations period of the ADEA to govern the limitations period of the arbitration demand. App. 048; 272. As such, because the EEOC charge deadline is subject to equitable tolling with respect to ADEA claims in court, *see Zipes*, 455 U.S. at 393, so too must equitable tolling be available in arbitration.[8] Contrary to the District Court's conclusion, the fact that the arbitration agreement does not make filing an EEOC charge a prerequisite to arbitration is inapposite.[9]

---

[8] Writing for the First Circuit and invoking the *Zipes* decision, Justice Breyer noted in *Berklee College of Music v. Berklee Chapter of Mass. Fed. of Teachers*, 858 F.2d 31, 33 (1988), that arbitrators routinely read "judicially created exceptions" like equitable tolling "into literally absolute-sound time limits" in arbitration agreements. *See, e.g.*, *In the Matter of Arbitration Between Kinsella*, 2022 WL 1038061 (applying equitable tolling in discrimination arbitration); *In re Hughes Aircraft Co.*, 1987 WL 1482436, at *4-5 (applying equitable tolling in discrimination arbitration in light of *Zipes*, 455 U.S. at 393).

[9] Courts have held that employers do not waive their right to arbitrate by participating in EEOC investigation. E.g., Marie v. Allied Home Mortgage, 402 F.3d 1 (1st Cir. 2005). The reasoning for such a finding is that the purpose of the EEOC investigation was to determine whether a dispute existed. As the First Circuit stated, "We will not force an employer to make a wasteful, preemptive

**III.**    **The District Court Erred by Holding that the Timeliness Provision was Enforceable Even Though it Truncated the Time that Petitioners had to Submit their ADEA Claims in Arbitration**

The decisions by the Arbitrator and subsequently the District Court have left Petitioners in a position that they would ***not*** be in if their ADEA claims were to be adjudicated in court rather than arbitration.  If Petitioners could pursue their ADEA claims in court, their claims would be timely (even to this day) despite the fact that they supposedly did not submit an EEOC charge within 180 days of the date that they were terminated, because they could utilize the ADEA's piggybacking rule.

The piggybacking rule permits individuals to assert ADEA claims against employers even if they are outside the time to file an EEOC charge, provided that they can "piggyback" off of an earlier, timely-filed EEOC charge alleging that the employer engaged in a similar course of discrimination.  *See Tolliver*, 918 F.2d at 1057.  Here, even though Petitioners would have been deemed timely to participate in the *Rusis* lawsuit (or even to file their own individual lawsuits) under the piggybacking rule in court, the Arbitrator held that Petitioners could not utilize the piggybacking rule in their arbitration case.  That result cannot stand, because it leads to the perverse result that a claim that is unquestionably timely in court

---

decision to arbitrate." Id.  The same should hold true for employees, and thus constitutes another basis for applying equitable tolling here.  The EEOC issued a letter of determination on August 31, 2020, that found IBM engaged in widespread age discrimination.  *See* App. 018-019; 244-245.  Petitioners filed (and served) their arbitration demands well within 180-days of the EEOC's determination.

would be waived entirely in arbitration.  While the District Court agreed with the

Arbitrator with respect to the piggybacking rule, the District Court's reasoning was

deeply flawed and should be reversed.[10]

### A. The Arbitration Agreement's Timeliness Provision is Unenforceable to the Extent that it Purports to Preclude Petitioners from Using the Piggybacking Rule

The Supreme Court has recognized that arbitration is an acceptable

alternative forum in which to pursue discrimination claims, but only so long as an

employee can pursue his or her claims there just as they would be able to in court –

and not sacrifice any substantive rights.  *See Gilmer v. Interstate/Johnson Lane

Corp.*, 500 U.S. 20, 28 (1991).  The District Court's refusal to uphold the

purported piggybacking waiver in IBM's arbitration agreement was therefore in

error and should be reversed.[11]  The so-called piggybacking waiver is

---

[10]     IBM has taken the position that its arbitration agreement does not empower arbitrators to decide whether a provision of the arbitration agreement is valid or enforceable, as the agreement supposedly delegates questions of the validity or enforceability of its provision to a court of competent jurisdiction.  Because IBM takes this position, IBM's counsel has challenged the enforceability of the alleged piggybacking waiver in multiple federal court cases in the Southern District of New York. *See In Re: IBM Arbitration Agreement Litigation*, C.A. No. 21-CV-6296 (S.D.N.Y.); *Chandler v. International Business Machines Corp.*, C.A. No. 21-CV-6319 (S.D.N.Y.); *Lodi v. International Business Machines Corp.*, C.A. No. 21-CV-6336 (S.D.N.Y.); *Tavenner v. International Business Machines Corp.*, C.A. No. 21-CV-6345 (S.D.N.Y.).  These decisions are flawed and unpersuasive and are currently on appeal to the Second Circuit. Oral argument was held before the Second Circuit on May 22, 2023.

[11]     Otherwise, the arbitration agreements themselves are invalid, and Petitioners would then be able to pursue their claims in court.

unenforceable because the ADEA's timing scheme is a non-waivable substantive right under the ADEA, and the purported waiver would impermissibly prevent the effective vindication of Petitioners' claims in arbitration. *Id.*

Pursuant to the ADEA, individuals are required to file a charge with the EEOC within 300 days of the date of the alleged discriminatory act (or within 180 days in non-deferral jurisdictions). 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d), 633(b).[12] However, this statutory period can be tolled by the filing of a class-wide EEOC charge by a similarly situated individual under the "piggybacking" or "single filing" rule.

"The single-file piggybacking rule allows an individual plaintiff, who has not filed an EEOC charge, to satisfy the administrative exhaustion requirements under Title VII by relying on a charge filed by another plaintiff." *Campbell v. National R.R. Passenger Corp.*, 163 F.Supp.2d 19, 25 (D.D.C. 2001). As one court has explained, "where two plaintiffs allege that they were similarly situated and were subjected to the same discriminatory treatment, the purposes of the exhaustion requirement are adequately served if one plaintiff has filed an EEOC charge." *Emory v. United Air Lines, Inc.*, 821 F. Supp. 2d 200, 229–30 (D.D.C.

---

[12] North Carolina, where both Petitioners worked, is a non-deferral state. *See Ortiz v. Vance Cnty. Sch., Admin. Unit*, 2019 WL 1940596, at *4 (E.D.N.C. Apr. 30, 2019).

2011), *aff'd on other grounds*, 720 F.3d 915 (D.C. Cir. 2013) (citing *Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C. Cir. 1981)). "The principle behind the piggybacking rule is to give effect to the remedial purposes of the ADEA . . . ." *Grayson*, 79 F.3d at 1103.

As long as the "claims are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges, then it would be 'wasteful, if not vain,' . . . to require separate EEOC filings." *Foster*, 655 F.2d at 1322. Similarly, the Second Circuit held in *Tolliver*, that "[t]he purpose of the EEOC charge filing requirement is not to limit the time for suit, but instead to afford the EEOC a prompt "opportunity to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.'" 918 F.2d at 1057. The EEOC "has interpreted the ADEA filing requirements to be satisfied 'so long as the matter complained of was within the scope of [a] previously filed charge, regardless of who filed.'" *Id.* Additionally, courts have found that the administrative prerequisites of discrimination statutes such as the ADEA and Title VII "must be interpreted liberally to effectuate [their] purpose of eradicating employment discrimination," and courts must look to "fairness, and not excessive technicality" in addressing such issues. *Cronas v. Willis Group Holdings Ltd.*, 2007 WL 2739769, at *2 (S.D.N.Y. Sept. 17, 2007).

Courts have held that the piggybacking rule applies, not only in ADEA

collective actions, but also in individual ADEA cases (where the plaintiffs piggyback off of other individuals who filed similar EEOC charges but then pursued their claims in separate cases from the plaintiffs). *See Tolliver*, 918 F.2d at 1057 ("[t]he purpose of the charge filing requirement is fully served by an administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a similar grievance elect to join a preexisting suit **or initiate their own.**") (emphasis added); *see also Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450 (11th Cir. 1993) ("Accordingly, we hold that a plaintiff, such as Calloway, who unsuccessfully moves to intervene in the lawsuit of a plaintiff who has filed an EEOC charge may invoke the single filing rule, provided (1) the relied upon charge is not invalid, and (2) the individual claims of the filing and non-filing plaintiff arise out of similar discriminatory treatment in the same time frame."). Moreover, in *Tolliver*, the Second Circuit acknowledged that the impact of the piggybacking rule was to permit individuals to institute lawsuits outside the ADEA's 300 (or 180 day) window, but explained that "[t]he charge filing requirement . . . sets a time limit, not for the purpose of limiting time for suit, but for the purpose of affording a prompt opportunity to attempt conciliation." *Tolliver*, 918 F.2d at 1059.

The Supreme Court made clear in *Gilmer*, 500 U.S. at 28, that even though a statutory claim (there, also an ADEA claim) may be subject to arbitration

31

generally, "the prospective litigant [must be able to] effectively . . . vindicate his or her statutory cause of action in the [specific] arbitral forum."  Here, IBM insists – and the Arbitrator agreed – that Petitioners cannot pursue their ADEA claims **at all** in arbitration, even though, absent the arbitration agreement, there is no question that they could pursue their claims in court by relying on the piggybacking rule.

Moreover, courts have routinely found provisions of arbitration agreements or contracts shortening the time to file discrimination claims (which is effectively what a waiver of the piggybacking rule is) to be unenforceable.  The Sixth Circuit, for example, held that an employer cannot contractually shorten the limitations period of the ADEA.  *See Thompson*, 985 F.3d at 521.  The court explained that the timing provisions contained in the ADEA "are part of the **substantive law** of the cause of action created by the ADEA" and that "the limitations period[] in the . . . ADEA give[s] rise to substantive, non-waivable rights." *Id.* (emphasis added). Moreover, the court proceeded to explain that "like Title VII, the ADEA emphasizes the importance of the pre-suit cooperative process, outlining the EEOC's obligation upon receiving a charge to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion . . .'" and "[a]ltering the time limitations surrounding these processes risks undermining the statute's uniform application and frustrating efforts to foster employer cooperation." *Id.*

The Sixth Circuit relied on an earlier case, *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 833 (6th Cir. 2019), where the court had held that an employer could not abrogate the limitations period for a Title VII claim by contract.  As the court reasoned, although statutes of limitations are traditionally regarded as procedural mechanisms, there are exceptions to this general rule where statutes that "create rights and remedies contain their own limitation periods." *Id.* (citing *Davis v. Mills*, 194 U.S. 451, 454 (1904)).  In such instances, the statute of limitations is considered a "substantive right" that "generally is not waivable in advance by employees." *Id.* at 829.  In *Thompson*, the court extended this ruling to the ADEA.  *See Thompson*, 985 F.3d at 521.

Importantly, the EEOC submitted an amicus brief in *Thompson*, also taking the position that the ADEA's limitations period is a substantive, non-waivable right that an employer cannot abridge by contract.  *See Thompson*, EEOC Brief, 2020 WL 1160190, at *19-23.[13]  As the EEOC explained, "the ADEA's statutory limitations period is a substantive right and prospective waivers of its limitations period are unenforceable." *Id.* at *19.

---

[13]     As is explained in greater detail in in Section IV.B *infra*, the EEOC's reasonable interpretation of the ADEA is entitled to deference.  *See EEOC v. Comm. Office Prods. Co.*, 486 U.S. 107, 115 (1988); *see also Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)); *Jones v. American Postal Workers Union*, 192 F.3d 417, 427 (4th Cir. 1999).

Simply put, by purporting to waive Petitioners' right to rely on the

piggybacking rule, the agreement abridges a substantive, non-waivable right. This

provision in the arbitration agreement therefore cannot be enforced.[14]

As noted above, IBM's agreement cannot waive Petitioners' claims under

the ADEA, since IBM did not provide the disclosures required under the OWBPA

(disclosures regarding the ages of other employees selected and not selected for

layoff). The OWBPA mandates strict requirements that employers must meet in

order to obtain a valid waiver from an employee of "any right or claim" under the

ADEA. *See* 29 U.S.C. § 626 (f)(1)(H); 29 C.F.R. § 1625.22(f); *see also Oubre v.*

*Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998).[15]  Importantly, the EEOC has

taken the position that the OWBPA protects employees from waiving rights by

---

[14]    IBM is also likely to cite to the Eleventh Circuit's decision in *Smith v. IBM*,
No. 22-11928 (11th Cir. May 4, 2023) in support of its position that piggybacking
is not a substantive right under the ADEA. However, *Smith* was issued as an
unpublished decision, and was reached without the benefit of oral argument.  As
such, the Court should give it limited weight.

[15]    The OWBPA's requirements have been enforced strictly. *See, e.g.*,
*Kruchowski v. Weyerhaeuser Co.*, 446 F.3d 1090, 1093-96 (10th Cir. 2006)
(finding waiver invalid where OWBPA disclosures did not include entire
decisional unit); *Loksen v. Columbia Univ.*, 2013 WL 5549780, at *7-8 (S.D.N.Y.
Oct. 14, 2013) (finding substantial compliance not enough; omission of even one
person from group of 17 considered, although probably immaterial, invalidated
waiver); *Butcher v. Gerber Prods. Co.,* 8 F. Supp. 2d 307, 314 (S.D.N.Y. 1998)
(holding that releases that did not contain all the elements listed in 29 U.S.C.S. §
626(f)(1)(A)-(H) of the OWBPA, were invalid and because employers were
required to comply with the OWBPA upon their first notification to employees,
their later correspondence could not cure the earlier deficiencies).

abridging their time to pursue their claims if they did not receive the proper

disclosures:

> The ADEA does have one other arguably relevant provision with no
> analogue in Title VII: 29 U.S.C. § 626(f) . . ., which expressly governs
> waivers of "rights or claims under this chapter." However, § 626(f), read
> together with *Logan*'s holding that a statutory limitation period is a
> substantive right, only strengthens the argument against construing the
> ADEA's limitations period as prospectively waivable.

*Thompson*, EEOC Brief, 2020 WL 1160190, at *25.  Because IBM did not provide

OWBPA disclosures to Petitioners, they cannot have waived their statute of

limitations rights under the piggybacking rule by signing the arbitration agreement.

To the extent the agreement purports to or is held to waive that rule, that provision

is invalid.

Tellingly, the *Thompson* court even pointed to the OWBPA as an indicator

that the ADEA's limitations period was a substantive right that could not be

waived:

> The ADEA's waiver provision further supports the conclusion that, **as a
> substantive right, its self-contained limitation period may not be
> prospectively waived.** It provides that "[a]n individual may not waive any
> right or claim under this chapter unless the waiver is knowing and
> voluntary." 29 U.S.C. § 626(f). A waiver may not be "knowing and
> voluntary" if it includes waiver of "rights or claims that may arise after the
> date the waiver is executed." *Id.* § 626(f)(C). The statute's strict limitations
> on waivers align with "the general rule in this circuit that an employee may
> not prospectively waive his or her rights under either Title VII or the
> ADEA." *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 584 (6th Cir. 1995).

*Thompson*, 985 F.3d at 521.[16]

### B. The District Court's Rationale in Rejecting the Application of the Piggybacking Rule is Unsupported by Law

The District Court failed to adequately address Petitioners' argument with

---

[16]      Moreover, the arbitration agreement's purported waiver of the piggybacking rule also cannot be valid because the OWBPA requires that, in order for a waiver to be valid, it must be "a part of an agreement between the individual and the employer that is **calculated to be understood by such individual, or by the average individual eligible to participate.**" 29 U.S.C. § 626(f)(1)(A) (emphasis added). The timing provision of the arbitration agreement is not only incoherent, but requires the reader to have the expertise of an employment discrimination lawyer and a thorough understanding of administrative exhaustion to parse it. To even attempt to understand the statute of limitations that applies to them, the IBM employees would have to understand: (1) the administrative and court statute of limitations under the ADEA; (2) which types of claims "must first be brought before a government agency"; and (3) the deadline for filing with the administrative agency in their state. That is certainly more information than the average IBM employee has, and even by its own terms the language is ambiguous and confusing. The OWBPA's requirement that the language of the waiver be calculated to be understood by the employee has been strictly construed by numerous courts, including against IBM. *See Syverson v. International Business Machines Corp.,* 472 F.3d 1072, 1082-87 (9th Cir. 2007) (invalidating a waiver that contained both a release and a covenant not to sue because average individuals might be confused and think that they could still bring an action under the ADEA); *Thomforde v. International Business Machines Corp.*, 406 F.3d 500, 503-05 (8th Cir. 2005) (same); *Bogacz v. MTD Products, Inc.,* 694 F. Supp. 2d 400, 404-11 (W.D. Pa. 2010) (invalidating a release that contained both a waiver and covenant not to as confusing, since the language of the agreement suggested that employees could not bring suit, even to test validity of waiver); *Rupert v. PPG Industries, Inc.,* 2009 WL 596014, at *38-49 (W.D. Pa. Feb. 26, 2009) (recommending invalidation of release that contained both a waiver and covenant not to sue, since it was confusing); *see also* 29 C.F.R. § 1625.22(b)(3) (2005) (the comprehensibility requirement "usually will require the limitation or elimination of technical jargon and of long, complex sentences.").

respect to the piggybacking rule. The District Court relied primarily on dicta in

*Rusis v. International Business Machines Corp.*, 529 F. Supp. 3d 178, 192 and n.4

(S.D.N.Y. 2021), in which the court expressed skepticism that the piggybacking

rule could be applied in arbitration.[17]   However, the *Rusis* decision was issued prior

to the critically important decision in *Thompson*, 985 F.3d at 521, which as

explained before, held that the ADEA timing scheme is a substantive right that

cannot be abridged by contract. The fact that the ADEA's timing scheme is a

substantive right, in turn, means that it is a right protected by the OWBPA, which

mandates strict requirements that an employer must meet before an employee can

waive any "right or claim" under the ADEA, including disclosures regarding the

ages of employees selected and not selected for layoff. There is no dispute that

IBM **did not make these disclosures** in connection with Claimant's termination,

and therefore Claimant cannot have waived his rights under the ADEA's timing

scheme (whether in arbitration or otherwise).[18]

---

[17]    The District Court agreed with the *Rusis* dicta opining that the piggybacking rule was inapplicable in the context of Plaintiff's arbitration, because the arbitration agreement does not require Plaintiff to submit an EEOC charge as a predicate to submitting an arbitration demand. *See* Order, Doc. 30. However, the arbitration agreement explicitly adopted the ADEA's limitations scheme, which includes the piggybacking rule. *See* Arbitration Agreement, Doc. 18-02. Thus, the piggybacking rule is applicable in the arbitration notwithstanding the fact that no EEOC charge was required.

[18]    IBM may argue that the timeliness provision waiving the ability to piggyback is not the reason for the inability of IBM's former employees to

The District Court erroneously dismissed *Thompson* as irrelevant because it concluded that the piggybacking rule pertains to the administrative exhaustion requirement, not the ADEA statute of limitations period.  Yet the position adopted by the Sixth Circuit in *Thompson* is not merely a non-binding decision from another Circuit – it represents the position of the EEOC as set forth in the EEOC's *Thompson* amicus brief, *see Thompson*, EEOC Brief, 2020 WL 1160190, at *19-23, which is entitled to deference. *See EEOC v. Comm. Office Prods. Co.*, 486 U.S. 107, 115 (1988) ("[I]t is axiomatic that the EEOC's interpretation of [the ADEA], for which it has primary enforcement responsibility, need . . . only be reasonable to be entitled to deference."). The EEOC's interpretations of the ADEA reflect "a body of experience and informed judgment to which courts and litigants may

---

arbitrate their claims, because they could have demanded arbitration during the 300/180 day window. Aside from the fact that the arbitration agreement is not actually explicit as to what the deadline is for arbitration demands, these former employees were not generally aware that IBM had discriminated against them at the time of their separations, because IBM had (falsely) informed them that they were separated for legitimate reasons. Indeed, this is the very reason that Congress enacted the OWBPA, which would allow laid off employees to evaluate whether their terminations may be due to age discrimination by requiring disclosure of the ages of other employees who were terminated and retained in the same layoff. Because IBM did not provide these disclosures to its former employees, they lacked information to know that they may have a viable age discrimination claim until later when they learned of allegations that IBM was engaged in a companywide systemic effort to oust older workers.  This is also the reason behind the piggybacking rule; employees may not realize they have a discrimination claim at the time of their termination, but later, when they find out that a class charge of discrimination has been filed, they may join it.

properly resort for guidance." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)).  *See also Jones v. American Postal Workers Union*, 192 F.3d 417, 427 (4th Cir. 1999) (holding that an EEOC interpretation in an amicus brief was entitled to deference). Thus, it is clear that regardless of Circuit, the ADEA's timing scheme must be considered a substantive right.

In a similar Second Circuit case, *Vernon v. Cassadaga Valley Cent. School Dist.*, 49 F.3d 886, 892 (2d Cir. 1995), Judge Cabranes noted in his concurrence that, "statutes of limitations . . . govern whether an individual can vindicate a right" and thus "lie on the cusp of the procedural substantive distinction."  As such he noted that statutes of limitations are treated as "procedural" for some purposes, such as for choice-of-law purposes, *see Guaranty Trust Co. v. York*, 326 U.S. 99 (1945), and as "substantive" for the purposes of the *Erie* doctrine, *see Sun Oil Co. v. Wortman*, 486 U.S. 717, 727 (1988).  *See Vernon*, 49 F.3d at 892 (Cabranes, J. concurring).  Therefore, while the ADEA's limitations period may be considered to be procedural for the purposes of analyzing whether a statutory amendment to it applies retroactively, it is substantive for the purposes of determining whether a limitations period may be waived or truncated by contract, and for the purposes of the OWBPA.  *See Thompson*, 985 F.3d at 521.

The import of *Thompson* is that it establishes that the ADEA's limitations

39

period is substantive, thus triggering the protections of the OWBA. Even if it were possible to abridge the ADEA limitations period as IBM purports to do in its arbitration agreement (it is not, under *Thompson*), IBM would have had to first meet the requirements of the OWBPA in order to validly do so.  Petitioners did not have the full time to assert their ADEA claims in arbitration that they would have had to assert them in court, meaning that their **substantive rights** were abridged, and IBM did not meet the requirements of the OWBPA.  *See Thompson*, 985 F.3d at 521. This failure to satisfy the OWBPA renders the timing provision unenforceable.

Furthermore, even if the ADEA's limitations period (which incorporates the piggybacking rule) were a procedural right, the express language of the OWBPA does not distinguish between procedural and substantive rights, stating that "[a]n individual may not waive **any right or claim**" without first receiving the OWBPA disclosures. 29 U.S.C. § 626(f)(1).  *See Hammaker v. Brown & Brown, Inc.*, 214 F. Supp. 2d 575, 578-81 (E.D. Va. 2002) (holding the OWBPA to apply to procedural rights and substantive rights under the ADEA and noting that the OWBPA must be interpreted broadly in furtherance of "the OWBPA's purpose to protect the rights and benefits of older workers"); *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 3d 1060, 1064-65 (S.D. Cal. 1999) (examining the legislative purpose of the OWBPA and concluding that the OWBPA was intended to protect

substantive rights and procedural rights under the ADEA equally).

In sum, because the enforcement of the piggybacking waiver in IBM's arbitration agreement would abridge Petitioners' rights altogether to pursue their claims under the ADEA, the Court should declare that the waiver is invalid and should vacate the Arbitrator's Awards.

## **CONCLUSION**

For the foregoing reasons, the District Court's Order denying Petitioners' Motions to Vacate Arbitration Award and granting IBM's Motions to Confirm Arbitration Award should be reversed. The Arbitrator failed to hear pertinent evidence, exceeded his authority under the arbitration agreement by failing to afford Petitioners the full remedies available to them in a court of competent jurisdiction, and he reached the untenable conclusion that the piggybacking rule did not apply. Nevertheless, the District Court confirmed the awards. This Court should reverse and vacate the Awards pursuant to 9 U.S.C. §§ 10(a)(3) and 10(a)(4).

Dated:      June 1, 2023          Respectfully submitted,

JAMES OWENS and JOHN
HOLTMAN,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Fed. R. App. P., I certify that this brief complies with the length limitations set forth in Rule 32(a)(7) because it contains 10,319 words, as counted by Microsoft Word, excluding the items that may be excluded under Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: June 1, 2023                          /s/ Shannon Liss-Riordan
                                             Shannon Liss-Riordan

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2023, I electronically filed the foregoing document with Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  June 1, 2023                              /s/ Shannon Liss-Riordan
                                                 Shannon Liss-Riordan