# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

## CONSOLIDATED APPEALS NOS. 23-7002, 23-7005

JOHN HOLTMAN,
Petitioner-Appellant,

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
Respondent-Appellee

*On Appeal from the U.S. District Court for the District of Columbia*
Case No. 2:22-cv-0852
The Hon. Amit P. Mehta

JAMES OWENS,
Petitioner-Appellant,

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
Respondent-Appellee

*On Appeal from the U.S. District Court for the District of Columbia*
Case No. 2:22-cv-0901
The Hon. Amit P. Mehta

## PETITIONERS-APPELLANTS' APPENDIX

Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
sliss@llrlaw.com
*Counsel for Petitioners-Appellant*

<u>INDEX OF APPENDIX</u>

<u>Document</u>                                                               <u>Page No.</u>

***Holtman, John v. International Business Machines Corp.***

District Court Docket Sheet…………………………………………………...1

Petition to Vacate Arbitration Award – Docket No. 1………...…………….....7

Petitioner's Motion to Vacate Arbitration Award
(EXHIBITS 1-14) – Docket No. 2-1 to 2-14………………...………………17

Defendant IBM's Response in Opposition to Plaintiff's Petition and
Motion to Vacate Arbitration Award (EXHIBIT 1) – Docket No. 17-1…….195

Memorandum Opinion – Docket No. 27………………..……………….....211

Order Granting Respondent's Motion to Confirm
Arbitration Award – Docket No. 28……………………………….……...222

Notice of Appeal – Docket No. 31……………………………….………….223

***Owens, James v. International Business Machines Corp.***

District Court Docket Sheet…………………………………………………225

Petition to Vacate Arbitration Award – Docket No. 1………………………...231

Petitioner's Motion to Vacate Arbitration Award
(EXHIBITS 1-14) – Docket No. 2-1 to 2-14………………..……….….…...241

Defendant IBM's Response in Opposition to Plaintiff's Petition and
Motion to Vacate Arbitration Award (EXHIBIT 1) – Docket No. 14-1…....419

Memorandum Opinion – Docket No. 28………………………….…..…...428

Order Granting Respondent's Motion to Confirm
Arbitration Award – Docket No. 29……………………………….……...439

Notice of Appeal – Docket No. 31……………………………………..……440

JOHN HOLTMAN,
Petitioner-Appellant,

v.

INTERNATIONAL BUSINESS MACHINES
CORP.,
Respondent-Appellee

Appeal No. 23-7002
(U.S. District Court for the District of Columbia Case
No. 2:22-cv-0852)

# TAB A

APPEAL,CLOSED,TYPE-E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:22-cv-00852-APM

HOLTMAN v. INTERNATIONAL BUSINESS MACHINES
CORP.
Assigned to: Judge Amit P. Mehta
 Case: 1:22-cv-00901-APM
Case in other court: 23-07005
Cause: 09:0010 Petition to Vacate Arbitration Award

Date Filed: 03/30/2022
Date Terminated: 12/10/2022
Jury Demand: None
Nature of Suit: 896 Arbitration
Jurisdiction: Federal Question

**Petitioner**

**JOHN HOLTMAN**                    represented by  **Shannon Liss-Riordan**
                                                    LICHTEN & LISS-RIORDAN, P.C.
                                                    729 Boylston Street
                                                    Suite 2000
                                                    Boston, MA 02116
                                                    617-994-5800
                                                    Fax: 617-994-5801
                                                    Email: sliss@llrlaw.com
                                                    *LEAD ATTORNEY*
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Michelle Ruth Cassorla**
                                                    LICHTEN & LISS-RIORDAN, P.C.
                                                    729 Boylston St.
                                                    Suite 2000
                                                    Boston, MA 02116
                                                    (614) 994-5800
                                                    Email: mcassorla@llrlaw.com
                                                    *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**INTERNATIONAL BUSINESS**          represented by  **Craig Friedman**
**MACHINES CORP.**                                  JONES DAY
                                                    1221 Peachtree Street, NE
                                                    Suite 400
                                                    Atlanta, GA 30361
                                                    404-581-3939
                                                    Email: csfriedman@jonesday.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Patrick M. Corley**
                                                    JONES DAY - ATLANTA
                                                    1221 Peachtree Street N.E.

Suite 400
Atlanta, GA 30361
404-581-8211
Email: pcorley@jonesday.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas R. Chiavetta**
JONES DAY
51 Louisiana Avenue, Nw
Washington, DC 20001
(202) 879-3975
Fax: (202) 626-1700
Email: tchiavetta@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan Stephen Shymansky**
JONES DAY-WASHINGTON
51 Louisiana Avenue NW
Washington, DC 20001
202-879-3724
Email: rsshymansky@gmail.com
*TERMINATED: 08/26/2022*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/30/2022 | 1 | PETITION TO VACATE ARBITRATION AWARD against INTERNATIONAL BUSINESS MACHINES CORP. ( Filing fee $ 402 receipt number ADCDC-9137336) filed by JOHN HOLTMAN. (Attachments: # 1 Civil Cover Sheet)(Cassorla, Michelle) (Entered: 03/30/2022) |
| 03/30/2022 | 2 | MOTION to Vacate *Arbitration Award* by JOHN HOLTMAN. (Attachments: # 1 Exhibit Ex. 1, # 2 Exhibit Ex. 2, # 3 Exhibit Ex. 3, # 4 Exhibit Ex. 4, # 5 Exhibit Ex. 5, # 6 Exhibit Ex. 6, # 7 Exhibit Ex. 7, # 8 Exhibit Ex. 8, # 9 Exhibit Ex. 9, # 10 Exhibit Ex. 10, # 11 Exhibit Ex. 11, # 12 Exhibit Ex. 12, # 13 Exhibit Ex. 13, # 14 Exhibit Ex. 14)(Cassorla, Michelle) (Entered: 03/30/2022) |
| 03/30/2022 | 3 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOHN HOLTMAN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Cassorla, Michelle) (Entered: 03/30/2022) |
| 03/31/2022 | | SUMMONS Not Issued as to INTERNATIONAL BUSINESS MACHINES CORP. (zmh) (Entered: 03/31/2022) |
| 03/31/2022 | | Case Assigned to Judge Amit P. Mehta. (zmh) (Entered: 03/31/2022) |
| 04/08/2022 | 4 | WAIVER OF SERVICE. INTERNATIONAL BUSINESS MACHINES CORP. waiver sent on 4/8/2022, answer due 6/7/2022. (Cassorla, Michelle) (Entered: 04/08/2022) |
| 04/14/2022 | 5 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Shannon Liss-Riordan, Filing fee $ 100, receipt number ADCDC-9170949. Fee Status: Fee Paid. by JOHN HOLTMAN. (Attachments: # 1 Declaration DECLARATION OF SHANNON LISS- |

| | | RIORDAN IN SUPPORT OF MOTION TO ADMIT PRO HAC VICE, # 2 Text of Proposed Order PROPOSED ORDER GRANTING MOTION)(Cassorla, Michelle) (Entered: 04/14/2022) |
|---|---|---|
| 04/15/2022 | | MINUTE ORDER granting 5 Motion for Admission Pro Hac Vice of Attorney Shannon Liss-Riordan. Attorney Shannon Liss-Riordan is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Signed by Judge Amit P. Mehta on 4/15/2022. (lcapm2) (Entered: 04/15/2022) |
| 04/19/2022 | 6 | NOTICE of Appearance by Shannon Liss-Riordan on behalf of JOHN HOLTMAN (Liss-Riordan, Shannon) (Entered: 04/19/2022) |
| 05/11/2022 | 7 | NOTICE of Appearance by Ryan Stephen Shymansky on behalf of INTERNATIONAL BUSINESS MACHINES CORP. (Shymansky, Ryan) (Entered: 05/11/2022) |
| 05/17/2022 | 8 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Craig S. Friedman, Filing fee $ 100, receipt number ADCDC-9243709. Fee Status: Fee Paid. by INTERNATIONAL BUSINESS MACHINES CORP.. (Attachments: # 1 Declaration)(Shymansky, Ryan) (Entered: 05/17/2022) |
| 05/17/2022 | 9 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Patrick M. Corley, Filing fee $ 100, receipt number ADCDC-9243745. Fee Status: Fee Paid. by INTERNATIONAL BUSINESS MACHINES CORP.. (Attachments: # 1 Declaration)(Shymansky, Ryan) (Entered: 05/17/2022) |
| 05/17/2022 | | MINUTE ORDER granting 8 and 9 Motions for Admission Pro Hac Vice. Attorneys Craig S. Friedman and Patrick M. Corley are hereby admitted pro hac vice to appear in this matter. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 5/17/2022. (lcapm2) (Entered: 05/17/2022) |
| 06/06/2022 | 10 | NOTICE of Appearance by Patrick M. Corley on behalf of INTERNATIONAL BUSINESS MACHINES CORP. (Corley, Patrick) (Entered: 06/06/2022) |
| 06/07/2022 | 11 | ENTERED IN ERROR.....NOTICE of Appearance by Ryan Stephen Shymansky on behalf of INTERNATIONAL BUSINESS MACHINES CORP. (Shymansky, Ryan) Modified on 6/8/2022 (zjf). (Entered: 06/07/2022) |
| 06/07/2022 | 12 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by INTERNATIONAL BUSINESS MACHINES CORP. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support) (Shymansky, Ryan) (Entered: 06/07/2022) |
| 06/07/2022 | 13 | Memorandum in opposition to re 2 MOTION to Vacate *Arbitration Award* filed by INTERNATIONAL BUSINESS MACHINES CORP.. (Shymansky, Ryan) Modified docket event/text on 6/9/2022 (zeg). (Entered: 06/07/2022) |
| 06/07/2022 | 14 | MOTION to Confirm *Arbitration Award* by INTERNATIONAL BUSINESS MACHINES CORP.. (Attachments: # 1 Memorandum in Support)(Shymansky, Ryan) (Entered: 06/07/2022) |
| 06/08/2022 | | NOTICE OF ERROR regarding 11 Notice of Appearance. The following error(s) need correction: Other- Please refile using their assigned login/password. (zjf) (Entered: 06/08/2022) |
| 06/08/2022 | 15 | NOTICE of Appearance by Craig Friedman on behalf of INTERNATIONAL BUSINESS MACHINES CORP. (Friedman, Craig) (Entered: 06/08/2022) |

**App.003**

| 06/08/2022 | 16 | ERRATA *NOTICE OF ERRATA* by INTERNATIONAL BUSINESS MACHINES CORP.. (Corley, Patrick) (Entered: 06/08/2022) |
|---|---|---|
| 06/08/2022 | 17 | SEALED DOCUMENT filed by INTERNATIONAL BUSINESS MACHINES CORP. re 12 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by INTERNATIONAL BUSINESS MACHINES CORP. (This document is SEALED and only available to authorized persons.) (This document is SEALED and only available to authorized persons.)(Corley, Patrick) (Entered: 06/08/2022) |
| 06/14/2022 | 18 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOHN HOLTMAN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Reply in Support of Motion to Vacate)(Cassorla, Michelle) (Entered: 06/14/2022) |
| 06/15/2022 | | MINUTE ORDER provisionally granting motions to seal, ECF Nos. 12, 18. The memoranda and exhibits appended to ECF Nos. 12 and 18 shall provisionally remain under seal, pending further briefing on the request for sealing and further order of the court. Signed by Judge Amit P. Mehta on 6/15/2022. (lcapm2) (Entered: 06/15/2022) |
| 06/15/2022 | | NOTICE OF ERROR re 18 Sealed Motion for Leave to File Document Under Seal; emailed to mcassorla@llrlaw.com, cc'd 7 associated attorneys -- The PDF file you docketed contained errors: 1. **Please note the following for future filings; do not refile document**, 2. FYI: DO NOT REFILE. Attorney signature must match login/password in future fillings. (zeg, ) (Entered: 06/15/2022) |
| 06/21/2022 | 19 | RESPONSE re 14 MOTION to Confirm *Arbitration Award* filed by JOHN HOLTMAN. (Liss-Riordan, Shannon) (Entered: 06/21/2022) |
| 06/28/2022 | 20 | REPLY to opposition to motion re 14 MOTION to Confirm filed by INTERNATIONAL BUSINESS MACHINES CORP.. (Corley, Patrick) (Entered: 06/28/2022) |
| 06/28/2022 | 21 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by INTERNATIONAL BUSINESS MACHINES CORP. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Reply In Support of Motion to Confirm)(Corley, Patrick) (Entered: 06/28/2022) |
| 07/06/2022 | 22 | NOTICE OF SUPPLEMENTAL AUTHORITY by INTERNATIONAL BUSINESS MACHINES CORP. (Attachments: # 1 Exhibit A)(Corley, Patrick) (Entered: 07/06/2022) |
| 07/08/2022 | | NOTICE OF ERROR re 22 NOTICE OF SUPPLEMENTAL AUTHORITY; emailed to pcorley@jonesday.com, cc'd 7 associated attorneys -- The PDF file you docketed contained errors: 1. **Please note the following for future filings; do not refile document**, 2. FYI: Attorney signature must match login/password in future fillings. (Duncan, Erica) (Entered: 07/08/2022) |
| 07/18/2022 | 23 | NOTICE OF SUPPLEMENTAL AUTHORITY by INTERNATIONAL BUSINESS MACHINES CORP. (Attachments: # 1 Exhibit A)(Friedman, Craig) (Entered: 07/18/2022) |
| 07/19/2022 | 24 | NOTICE OF SUPPLEMENTAL AUTHORITY by INTERNATIONAL BUSINESS MACHINES CORP. (Attachments: # 1 Exhibit A)(Friedman, Craig) (Entered: 07/19/2022) |
| 08/26/2022 | 25 | MOTION to Withdraw as Attorney by INTERNATIONAL BUSINESS MACHINES CORP.. (Shymansky, Ryan) (Entered: 08/26/2022) |
| 08/26/2022 | | MINUTE ORDER granting 25 Ryan Shymansky's Motion to Withdraw as Attorney for Defendant IBM. Signed by Judge Amit P. Mehta on 8/26/2022. (lcapm2) (Entered: 08/26/2022) |

| 09/12/2022 | 26 | NOTICE of Appearance by Thomas R. Chiavetta on behalf of INTERNATIONAL BUSINESS MACHINES CORP. (Chiavetta, Thomas) (Entered: 09/12/2022) |
|---|---|---|
| 12/09/2022 | | MINUTE ORDER provisionally granting Petitioner's 3 Sealed Motion for Leave to File Document Under Seal and Respondent's 21 Sealed Motion for Leave to File Documents Under Seal. The mere fact that a case is pertaining to a confidential arbitration does not entitle it to be under seal as there is a strong presumption in favor of public access to judicial proceedings. See EEOC v. Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1409 (D.C. Cir. 1996); Grynberg v. BP P.L.C., 205 F. Supp. 3d 1, 3-4 (D.D.C. 2016). The Parties shall submit a brief of no more than five pages by December 23, 2022, regarding the need to file documents and the court's Memorandum Opinion under seal. Alternatively, the parties may suggest redactions to their papers and the court's opinion. Signed by Judge Amit P. Mehta on 12/9/2022. (lcapm1) (Entered: 12/09/2022) |
| 12/09/2022 | 27 | MEMORANDUM OPINION re: Petitioner's 2 Motion to Vacate Arbitration Award and Respondent's 14 Motion to Confirm Arbitration Award. Please see the attached Memorandum Opinion for additional details. Signed by Judge Amit P. Mehta on 12/09/2022. (zjd) (Entered: 12/10/2022) |
| 12/10/2022 | 28 | ORDER. For the reasons stated in the 27 Memorandum Opinion, the court grants Respondent's 14 Motion to Confirm Arbitration Award and denies Petitioner's 2 Motion to Vacate Arbitration Award. Please see the attached Order for further details. Signed by Judge Amit P. Mehta on 12/09/2022. (lcapm1) (Entered: 12/10/2022) |
| 12/23/2022 | 29 | RESPONSE TO ORDER OF THE COURT re Order,,, on December 9, 2022 filed by INTERNATIONAL BUSINESS MACHINES CORP.. (Friedman, Craig) (Entered: 12/23/2022) |
| 12/31/2022 | 30 | ORDER denying 3 12 18 21 Sealed Motions for Leave to File Documents Under Seal. The court, however, will afford Respondent an opportunity to identify particular portions of the record the disclosure of which would cause actual prejudice to Respondent if made publicly available. Respondent shall identify such portions by January 17, 2023. See attached Order for additional details. Signed by Judge Amit P. Mehta on 12/31/2022. (lcapm1) (Entered: 12/31/2022) |
| 01/09/2023 | 31 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 27 Sealed Memorandum Opinion, 28 Order, by JOHN HOLTMAN. Filing fee $ 505, receipt number ADCDC-9774413. Fee Status: Fee Paid. Parties have been notified. (Liss-Riordan, Shannon) (Entered: 01/09/2023) |
| 01/09/2023 | 32 | Transmission of the Notice of Appeal, Order Appealed and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 31 Notice of Appeal to DC Circuit Court. (zed) (Entered: 01/09/2023) |
| 01/17/2023 | 33 | RESPONSE TO ORDER OF THE COURT re 30 Order on Sealed Motion for Leave to File Document Under Seal, filed by INTERNATIONAL BUSINESS MACHINES CORP.. (Friedman, Craig) (Entered: 01/17/2023) |
| 01/17/2023 | | USCA Case Number 23-7005 for 31 Notice of Appeal to DC Circuit Court filed by JOHN HOLTMAN. (zed) (Entered: 01/20/2023) |
| 01/18/2023 | | MINUTE ORDER. For the reasons stated in the court's Order of December 31, 2023, and in light of Defendant's response on January 17, 2023, these proceedings shall be unsealed in their entirety. Signed by Judge Amit P. Mehta on 1/18/2023. (lcapm1) (Entered: 01/18/2023) |

**App.005**

## PACER Service Center

### Transaction Receipt

| 04/11/2023 14:44:51 | | | |
|---|---|---|---|
| **PACER Login:** | sliss1969 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-00852-APM |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

**App.006**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN HOLTMAN,<br>5228 Coffee Tree Dr.<br>Raleigh, NC 27613<br><br>Petitioner,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORP.,<br>1 New Orchard Rd.<br>Armonk, NY 10504<br><br>Respondent. | Civil Action No. 1:22-cv-852 |

## PETITION TO VACATE ARBITRATION AWARD

1.      Petitioner John Holtman worked for Respondent International Business Machines Corporation (hereinafter "IBM").  He has attempted to bring a claim against IBM in arbitration for discrimination under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, in connection with the termination of his employment.

2.      However, the arbitrator dismissed Petitioner's claim in arbitration as untimely.  Pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.*, Petitioner hereby moves to vacate the arbitration award dismissing his claim.

1

3.      As discussed below, the Arbitrator dismissed Petitioner's claim as untimely without considering key facts pertinent to this case, ignoring that Petitioner timely filed his demand with JAMS, that the COVID-19 pandemic made same-day mailing impracticable, and that IBM's requirement that Petitioner mail his demand was unreasonable.  In short, Petitioner was not able to pursue his rights in arbitration as he would have been able to in court.

4.      Moreover, in court, Petitioner's claim would not have been untimely for the additional reason that he would have been allowed to "piggyback" off of earlier similar discrimination claims filed by others.  The provision of IBM's arbitration agreement that purports to waive the "piggybacking" rule that would apply in court is not enforceable.

5.      Petitioner thus seeks vacatur of the arbitrator's award as he timely filed his arbitration demand or in the alternative a declaration that IBM's arbitration agreement that purports to waive the single filing rule and block the Petitioner's age discrimination claim to be unenforceable and void. This action is brought pursuant to Section 10 of the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* and the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

**PARTIES**

6.      Petitioner John Holtman is a resident and domiciliary of Raleigh, North Carolina.  For 36 years, until his termination, he was an employee of Defendant. His last day of work was in June 2020.

7.      Respondent International Business Machines Corporation ("IBM") is incorporated and maintains its principal place of business in New York.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 as the underlying claim sounds in federal law, specifically the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.

9.      This Court also has jurisdiction over these proceedings pursuant to 29 U.S.C. §1331 as this action arises under the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq*.  The FAA provides that petitions to vacate arbitration awards shall be made in the judicial district in which the award was made.  See 9 U.S.C. § 10.

10.      Venue is proper in this District pursuant to 9 U.S.C. § 10 and 28 U.S.C. § 1391 as the arbitration award was made in this judicial district, in Washington, D.C.

**BRIEF SUMMARY OF FACTS AND PROCEEDINGS**

11.      Petitioner worked at IBM from 1983 to 2020.

3

12.    Petitioner contends that he fell victim to a years-long companywide discriminatory scheme implemented by IBM's top management to build a younger workforce, by reducing its population of older workers in order to make room for the hiring of younger workers.

13.    This discriminatory scheme is detailed in the Second Amended Complaint in the matter of <u>Rusis et al. v. International Business Machines Corp.</u>, C.A. No. 18-cv-08434 (S.D.N.Y.) (Dkt. 179), a class and collective action pending in the Southern District of New York, brought under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* Briefly stated, in <u>Rusis</u>, the plaintiffs allege that IBM has pushed out thousands of older workers over a several year period, while hiring younger workers (which the company often refers to as "Early Professional Hires" or "New Collar" workers), in order to better compete with newer technology companies, such as Google, Facebook, Amazon, and others.

14.    Indeed, IBM has been investigated for age discrimination by the Equal Employment Opportunity Commission ("EEOC"). Following a multi-year investigation, on August 31, 2020, the EEOC issued a classwide determination in which it found reasonable cause to believe that IBM discriminated against older employees during the period 2013 to 2018. The EEOC stated in its determination letter that its conclusion was supported by dozens of interviews it had conducted

4

across the company, as well as analysis of data, and it rejected IBM's attempt to justify and defend the layoffs of the 58 charging parties, whose claims had been consolidated for investigation, through individualized explanations.

15.    When it laid off employees, including Petitioner, IBM avoided providing disclosures of the ages of employees who had been laid off and those not laid off (and other related information), as required by the Older Workers' Benefits Protections Act ("OWBPA"), 29 U.S.C. § 626(f)(1)(H), by not including a waiver of ADEA claims in the release that it asked the employees to sign. Instead, it offered the employees subject to layoff a very modest severance payment in exchange for a waiver of almost all legal claims, other than a claim under the ADEA. The agreement provided, however, that if the employee chose to pursue a claim under the ADEA, it would need to be in individual arbitration.

16.    In May 2020, Petitioner learned that he was being terminated as part of a reduction-in-force (which IBM calls a "Resource Action" or "RA") conducted by IBM.

17.    Petitioner unsuccessfully applied for other positions within IBM after learning of the Resource Action. His last day of work at IBM was in June 2020.

18.    Petitioner was 60 years old at the time of his termination.

19.    Petitioner signed the arbitration agreement and later proceeded to attempt to pursue a claim of discrimination under the ADEA in arbitration.

5

20.     The arbitration agreement includes a provision that states: "To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not timely submitted, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration."

21.     The arbitration agreement also states: "Any issue concerning the validity or enforceability of this Agreement . . . shall be decided only by a court of competent jurisdiction."

22.     On November 17, 2020, Petitioner electronically filed his arbitration demand, alleging age discrimination under the ADEA, with JAMS. The following day, Petitioner mailed his demand to IBM.

23.      IBM moved to dismiss Petitioner's arbitration demand as untimely on June 30, 2021.

6

**App.012**

24.    Petitioner filed his opposition on July 14, 2021, and the Arbitrator issued an order granting IBM's motion to dismiss his claim on November 19, 2021.

25.    Petitioner filed a motion for reconsideration on December 8, 2021.

26.    The arbitrator denied the Motion for Reconsideration on January 6, 2022 (the "Award").

27.    The arbitrator failed to consider key facts pertinent to this case, including that Petitioner timely filed his demand with JAMS, that the COVID-19 pandemic made same-day mailing impracticable, and that IBM's requirement that Petitioner mail his demand was unreasonable.

28.    The arbitrator failed to comply with the Parties' agreement and afford Petitioner the full remedies available under the law by declining to apply the doctrine of equitable tolling.

29.    The arbitrator failed to adequately review and consider the arguments made in Petitioner's Motion for Reconsideration.

30.    The arbitrator's manifest disregard of the facts presented by Petitioner in opposition to IBM's Motion to Dismiss; his failure to follow the procedures set out in IBM's agreement and afford Petitioner the rights available to him under the law; and his rejection of Petitioner's Motion to Reconsider constitute grounds for vacating the Award in this case.

7

31.    In addition, pursuant to the ADEA, individuals are required to file a charge with the EEOC within 300 days of the date of the alleged wrongful act (or within 180 days in non-deferral jurisdictions). 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d), 633(b).

32.    However, under the single filing rule, also referred to as the "piggybacking" doctrine, individuals may pursue discrimination claims even if they did not timely file their own administrative charge of discrimination at the EEOC.  See Tolliver v. Xerox Corp., 918 F.2d 1052, 1057-59 (2d Cir. 1990); see also Holowecki v. Federal Exp. Corp., 440 F.3d 558, 565-70 (2d Cir. 2006).  All that is required for "piggybacking" is that the earlier filed charge of discrimination is similar to the discrimination claim that the individual wants to pursue. See Tolliver, 918 F.2d at 1057-59; Grayson v. K Mart Corp., 79 F.3d 1086, 1102 (11th Cir. 1996) ("piggybacking is available in ADEA cases). The single filing rule is thus a part of the statute of limitations law for ADEA claims.

33.    Although Petitioner would be timely to bring his age discrimination claim in court under the single filing rule by virtue of piggybacking onto similar charges timely filed at the EEOC, see Tolliver, 918 F.2d at 1057-59; Holowecki, 44 F.3d at 565-70, IBM's arbitration agreement purports to render Petitioner's ADEA claim untimely in arbitration, in that it states that "[t]he filing of a charge or complaint with a government agency or the presentation of a concern through the

8

**App.014**

IBM Open Door Program shall not substitute for or extend the time for submitting

a demand for arbitration." Thus, IBM's enforcement of this provision has

effectively waived Petitioner's right to rely on the single filing rule and thus has

significantly truncated Petitioner's ADEA limitations period.

34.    Courts do not permit employers to truncate the limitations periods of

ADEA claims by contract because the ADEA limitations period is a substantive,

non-waivable right.[1] See Thompson v. Fresh Products, LLC, 985 F.3d 509, 519-20

(6th Cir. 2021). The EEOC has also taken the position that ADEA limitations

periods cannot be abridged by contract. See Thompson, EEOC Brief, 2020 WL

1160190, at *19-25 (S.D.N.Y. March 2, 2020).

35.    Moreover, the law is clear that arbitration is a viable alternative to

court only where employees can pursue the same claims they could pursue in

court; the law is also clear that employees cannot be required to give up

substantive rights if they proceed with their claims in arbitration, rather than in

court. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) ("the

prospective litigant [must be able to] effectively . . . vindicate his or her statutory

cause of action in the [specific] arbitral forum").

---

[1]    As noted above (paragraph 15), Petitioner cannot be deemed to have waived his rights under the ADEA because IBM did not provide the disclosures regarding the ages of employees who were laid off and were not laid off, as required by the OWBPA. See Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-27 (1998).

9

WHEREFORE, Petitioner requests that this Court enter the following relief:

a) Vacate the arbitrator's award as the Arbitrator manifestly disregarded the facts presented by Petitioner; he did not follow the procedures set out in IBM's agreement and did not afford Petitioner the rights available to him under the law; and he denied Petitioner's Motion for Reconsideration.

b) Find and declare that the provision of IBM's arbitration agreement that purports to waive the single filing, or "piggybacking", rule, and under which IBM contends that Petitioner's claim under the ADEA is untimely, is unenforceable and otherwise void, so that Petitioner may pursue his claim in arbitration.

c) Any other relief to which Petitioner may be entitled.

Respectfully submitted,

JOHN HOLTMAN,

By his attorneys,

*/s/ Michelle Cassorla*
Michelle Cassorla, D.C. Bar No. 1022193
Shannon Liss-Riordan
(*pro hac vice anticipated*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: mcassorla@llrlaw.com;
          sliss@llrlaw.com

Dated:        March 30, 2022

10

# EXHIBIT 1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
New York Direct Dial: (929) 506-5270
FAX (212) 336-3625
Website: www.eeoc.gov

# DETERMINATION

**Respondent**
IBM Corporation
c/o Alison B. Marshall, Esq.
Partner
Jones Day
51 Louisiana Ave. NW
Washington, DC, 20001

**Charging Parties' EEOC Charge Numbers**

| | | | | |
|---|---|---|---|---|
| 430-2019-00626 | 520-2016-02972 | 520-2016-02992 | 520-2017-00983 | 523-2018-01980 |
| 433-2018-02866 | 520-2016-02973 | 520-2016-02993 | 520-2017-01501 | 525-2018-01267 |
| 433-2018-03485 | 520-2016-02974 | 520-2016-02994 | 520-2018-04032 | 531-2016-02066 |
| 450-2018-06667 | 520-2016-02975 | 520-2016-02995 | 520-2018-04720 | 541-2015-01642 |
| 451-2017-00048 | 520-2016-02976 | 520-2016-03319 | 520-2019-01305 | 541-2018-02866 |
| 451-2018-04006 | 520-2016-02978 | 520-2016-03391 | 520-2019-02106 | 541-2018-03431 |
| 451-2019-00005 | 520-2016-02979 | 520-2016-03422 | 520-2019-02362 | 551-2017-01130 |
| 451-2019-00008 | 520-2016-02980 | 520-2016-03423 | 520-2019-02592 | 551-2018-01672 |
| 451-2019-00136 | 520-2016-02982 | 520-2017-00068 | 520-2020-03595 | 560-2016-01229 |
| 510-2016-03889 | 520-2016-02984 | 520-2017-00087 | 523-2016-00799 | 560-2016-01509 |
| 510-2017-02206 | 520-2016-02986 | 520-2017-00203 | 523-2018-01040 | |
| 510-2019-00820 | 520-2016-02990 | 520-2017-00818 | 523-2018-01319 | |

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under the Age Discrimination in Employment Act (ADEA) of 1967, as amended, Respondent IBM is an employer within the meaning of the ADEA. All requirements for coverage have been met.

Charging Parties allege they and a class of similarly situated individuals were discharged based on their age. Individual Charging Parties also alleged discrimination based on national origin, sex, race, retaliation, and disability.

Respondent denies discriminating against Charging Parties. Respondent asserts that Charging Parties were discharged as part of a series of Resource Actions designed to reduce headcounts and decrease costs. Respondent contends there was no centralized decision-making, and that each individual manager was responsible for selecting individuals in his or her group that would be laid off. Respondent offered various reasons for selection for layoff including performance, relevant skills, utilization, and consolidation of services.

The Commission's investigation reveals that Respondent conducted Resource Actions analyzed by the EEOC between 2013 and 2018 that had an adverse impact on employees in the protected age group (PAG). The investigation uncovered top-down messaging from Respondent's highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires. Analysis shows it was primarily older workers (85.85%) in the total potential pool of those considered for layoff. Evidence uncovered older employees who were laid off and told that their skills were out of date, only to be brought back as contract workers, at a lower rate of pay with fewer benefits. EEOC received corroborating testimony from dozens of witnesses nationwide supporting a discriminatory animus based on age. See above for a list of Charge Numbers covered by this Determination.

Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Parties and others on account of their age.

Based on the above, the evidence obtained during the investigation was insufficient to establish a violation of Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Americans with Disabilities Act of 1990, as amended, based on national origin, sex, race, retaliation, and disability.

This determination is final. The ADEA requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with the ADEA and the Commission's Procedural Regulations.

A commission representative will contact each party in the near future to begin conciliation. If you decline to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

**Judy Keenan**  Digitally signed by Judy Keenan
DN: cn=Judy Keenan, o=ENFORCEMENT, ou=EEOC/
FOR, email=ARLEAN.NIETO@EEOC.GOV, c=US
Date: 2020.08.31 11:32:42 -04'00'

Date _____

Judy Keenan, Director
New York District Office

# EXHIBIT 2

# Demand for Arbitration Form
## Instructions for Submittal of Arbitration to JAMS

## INSTRUCTIONS

Please submit this form to your local JAMS Resolution Center. Once the below items are received, a JAMS professional will contact all parties to commence and coordinate the arbitration process, including the appointment of an arbitrator and scheduling a hearing date.

📞 1-800-352-JAMS
🖥 www.jamsadr.com

---

If you wish to proceed with an arbitration by executing and serving a Demand for Arbitration on the appropriate party, please submit the following items to JAMS with the requested number of copies:

A. **Demand for Arbitration** *(2 copies)*

B. **Proof of service of the Demand on the appropriate party** *(2 copies)*

C. **Entire contract containing the arbitration clause** *(2 copies)*
   - *To the extent there are any court orders or stipulations relevant to this arbitration demand, e.g. an order compelling arbitration, please also include two copies.*

D. **Administrative Fees**
   - *For two-party matters, the Filing Fee is $1,500. For matters involving three or more parties, the filing fee is $2,000. The entire Filing Fee must be paid in full to expedite the commencement of the proceedings. Thereafter, a Case Management Fee of 12% will be assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation. JAMS also charges a $1,500 filing fee for counterclaims. For matters involving consumers, the consumer is only required to pay $250. See JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses. For matters based on a clause or agreement that is required as a condition of employment, the employee is only required to pay $400. See JAMS Policy on Employment Arbitrations, Minimum Standards of Fairness.*

   - *A refund of $600 will be issued if the matter is withdrawn within five days of filing. After five days, the filing fee is non-refundable.*

**Once completed, please submit to your local JAMS Resolution Center.**
*Resolution Center locations can be found on the JAMS website at: http://www.jamsadr.com/locations/.*

---

App.021



# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## TO RESPONDENT (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

*Add more respondents on **page 6**.*

**RESPONDENT NAME** International Business Machines Corp.

**ADDRESS** 1 New Orchard Road

**CITY** Armonk    **STATE** NY    **ZIP** 10504

**PHONE**    **FAX**    **EMAIL**

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

**REPRESENTATIVE/ATTORNEY**

**FIRM/ COMPANY**

**ADDRESS**

**CITY**    **STATE**    **ZIP**

**PHONE**    **FAX**    **EMAIL**

## FROM CLAIMANT

*Add more claimants on **page 7**.*

**CLAIMANT NAME** John Holtman c/o Lichten & Liss-Riordan, P.C.

**ADDRESS**

**CITY**    **STATE**    **ZIP**

**PHONE**    **FAX**    **EMAIL**

### CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

**REPRESENTATIVE/ATTORNEY** Shannon Liss-Riordan, Thomas Fowler

**FIRM/ COMPANY** Lichten & Liss-Riordan, P.C.

**ADDRESS** 729 Boylston St, Suite 2000

**CITY** Boston    **STATE** MA    **ZIP** 02116

**PHONE** 617-994-5800    **FAX** 617-994-5801    **EMAIL** sliss@llrlaw.com, tfowler@llrlaw.com

App.022

# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## MEDIATION IN ADVANCE OF THE ARBITRATION

☐    If mediation in advance of the arbitration is desired, please check here and a JAMS Case Manager will assist the parties in coordinating a mediation session.

## NATURE OF DISPUTE / CLAIMS & RELIEF SOUGHT BY CLAIMANT

CLAIMANT HEREBY DEMANDS THAT YOU SUBMIT THE FOLLOWING DISPUTE TO FINAL AND BINDING ARBITRATION.
A MORE DETAILED STATEMENT OF CLAIMS MAY BE ATTACHED IF NEEDED.

Claimant John Holtman brings this claim under the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. §621 *et seq.* against International Business Machines Corp. ("IBM").  His claim is the same as that set forth in the class action lawsuit currently pending in federal court, Rusis v. International Business Machines Corp., C.A. No. 1:18-cv-08434 (S.D.N.Y.) (Complaint attached as Exhibit A). However, because Mr. Sullivan signed an arbitration clause as a part of a severance agreement (which was for three month's pay and did not release federal age discrimination claims), he is required to pursue this claim in arbitration.

Mr. Holtman currently resides in Raleigh, North Carolina. Mr. Holtman worked for IBM for approximately thirty-six (36) years before his layoff, effective June 2020. At the time of his layoff, Mr. Holtman was sixty (60) years old. Mr. Holtman was employed as a Senior Software Developer Throughout his employment at IBM, Mr. Holtman consistently received high performance ratings and positive feedback for his work.

AMOUNT IN CONTROVERSY (US DOLLARS)

# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows. *Please cite location of arbitration provision and attach two copies of entire agreement.*

**ARBITRATION PROVISION LOCATION**

See paragraph 5 of the agreement (attached here as Exhibit B).

## RESPONSE

The respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. *Send the original response and counter-claim to the claimant at the address stated above with two copies to JAMS.*

## REQUEST FOR HEARING

**REQUESTED LOCATION**   Washington, D.C.

## ELECTION FOR EXPEDITED PROCEDURES (IF COMPREHENSIVE RULES APPLY)

*See: Comprehensive Rule 16.1*

☐ By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

## SUBMISSION INFORMATION

**SIGNATURE**   /s/ Shannon Liss-Riordan          **DATE**   11/17/2020

**NAME (PRINT/TYPED)**   Shannon Liss-Riordan

# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

**Completion of this section is <u>required for all consumer or employment claims</u>.**

## CONSUMER AND EMPLOYMENT ARBITRATION

Please indicate if this is a CONSUMER ARBITRATION. For purposes of this designation, and whether this case will be administered in California or elsewhere, JAMS is guided by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e)*, as defined below, and the JAMS Consumer and Employment Minimum Standards of Procedural Fairness:

☑ **YES**, this **is** a CONSUMER ARBITRATION.

☐ **NO**, this **is not** a CONSUMER ARBITRATION.

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1. The contract is with a consumer party, as defined in these standards;
2. The contract was drafted by or on behalf of the non-consumer party; and
3. The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1. An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2. An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3. An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4. An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

In addition, JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter.

**If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.**

## EMPLOYMENT MATTERS

If this is an EMPLOYMENT matter, Claimant must complete the following information:

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

☐ **Less than $100,000**    ☐ **$100,000 to $250,000**    ☐ **More than $250,000**    ☑ **Decline to State**

## WAIVER OF ARBITRATION FEES

**In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees.** In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.

# EXHIBIT A

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, and DAVID HO ENG, individually and on behalf of all other similarly situated individuals, | ) ) ) ) ) ) |
|  | Civil Action No. 1:18-cv-08434 |
| Plaintiffs, | ) ) |
| v. | **JURY DEMANDED** |
|  | ) ) |
| INTERNATIONAL BUSINESS MACHINES CORP. | ) ) ) |
| Defendant. | ) ) |

---

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

1.      This is a class and collective action brought by Edvin Rusis, Henry Gerrits,

Phil McGonegal, and David Ho Eng on behalf of themselves and all other similarly situated

employees who have worked for Defendant International Business Machines Corporation

(hereinafter "IBM"), alleging that IBM, through its termination and hiring practices, has

violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. §

621 *et seq.*, as well as the laws of the various states in which the employees worked.

As described further below, IBM has discriminated, and continues to discriminate,

against its older workers, both by laying them off (or terminating or constructively

discharging them) disproportionately to younger workers and then not hiring them for

open positions. Over the last several years, IBM has been in the process of

systematically reducing its employment of older workers in order to build a younger

workforce. Between 2012 and the present, IBM has laid off at least 20,000 employees

1

over the age of forty. Such discriminatory layoff and hiring practices constitute unlawful discrimination under the ADEA and state anti-discrimination law.

2.     Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

3.     Plaintiffs also bring class claims under the laws of the states in which they have worked pursuant to Fed. R. Civ. P. 23.

## II.    PARTIES

4.     Plaintiff Edvin Rusis is fifty-nine (59) years old and resides in Laguna Niguel, California. Mr. Rusis worked for IBM for approximately fifteen (15) years before his separation, effective June 27, 2018.

5.     Plaintiff Henry Gerrits is sixty-seven (67) years old and resides in Cary, North Carolina. Mr. Gerrits worked for IBM for approximately thirty-three (33) years, before his separation, effective on June 27, 2018.

6.     Plaintiff Phil McGonegal is fifty-five (55) years old and resides in Atlanta, Georgia. Mr. McGonegal worked for IBM for approximately thirty-four (34) years before his separation, effective approximately June 30, 2018.

7.     Plaintiff David Ho Eng is 56 years old and resides in Sacramento, California. Plaintiff Eng worked for IBM in New Jersey for approximately six (6) years before his separation, effective approximately March 31, 2018.

8.     Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

2

9.     Plaintiff Rusis also brings this case as a class action on behalf of himself and similarly situated individuals over the age of forty (40) who worked for IBM in California whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

10.     Plaintiff Gerrits also brings this case as a class action on behalf of himself and similarly situated individuals over the age of forty (40) who worked for IBM in North Carolina whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

11.     Plaintiff Eng also brings this case as a class action on behalf of himself and similarly situated individuals over the age of forty (40) who worked for IBM in New Jersey whose employment separated within the relevant period, pursuant to Fed. R. Civ. P. 23.

12.     Defendant International Business Machines Corp. is a New York corporation with its principal place of business in Armonk, New York. IBM is an American multinational technology business that offers services and goods ranging from computing, cloud platforms, advanced analytics tools and others.

## III.     JURISDICTION AND VENUE

13.     This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq.* This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

3

14.    The Southern District of New York is the proper venue for this action

pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in

Armonk, New York.

**IV.    STATEMENT OF FACTS**

15.    Plaintiffs were among thousands of IBM employees to be laid off recently,

as the result of a shift in IBM's personnel focus to the generation of workers referred to

as "Millennials" (which IBM defines as the generation born after 1980) that began in

approximately 2012.  At that time, IBM began a program to reform itself into a leading

company in the fields of cloud services, big data analytics, mobile, security and social

media. As a part of this transformation, IBM endeavored to begin heavily recruiting

Millennials in order to make the face of IBM younger, while at the same time pushing

out older employees. In an article published by ProPublica following an investigation of

IBM's hiring practices, ProPublica reported that it estimates that "in the past five years

alone, IBM has eliminated more than 20,000 American employees ages 40 and over,

about 60 percent of its estimated total U.S  job cuts during those years." Peter Gosselin

and Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018),

https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

16.    As reported by ProPublica, IBM's shift in focus toward the Millennial

workforce came as "IBM was falling behind . . . by failing to quickly devise innovative

uses for the internet like its new rivals, Google, Facebook, and Amazon." Id. In

response to that problem, IBM's CEO Virginia Rommetty "launched a major overhaul

that aimed to make IBM a major player in the emerging technologies of cloud services,

big data analytics, mobile security and social media, or what came to be known inside

4

**App.030**

as CAMS" and "sought to sharply increase hiring of people born after 1980." <u>Id.</u>

Additionally, IBM embraced the belief that "CAMS are driven by Millennial traits." <u>Id.</u>

17.    Moreover, in 2006 one of IBM's consulting arms issued a paper that

referred to workers in the "Baby Boomer" generation as "gray hairs" and "old heads,"

stated that "successor generations . . . are generally much more innovative and

receptive to technology than baby boomers," and advised that "What businesses can't

afford to do is simply rehire their experienced workers and put them back into their old

jobs." <u>See</u>, The Maturing Workforce: Innovation in Workforce Enablement, IBM

Business Consulting Services, <u>https://www-935.ibm.com/services/uk/bcs/pdf/maturing-</u>

<u>workforce-feus01291-1.pdf</u> (2006).

18.    As another expression of IBM's shift in focus to embrace Millennials, at a

2014 IBM conference called "Reinvention in the Age of the Millennial," IBM announced

its intent to "embrace the 'Millennial mindset'" and announced that "What's good for

Millennials is good for everyone." <u>See</u> Reinvention in the Age of the Millennial,

<u>https://ibmcai.com/2014/12/16/reinvention-in-the-age-of-the-millennial/</u> (Dec. 16, 2014).

19.    IBM has reduced the population of its older workers through several

methods. Many older employees have been laid off through reductions in force or

layoffs, which IBM refers to as "Resource Actions."  (Meanwhile, IBM shields its

youngest employees from layoff, exempting recent college graduates from reduction for

nine months from their hire date.)  IBM has also reduced its population of older workers

by terminating older employees for pretextual reasons, or by constructively discharging

them, or by conditioning their continued employment on untenable choices they are

unlikely to accept, such as relocation.

20.     Prior to 2014, IBM provided lists to any workers who were laid off, which disclosed the positions and ages of all the employees laid off from their business units at the same time, as well as a list showing the positions and ages of all those in the business units that were not being laid off.  IBM distributed this information, presumably, in order to comply with the Section 626(f) of the ADEA, which requires disclosure of this information if an employer seeks to obtain a release of age discrimination claims from a group of employees. However, in 2014, in an apparent effort to conceal its systematic effort to shed its older workers, IBM stopped disclosing this information to the employees. While IBM could no longer include a release of ADEA claims in its severance agreements with its employees as a result, it opted instead to require its employees to agree to binding individual arbitration of those claims, in order to receive a small severance payment.  Many IBM employees who were laid off, including the named plaintiffs in this action, rejected the severance offer and did not sign the arbitration agreement.

21.     Plaintiff Rusis began working at IBM in 2003 as a strategic services specialist and later became a solution manager for IBM's global system integrator alliances. In March 2018, Plaintiff Rusis received a letter from IBM stating that he was being laid off, effective on June 27, 2018. After being notified that he would be laid off, Plaintiff Rusis used IBM's internal hiring platform to apply for five positions for which he was qualified, including one position on his former Global System Integrator Sales team. Plaintiff Rusis did not receive a response regarding any of these job applications.

22.     Plaintiff Gerrits began working for IBM, in August 1985, and most recently held the position of global commodity manager. On March 29, 2018, Plaintiff Gerrits

received a letter from his manager informing him that he was being laid off by IBM
effective June 27, 2018.  Plaintiff Gerrits was one of the oldest employees in his group.
Although Plaintiff Gerrits applied to several positions through IBM's internal hiring
platform for which he was qualified, he did not receive any response to his applications.

23.    Plaintiff McGonegal began working for IBM in 1986 in Atlanta, Georgia.
Most recently, Plaintiff McGonegal worked for IBM as a second line manager of its asset
management organization. Plaintiff McGonegal was let go by IBM on June 30, 2018.

24.    Plaintiff Eng began working for IBM in 2012, and most recently held the
position of Senior IT Specialist. Mr. Eng was let go by IBM on March 31, 2018.
Following his separation, Mr. Eng attempted to find a new position through IBM's
internal hiring platform, and a hiring manager indicated that he wished to hire Mr. Eng.
One of Mr. Eng's IBM Career Managers, however, prevented Mr. Eng's hire for the new
position.

25.    Upon information and belief, IBM does not permit individuals who have
been laid off through its Resource Actions to be considered for other positions through
IBM's internal hiring platform.  It has used this type of technique to prevent its older
workers who have been laid off from obtaining new positions within the company.

V.    **COLLECTIVE ACTION ALLEGATIONS**

26.    Plaintiffs bring this case as a collective action on behalf of IBM employees
over the age of forty (40) who have worked anywhere in the country whose employment
separated within the relevant period, who may opt in to this action.

27.    These employees who may opt in to this collective action are similarly
situated to the named Plaintiffs. They have all worked for IBM under substantially similar

7

conditions and have all been subjected to IBM's policy and practices of targeting for layoff and disproportionately ending the employment of employees over forty (40) years old. They have also all been subject to IBM's policy of precluding those employees from consideration for other open internal IBM positions for which they are qualified.

**VI.    CLASS ACTION ALLEGATIONS**

28.    Plaintiffs also bring class action claims pursuant to Fed. R. Civ. P. 23 under the laws of California, North Carolina, and New Jersey on behalf of IBM employees over the age of forty (40) who have worked for IBM in those respective states and whose employment separated within the relevant period.

29.    These California, North Carolina, and New Jersey classes all meet the prerequisites of Fed. R. Civ. P. 23 in that:

a.  The classes are so numerous that joining all members is impracticable. The exact number of the members of each class is unknown, but it is estimated that there have been well more than forty (40) IBM employees over the age of forty (40) whose employment has ended in each of these states within the relevant period. As a result, joinder of all of these individuals is impracticable.

b.  There are questions of fact and law common to all of the putative class members, because all of those individuals were subject to IBM's uniform effort to shift its personnel focus to Millennials, leading to the unlawful termination of a disproportionate number of older IBM employees, in violation of the laws of their respective states.

**App.034**

c.  With respect to these common issues, the claims of the named plaintiffs are typical of the claims of IBM employees over the age of forty (40) who had worked in each of these states and who lost their jobs with IBM.

d.  Plaintiffs and their counsel will fairly and adequately represent the interests of each class. The named plaintiffs have no interests adverse to or in conflict with the class members whom they propose to represent. Plaintiffs' counsel have litigated and successfully resolved many dozens of class action cases involving employment law and have substantial experience representing employees in discrimination claims.

e.  The questions of law or fact common to all members of each class predominate over any questions affecting only individual members. The common questions include, among other things, whether IBM targeted older employees for layoff, or otherwise disproportionately ended the employment of older workers, and whether IBM refused to consider hiring those employees to other open positions for which they were qualified due to their age.

f.  Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery for many IBM employees in these states, briefing of legal issues, and court proceedings.

## VII. <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

30.     Several of the Plaintiffs timely filed Class Charges of Discrimination with the EEOC. More than sixty (60) days have passed since they submitted those Charges of Discrimination.

## <u>COUNT I</u>

(Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*)
(On Behalf of Plaintiffs and Class)

31.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

32.     IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiffs, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the ADEA. IBM's violation of the ADEA has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs and similarly situated employees have lost their jobs.

33.     This claim is brought on behalf of a class of IBM employees across the country who may choose to opt in to this case, pursuant 29 U.S.C. §§ 216(b), 626(b).

**App.036**

## COUNT II

(California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.*)
(On Behalf of Plaintiff Rusis and a California Class)

34.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

35.    Plaintiff Rusis brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in California during the relevant period and have been subjected to the discriminatory practices described herein.  IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiff Rusis, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.* IBM's violation of California law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Rusis and similarly situated employees who have worked in California have lost their jobs.

## COUNT III

(North Carolina Employment Practices Act,
N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3, common law wrongful discharge)
(On Behalf of Plaintiff Gerrits and a North Carolina Class)

36.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

37.     Plaintiff Gerrits brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in North Carolina during the relevant and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Gerrits, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the North Carolina Employment Practices Act, N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3 and common law wrongful discharge. IBM's violation of North Carolina law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Gerrits and similarly situated employees have lost their jobs.

12

## COUNT IV
(New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*)
(On Behalf of Plaintiff Eng and a New Jersey Class)

38.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

39.    Plaintiff Eng brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in New Jersey during the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Eng, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* IBM's violation of New Jersey law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Eng and similarly situated employees have lost their jobs.

## JURY DEMAND

Plaintiffs request a trial by jury on all claims.

13

**App.039**

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1.      Permission for Plaintiffs to notify other IBM employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

2.      Find and declare that IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*;

3.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count II and appoint Plaintiff Rusis and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in California, and whose employment with IBM ended within the relevant time period;

4.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count III and appoint Plaintiff Gerrits and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in North Carolina, and whose employment with IBM ended within the relevant time period;

5.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count IV and appoint Plaintiff Eng and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in New Jersey, and whose employment with IBM ended within the relevant time period;

6.      Award compensatory damages, including back pay and front pay, in an amount according to proof;

7.      Reinstate Plaintiffs and similarly situated employees to their positions;

8.      Award all costs and attorney's fees incurred prosecuting this claim;

9.      Award liquidated damages and all appropriate statutory and regulatory damages;

10.     Award interest;

11.     Issue injunctive relief in the form of an order directing IBM to comply with the ADEA and applicable state law.

12.     Any other relief to which Plaintiffs and class members may be entitled.

Dated: December 11, 2018

        Respectfully submitted,

        EDVIN RUSIS, HENRY GERRITS, and
        PHIL MCGONEGAL, AND DAVID HO ENG on
        behalf of themselves and all others similarly
        situated,

        By their attorneys,


        /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan, NY Bar No. 2971927
        Thomas Fowler,
        *pro hac vice* forthcoming
        LICHTEN & LISS-RIORDAN, P.C.
        729 Boylston Street, Suite 2000
        Boston, MA 02116
        (617) 994-5800
        Email:  sliss@llrlaw.com, tfowler@llrlaw.com

# EXHIBIT B

# Employee Information Package

**Attachment 2:  Separation Agreement**

You are being offered payments and benefits as part of a resource action that you otherwise would not have been entitled to receive. You will receive and be entitled to keep these payments and benefits only if you sign and comply with all terms of this Agreement. This Agreement requires you to release IBM and related parties from claims you may have as described below. This Agreement also requires you to arbitrate certain claims that are not released on an individual basis.

By accepting this Agreement and the benefits and payments it provides, you agree that if you choose to pursue certain claims that are not released under this Agreement, then such claims must be submitted to arbitration on an individual basis as provided below and may not be pursued in court.

You should thoroughly review and understand the effect of this Agreement before you accept it.

The Resource Action Summary Plan Description is the only document that describes your eligibility for the payments and benefits you are being offered under this Agreement. Any other written or oral representations, promises, or other agreements of any kind made to you in connection with your decision to accept this Agreement will not be recognized.

**1.  Definitions of certain words used in this agreement**

For purposes of this Agreement and its attachment, certain words have specific definitions.

- "Agreement" means this Separation Agreement.

- "IBM" means International Business Machines Corporation and all of its subsidiary and affiliated companies and all of their respective former or current directors, officers, employees, agents, and benefits plans (and fiduciaries, insurers or other agents of those plans), and all successors and assigns of these entities or individuals.

- "You" or "your" means you and anyone acting as your representative, successor, or heir.

- "Release" means your waiver of claims as specified below.

**2.  What you release by accepting this agreement**

By accepting this Agreement, you release IBM from ALL claims that you may have against it at the time of accepting, whether or not related to your employment with IBM or the termination of your employment (EXCEPT FOR THOSE SPECIFICALLY IDENTIFIED IN SECTION 3), and including, without limitation:

- all claims arising under any federal, state, local or foreign law dealing with or regulating employment, including, but not limited to: (1) laws prohibiting discrimination and/or harassment based on race, national origin, ancestry, color, creed, religion, sex, gender, sexual orientation, gender identity and/or expression, genetic information, pregnancy, marital status, disability, medical condition, veteran status, or any other statutorily protected status, as well as claims in any forum alleging retaliation; (2) family and medical leave; (3) claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"); and (4) all waivable claims related to wages and hours, including under state or local labor or wage payment laws

- all state and local laws prohibiting discrimination on the basis of age

- claims based on contract, tort, or any other legal theory

- all claims whether or not you know about them at the time you accept this Agreement

# Employee Information Package

- any right to raise or pursue any internal appeals, including but not limited to those eligible for review under the IBM Open Door process related to a claim that you release under this Agreement

- if you have worked or are working in California, you expressly agree to waive the protection of section 1542 of the California Civil Code because you are releasing all claims, whether they are known or unknown; Section 1542 of the California Civil Code states:

  o "A general release does not extend to claims that a creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, which if known by him or her, would have materially affected his or her settlement with the debtor or released party."

  o In the event that you do not understand the waiver of your rights under section 1542 or its legal effect on you, you should talk to a lawyer.

## 3.  What you do not release by accepting this agreement

By accepting this Agreement, you do not release:

- any claims that arise after the date you accept this Agreement

- any claims that by law cannot be waived by private agreement without judicial or governmental supervision, such as under the federal Fair Labor Standards Act of 1938, provided however such claims are subject to arbitration on an individual basis as described below

- any claims that IBM failed to pay wages that IBM acknowledged were due and owing at the time you accept this Agreement

- your right to file a charge with or participate in any investigation or proceeding conducted by the U.S. Equal Employment Opportunity Commission (EEOC) or other government agency; even though you can file a charge or participate in an investigation or proceeding conducted by the EEOC or other government agency, by accepting this Agreement you are waiving your ability to obtain relief of any kind from IBM to the extent permitted by law. **Notwithstanding the foregoing, you are not prohibited from receiving an award for information provided to any government agency as permitted under law.**

- your non-forfeitable rights to accrued benefits (within the meaning of sections 203 and 204 of the Employee Retirement Income Security Act of 1974) under the IBM Personal Pension Plan and the IBM 401(k) Plus Plan

- any right you may have to challenge the validity of this Agreement

- your right to enforce this Agreement and to receive the benefits and payments pursuant to the Resource Action Plan

- any claim under the Federal Age Discrimination in Employment Act of 1967 or the West Virginia Human Rights Act, provided however such claims are subject to arbitration on an individual basis as described below

- your ability to comply with any lawful subpoena or court order or taking any other actions affirmatively authorized by law.

## 4.  You can take up to 30 days before accepting this agreement

You can take up to thirty (30) days from the date you received this Agreement or until your last date of employment, **whichever is longer**, to consider this Agreement and the accompanying separation program information.  If you accept

# Employee Information Package

and sign (by hard copy or electronically) this Agreement before the expiration of the 30-day period, you acknowledge that you knowingly and voluntarily waived the ability to wait the full 30 days. **Employees may not sign the Agreement before their last date of employment with IBM**.

FOR EMPLOYEES WORKING IN MINNESOTA ONLY: This Agreement is not effective for FIFTEEN DAYS after you accept it. You can revoke this Agreement during that time. To revoke this Agreement, your manager or the Project Office must receive a written notice of revocation from you within that time period. You understand that if you do revoke, you will not be entitled to any payments or benefits under this Agreement or the resource action.

**5.  Arbitration and waiver of class claims and jury trial**

You agree that any and all legal claims or disputes between you and IBM under the federal Age Discrimination in Employment Act of 1967 (ADEA) or the West Virginia Human Rights Act, as well as any and all claims or disputes between you and IBM that have not or cannot be released by private agreement as a matter of law, such as under the federal Fair Labor Standards Act of 1938 (FLSA) – collectively, "Covered Claims" –  will be resolved on an individual basis by private, confidential, final and binding arbitration according to the IBM Arbitration Procedures and Collective Action Waiver (which are attached and incorporated as part of this Agreement) and under the auspices of JAMS, or if there is no JAMS office within 100 miles of your most recent assigned IBM office location, then an arbitration forum provider to be mutually agreed to by the parties. Regardless of the designated arbitration administrator, the arbitration shall be held in accordance with the JAMS Employment Arbitration Rules & Procedures. You understand and agree that you are giving up your right to a court action for Covered Claims, including any right to a trial before a judge or jury in federal or state court. This agreement to arbitrate does not apply to government agency proceedings.

To the maximum extent permitted by applicable law, you agree that no Covered Claims may be initiated, maintained, heard or determined on a class action, collective action or multi-party basis either in court or in arbitration, and that you are not entitled to serve or participate as a class action member or representative or collective action member or representative or receive any recovery from a class or collective action involving any Covered Claims either in court or in arbitration.

You further agree that if you are included within any class action or collective action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of this Agreement, including the class action or collective action waivers contained in this section, shall be decided only by a court of competent jurisdiction. Any issue concerning the arbitrability of a particular issue or claim pursuant to this section (except for issues concerning the enforceability of the class action or collective action waivers) must be resolved by the arbitrator and not a court.

This arbitration agreement shall not prohibit applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration. Your agreement to arbitrate certain claims pursuant to this Agreement shall not prohibit you from filing a charge or complaint with and seeking relief from the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state or local administrative agency concerning claims that are not released under this Agreement.

This agreement to arbitrate claims shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA").  If for any reason the FAA is held inapplicable to this Agreement, then the State of New York's law of arbitrability shall apply.

**6. Enforceability**

If any part of this Agreement other than the class action or collective action waiver is held to be invalid or unenforceable, the remaining provisions of this Agreement will not be affected in any way, except that if your release

# Employee Information Package

of claims or agreement to arbitrate Covered Claims is held to be unenforceable, then at its option IBM may seek to recover to the maximum extent permitted by law the payments and value of benefits that you received under this Agreement. If the class action or collective action waiver provisions associated with a Covered Claim are held to be invalid or unenforceable, then any class action or collective action involving such Covered Claim(s) must be brought in court and not in arbitration.

Except as otherwise noted, this Agreement will be governed by the substantive laws of New York.

By accepting this Agreement, you acknowledge that you fully understand any and all rights you have with respect to the claims you are releasing and your agreement to arbitrate Covered Claims. You agree that the payments and benefits you have or will receive under this Agreement are good and valuable consideration for entering into this Agreement. You acknowledge that you have been provided adequate time to consult with a lawyer or other advisor of your own choosing before entering into this Agreement. You further agree that you are voluntarily signing this Agreement without any threats, coercion or duress, whether economic or otherwise, and that you intend to be bound by the terms of this Agreement.

YOU ARE ADVISED TO CONSULT WITH A LAWYER BEFORE YOU SIGN THIS AGREEMENT

Employee Name (print): _____

Serial #: _____

Signature: _____

Date: _____

# Employee Information Package

### Attachment 3:  Arbitration Procedure and Collective Action Waiver (Attachment to Separation Agreement)

IBM is committed to administering its employment policies fairly and treating all employees with respect and dignity. Occasionally, however, disagreements may arise between an individual employee and IBM or between employees in a context that involves IBM. IBM believes that the resolution of those types of disagreements is best accomplished through internal dispute resolution processes.

For many decades, IBM employees have had several options to initiate a thorough and timely review of their work-related concerns when they are unable to reach a resolution with their managers. The IBM Open Door Process is one of these options, and IBM's experience makes us confident that it is a highly effective way to resolve employee concerns. The Open-Door Process is offered as the primary dispute resolution forum for IBMers.

IBM recognizes, however, that from time to time IBM and its employees may desire an additional option to have their concerns reviewed. To that end, IBM has introduced the following Arbitration Program which is a private and confidential dispute resolution procedure in which the parties present their respective positions concerning certain claims to an impartial third-party arbitrator who determines the merits of the claims and renders a final and binding decision. The rules and procedures governing IBM's arbitration program are set forth below.

Covered Claims: Individuals who accept the payments and benefits of the Resource Action Plan are required to submit any and all "Covered Claims" to final and binding arbitration and waive their right to a court action of such claims, including any right to a trial before a judge or jury in federal or state court. "Covered Claims" are any and all legal claims or disputes between the employee and IBM under the federal Age Discrimination in Employment Act of 1967 ("ADEA") or the West Virginia Human Rights Act, as well as any and all claims or disputes that have not or cannot be released by private agreement as a matter of law (such as under the federal Fair Labor Standards Act of 1938 (FLSA)).

These Arbitration Procedures shall not prohibit applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration.

WAIVERS: TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AND IBM  AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD, OR DETERMINED ON A MULTIPARTY, CLASS ACTION BASIS OR COLLECTIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT YOU ARE NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS ACTION MEMBER OR REPRESENTATIVE, OR COLLECTIVE ACTION MEMBER OR REPRESENTATIVE, OR RECEIVE ANY RECOVERY FROM A CLASS OR COLLECTIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR ARBITRATION.

You further agree that if you are included within any class action or collective action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of any of the class action or collective action Waivers included as part of your agreement to arbitrate certain claims shall be decided only by a court of competent jurisdiction. Any issue concerning the arbitrability of a particular issue or claim (except for issues concerning the enforceability of the class action or collective action Waivers) must be resolved by the arbitrator and not a court. Your agreement to arbitrate Covered Claims does not preclude you from pursuing or participating in a class action or collective action in court where your claim is based solely on your status as a customer or an investor and does not arise out of or in any way relate to your employment relationship with the Company.

**Pre-Arbitration Dispute Resolution**

You are strongly encouraged to first resolve any Covered Claims informally through the IBM Open Door Process (Appeals@us.ibm.com) or the Project Office. If you are not satisfied and wish to pursue your matter further, then you are encouraged to request a mediation wherein you and IBM will attempt to find common ground to voluntarily resolve

# Employee Information Package

your Covered Claims with the aid of a neutral third party not employed by IBM. You can request mediation through the IBM Open Door Process by contacting Appeals@us.ibm.com. If mediation does not result in resolution of your Covered Claims, then you still have the option of pursuing arbitration by following the procedures set forth below.

**Arbitration Procedures**

Covered Claims will be resolved by arbitration conducted under the auspices of JAMS, or if there is no JAMS office within 100 miles of your most recent assigned IBM office location, then an arbitration forum provider to be mutually agreed to by the parties in writing.  Regardless of the designated arbitration administrator, the arbitration shall be held in accordance with the JAMS Employment Arbitration Rules & Procedures (and no other rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration. IBM will supply you with a printed copy of those rules upon your request. The arbitration shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing. Arbitration shall be held in the county in which you worked or work for IBM at the time the claim arose, or if not possible, in the county closest to such location. To the extent any of the terms, conditions or requirements of the arbitration procedures in this document conflict with the applicable Arbitration Rules, the terms, conditions or requirements of the procedures in this document shall govern.

In any arbitration, the parties may file, and the arbitrator shall hear and decide at any point in the proceeding motions permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine, but not motions to consolidate claims, parties or actions. The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. Arbitrators are required to issue a written award, and their award shall be final and binding. Any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction.

**Reconsideration and Review**

Either party shall have the right, within twenty (20) days of issuance of the Arbitrator's decision, to file with the Arbitrator (and the Arbitrator shall have jurisdiction to consider and rule upon) a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by law) shall then be final and conclusive upon the parties.

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

**Remedies**

You and IBM agree the arbitrator(s) is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and expert fees and costs, to the same extent as would a court under applicable law.

**Time Limits and Procedure for Initiating Arbitration**

To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

# Employee Information Package

To initiate arbitration, you must pay the equivalent of the filing fee for the court of general jurisdiction in the state where you last worked for IBM. IBM shall pay 100 percent of the required arbitration administration fee in excess of your payment.

The written demand for arbitration shall be submitted to the IBM Arbitration Coordinator, IBM Corporate Litigation, North Castle Drive, Armonk, New York 10504, with a check for your payment of the filing fee made payable to "International Business Machines Corporation."

Your written demand shall set forth the dispute, including the alleged act or omission at issue and the names of all persons allegedly involved in the act or omission; your name, address, telephone number, and email address; and your IBM employee serial number. IBM will promptly file the demand with the appropriate arbitration administrator, together with the applicable administrative fee as provided in the arbitration administrator's fee schedule.

### Representation

Any party may be represented by an attorney for purposes of arbitrating a Covered Claim. Each party is responsible for payment of its own costs and attorneys' fees, unless otherwise awarded by the Arbitrator under the standards provided by law.

### Discovery

Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party and to subpoena documents from third parties to the extent allowed by law. Requests for additional depositions or discovery may be made to the Arbitrator selected pursuant to this Agreement. The Arbitrator may grant such additional discovery if the Arbitrator finds that the party has demonstrated that it needs that discovery to adequately arbitrate the claim, taking into account the parties' mutual desire to have a speedy, less-formal, cost-effective dispute-resolution mechanism.

### Privacy and Confidentiality

Privacy and confidentiality are important aspects of arbitration. Only parties, their representatives, witnesses and necessary administrative staff of the arbitration forum may attend the arbitration hearing. The arbitrator may exclude any non-party from any part of a hearing.

To protect the confidentiality of proprietary information, trade secrets or other sensitive information, the parties shall maintain the confidential nature of the arbitration proceeding and the award. The parties agree that any information related to the proceeding, such as documents produced, filings, witness statements or testimony, expert reports and hearing transcripts is confidential information which shall not be disclosed, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision by reason of this paragraph.

### Designation of Witnesses

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

### Subpoenas

Each party shall have the right to subpoena witnesses and documents to the extent allowed by law, subject to any limitations the Arbitrator shall impose for good cause shown.

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, DAVID HO ENG, BRIAN HAUPT, PHILIP MONSON, CLAUDIA ZIEGLER, SALLY GEHRING, and JOHN MASON, individually and on behalf of all other similarly situated individuals, )<br><br>Plaintiffs, )<br><br>v. )<br><br>INTERNATIONAL BUSINESS MACHINES CORP. )<br><br>Defendant. ) | Civil Action No. 1:18-cv-08434<br><br>**JURY DEMANDED** |

## SECOND AMENDED CLASS
## AND COLLECTIVE ACTION COMPLAINT

1.      This is a class and collective action brought by Edvin Rusis, Henry Gerrits,

Phil McGonegal, David Ho Eng, Brian Haupt, Philip Monson, Claudia Ziegler, Sally

Gehring, and John Mason, on behalf of themselves and all other similarly situated

employees who have worked for Defendant International Business Machines Corporation

(hereinafter "IBM"), alleging that IBM, through its termination and hiring practices, has

violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. §

621 *et seq*., as well as the laws of the various states in which the employees worked.[1]

As described further below, IBM has discriminated, and continues to discriminate,

---

[1]      Pursuant to the Court's Order of March 26, 2021 (Dkt. 156), Plaintiff David Ho
Eng asserts his claim only under New Jersey state law, as the Court dismissed his
ADEA claim.

against its older workers, both by laying them off (or terminating or constructively

discharging them) disproportionately to younger workers and then not hiring them for

open positions. Over the last several years, IBM has been in the process of

systematically reducing its employment of older workers in order to build a younger

workforce. Between 2012 and the present, IBM has laid off at least 20,000 employees

over the age of forty. Such discriminatory layoff and hiring practices constitute unlawful

discrimination under the ADEA and state anti-discrimination law.

2.     Plaintiffs bring these claims on behalf of themselves and similarly situated

IBM employees across the country who may choose to opt in to this action pursuant to

29 U.S.C. §§ 216(b), 626(b).

3.     Plaintiffs also bring class claims under the laws of the states in which they

have worked pursuant to Fed. R. Civ. P. 23.

## II.     <u>PARTIES</u>

4.     Plaintiff Edvin Rusis is 62 years old and resides in Laguna Niguel,

California. Mr. Rusis worked for IBM for approximately fifteen (15) years before his

separation, effective June 27, 2018.

5.     Plaintiff Henry Gerrits is 70 years old and resides in Cary, North Carolina.

Mr. Gerrits worked for IBM for approximately thirty-three (33) years, before his

separation, effective on June 27, 2018.

6.     Plaintiff Phil McGonegal is 58 years old and resides in Atlanta, Georgia.

Mr. McGonegal worked for IBM for approximately thirty-four (34) years before his

separation, effective approximately June 30, 2018.

7.      Plaintiff David Ho Eng is 59 years old and resides in Sacramento, California. Plaintiff Eng worked for IBM in New Jersey for approximately six (6) years before his separation, effective approximately March 31, 2018.

8.      Plaintiff Brian Haupt is 62 years old and resides in Weare, New Hampshire. Plaintiff Haupt worked for IBM for approximately eighteen (18) years before his separation, effective approximately June 27, 2018.

9.      Plaintiff Philip Monson is 61 years old and resides in Stoneham, Massachusetts. Plaintiff Monson worked for IBM for approximately twenty-nine (29) years before his separation, effective approximately September 4, 2019.

10.     Plaintiff Claudia Ziegler is 60 years old and resides in Aventura, Florida. Plaintiff Ziegler worked for IBM for approximately thirty-seven (37) years before her separation, effective approximately December 17, 2020.

11.     Plaintiff Sally Gehring is 64 years old and resides in Carlsbad, California. Plaintiff Gehring worked for IBM for approximately forty (40) years before her separation, effectively approximately May 31, 2016.

12.     Plaintiff John Mason is 59 years old and resides in Westfield, New Jersey. Plaintiff Mason worked for IBM for approximately fourteen (14) years before his separation, effectively approximately June 27, 2018.

13.     Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

14.     Plaintiffs Rusis and Gehring also bring this case as a class action on behalf of themselves and similarly situated individuals over the age of forty (40) who

worked for IBM in California whose employment ended within the relevant period,

pursuant to Fed. R. Civ. P. 23.

15.     Plaintiff Gerrits also brings this case as a class action on behalf of himself

and similarly situated individuals over the age of forty (40) who worked for IBM in North

Carolina whose employment ended within the relevant period, pursuant to Fed. R. Civ.

P. 23.

16.     Plaintiffs Eng and Mason also bring this case as a class action on behalf

of themselves and similarly situated individuals over the age of forty (40) who worked

for IBM in New Jersey whose employment ended within the relevant period, pursuant to

Fed. R. Civ. P. 23.

17.     Plaintiffs Haupt and Monson also bring this case as a class action on

behalf of themselves and similarly situated individuals over the age of forty (40) who

worked for IBM in Massachusetts whose employment ended within the relevant period,

pursuant to Fed. R. Civ. P. 23.

18.     Plaintiff Ziegler also brings this case as a class action on behalf of herself

and similarly situated individuals over the age of forty (40) who worked for IBM in New

York whose employment ended within the relevant period, pursuant to Fed. R. Civ. P.

23.

19.     Defendant International Business Machines Corp. is a New York

corporation with its principal place of business in Armonk, New York. IBM is an

American multinational technology business that offers services and goods ranging from

computing, cloud platforms, advanced analytics tools and others.

4

III.    **JURISDICTION AND VENUE**

20.    This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq*. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

21.    The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in Armonk, New York.

IV.    **STATEMENT OF FACTS**

22.    Plaintiffs were among thousands of IBM employees to be laid off (or otherwise separated from IBM) recently, as the result of a shift in IBM's personnel focus to the generation of workers referred to as "Millennials" (which IBM defines as the generation born after 1980) that began in approximately 2012.  At that time, IBM began a program to reform itself into a leading company in the fields of cloud services, big data analytics, mobile, security and social media. As a part of this transformation, IBM endeavored to begin heavily recruiting Millennials in order to make the face of IBM younger, while at the same time pushing out older employees. At the direction of IBM's CEO Virginia Rometty and other corporate leaders, IBM instituted a plan to bring in 25,000 younger employees that it referred to as "Early Professional Hires" or "New Collar Hires." At the same time, in order to make room for these younger workers, IBM sought to reduce its headcount of older workers over a period of several years.

5

23.    In an article published by ProPublica following an investigation of IBM's hiring practices, ProPublica reported that it estimates that "in the past five years alone, IBM has eliminated more than 20,000 American employees ages 40 and over, about 60 percent of its estimated total U.S. job cuts during those years." Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

24.    As reported by ProPublica, IBM's shift in focus toward the Millennial workforce came as "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." Id. In response to that problem, IBM's CEO Virginia Rometty "launched a major overhaul that aimed to make IBM a major player in the emerging technologies of cloud services, big data analytics, mobile security and social media, or what came to be known inside as CAMS" and "sought to sharply increase hiring of people born after 1980." Id. Additionally, IBM embraced the belief that "CAMS are driven by Millennial traits." Id.

25.    Moreover, in 2006 one of IBM's consulting arms issued a paper that referred to workers in the "Baby Boomer" generation as "gray hairs" and "old heads," stated that "successor generations . . . are generally much more innovative and receptive to technology than baby boomers," and advised that "What businesses can't afford to do is simply rehire their experienced workers and put them back into their old jobs." See, The Maturing Workforce: Innovation in Workforce Enablement, IBM Business Consulting Services, https://www-935.ibm.com/services/uk/bcs/pdf/maturing-workforce-feus01291-1.pdf (2006).

6

26.    As another expression of IBM's shift in focus to embrace Millennials, at a 2014 IBM conference called "Reinvention in the Age of the Millennial," IBM announced its intent to "embrace the 'Millennial mindset'" and announced that "What's good for Millennials is good for everyone." See Reinvention in the Age of the Millennial, https://ibmcai.com/2014/12/16/reinvention-in-the-age-of-the-millennial/ (Dec. 16, 2014).

27.    Throughout the company, IBM implemented a plan to replace its headcount of older workers with younger ones.  In conversations and corporate planning documents, executives and managers used terms such as "continuous talent refresh," "correcting seniority mix," and "shifting headcount" toward "Early Professional Hires."  Indeed, IBM had a goal of achieving 55% Early Professional Hires by 2020.  In 2017, IBM CEO Virginia Rometty boasted on CNBC's Mad Money that 50% of all IBM employees were now Millennials.

28.    IBM has reduced the population of its older workers through several methods. Many older employees have been laid off through reductions in force or layoffs, which IBM refers to as "Resource Actions."  (Meanwhile, IBM shields its youngest employees from layoff, exempting recent college graduates following their hire date.)  IBM has also reduced its population of older workers by terminating older employees for pretextual reasons, or by constructively discharging them, or by conditioning their continued employment on untenable choices they are unlikely to accept, such as relocation.

29.    Additionally, while older workers who lost their jobs through layoffs that IBM calls "Resource Actions" have frequently been encouraged to use IBM's internal hiring platform to apply for other open IBM positions for which they are qualified, IBM

7

has generally prevented workers subject to these layoffs to be hired into other positions. IBM has put obstacles in the way of such workers being hired into different positions, thus helping to ensure that these older workers are removed from the company and younger workers placed into open positions.

30.    Prior to 2014, IBM provided lists to any workers who were laid off, which disclosed the positions and ages of all the employees laid off from their business units at the same time, as well as a list showing the positions and ages of all those in the business units that were not being laid off.  IBM distributed this information, presumably, in order to comply with the Section 626(f) of the ADEA, which requires disclosure of this information if an employer seeks to obtain a release of age discrimination claims from a group of employees. However, in 2014, in an apparent effort to conceal its systematic effort to shed its older workers, IBM stopped disclosing this information to the employees. While IBM could no longer include a release of ADEA claims in its severance agreements with its employees as a result, it opted instead to require its employees to agree to binding individual arbitration of those claims, in order to receive a small severance payment.  Many IBM employees who were laid off, including the named plaintiffs in this action, rejected the severance offer and did not sign the arbitration agreement.

31.    On approximately August 31, 2020, the Equal Employment Opportunity Commission ("EEOC") issued a classwide determination following an investigation of age discrimination at IBM. In that determination, the EEOC found reasonable cause to believe that IBM discriminated older employees through layoffs that took place between 2013 and 2018.  The EEOC explained in this determination letter that its investigation

uncovered "top-down messaging from IBM's highest ranks directing managers to

engage in an aggressive approach to significantly reduce the headcount of older

workers to make room for Early Professional Hires." The EEOC revealed that it had

analyzed data from across the company and that it was primarily older workers (85%)

who were in the total potential pool of those considered for layoff.  The EEOC stated in

the determination letter that its conclusion was supported by dozens of interviews it had

conducted across the company, and it rejected IBM's attempt to justify and defend each

of the 58 layoffs analyzed in that investigation through individualized explanations.

32.    Plaintiff Rusis began working at IBM in 2003 as a strategic services

specialist and later became a solution manager for IBM's global system integrator

alliances. In March 2018, Plaintiff Rusis received a letter from IBM stating that he was

being laid off, effective on June 27, 2018. After being notified that he would be laid off,

Plaintiff Rusis used IBM's internal hiring platform to apply for five positions for which he

was qualified, including one position on his former Global System Integrator Sales team.

Plaintiff Rusis did not receive a response regarding any of these job applications.

33.    Plaintiff Gerrits began working for IBM, in August 1985, and most recently

held the position of global commodity manager. On March 29, 2018, Plaintiff Gerrits

received a letter from his manager informing him that he was being laid off by IBM

effective June 27, 2018.  Plaintiff Gerrits was one of the oldest employees in his group.

Although Plaintiff Gerrits applied to several positions through IBM's internal hiring

platform for which he was qualified, he did not receive any response to his applications.

App.059

34.     Plaintiff McGonegal began working for IBM in 1986 in Atlanta, Georgia.
Most recently, Plaintiff McGonegal worked for IBM as a second line manager of its asset
management organization. Plaintiff McGonegal was let go by IBM on June 30, 2018.

35.     Plaintiff Eng began working for IBM in 2012, and most recently held the
position of Senior IT Specialist. Plaintiff Eng worked for IBM in New Jersey. Mr. Eng
was let go by IBM on March 31, 2018. Following his separation, Mr. Eng attempted to
find a new position through IBM's internal hiring platform, and a hiring manager
indicated that he wished to hire Mr. Eng. One of Mr. Eng's IBM Career Managers,
however, prevented Mr. Eng's hire for the new position.

36.     Plaintiff Haupt began working for IBM in approximately 2000. Plaintiff
Haupt worked as a software sales specialist on a subscription software support team in
Massachusetts. Plaintiff Haupt was one of the oldest employees in his group. After IBM
notified Plaintiff Haupt on March 29, 2018, that he would be laid off effective June 27,
2018, he applied to other positions at IBM. Although Plaintiff Haupt applied to more than
a dozen positions through IBM's internal hiring platform for which he was qualified, he
did not receive any response to his applications.

37.     Plaintiff Monson began working for IBM in approximately 1990. Plaintiff
Monson worked for IBM in Massachusetts, in IBM's Digital Sales group. Plaintiff
Monson was laid off in a Resource Action effective September 4, 2019. Plaintiff Monson
was replaced by three younger employees.

38.     Plaintiff Ziegler began working for IBM in approximately 1983. In her final
position prior to her termination, Plaintiff Ziegler worked in New York and held the
position of content producer in IBM's Marketing and Communications group. On

November 17, 2020, Plaintiff Ziegler was informed that she would be laid off effective

December 17, 2020. Following her termination, a younger employee took over Plaintiff

Ziegler's job duties.

39.     Plaintiff Gehring began working for IBM in approximately 1976. Plaintiff

Gehring worked for IBM in California as a software engineer. On March 2, 2016, Plaintiff

Gehring was informed that she would be laid off in a Resource Action effective May 31,

2016. Plaintiff Gehring was one of the fifty-eight (58) individuals whose charges were

included in the EEOC's investigation that led to the agency's determination finding

reasonable cause to believe that IBM engaged in age discrimination against older

workers, issued on August 31, 2020.  She filed a charge of discrimination with the

EEOC in approximately November 2016 alleging that IBM had discriminated against her

and other employees on the basis of age.

40.     Plaintiff Mason began working for IBM in 2004 and most recently held a

position in IBM's Strategic Programs & Experience Design group within the Global

Business Services Organization. Plaintiff Mason worked in New Jersey. Plaintiff Mason

was informed in March 2018 that he would be laid off in a Resource Action, effective

June 27, 2018. After he was informed that he would be terminated, Plaintiff Mason

reached out to numerous managerial contacts in other areas of IBM in order to inquire

out other positions, but he was not able to find another position at IBM. Prior to his

termination, Plaintiff Mason mentored younger IBM employees through IBM's

Consulting by Degrees program.

## V.    COLLECTIVE ACTION ALLEGATIONS

41.    Plaintiffs bring this case as a collective action under the ADEA on behalf of IBM employees over the age of forty (40) who have worked anywhere in the country whose employment separated within the relevant period, who may opt in to this action.

42.    These employees who may opt in to this collective action are similarly situated to the named Plaintiffs. They have all worked for IBM under substantially similar conditions and have all been subjected to IBM's policy and practices of targeting for layoff and disproportionately ending the employment of employees over forty (40) years old. They have also all been subject to IBM's policy of precluding those employees from consideration for other open internal IBM positions for which they are qualified.

## VI.    CLASS ACTION ALLEGATIONS

43.    Plaintiffs also bring class action claims pursuant to Fed. R. Civ. P. 23 under the laws of California, North Carolina, New Jersey, Massachusetts, and New York, on behalf of IBM employees over the age of forty (40) who have worked for IBM in those respective states and whose employment separated within the relevant period.

44.    These California, North Carolina, New Jersey, Massachusetts, and New York classes all meet the prerequisites of Fed. R. Civ. P. 23 in that:

    a.    The classes are so numerous that joining all members is impracticable. The exact number of the members of each class is unknown, but it is estimated that there have been well more than forty (40) IBM employees over the age of forty (40) whose employment has ended in each of these

**App.062**

states within the relevant period. As a result, joinder of all of these individuals is impracticable.

b. There are questions of fact and law common to all of the putative class members, because all of those individuals were subject to IBM's uniform effort to shift its personnel focus to Millennials, leading to the unlawful termination of a disproportionate number of older IBM employees, in violation of the laws of their respective states.

c. With respect to these common issues, the claims of the named plaintiffs are typical of the claims of IBM employees over the age of forty (40) who had worked in each of these states and who lost their jobs with IBM.

d. Plaintiffs and their counsel will fairly and adequately represent the interests of each class. The named plaintiffs have no interests adverse to or in conflict with the class members whom they propose to represent. Plaintiffs' counsel have litigated and successfully resolved many dozens of class action cases involving employment law and have substantial experience representing employees in discrimination claims.

e. The questions of law or fact common to all members of each class predominate over any questions affecting only individual members. The common questions include, among other things, whether IBM targeted older employees for layoff, or otherwise disproportionately ended the employment of older workers, and whether IBM refused to consider hiring those employees to other open positions for which they were qualified due to their age.

13

  f. Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery for many IBM employees in these states, briefing of legal issues, and court proceedings.

**VII.** **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

  45. Plaintiffs Rusis, Gerritts, McGonegal, Ziegler, and Gehring timely filed Class Charges of Discrimination with the EEOC. More than sixty (60) days have passed since they submitted those Charges of Discrimination.

**COUNT I**

(Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*)
(On Behalf of Plaintiffs and Class)

  46. Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

  47. IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiffs, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the ADEA. IBM's violation of the ADEA has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs and similarly situated employees have lost their jobs.

  48. This claim is brought on behalf of a class of IBM employees across the country who may choose to opt in to this case, pursuant 29 U.S.C. §§ 216(b), 626(b).

**App.064**

**COUNT II**

(California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.*)
(On Behalf of Plaintiffs Rusis, Gehring, and a California Class)

49.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

50.    Plaintiffs Rusis and Gehring bring this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in California during the relevant period and have been subjected to the discriminatory practices described herein.  IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiffs Rusis and Gehring, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq*. IBM's violation of California law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs Rusis, Gehring, and similarly situated employees who have worked in California, have lost their jobs.

## COUNT III

(North Carolina Employment Practices Act,
N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3, common law wrongful discharge)
(On Behalf of Plaintiff Gerrits and a North Carolina Class)

51.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

52.     Plaintiff Gerrits brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in North Carolina during the relevant and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Gerrits, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the North Carolina Employment Practices Act, N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3 and common law wrongful discharge. IBM's violation of North Carolina law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Gerrits and similarly situated employees have lost their jobs.

## COUNT IV

(New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*)
(On Behalf of Plaintiff Eng and a New Jersey Class)

53.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

54.     Plaintiffs Eng and Mason bring this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in New Jersey during

**App.066**

the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiffs Eng and Mason, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq*. IBM's violation of New Jersey law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs Eng, Mason, and similarly situated employees have lost their jobs.

## COUNT V
(Massachusetts Anti-Discrimination Law, G.L. c. 151B § 4(1B))
(On Behalf of Plaintiffs Haupt, Monson, and a Massachusetts Class)

55.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

56.     Plaintiffs Haupt and Monson bring this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in Massachusetts during the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiffs Haupt and Monson, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the Massachusetts Anti-Discrimination Law, G.L. c. 151B, § 4(1B). IBM's violation of Massachusetts law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs Haupt, Monson, and similarly situated employees have lost their jobs.

## COUNT VI
(New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*)
(On Behalf of Plaintiff Ziegler and a New York Class)

57.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

58.     Plaintiff Ziegler brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in New York during the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Ziegler, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. IBM's violation of New York law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Ziegler and similarly situated employees have lost their jobs.

## JURY DEMAND

Plaintiffs request a trial by jury on all claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1.      Permission for Plaintiffs to notify other IBM employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

2.      Find and declare that IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*.;

3.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count II and appoint Plaintiffs Rusis and Gehring, and their counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in California, and whose employment with IBM ended within the relevant time period;

4.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count III and appoint Plaintiff Gerrits and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in North Carolina, and whose employment with IBM ended within the relevant time period;

5.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count IV and appoint Plaintiffs Eng and Mason, and their counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in New Jersey, and whose employment with IBM ended within the relevant time period;

6.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count V and appoint Plaintiffs Haupt and Monson, and their counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in Massachusetts, and whose employment with IBM ended within the relevant time period;

7.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count VI and appoint Plaintiff Ziegler and her counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in New York, and whose employment with IBM ended within the relevant time period;

8.      Award compensatory damages, including back pay and front pay, in an amount according to proof;

9.      Reinstate Plaintiffs and similarly situated employees to their positions;

10.     Award all costs and attorney's fees incurred prosecuting this claim;

11.     Award liquidated damages and all appropriate statutory and regulatory damages;

12.     Award interest;

13.    Issue injunctive relief in the form of an order directing IBM to comply with the ADEA and applicable state law.

14.    Any other relief to which Plaintiffs and class members may be entitled.

Respectfully Submitted,

EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, DAVID HO ENG, BRIAN HAUPT, PHILIP MONSON, CLAUDIA ZIEGLER, SALLY GEHRING, and JOHN MASON, on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan

Shannon Liss-Riordan (NY Bar No. 2971927)
Thomas Fowler, *pro hac vice*
Zachary Rubin (NY Bar No. 5442025)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, tfowler@llrlaw.com, zrubin@llrlaw.com

Dated:        July 21, 2021

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of the foregoing document was served on all counsel of record for Defendant in this matter by electronic mail on July 21, 2021.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

# EXHIBIT 4

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br> X  EEOC | 480-2018-03200 |

_____ and EEOC
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*)<br>Mr. Edvin Rusis | Home Phone (Incl. Area Code)<br>617-994-5800 | Date of Birth<br>03/23/1959 |
|---|---|---|
| Street Address      City, State and ZIP Code<br>▮▮▮▮▮▮ c/o Shannon Liss-Riordan, Lichten & Liss-<br>Riordan, P.C., 729 Boylston Street, Suite 2000, Boston, MA 02116 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>International Business Machines Corp. ("IBM") | No. Employees, Members<br>More than 10,000 | Phone No. (Include Area Code)<br>914-499-1900 |
|---|---|---|
| Street Address      City, State and ZIP Code<br>New Orchard Road, Armonk, New York, 10504 | | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address      City, State and ZIP Code | | |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*)<br><br>__ RACE   __ COLOR   __ SEX   __ RELIGION   __ NATIONAL ORIGIN<br><br>__ RETALIATION   _X_ AGE   __ DISABILITY   ___ OTHER (Specify below.) | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest      Latest<br>March 2018    June 27, 2018 (effective date of layoff)<br><br>__ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

IBM is discriminating against its older workers, both by laying them off disproportionately to younger workers and not hiring them for open positions.  Indeed, over the last several years, IBM has been in the process of systematically laying off its older employees in order to build a younger workforce.  IBM has laid off at least 20,000 employees over the age of forty in the last five years.  I am 59 years old, and I am being laid off by IBM effective June 27, 2018. Since receiving notice of my layoff, I have applied for several other open positions within IBM, for which I am eminently qualified, but I have not been hired for any of these positions, despite my lengthy service and successful experience as an employee for IBM.  I believe that I and thousands of other employees have been discriminated against by IBM on the basis of age.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 05/09/2018      *[signature]*<br>_____    _____<br>*Date*      *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

# EXHIBIT 5

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | |

_____ and EEOC
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*)<br>Mr. Henry Gerrits | Home Phone (Incl. Area Code)<br>617-994-5800 | Date of Birth<br>05/15/1951 |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

█████████████ c/o Shannon Liss-Riordan, Lichten & Liss-Riordan, P.C., 729 Boylston Street, Suite 2000, Boston, MA 02116

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>International Business Machines Corp. ("IBM") | No. Employees, Members<br>More than 10,000 | Phone No. (Include Area Code)<br>914-499-1900 |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| New Orchard Road, Armonk, New York, 10504 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON (*Check appropriate box(es).*)<br><br>__ RACE   __ COLOR   ___ SEX   __ RELIGION   __ NATIONAL ORIGIN<br><br>___ RETALIATION   _X_ AGE   __ DISABILITY   ___ OTHER (Specify below.) | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest                    Latest<br>March 29, 2018      June 27, 2018 (effective date of layoff)<br><br>__ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

IBM is discriminating against its older workers, both by laying them off disproportionately to younger workers and not hiring them for open positions.  Indeed, over the last several years, IBM has been in the process of systematically laying off its older employees in order to build a younger workforce.  IBM has laid off at least 20,000 employees over the age of forty in the last five years.  I am 67 years old, and I am being laid off by IBM effective June 27, 2018. Since receiving notice of my layoff, I have applied for several other open positions within IBM, for which I am eminently qualified, but I have not been hired for any of these positions, despite my lengthy service and successful experience as an employee for IBM.  I believe that I and thousands of other employees have been discriminated against by IBM on the basis of age.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>*Henry Gerrits*<br><br>07/02/18<br>*Date*        *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

**App.074**

# EXHIBIT 6

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | |

_____ and EEOC
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Phil McGonegal | 617-994-5800 | 06/14/1963 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| ████████████████████ c/o Shannon Liss-Riordan, Lichten & Liss-Riordan, P.C., 729 Boylston Street, Suite 2000, Boston, MA 02116 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| International Business Machines Corp. ("IBM") | More than 10,000 | 914-499-1900 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| New Orchard Road, Armonk, New York, 10504 | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

__ RACE   __ COLOR   ___ SEX   __ RELIGION   __ NATIONAL ORIGIN

___ RETALIATION   _X_ AGE   __ DISABILITY   ___ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest        Latest
May 2018      June 30, 2018 (effective date of layoff)

__ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

IBM is discriminating against its older workers, both by laying them off disproportionately to younger workers and not hiring them for open positions. Indeed, over the last several years, IBM has been in the process of systematically laying off its older employees in order to build a younger workforce. IBM has laid off at least 20,000 employees over the age of forty in the last five years. I am 55 years old, and I am let go by IBM effective June 30, 2018. I believe that I and thousands of other employees have been discriminated against by IBM on the basis of age.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>06/18/18<br>_____   _____<br>*Date*         *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

*Charging Party Signature:* Phil McGonegal

# EXHIBIT 7

# Employee Information Package

**Attachment 2:  Separation Agreement**

You are being offered payments and benefits as part of a resource action that you otherwise would not have been entitled to receive. You will receive and be entitled to keep these payments and benefits only if you sign and comply with all terms of this Agreement. This Agreement requires you to release IBM and related parties from claims you may have as described below. This Agreement also requires you to arbitrate certain claims that are not released on an individual basis.

By accepting this Agreement and the benefits and payments it provides, you agree that if you choose to pursue certain claims that are not released under this Agreement, then such claims must be submitted to arbitration on an individual basis as provided below and may not be pursued in court.

You should thoroughly review and understand the effect of this Agreement before you accept it.

The Resource Action Summary Plan Description is the only document that describes your eligibility for the payments and benefits you are being offered under this Agreement. Any other written or oral representations, promises, or other agreements of any kind made to you in connection with your decision to accept this Agreement will not be recognized.

**1.  Definitions of certain words used in this agreement**

For purposes of this Agreement and its attachment, certain words have specific definitions.

- "Agreement" means this Separation Agreement.

- "IBM" means International Business Machines Corporation and all of its subsidiary and affiliated companies and all of their respective former or current directors, officers, employees, agents, and benefits plans (and fiduciaries, insurers or other agents of those plans), and all successors and assigns of these entities or individuals.

- "You" or "your" means you and anyone acting as your representative, successor or heir.

- "Release" means your waiver of claims as specified below.

**2.  What you release by accepting this agreement**

By accepting this Agreement, you release IBM from ALL claims that you may have against it at the time of accepting, whether or not related to your employment with IBM or the termination of your employment (EXCEPT FOR THOSE SPECIFICALLY IDENTIFIED IN SECTION 3), and including, without limitation:

- all claims arising under any federal, state, local or foreign law dealing with or regulating employment, including, but not limited to: (1) laws prohibiting discrimination and/or harassment based on race, national origin, ancestry, color, creed, religion, sex, gender, sexual orientation, gender identity and/or expression, genetic information, pregnancy, marital status, disability, medical condition, veteran status, or any other statutorily protected status, as well as claims in any forum alleging retaliation; (2) family and medical leave; (3) claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"); and (4) all waivable claims related to wages and hours, including under state or local labor or wage payment laws

- all state and local laws prohibiting discrimination on the basis of age

- claims based on contract, tort, or any other legal theory

- all claims whether or not you know about them at the time you accept this Agreement

# Employee Information Package

- any right to raise or pursue any internal appeals, including but not limited to those eligible for review under the IBM Open Door process related to a claim that you release under this Agreement

- if you have worked or are working in California, you expressly agree to waive the protection of section 1542 of the California Civil Code because you are releasing all claims, whether they are known or unknown; Section 1542 of the California Civil Code states:

  - "A general release does not extend to claims that a creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, which if known by him or her, would have materially affected his or her settlement with the debtor or released party."

  - In the event that you do not understand the waiver of your rights under section 1542 or its legal effect on you, you should talk to a lawyer.

## 3. What you do not release by accepting this agreement

By accepting this Agreement, you do not release:

- any claims that arise after the date you accept this Agreement

- any claims that by law cannot be waived by private agreement without judicial or governmental supervision, such as under the federal Fair Labor Standards Act of 1938, provided however such claims are subject to arbitration on an individual basis as described below

- any claims that IBM failed to pay wages that IBM acknowledged were due and owing at the time you accept this Agreement

- your right to file a charge with or participate in any investigation or proceeding conducted by the U.S. Equal Employment Opportunity Commission (EEOC) or other government agency; even though you can file a charge or participate in an investigation or proceeding conducted by the EEOC or other government agency, by accepting this Agreement you are waiving your ability to obtain relief of any kind from IBM to the extent permitted by law. **Notwithstanding the foregoing, you are not prohibited from receiving an award for information provided to any government agency as permitted under law.**

- your non-forfeitable rights to accrued benefits (within the meaning of sections 203 and 204 of the Employee Retirement Income Security Act of 1974) under the IBM Personal Pension Plan and the IBM 401(k) Plus Plan

- any right you may have to challenge the validity of this Agreement

- your right to enforce this Agreement and to receive the benefits and payments pursuant to the Resource Action Plan

- any claim under the Federal Age Discrimination in Employment Act of 1967 or the West Virginia Human Rights Act, provided however such claims are subject to arbitration on an individual basis as described below

- your ability to comply with any lawful subpoena or court order or taking any other actions affirmatively authorized by law.

## 4. You can take up to 30 days before accepting this agreement

You can take up to thirty (30) days from the date you received this Agreement or until your last date of employment, **whichever is longer**, to consider this Agreement and the accompanying separation program information. If you accept

# Employee Information Package

and sign (by hard copy or electronically) this Agreement before the expiration of the 30-day period, you acknowledge that you knowingly and voluntarily waived the ability to wait the full 30 days. **Employees may not sign the Agreement before their last date of employment with IBM**.

FOR EMPLOYEES WORKING IN MINNESOTA ONLY: This Agreement is not effective for FIFTEEN DAYS after you accept it. You can revoke this Agreement during that time. To revoke this Agreement, your manager or the Project Office must receive a written notice of revocation from you within that time period. You understand that if you do revoke, you will not be entitled to any payments or benefits under this Agreement or the resource action.

### 5.  Arbitration and waiver of class claims and jury trial

You agree that any and all legal claims or disputes between you and IBM under the federal Age Discrimination in Employment Act of 1967 (ADEA) or the West Virginia Human Rights Act, as well as any and all claims or disputes between you and IBM that have not or cannot be released by private agreement as a matter of law, such as under the federal Fair Labor Standards Act of 1938 (FLSA) – collectively, "Covered Claims" –  will be resolved on an individual basis by private, confidential, final and binding arbitration according to the IBM Arbitration Procedures and Collective Action Waiver (which are attached and incorporated as part of this Agreement) and under the auspices of JAMS, or if there is no JAMS office within 100 miles of your most recent assigned IBM office location, then an arbitration forum provider to be mutually agreed to by the parties. Regardless of the designated arbitration administrator, the arbitration shall be held in accordance with the JAMS Employment Arbitration Rules & Procedures. You understand and agree that you are giving up your right to a court action for Covered Claims, including any right to a trial before a judge or jury in federal or state court. This agreement to arbitrate does not apply to government agency proceedings.

To the maximum extent permitted by applicable law, you agree that no Covered Claims may be initiated, maintained, heard or determined on a class action, collective action or multi-party basis either in court or in arbitration, and that you are not entitled to serve or participate as a class action member or representative or collective action member or representative or receive any recovery from a class or collective action involving any Covered Claims either in court or in arbitration.

You further agree that if you are included within any class action or collective action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of this Agreement, including the class action or collective action waivers contained in this section, shall be decided only by a court of competent jurisdiction. Any issue concerning the arbitrability of a particular issue or claim pursuant to this section (except for issues concerning the enforceability of the class action or collective action waivers) must be resolved by the arbitrator and not a court.

This arbitration agreement shall not prohibit applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration. Your agreement to arbitrate certain claims pursuant to this Agreement shall not prohibit you from filing a charge or complaint with and seeking relief from the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state or local administrative agency concerning claims that are not released under this Agreement.

This agreement to arbitrate claims shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA").  If for any reason the FAA is held inapplicable to this Agreement, then the State of New York's law of arbitrability shall apply.

### 6. Enforceability

If any part of this Agreement other than the class action or collective action waiver is held to be invalid or unenforceable, the remaining provisions of this Agreement will not be affected in any way, except that if your release

# Employee Information Package

of claims or agreement to arbitrate Covered Claims is held to be unenforceable, then at its option IBM may seek to recover to the maximum extent permitted by law the payments and value of benefits that you received under this Agreement. If the class action or collective action waiver provisions associated with a Covered Claim are held to be invalid or unenforceable, then any class action or collective action involving such Covered Claim(s) must be brought in court and not in arbitration.

Except as otherwise noted, this Agreement will be governed by the substantive laws of New York.

By accepting this Agreement, you acknowledge that you fully understand any and all rights you have with respect to the claims you are releasing and your agreement to arbitrate Covered Claims. You agree that the payments and benefits you have or will receive under this Agreement are good and valuable consideration for entering into this Agreement. You acknowledge that you have been provided adequate time to consult with a lawyer or other advisor of your own choosing before entering into this Agreement. You further agree that you are voluntarily signing this Agreement without any threats, coercion or duress, whether economic or otherwise, and that you intend to be bound by the terms of this Agreement.

YOU ARE ADVISED TO CONSULT WITH A LAWYER BEFORE YOU SIGN THIS AGREEMENT

Employee Name (print): _____

Serial #: _____

Signature: _____

Date: _____

# Employee Information Package

**Attachment 3:  Arbitration Procedure and Collective Action Waiver (Attachment to Separation Agreement)**

IBM is committed to administering its employment policies fairly and treating all employees with respect and dignity. Occasionally, however, disagreements may arise between an individual employee and IBM or between employees in a context that involves IBM. IBM believes that the resolution of those types of disagreements is best accomplished through internal dispute resolution processes.

For many decades, IBM employees have had several options to initiate a thorough and timely review of their work-related concerns when they are unable to reach a resolution with their managers. The IBM Open Door Process is one of these options, and IBM's experience makes us confident that it is a highly effective way to resolve employee concerns. The Open-Door Process is offered as the primary dispute resolution forum for IBMers.

IBM recognizes, however, that from time to time IBM and its employees may desire an additional option to have their concerns reviewed. To that end, IBM has introduced the following Arbitration Program which is a private and confidential dispute resolution procedure in which the parties present their respective positions concerning certain claims to an impartial third-party arbitrator who determines the merits of the claims and renders a final and binding decision. The rules and procedures governing IBM's arbitration program are set forth below.

Covered Claims: Individuals who accept the payments and benefits of the Resource Action Plan are required to submit any and all "Covered Claims" to final and binding arbitration and waive their right to a court action of such claims, including any right to a trial before a judge or jury in federal or state court. "Covered Claims" are any and all legal claims or disputes between the employee and IBM under the federal Age Discrimination in Employment Act of 1967 ("ADEA") or the West Virginia Human Rights Act, as well as any and all claims or disputes that have not or cannot be released by private agreement as a matter of law (such as under the federal Fair Labor Standards Act of 1938 (FLSA)).

These Arbitration Procedures shall not prohibit applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration.

WAIVERS: TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AND IBM  AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD, OR DETERMINED ON A MULTIPARTY, CLASS ACTION BASIS OR COLLECTIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT YOU ARE NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS ACTION MEMBER OR REPRESENTATIVE, OR COLLECTIVE ACTION MEMBER OR REPRESENTATIVE, OR RECEIVE ANY RECOVERY FROM A CLASS OR COLLECTIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR ARBITRATION.

You further agree that if you are included within any class action or collective action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of any of the class action or collective action Waivers included as part of your agreement to arbitrate certain claims shall be decided only by a court of competent jurisdiction. Any issue concerning the arbitrability of a particular issue or claim (except for issues concerning the enforceability of the class action or collective action Waivers) must be resolved by the arbitrator and not a court. Your agreement to arbitrate Covered Claims does not preclude you from pursuing or participating in a class action or collective action in court where your claim is based solely on your status as a customer or an investor and does not arise out of or in any way relate to your employment relationship with the Company.

**Pre-Arbitration Dispute Resolution**

You are strongly encouraged to first resolve any Covered Claims informally through the IBM Open Door Process (Appeals@us.ibm.com) or the Project Office. If you are not satisfied and wish to pursue your matter further, then you are encouraged to request a mediation wherein you and IBM will attempt to find common ground to voluntarily resolve

# Employee Information Package

your Covered Claims with the aid of a neutral third party not employed by IBM. You can request mediation through the IBM Open Door Process by contacting Appeals@us.ibm.com. If mediation does not result in resolution of your Covered Claims, then you still have the option of pursuing arbitration by following the procedures set forth below.

**Arbitration Procedures**

Covered Claims will be resolved by arbitration conducted under the auspices of JAMS, or if there is no JAMS office within 100 miles of your most recent assigned IBM office location, then an arbitration forum provider to be mutually agreed to by the parties in writing.  Regardless of the designated arbitration administrator, the arbitration shall be held in accordance with the JAMS Employment Arbitration Rules & Procedures (and no other rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration. IBM will supply you with a printed copy of those rules upon your request. The arbitration shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing. Arbitration shall be held in the county in which you worked or work for IBM at the time the claim arose, or if not possible, in the county closest to such location. To the extent any of the terms, conditions or requirements of the arbitration procedures in this document conflict with the applicable Arbitration Rules, the terms, conditions or requirements of the procedures in this document shall govern.

In any arbitration, the parties may file, and the arbitrator shall hear and decide at any point in the proceeding motions permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine, but not motions to consolidate claims, parties or actions. The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. Arbitrators are required to issue a written award, and their award shall be final and binding. Any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction.

**Reconsideration and Review**

Either party shall have the right, within twenty (20) days of issuance of the Arbitrator's decision, to file with the Arbitrator (and the Arbitrator shall have jurisdiction to consider and rule upon) a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by law) shall then be final and conclusive upon the parties.

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

**Remedies**

You and IBM agree the arbitrator(s) is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and expert fees and costs, to the same extent as would a court under applicable law.

**Time Limits and Procedure for Initiating Arbitration**

To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

# Employee Information Package

To initiate arbitration, you must pay the equivalent of the filing fee for the court of general jurisdiction in the state where you last worked for IBM. IBM shall pay 100 percent of the required arbitration administration fee in excess of your payment.

The written demand for arbitration shall be submitted to the IBM Arbitration Coordinator, IBM Corporate Litigation, North Castle Drive, Armonk, New York 10504, with a check for your payment of the filing fee made payable to "International Business Machines Corporation."

Your written demand shall set forth the dispute, including the alleged act or omission at issue and the names of all persons allegedly involved in the act or omission; your name, address, telephone number, and email address; and your IBM employee serial number. IBM will promptly file the demand with the appropriate arbitration administrator, together with the applicable administrative fee as provided in the arbitration administrator's fee schedule.

### Representation

Any party may be represented by an attorney for purposes of arbitrating a Covered Claim. Each party is responsible for payment of its own costs and attorneys' fees, unless otherwise awarded by the Arbitrator under the standards provided by law.

### Discovery

Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party and to subpoena documents from third parties to the extent allowed by law. Requests for additional depositions or discovery may be made to the Arbitrator selected pursuant to this Agreement. The Arbitrator may grant such additional discovery if the Arbitrator finds that the party has demonstrated that it needs that discovery to adequately arbitrate the claim, taking into account the parties' mutual desire to have a speedy, less-formal, cost-effective dispute-resolution mechanism.

### Privacy and Confidentiality

Privacy and confidentiality are important aspects of arbitration. Only parties, their representatives, witnesses and necessary administrative staff of the arbitration forum may attend the arbitration hearing. The arbitrator may exclude any non-party from any part of a hearing.

To protect the confidentiality of proprietary information, trade secrets or other sensitive information, the parties shall maintain the confidential nature of the arbitration proceeding and the award. The parties agree that any information related to the proceeding, such as documents produced, filings, witness statements or testimony, expert reports and hearing transcripts is confidential information which shall not be disclosed, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision by reason of this paragraph.

### Designation of Witnesses

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

### Subpoenas

Each party shall have the right to subpoena witnesses and documents to the extent allowed by law, subject to any limitations the Arbitrator shall impose for good cause shown.

# EXHIBIT 8

**JAMS Arbitration**
**Before the Honorable Richard A. Levie**

| |
|---|
| **JOHN HOLTMAN,** |
| **Claimant,** |
| **v.** |
| **INTERNATIONAL BUSINESS MACHINES CORP.,** |
| **Respondent.** |

**Reference No. 1410008728**

## DECLARATION OF THOMAS FOWLER

I, Thomas Fowler, hereby declare as follows:

1.      I am an adult resident of Holliston, Massachusetts. I am an associate at the law firm Lichten & Liss-Riordan, P.C. I am one of the attorneys representing the Claimant in the above-captioned matter.

2.      Over the course of the pandemic, Lichten & Liss-Riordan has taken stringent measures to ensure the safety of all attorneys, staff, and clients. Specifically, the office has been closed starting in March 2020 and throughout the pandemic, and the number of individuals who are permitted to be physically present at the office has been sharply limited, especially during the periods of time that the number of COVID-19 cases have surged.

3.      Because COVID-19 cases were surging severely in Massachusetts and the rest of the country in November 2020, the firm's office was closed completely. Due to safety concerns, neither the firm's paralegals nor attorneys were working in the office

– instead, they were all working from home. Because no one was in the office, the firm's ability to mail documents via the US Postal Service was significantly disrupted.

4.    As such, while the firm was able to file the Claimant's Arbitration Demand with JAMS electronically on November 17, 2020, the disruption in the office mail logistics caused a one-day delay in the service of the Arbitration Demand on IBM by mail.

5.    Additionally, following a long illness, my father died in November 2020. His funeral took place on November 15, 2020. As a result, I was out of the office the week the demand in this case was filed.

Signed under the pains and penalties of perjury on December 8, 2021.

<u>/s/ Thomas Fowler</u>
Thomas Fowler

2

# EXHIBIT 9

**JAMS ARBITRATION BEFORE THE HON. RICHARD LEVIE**

JOHN HOLTMAN,

          Claimant,

    v.

INTERNATIONAL BUSINESS MACHINES
CORP.,

          Respondent.

Reference No. 1410008728

**RESPONDENT IBM'S MOTION TO DISMISS ARBITRATION AS UNTIMELY
PURSUANT TO THE PARTIES' SEPARATION AGREEMENT**

Respondent International Business Machines Corporation ("IBM") files this Motion to
Dismiss Arbitration as Untimely Pursuant to the Parties' Separation Agreement ("Motion") and
the attached Memorandum of Law and the exhibits thereto in support of the Motion.

WHEREFORE, for the reasons set forth in the Memorandum of Law, IBM respectfully
requests that this Motion be granted and that Claimant's claim in this matter be dismissed with
prejudice in its entirety.

Dated:  June 30, 2021                    Respectfully submitted,


                                         */s/ Craig S. Friedman*
                                         Craig S. Friedman
                                         JONES DAY
                                         1221 Peachtree Street
                                         Suite 400
                                         Atlanta, GA 30361
                                         Tel: 404-581-8412
                                         Fax: 404-581-8330
                                         csfriedman@jonesday.com

                                         Ilana Yoffe
                                         Grace Gale
                                         JONES DAY
                                         250 Vesey Street
                                         New York, NY 10281
                                         Tel: 212-326-3747
                                         Fax: 212-755-7306
                                         iyoffe@jonesday.com
                                         ggale@jonesday.com

                                         *Attorneys for Respondent IBM*

2

**PROOF OF SERVICE**

I hereby certify that on June 30, 2021, I served "Respondent IBM's Motion to Dismiss Arbitration as Untimely Pursuant to the Parties' Separation Agreement" and all attachments by email and e-filing via JAMS Access on:

Shannon Liss-Riordan
Thomas Fowler
Matthew Patton
Lichten & Liss-Riordan, P.C.
729 Boylston St.
Suite 2000
Boston, MA 02116
sliss@llrlaw.com
tfowler@llrlaw.com
mpatton@llrlaw.com

*/s/ Grace Gale*
Grace Gale

3

**App.091**

# EXHIBIT 10

**JAMS Arbitration**
**Before the Honorable Richard A. Levie**

| |
|---|
| JOHN HOLTMAN, |
| Claimant, |
| v. |
| INTERNATIONAL BUSINESS MACHINES CORP., |
| Respondent. |

Reference No. 1410008728

## CLAIMANT'S OPPOSITION TO IBM'S MOTION TO DISMISS

### I.    INTRODUCTION

Claimant John Holtman worked for IBM for more than 36 years.  See Arbitration Demand. In September 2020,[1] Claimant, who was 60 years old at the time, was terminated from his position at IBM in a "Resource Action."  In order to receive severance pay from IBM, Claimant was required to sign a separation agreement with an arbitration and class waiver provision.  See Ex. B to Arbitration Demand.  This agreement provides, in relevant part:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived.

---

[1]    Claimant learned of the Resource Action in May 2020; he worked at IBM until September 30, 2020.

The agreement includes a mailing address for the IBM Arbitration Coordinator. Claimant filed his arbitration demand with JAMS on November 17, 2020, alleging that IBM unlawfully discriminated against him on the basis of age. Claimant, through his counsel, mailed his demand to the IBM Arbitration Coordinator the following day, November 18, 2020. These events took place during the height of the COVID-19 pandemic and a week before Thanksgiving, during a period of significant and well-publicized delays and disruptions in USPS service.[2]

Despite the fact that Claimant timely initiated this arbitration with JAMS, IBM seeks to dismiss Claimant's demand on the basis of the **one-day** delay in *serving* his arbitration demand on IBM. IBM's motion must be denied for several reasons. <u>First</u>, Claimant timely filed his demand. <u>Second</u>, Claimant's delay in serving IBM is *de minimis* and warrants an exception to be made by the Arbitrator, especially given that the filing requirement is non-jurisdictional; considerations of fairness also warrant tolling the statute of limitations on Claimant's demand by a day, so as to make his claim timely. <u>Finally</u>, even if the Arbitrator finds that Claimant's demand was not timely made, Claimant can piggyback on similar age discrimination claims filed in <u>Rusis v. International Business Machines Corp.</u>, C.A. No. 1:18-cv-08434 (S.D.N.Y.).[3]

## II.    LEGAL STANDARD

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the arbitrator should accept as true the factual allegations made by Claimant. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Bell A. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)) (complaint must contain "sufficient actual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[2]    While Respondent notes that USPS did not take possession of the envelope until November 20, there is no dispute that it is postmarked November 18, 2020.

[3]    Claimant makes clear in his Arbitration Demand that his claim is the same as that set forth in <u>Rusis</u>; the demand includes the <u>Rusis</u> complaint as Exhibit A.

face'"). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true[.]" <u>Twombly</u>, 550 U.S. at 555–56. A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely[.]" <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

### III.    ARGUMENT

#### A.  Claimant Timely Filed His Demand

IBM does not dispute that Claimant timely filed the arbitration demand in this case with JAMS. Instead, IBM seeks to dismiss Claimant's demand on the basis of an alleged **one-day** delay in serving IBM with his discrimination charge. Yet IBM points to no actual evidence in support of its statement that Claimant was informed of his layoff on May 21, 2020, relying simply on a completely unsupported statement in its brief that May 21, 2020, was the date he was notified. At this early stage of the case, and based on these unsupported facts, it is improper to dismiss Claimant's arbitration demand.

Moreover, even assuming that May 21, 2020, was the date Claimant was notified, the procedure set out by IBM for initiating arbitration provides that Claimant is to submit his arbitration demand to IBM "no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim." <u>See</u> Arbitration Demand, Ex. B. It further states that "[i]f the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived." <u>Id</u>.

The Supreme Court has made clear that "rules of procedure should be liberally construed and ... 'mere technicalities' should not stand in the way of consideration of a case on its merits." <u>Torres v. Oakland Scavenger Company</u>, 487 U.S. 312 (1988) (quoting <u>Foman v. Davis</u>, 371 U.S.

3

178, 181 (1962)).  "Sometimes, as with the federal procedural rules, a separate rule specifically grants to a court the power to extend time limits imposed by other rules. [] In other instances, however, courts construe absolute-sounding language (say, in a statute of limitations) against a background of judicially created exceptions." <u>Berklee College of Music v. Berklee Chapter of Massachusetts Fedn. of Teachers, Loc. 4412, AFT, AFL-CIO</u>, 858 F.2d 31, 33 (1st Cir. 1988) (citing <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 392 (1982); <u>Bailey v. Glover</u>, 88 U.S. (21 Wall.) 342, 348–49(1874); <u>Cerbone v. International Ladies' Garment Workers' Union</u>, 768 F.2d 45, 48–50 (2nd Cir.1985)).  Specifically, "shall" language such as the one used in IBM's provision can be interpreted by the arbitrator to permit late filing and/or tolling of the statute of limitations.  <u>Id</u>.

The agreement does not, by its terms, categorically bar a claim that has been submitted outside the statute of limitations.  It provides, rather vaguely, that such a claim "shall be deemed waived."  <u>See</u> <u>Berklee</u>, 858 F.2d at 33 ("it is not difficult to find other, more specific language the parties might have used had they intended to deprive the arbitrator of the power to make '*de minimis*' exceptions. As the arbitrator here noted, some labor contracts do contain express provisions that noncompliance with a particular time limit means the grievance will 'be considered settled.'").  Here, the agreement is even less clear than the one in <u>Berklee</u>, which provided that time limits "may only be waived by mutual written consent".  The instant agreement provides that an untimely claim "shall be deemed waived," but does not specify by whom – a reasonable reading here is that the Arbitrator makes the determination as to whether the claim is waived.  Here, the Arbitrator should find that Claimant's demand was timely made.

4

**B.  Claimant's Delay in Serving IBM is *De Minimis***

Assuming (again without any support in the factual record) that May 21, 2020, is the date Claimant's claim accrued, any delay in serving IBM was *de minimis*.  There is no dispute that Claimant submitted his demand to JAMS within the 180-day window; the **only** issue is whether the fact that Claimant mailed a copy of the filed demand to IBM one day outside this window would warrant dismissal of his claim.  It is well established that an arbitrator can make an exception for a *de minimis* departure from the arbitration agreement's terms in similar situations. See Berklee, 858 F.2d at 33 ("the contract's statement that the time limits "may only be waived by mutual written consent," is less clear than may at first appear. . . this 'exceptions' clause would not apply where the arbitrator, in effect, excused noncompliance not because of 'waiver,' but because of, say, inequity or the *de minimis* nature of the violation."); Crafts Precision Industries, Inc. v. Lodge No. 1836 of Dist. 38, Intern. Ass'n of Machinists and Aerospace Workers, 889 F.2d 1184, 1185 (1st Cir. 1989) ("We begin by repeating what we said in Berklee . . . Although an arbitrator's decision must fall within the bounds of his contractually delegated authority, that authority typically (and certainly here) includes the power to interpret the contract itself."); Baltimore County v. Baltimore County Dep. Sheriffs, 2016 WL 687503, at *8–9 (Md. Spec. App. Feb. 18, 2016) ("the Berklee court determined that the language in the parties' contract regarding the waiver of time limits applied only to waivers by the parties themselves.  It was not intended to apply to the arbitrator's waiver of limits for reasons of fairness or *de minimis* errors . . . § 4.5 contains no language circumscribing the arbitrator's ability to waive time limits.") (internal citations omitted).

In addition to the minimal nature of Claimant's purported delay, fairness concerns weigh against dismissing his demand as untimely.  IBM's arbitration procedures required Claimant to

**mail** his demand to the IBM Arbitration Coordinator.  This procedural hurdle made the

notification requirement more cumbersome than it needed to be, particularly given the email-

based nature of IBM's business, the extensive use of email in JAMS proceedings, and the fact

that most, if not all, workplaces had been operating remotely last fall.[4]  The fact that IBM faults

Claimant for an untimely submission by mail is somewhat ironic – if IBM's goal was to receive

prompt notice of arbitration demands like Claimant's, the logical course of action would have

been to require service **by email**, which can be made instantaneously.[5]  In light of all these

circumstances, an exception to the 180-day filing deadline is warranted.[6]  See, e.g., Pioneer Inv.

---

[4]    Like most other law firms, during the COVID-19 pandemic, Lichten & Liss-Riordan has switched entirely to remote work. In November 2020, during the time period at issue, LLR attorneys and staff were working remotely.  No attorneys or staff members were regularly present in the office, and the firm was not using mail on a regular basis to conduct business – service was made by email for most matters, and filings were made electronically.

[5]    In the course of the pandemic, the USPS reduced its service, and has implemented changes resulting in well-documented delays. See Natl. Assn. for Advancement of Colored People v. U.S. Postal Serv., 496 F. Supp. 3d 1, 7 (D.D.C. 2020), enforcement granted,  WL 6441317 (D.D.C. Oct. 27, 2020), and appeal dismissed, 20-5375, 2021 WL 672392 (D.C. Cir. Feb. 10, 2021) (noting reductions in "late trips" and "extra trips" in 2020 and resulting impact on service levels); Richardson v. Trump, 496 F. Supp. 3d 165, 179 (D.D.C. 2020), appeal dismissed sub nom. Richardson v. Biden, 20-5367, 2021 WL 672397 (D.C. Cir. Feb. 8, 2021) ("[s]ome parts of the country saw on-time delivery drop by 15-20 percentage points in the weeks following Mr. DeJoy's July 2020 changes"); Jones v. U.S. Postal Serv., 488 F. Supp. 3d 103, 123 (S.D.N.Y. 2020), order clarified, 2020 WL 6554904 (S.D.N.Y. Sept. 29, 2020) (finding that 2020 mail procedures have slowed mail service).

[6]    In an analogous situation, an arbitrator developed a process for filing late forms:

> The form established three categories to justify an extension of time: (1) "Hurricane Floyd", which permitted petitioners to indicate that they "resid[ed] and/or farm[ed] in one of the North Carolina counties declared by the federal government to be a disaster area as a result of Hurricane Floyd" and that they were "unable to submit [their] claim before the October 12, 1999 deadline because of this disaster;" (2) "Homebound", which permitted petitioners to indicate that they "became homebound due to illness and/or physical disability, and remained homebound, during the time-period beginning on August 12, 1999, and ending on October 12, 1999;" and (3) "Other Extraordinary Circumstances Beyond Your

6

Services Co. v. Brunswick Associates Ltd. Partn., 507 U.S. 380, 388 (1993) ("courts [are] permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."); see also Zipes, 455 U.S. at 398 (noting "remedial purpose" of anti-discrimination law).

Moreover, the Supreme Court has made clear that timely filing of a charge of discrimination is not a jurisdictional prerequisite, but rather "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes, 455 U.S. at 393. As the court explained in Zipes, "[b]y holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement **subject to waiver as well as tolling** when **equity so requires**, we honor the **remedial purpose of the legislation** as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer. Id. at 398. Subsequent decisions have adopted this reasoning. See Ft. Bend County, Texas v. Davis, 139 S. Ct. 1843, 1846 (2019) ("Title VII's charge-filing instruction is not jurisdictional, a term generally reserved to describe the classes of cases a court may entertain []or the persons over whom a court may exercise adjudicatory authority []. Prerequisites to suit like Title VII's charge-filing instruction . . . are . . . claim-processing rules that must be timely raised to come into play."). In other words, "[a] statutory condition that requires a party to take some action before filing a lawsuit is not automatically 'a *jurisdictional* prerequisite to suit.'" Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010) (quoting Zipes, 455 U.S. at 393).

For these reasons, the Arbitrator should find that Claimant's demand is not subject to dismissal as his one-day delay in serving IBM was *de minimis*.

---

Control", which served as a catch-all category.

Pigford v. Veneman, 2001 WL 1426685, at *1 (D.D.C. Nov. 13, 2001).

### C. Claimant Can Piggyback on Other Timely Filed Claims

Even if the Arbitrator declines to hold that Claimant's demand is timely, Claimant can "piggyback" on other timely filed age discrimination claims against IBM, including those pending in the Rusis case. In effect, the piggybacking rule would indicate that Claimant's period to file was tolled by the filing of the EEOC charges that predicated the Rusis case. "The single filing (or 'piggybacking') rule is a judge-made exception to the requirement that plaintiffs exhaust their administrative remedies prior to filing suit." Ruehl v. Viacom, Inc., 500 F.3d 375, 385–86 (3d Cir. 2007) (citing Commun. Workers of Am. v. New Jersey Dept. of Personnel, 282 F.3d 213, 217 (3d Cir. 2002)). "[A] charge will be adequate to support piggybacking under the single filing rule if it contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit if filed." Howlett v. Holiday Inns, Inc., 49 F.3d 189, 195 (6th Cir. 1995). "A plaintiff may piggyback on another plaintiff's charge provided '(1) the relied upon charge [to which he is piggybacking] is not invalid, and (2) the individual claims of the filing and non-filing plaintiff [the named filing plaintiff and the piggybacking plaintiff] arise out of similar discriminatory treatment in the same time frame.'" Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001 (quoting Grayson v. K Mart Corp., 79 F.3d 1086, 1101-1102 (11th Cir. 1996).

Importantly, "an individual may piggyback onto another's EEOC charge even if her claims accrued after the date on which the charge was filed. Rusis, 2021 WL 1164659, at *31; Anson v. Univ. of Tex. Health Sci. Ctr. at Hous., 962 F.2d 539, 543 (5th Cir. 1992) ("We hold simply that a district court does not err in denying intervention to one whose claim had not yet arisen at the time of the filing by another of an administrative charge which alleges only past personal complaints regarding one who employs as many as 2,500 people.").

In his arbitration demand, Plaintiff makes clear that his age discrimination claims are substantially the same as those made in Rusis.  In Rusis, the court held that an individual "may piggyback . . . onto the properly filed charge of an individual who subsequently commenced a suit in reliance on that charge[.]"  Rusis, 2021 WL 1164659, at *17.[7]  The court further clarified that "the Rusis/Gerrits charges . . . permit piggybacking [] for former IBM employees who were terminated as part of an IBM Resource Action []."  Id. at *20.  Claimant is therefore able to "piggyback" onto the claims in Rusis.

## IV.    CONCLUSION

For the foregoing reasons, Respondent IBM's Motion to Dismiss should be denied.


Respectfully Submitted,

JOHN HOLTMAN,

By his attorneys,

/s/ Michelle Cassorla
Shannon Liss-Riordan
Michelle Cassorla
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; mcassorla@llrlaw.com

Dated:        July 14, 2021

---

[7]    The court in Rusis declined to address whether arbitration claimants can use piggybacking to toll their filing periods, in light of the class action waiver in their separation agreements, so this remains an open question.  See Rusis, 2021 WL 1164659, at *7 ("regardless of whether it would be more convenient for the Court to decide the piggybacking issue at this juncture, the valid class and collective action waiver in the Arbitration Opt-Ins' separation agreements must be given effect").  Nevertheless, dismissal of Claimant's demand due to untimeliness is improper at this juncture.

9

**App.101**

# EXHIBIT 11

In the Matter of Arbitration between

**JOHN HOLTMAN,**

                **Claimant**

**and**

**INTERNATIONAL BUSINESS**
**  MACHINES CORP.**

               **Respondent.**

**JAMS Ref. No. 1410008728**

**ORDER of DISMISSAL[1]**
**(November 19, 2021)**

In this arbitration, John Holtman ("Claimant" or "Mr. Holtman") asserts that International Business Machines Corp. ("IBM") terminated him because of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (hereafter, the "ADEA"). The arbitration was brought pursuant to an arbitration clause in the separation agreement entered into by IBM and Mr. Holtman at the time of Claimant's separation from IBM (the "Separation Agreement").[2]

---

[1] For efficiency and economy, this Order of Dismissal recites only those facts and discusses only those legal arguments that the Arbitrator considers necessary to establish the basis for resolution of IBM's motion. To the extent that any factual assertion or legal argument is not specifically mentioned herein, the Arbitrator has decided that it is either not persuasive and/or not essential to establish the basis for this Order of Dismissal.

[2] The Separation Agreement is attached as Exhibit B-Attachment 2 to Claimant's Arbitration Demand (the "Demand").

IBM served a motion to dismiss the arbitration on the ground that Claimant failed to commence this arbitration in a timely manner pursuant to the provisions of the Arbitration Procedures attached to the Separation Agreement. (Demand, Exhibit B, Attachment 3 at p. 31). Claimant opposed the Motion and IBM served a reply. Additionally, exhibits were submitted in connection with the pending Motion. After review of all submissions, the Arbitrator concludes that the Motion to Dismiss should be granted for the reasons stated below.[3]

## I.    Procedural History

Claimant's Demand using a JAMS form is dated November 17, 2020 and has a Proof of Service noting that it was addressed to the IBM Arbitration Coordinator and was deposited in the U.S. mail that same day. IBM's Response to the Demand included an assertion that the Demand was untimely. In support of its untimeliness argument, IBM asserted that Claimant had been provided notice of his termination on May 21, 2020 but had not served his Demand on IBM until November 18, 2020, which is more than the 180-day period established by the Arbitration Procedures in the Separation Agreement applicable here.

On June 2, 2021, the Arbitrator held a telephonic preliminary conference with the parties. That same day, the Arbitrator issued Order # 1. As reflected in Order # 1: (a) the parties agree that the claim in this arbitration is arbitrable; (b) the applicable substantive law is federal law under the

---

[3] The Arbitrator recognizes and appreciates the high quality of the written presentations by all counsel throughout these proceedings. It follows that this Order of Dismissal is based solely upon the Arbitrator's review of the submissions and is not a reflection of the quality of the parties' respective presentations.

2

ADEA, including the law of the Fourth Circuit and other Circuits; and (c) the proceeding is governed by the JAMS Employment Arbitration Rules & Procedures and IBM's Arbitration Procedures.

## II.    Facts and the Separation Agreement

Claimant was terminated from his position at IBM in a "Resource Action." (Opp. at 1 n.1). IBM asserts that Claimant received notice of the Resource Action on May 21, 2020. (Reply Ex. 1 - Declaration of Diane Kennedy ¶ 8).

Thereafter, Claimant signed a Separation Agreement which included "an arbitration clause as a part of a severance agreement. . . ." (Demand at 3; Ex. B – Attachment 2). The Separation Agreement included a release by Claimant of all claims against IBM, but permitted claims under the ADEA. (*id.* at ¶¶ 2 & 3). The Separation Agreement also provided that any ADEA claim would "be resolved on an individual basis by private, confidential, final and binding arbitration [at JAMS]" and that "the IBM Arbitration Procedures and Collective Action Waiver" (the "Arbitration Procedures") would apply to such an arbitration. (*id.* at ¶ 5).

IBM's Arbitration Procedures include a process and deadline for initiating an arbitration of a Covered Claim. Under the procedures, Claimant agreed to initiate an arbitration by

> *submit[ting] a written demand for arbitration to the IBM Arbitration Coordinator* [located within "IBM Corporate Litigation" at an address in Armonk, New York] no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.

3

(Ex. B, Attachment 3 at p. 31)(emphasis supplied).. The Arbitration Procedures are very explicit that, "[i]f the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived" and that "[t]he filing of a charge or complaint with a government agency … shall not substitute for or extend the time for submitting a demand for arbitration." (*id.*). Under the procedures, after the IBM Arbitration Coordinator receives the demand, IBM "file[s] the demand with the appropriate arbitration administrator." (*id.* at p. 32).

As noted above, Claimant's Demand was dated November 17, 2020; however, despite the proof of service, according to the USPS tracking label it was not placed into the possession of the Postal Service until November 18, 2020. (Mot. to Dismiss, Ex. 1). Indeed, Claimant notes that the Demand was mailed to the IBM Arbitration Coordinator on November 18, 2020. (Opp. at 2).

### III. Applicable Law

The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age" (29 U.S.C.A. § 623(a)(1)), but there are certain prerequisites to filing a lawsuit in court alleging a claim under the ADEA. The ADEA requires that claimants first file a charge with the EEOC within a prescribed time period. *See id.* § 626(d). For a person like Claimant who was employed in North Carolina the period for filing an EEOC charge is 180 days.[4]

———————————————

[4] IBM asserts, without dispute, that Claimant was employed in North Carolina and that the applicable period for filing in North Carolina is 180 days. (Response at 1).

4

Under the ADEA, the limitations period begins to run from the point in time that the employee receives notice of the alleged unlawful employment practice. *See Hamilton v. 1st Source Bank*, 928 F.2d 86, 88 (citing cases)(4th Cir. 1990) (*en banc*). Courts in the Fourth Circuit have strictly construed statutes of limitations for filing charges both with the EEOC and Title VII charges. *See, e.g., Harvey v. New Bern Police Dep't*, 813 F.2d 652, 655 (4th Cir. 1987); *Anderson v. Am. Airlines, Inc.*, 2018 WL 4258505, at *2 (W.D.N.C. Sept. 5, 2018); *Bond v. Potter*, 348 F. Supp.2d 525, 529 (M.D.N.C. 2005); *Kimes v. Laboratory Corp. of American, Inc.*, 313 F. Supp.2d 555, 560 (M.D.N.C. 2004).

One basis on which to move for dismissal under Fed. R. Civ. Pro. 12(b)(6) is the failure to timely file a claim. *See Walker v. Pheasant Ridge Senior Living*, 2018 WL 3539444, at *2, *3 (W.D. Va. July 23, 2018) (granting 12(b)(6) motion to dismiss ADEA claim where plaintiff "fail[ed] to timely file a charge" with the EEOC and "failed to timely file" federal suit within the applicable statutes of limitations).

## IV.    Arguments of the Parties

IBM argues that the Arbitration should be dismissed because Claimant failed to timely mail its Demand to the IBM Arbitration Coordinator. IBM's argument is as follows:

(i) Claimant received notice of his termination on May 21, 2020.

(ii) Under the ADEA, Claimant would have had 180 days from May 21, 2020 – i.e., until November 17, 2020 – to file a charge with the EEOC.

(iii) As Claimant acknowledged, the Demand was not mailed to the IBM Arbitration Coordinator until November 18, 2020.

5

(iv) November 18, 2020 was one day after expiration of the limitations period.

(v) Failure to submit a timely demand waived a claim.

(vi) Arbitrators are required to enforce arbitration agreements as written. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Santoro v. Accenture Fed. Servs., LLC*, 748 F.3d 217, 221 (4th Cir. 2014).

In opposing IBM's Motion to Dismiss, Claimant argues that:

(i)      IBM has not submitted proof that he received notice of his termination on May 21, 2020.

(ii)      " 'rules of procedure should be liberally construed'" and "'mere technicalities should not stand in the way of consideration of a case on its merits' " [Opp. at 3 (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988) (some internal quotation marks omitted)].

(iii)      "[t]he agreement does not, by its terms, categorically bar a claim that has been submitted outside the statute of limitations. It provides, rather vaguely, that such a claim 'shall be deemed waived.'" (Opp. at 4).

(iv)      the "shall be deemed waived" language is ambiguous because it "does not specify by whom – a reasonable reading here is that the Arbitrator makes the determination as to whether the claim is waived." [(*id.* at 4) (citing *Berklee Coll. of Music v. Berklee Chapter of Mass. Fed'n of Teachers., Loc. 4412, AFT, AFL-CIO*, 858 F.2d 31, 32 (1st Cir. 1988) ("*Berklee*")].

6

(v)    where the departure from the time limit is *de minimis*, arbitrators are permitted to depart from the terms of the arbitration agreement, particularly given fairness concerns, including the difficulty of mailing the Demand during the pandemic. [Opp. at 5-7 (citing cases, including *Berklee*)].

(vi)    even if the Arbitrator finds that the Demand was untimely, the Arbitrator should follow the "piggybacking rule" and find that Claimant's limitations period was tolled by the filing of the EEOC charges in *Rusis v. IBM* (No. 18-cv-8434, S.D.N.Y.).

## V.    Discussion

The Arbitrator finds that Claimant's failure to timely submit his Demand to the IBM Arbitration Coordinator requires dismissal of this Arbitration. In essence, Claimant did not get his Demand to the IBM Arbitration Coordinator in a timely fashion and the Arbitrator reads the Arbitration Agreement as unambiguously setting the procedure for initiating a demand and there are no reasons presented that would warrant excusing Claimant's failure to submit a timely demand.

The record presented here establishes that Claimant was notified on May 21, 2020 and did not mail his Demand until November 18, 2020, which was one day after the time period expired for submitting a Demand.

With respect to Claimant's assertion of lack of proof as to notice to Claimant, the fact is that IBM submitted the Kennedy Declaration attesting to the May 21 date. Moreover, Claimant submitted no compelling or persuasive evidence disputing the May 21 notice date.

7

The Arbitrator disagrees with Claimant's assertion that the Arbitration Procedures are ambiguous. The Arbitration Procedures are very clear that "[i]f the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived." (Demand, Ex. B at 28-29). This language means that untimely claims are waived.

Claimant argues that, IBM's Arbitration Procedures are ambiguous because, while it states that an untimely claim "shall be deemed waived," it does not specify by whom the waiver is to be determined. The Arbitrator finds this argument to be non-persuasive in light of the clear and unambiguous language of the Agreement.

Claimant argues that under Supreme Court precedent, the timely filing of a charge is not jurisdictional and that it is instead "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." [Opp. at 7 (internal quotation marks omitted)]. The issue here is whether Claimant complied with the Arbitration Procedures and what are the consequences of that failure. He did not comply with the Arbitration Procedures and the Arbitration Procedures unambiguously set forth the consequences of that failure – waiver of the claim. That ends the inquiry. Claimant has not provided any persuasive arguments (Opp. at 5-6) even arguably supporting any finding of a legal, factual or equitable nature to excuse the untimely submission of the Demand.[5]

---

[5] The *Berklee* case, on which Claimant relies, does not compel a different conclusion. That case stands for the unremarkable proposition that in the absence of clear terms in a collective bargaining agreement ("CBA") requiring strict enforcement of a statute of limitations, arbitrators have discretion to "overlook *de minimis* violations" of that agreement. (858 F.2d at 32). The CBA

8

Claimant's invocation of the "piggybacking doctrine" is similarly misplaced. (Opp. at 8-9). Under that judge-made exception to the requirement that ADEA plaintiffs exhaust their remedies, courts have tolled the filing of EEOC charges of individual plaintiffs where another's charge "contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit if filed." *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995).[6]

There are several reasons to reject application of the piggybacking doctrine to excuse Claimant's failure to timely provide notice. The issue here is whether Claimant complied with the terms of the Arbitration Procedures, not whether his time to file a charge with the EEOC should be tolled under a judge-made exception to administrative prerequisites. Indeed, as the *Rusis* court itself noted, because Claimant was not required to file an EEOC charge "the piggybacking doctrine is wholly inapplicable in the arbitration context." *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 193 (S.D.N.Y. 2021).

---

required that certain grievances be filed within 10 days after the grievance occurred. However, unlike IBM's Arbitration Procedures here, the CBA "did not specify the legal consequences of a late filing ...." (*id.*).

[6] "A plaintiff may piggyback on another plaintiff's charge provided '(1) the relied upon charge [to which he is piggybacking] is not invalid, and (2) the individual claims of the filing and non-filing plaintiff [the named filing plaintiff and the piggybacking plaintiff] arise out of similar discriminatory treatment in the same time frame.'" *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) [quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1101-02 (11th Cir. 1996)].

9

In short, the Arbitrator does not agree that the piggybacking doctrine can be applied to modify the terms of the parties' agreement.

### VI.    Conclusion

For the foregoing reasons, IBM's motion to dismiss is granted and this arbitration is dismissed with prejudice.[7]

So ordered.

*Richard A. L*
_____
Hon. Richard A. Levie (Ret.)
Arbitrator

_____

[7] To the extent that any argument has not been addressed in this Order of Dismissal, it has been considered and either rejected or found unnecessary to a determination of the issues in contention. This Order of Dismissal resolves all claims and defenses asserted in this proceeding.

10

## <u>PROOF OF SERVICE BY E-Mail</u>

Re: Holtman, John / International Business Machines Corp. (IBM)
Reference No. 1410008728

I, Teresa Menendez, not a party to the within action, hereby declare that on  November 19, 2021, I

served the attached Order of Dismissal (November 19, 2021) on the parties in the within action by electronic

mail at Washington, DISTRICT OF COLUMBIA, addressed as follows:

Shannon Liss-Riordan Esq.
Thomas P. Fowler Esq.
Michelle Cassorla Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston St.
Suite 2000
Boston, MA   02116
Phone: 617-994-5800
sliss@llrlaw.com
tfowler@llrlaw.com
mcassorla@llrlaw.com
  Parties Represented:
  John Holtman

Craig S. Friedman Esq.
Jones Day
1420 Peachtree St NE
Suite 800
Atlanta, GA   30309
Phone: 404-521-3939
csfriedman@jonesday.com
  Parties Represented:
  International Business Machines Corporation

Ilana R. Yoffe Esq.
Grace B. Gale Esq.
Jones Day
250 Vesey St.
New York, NY   10281
Phone: 212-326-3939
iyoffe@jonesday.com
ggale@jonesday.com
  Parties Represented:
  International Business Machines Corporation

Kyle M. Everett Esq.
Jones Day
51 Louisiana Avenue NW
Washington, DC   20001
Phone: 202-879-3939
keverett@jonesday.com
  Parties Represented:
  International Business Machines Corporation

I declare under penalty of perjury the foregoing to be true and correct. Executed at Washington,

DISTRICT OF COLUMBIA on  November 19, 2021.

*Teresa Menendez*
_____
Teresa Menendez
JAMS
tmenendez@jamsadr.com

# EXHIBIT 12

**JAMS Arbitration**
**Before the Honorable Richard A. Levie**

---

JOHN HOLTMAN,

      Claimant,

  v.

INTERNATIONAL BUSINESS MACHINES
CORP.,

      Respondent.

Reference No. 1410008728

---

## CLAIMANT'S MOTION FOR RECONSIDERATION

### I.    INTRODUCTION

On November 19, 2021, the Arbitrator entered a ruling granting IBM's motion to dismiss Claimant's arbitration demand as untimely. As set out in Claimant's opposition brief, Claimaint **did** in fact timely file his arbitration demand with JAMS; the only transgression that IBM claims is that he should have mailed a copy of the demand to IBM the same day he filed it, rather than the next day.  At the time Claimant's arbitration demand was filed, in November 2020, attorneys and staff at Lichten & Liss-Riordan were working remotely due to the COVID-19 pandemic. There were no staff members present in the office, and there was no mechanism for regularly sending out correspondence by mail. (Fowler Decl. ¶¶ 1-4, attached) Whereas Claimant's Counsel could timely effectuate an online filing, mailed submissions were delayed by the pandemic and the shift to remote work.  Service of an arbitration demand is certainly not jurisdictional, and the Arbitrator was free to, and indeed should have, recognized this

demand as timely filed, even though it was not mailed out to IBM until the next day. (Even had it been mailed out the same day it was filed, timing of mail deliveries is uncertain, and especially has been during the pandemic, so IBM cannot even claim any prejudice whatsoever based upon the demand having been mailed the day after it was filed.)  In addition, there are several other reasons the Arbitrator should reconsider the Order of Dismissal.

First, Claimant **did** timely file his demand with JAMS, meaning that his filing was not late even under IBM's interpretation of the limitations period of 180 days from the date that Claimant was notified of his termination by IBM.

Second, while the Arbitrator held that the Arbitration Agreement's limitations period was clear and that the Arbitrator could not deviate from those clear terms, Claimant respectfully submits that this conclusion is incorrect. The Arbitration Agreement is not at all clear as to what the limitations period actually is. As will be explained below, there are two plausible interpretations of the Arbitration Agreement's timing provision. Under one interpretation, Claimant had 180 days from the date that he was notified of his termination to submit an arbitration demand (the same amount of time that he would have to file an EEOC charge), and under the second interpretation, Claimant would have until the time that he would have to file an ADEA claim in court (which would exceed the 180 days that he would have to file an EEOC charge).

More specifically, although the Arbitration Agreement states that "if the claim is one which must first be brought before a government agency, [it must be submitted] no later than the deadline for the filing of such a claim," Arbitration Agreement at 31-32, Ex. B to Arb. Demand, nowhere does the arbitration agreement actually clarify whether it

means the deadline for the filing of an EEOC charge or the deadline for filing a lawsuit asserting a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 626 *et seq.*, in court. If the latter interpretation applies, November 17, 2020 was actually not the deadline for submitting Claimant's arbitration demand (which must then be considered timely). Because the Arbitration Agreement is ambiguous, it must be construed in Claimant's favor as the non-drafter, meaning that the Arbitrator must apply the interpretation that renders his claim timely. See Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 711 (4th Cir. 2001). Indeed, where there is at least a plausible interpretation to allow claimants' claims to proceed in arbitration, arbitrators are typically reluctant to dismiss claims on timeliness grounds. See Berklee College of Music v. Berklee Chapter of Massachusetts Fedn. of Teachers, Loc. 4412, AFT, AFL-CIO, 858 F.2d 31, 33 (1st Cir. 1988).

Third, IBM's urged interpretation of the Arbitration Agreement's timing provision would impermissibly truncate the ADEA limitations period by requiring Claimant to submit his arbitration demand within 180 days of the date that IBM notified him of his termination, even though he would have longer than 180 days to file an ADEA claim in court. See 29 U.S.C. §§ 626(d)(1) and (e). Courts and the EEOC have consistently taken the position that the timing schemes contained in discrimination statutes such as the ADEA are substantive rights that cannot be abridged by contract. See, e.g., Thompson v. Fresh Products, LLC, 985 F.3d 509, 521 (6th Cir. 2021); Thompson v. Fresh Products, LLC, EEOC Brief, 2020 WL 1160190, at *19-23 (6th Cir. March 2, 2020). Abridging the ADEA limitations period in this manner also violates JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, Standard No. 1.

3

See https://www.jamsadr.com/employment-minimum-standards (providing that all statutes of limitations under applicable statutes must remain available in arbitration.)

Fourth, the Arbitrator incorrectly determined that Claimant could not utilize the piggybacking rule. Under this rule, plaintiffs may file claims of discrimination years after they suffered discrimination by "piggybacking" onto earlier-filed claims, which put the company on notice of allegations that it engaged in illegal discrimination that affected a broad class of workers. See Tolliver v. Xerox Corp., 918 F.2d 1052, 1057-59 (2d Cir. 1990); Holowecki v. Federal Exp. Corp., 440 F.3d 558, 565-70 (2d Cir. 2006). This rule thus effectively extends the statute of limitations for plaintiffs bringing discrimination claims, where earlier classwide charges of discrimination have been filed against the company.  While Claimant would have been able to "piggyback" onto an earlier-filed class action age discrimination case against IBM (without any concern regarding timeliness of his claim) in court, the Arbitrator concluded that the Arbitration Agreement does not allow for such "piggybacking," effectively truncating the ADEA limitations period. Again, the ADEA limitations period may not be abridged by contract in this manner.

Fifth, the Arbitrator erred by not applying the doctrine of equitable tolling, despite the fact that fairness considerations clearly counsel in favor of permitting Claimant to proceed with his ADEA claim. The Arbitration Agreement empowers the Arbitrator to award in arbitration the full remedies that would be available to the Claimant in court. See Agreement at 31-32, Ex. B to Arb. Demand (emphasis added). Equitable tolling or equitable modification are frequently used as remedies under discrimination statutes like the ADEA in court. See, Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393

(1982); <u>Berklee College of Music</u>, 858 F.2d at 33. As such, the Arbitrator should have utilized this doctrine to allow Claimant to pursue his claim, which would be in the interest of fairness.

## II.   LEGAL STANDARD

The IBM Arbitration Procedures, incorporated in Claimant's Separation Agreement, provide that "[e]ither party shall have the right, within twenty (20) days of issuance of the Arbitrator's decision, to file with the Arbitrator . . . a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond." <u>See</u> Arbitration Agreement at 27. "The Arbitrator thereupon shall reconsider the issues raised by the Motion, and, promptly, either confirm or change the decision." <u>Id.</u>

Likewise, under Fed. R. Civ. P. Rule 59(e), the Arbitrator may reconsider the Order of Dismissal "to correct a clear error of law or prevent manifest injustice." <u>Pacific Ins. Co. v. American Nat. Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998). Additionally, under Fed. R. Civ. P. Rule 60 the Arbitrator may grant reconsideration for:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Whether under the Arbitration Agreement, Rule 59(e), or Rule 60, reconsideration of the Order of Dismissal is justified.

5

## III.    ARGUMENT

### A.    Claimant Timely Filed His Arbitration Demand

IBM does not dispute that Claimant filed the arbitration demand in this case with JAMS in a timely fashion. Instead, IBM seeks to dismiss Claimant's arbitration demand on the basis that he improperly mailed his demand to IBM the next day after filing.  This alleged single day delay of service on IBM, however, is not jurisdictional and does not operate to automatically bar his claims. In court, claims are routinely allowed to proceed where a complaint is timely filed but then not immediately served, or sometimes even when a complaint itself is not timely submitted. See Cooperwood v. Farmer, 315 F.R.D. 493, 497-99 (N.D. Ill. 2016) (refusing to dismiss a complaint where service of the complaint on the defendant was delayed by nine months); Sowers v. U.S., 141 F. Supp. 3d 471, 475-76 (E.D. Va. 2015) (refusing to dismiss an amended complaint even where the plaintiff filed it three weeks past the court's deadline). Here, the Arbitration Agreement was timely filed with JAMS with the required filing fee submitted, and there was a one day delay in serving the filed demand. That one-day delay of service does not justify dismissing Claimant's entire case, especially where the Arbitration Agreement itself states that its purpose is to "have a speedy, less-formal, cost-effective dispute-resolution." See Arbitration Agreement at 32, Ex. B to Arb. Demand. IBM's reliance on this technicality (that the demand wasn't served on IBM the same day that it was filed with JAMS), turns against the terms of the Arbitration Agreement and does not justify dismissal.[1]

---

[1]    Notably, there is a stark contrast between IBM's mailing requirement and the prevailing standard for conducting business electronically. The procedure for notifying IBM of Claimant's intent to pursue arbitration required him to **mail in** his arbitration

6

To briefly reiterate what took place in this case, IBM contends that Claimant was notified that he would be laid off May 21, 2020, and that he had 180 days from that date to submit his arbitration demand, which IBM asserts passed on November 17, 2020. Claimant **did** initiate his arbitration with JAMS on November 17, 2020. What IBM now complains of is that Claimant mailed the demand to IBM the next day, rather than the same day it was electronically filed.  At the time, Claimant's counsel's office was closed due to the COVID-19 lockdown; also, at that time, Claimant's counsel Thomas Fowler was out of the office due to the death of his father.

In granting IBM's Motion to Dismiss, the Arbitrator determined that "[t]he Arbitration Procedures are very clear that if the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived."  See Order at 8 (citing Arbitration Procedures, Ex. B to Demand). However, the terms of the Arbitration Agreement are anything but clear. If anything, the Arbitration Agreement can reasonably be interpreted to provide a deadline for filing the arbitration demand based on the ADEA's deadline to file suit in court: 90 days after an EEOC notice of right to sue.

The procedure set out by IBM for initiating arbitration provides:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making **or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim**. If the demand for

_____

demand to the IBM arbitration coordinator, and the agreement did not provide for serving it electronically. It is noteworthy that: (1) Claimant could initiate his demand by filing it online with JAMS; (2) his interactions with IBM, including signing his separation agreement, took place electronically; and (3) Claimant's firm (again, like most others around the country) had been largely conducting business electronically, particularly in light of the pandemic, as courts, administrative offices, and law firms remained closed and work was conducted remotely. See Fowler Decl. ¶¶ 1-5.

7

arbitration is not submitted in a timely manner, the claim shall be deemed
waived. The filing of a charge or complaint with a government agency or the
presentation of a concern through the IBM Open Door Program shall not
substitute for or extend the time for submitting a demand for arbitration.

See Arbitration Agreement at 31-32, Ex. B to Arb. Demand (emphasis added)
(emphasis added). Critically, however, where the Arbitration Agreement requires that
the arbitration demand be submitted "no later than the deadline for the filing of such a
claim," it does not clarify which filing deadline to which it refers. This phrase could be
plausibly interpreted to mean that the arbitration demand must be filed within the 180
days that Claimant had to file a charge with the EEOC (as IBM asserts), or that the
arbitration demand must be filed within the time that the Claimant had to file such a
claim in court.

Therefore, aside from the fact that Claimant **did** timely initiate the arbitration even
under the 180 day deadline by filing the demand with JAMS, the Arbitrator should find
that the limitations period was actually the time that he had to file in court, which
exceeds 180 days. Pursuant to the ADEA, individuals are required to file a charge with
the EEOC within 300 days of the date of the alleged discriminatory act (or within 180
days in non-deferral jurisdictions such as in this case).  42 U.S.C. § 2000e-5(e)(1); 29
U.S.C. §§ 626(d), 633(b).[2] With respect to filing in court, the time limit is from 60 days
after a charge was filed with the EEOC to 90 days after the aggrieved employee
receives a letter from the EEOC informing the individual that the EEOC completed its
investigation. 29 U.S.C. §§ 626(d)(1) and (e). Therefore, if Claimant submitted a charge

---

[2]      The non-deferral states are Alabama, Arkansas, Georgia, Mississippi, and North
Carolina, as well as the territories American Samoa, Guam, Wake Island, and the
Commonwealth of the Northern Mariana Islands.  See Individual Field Office
Webpages, *available at* http://www.eeoc.gov/field/.

8

to the EEOC on the 180th day after he received notice of his termination, he could not file a claim in court until 60 days later at minimum (meaning 240 days after he received notice of his termination), and even then, he would still have additional time to file in court **after** the EEOC issue a right-to-sue letter.[3]

The Arbitration Agreement is simply not clear as to whether it incorporates the time to file an EEOC charge or the time to file in court.[4] If the time limit for filing the arbitration demand is the time that Claimant had to file in court, he would have had until

---

[3]    In the scenario where an individual files a charge with the EEOC on the 180th day following the date of notification of termination, even if the EEOC were to issue a right-to-sue letter on the same day the charge was filed, the individual when then have another 90 days to file in court (270 days after the notification of termination). Therefore, in almost all cases, individuals have at least 270 days to file in court.

[4]    Moreover, the clause IBM relies on to assert untimeliness is only implicated "if the claim is one which must first be brought before a government agency . . . ." If the Claimant's claim is not a claim that must first be brought before a government agency, then the time period "is no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making." See Arbitration Agreement at 31-32, Ex. B to Arb. Demand. Here, as explained below, Claimant would not have had to file an EEOC charge before advancing his claim in court, because he could have relied on the EEOC charges filed by the named plaintiffs in Rusis v. International Business Machines Corp., Civ. Act. No. 18-cv-08434 (S.D.N.Y.). Additionally, the Arbitration Agreement itself excuses the requirement for Claimant to exhaust his administrative remedy before the EEOC prior to filing an arbitration demand, meaning that his claim is not one that "must first be brought before a government agency." See Arbitration Agreement at 31-32, Ex. B to Arb. Demand.  And again, the law prescribes that someone filing an ADEA claim in court would have at least 240 days to file the lawsuit.

Additionally, the Arbitration Agreement actually provides the Claimant the choice, with respect to the limitations period, between "no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making **or,** if the claim is one which must be brought before a government agency, no later than the deadline for the filing such a claim." This language does not say that the second choice *must* be used if the Claimant's claim must be brought before a government agency.

9

**at least** January 16, 2020, to file the arbitration demand, given the fact that he could not have filed in court before that date.[5]

This ambiguity in the arbitration agreement compels the Arbitrator to interpret it in favor of the Claimant as the non-drafter. See Choice Hotels Intern., 252 F.3d at 711 (holding that "any doubts in the interpretation of [an arbitration agreement] must be resolved against the drafter."). As Justice Breyer noted when writing for the First Circuit, arbitrators have frequently shown leniency with respect to limitations periods often permit cases to be considered on their merits. See Berklee College of Music, 858 F.2d at 33. Justice Breyer noted that "[s]ometimes, as with the federal procedural rules, a separate rule specifically grants to a court the power to extend time limits imposed by other rules. [] In other instances, however, courts construe absolute-sounding language (say, in a statute of limitations) against a background of judicially created exceptions." Id. (Zipes, 455 U.S. at 392); Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348–49 (1874); Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 48–50 (2nd Cir.1985)).

---

[5]    Where an arbitration agreement is unclear with respect to a limitations period, the Arbitrator may substitute a "reasonable time." See NCR Corp. v. CBS Liquor Control, Inc., 874 F. Supp. 168, 172-73 (S.D. Ohio 1993) (because parties did not provide for a statute of limitations in their agreement, arbitrator did not err by "finding that the right to obtain arbitration had to be exercised within a reasonable time"), modified on other issues on reconsideration, No. C-3-01-031, 1993 WL 767119 (S.D. Ohio Dec. 24, 1993), aff'd sub nom. on other issues, NCR Corp. v. Sac-Co., 43 F.3d 1076 (6th Cir. 1995). See also Anthony v. Affiliated Computer Servs., Inc., 621 F. App'x 49, 51-52 (2d Cir. 2015) (upholding arbitration decision applying 90-day from EEOC notice deadline when agreement provided statute of limitations of "applicable time periods in which to bring such claims"); Hagan v. Katz Comms., Inc., 200 F. Supp. 3d 435, 444 (S.D.N.Y. Aug. 3, 2016) (upholding decision to apply 90-day from EEOC notice deadline when arbitration agreement required claims be received "within the applicable/relevant statute of limitations period")

10

In fact, Justice Breyer specifically cited to a case explaining the basis for ADEA tolling, <u>Cerbone</u>. <u>Id.</u> (citing <u>Cerbone</u>, 768 F.2d at 48-50). In upholding the arbitrator's decision allowing a facially untimely claim proceed in arbitration, Justice Breyer noted that "Arbitrators have read such exceptions into literally absolute-sounding time limits in labor contracts; sometimes they have done so in light of the parties' own history of practice . . . but sometimes not . . . ." <u>Id.</u> (internal citations omitted); <u>see also</u> See <u>Crafts Precision Industries, Inc. v. Lodge No. 1836 of Dist. 38, Intern. Ass'n of Machinists and Aerospace Workers</u>, 889 F.2d 1184, 1185 (1st Cir. 1989) ("We begin by repeating what we said in *Berklee* . . . Although an arbitrator's decision must fall within the bounds of his contractually delegated authority, that authority typically (and certainly here) includes the power to interpret the contract itself."); <u>Baltimore County v. Baltimore County Dep. Sheriffs</u>, 2016 WL 687503, at *8–9 (Md. Spec. App. Feb. 18, 2016) ("the *Berklee* court determined that the language in the parties' contract regarding the waiver of time limits applied only to waivers by the parties themselves.  It was not intended to apply to the arbitrator's waiver of limits for reasons of fairness or *de minimis* errors . . . § 4.5 contains no language circumscribing the arbitrator's ability to waive time limits.") (internal citations omitted).[6]

---

[6]     As Claimant explained in his initial Opposition, in an analogous situation, an arbitrator developed a process for filing late forms:

The form established three categories to justify an extension of time: (1) "Hurricane Floyd", which permitted petitioners to indicate that they "resid[ed] and/or farm[ed] in one of the North Carolina counties declared by the federal government to be a disaster area as a result of Hurricane Floyd" and that they were "unable to submit [their] claim before the October 12, 1999 deadline because of this disaster;" (2) "Homebound", which permitted petitioners to indicate that they "became homebound due to illness and/or physical disability, and remained homebound, during the time-period beginning on August 12, 1999,

11

While IBM has argued that the Arbitrator lacks the authority under the Arbitration Agreement to follow the ample authority that has refused to interpret the ADEA's limitations period rigidly and have even allowed for equitable tolling or for claims to otherwise proceed in light of the ADEA's remedial purposes, that is not the case. IBM could have drafted its arbitration agreement to be unambiguous – it could have stated specifically the number of days that the Claimant had to mail his arbitration demand to IBM, and it could have stated that any demand mailed after that time would be rejected. It did not. Further, if IBM did not wish to incorporate the law surrounding ADEA's limitations period, it should have so stated in the Arbitration Agreement – the Arbitrator is perfectly within his right to interpret the Agreement in the manner Claimant advocates, and doing so would advance justice and fairness.

### B.    IBM's Interpretation of the Timing Provision Would Impermissibly Abridge the ADEA Limitations Period

IBM's position is that Claimant only had 180 days from the date that he was notified by IBM that he was being terminated to submit his arbitration demand. However, as explained in Section III.A *supra*, Claimant would have a longer time than that to file his claim in court (at least 240 days and likely more). IBM's interpretation, which the Arbitrator has accepted, thus impermissibly truncates the ADEA's limitations period.

Courts have routinely found provisions of arbitration agreements or contracts

_____

and ending on October 12, 1999;" and (3) "Other Extraordinary Circumstances Beyond Your Control", which served as a catch-all category.

Pigford v. Veneman, CIV.A. 97-1978 (PLF), 2001 WL 1426685, at *1 (D.D.C. Nov. 13, 2001).

shortening the time to file discrimination claims to be unenforceable. The Sixth Circuit, for example, recently held that an employer cannot contractually shorten the limitations period of the ADEA.  See Thompson v. Fresh Products, LLC, 985 F.3d 509, 521 (6th Cir. 2021). The court explained that the timing provisions contained in the ADEA "are part of the **substantive law** of the cause of action created by the ADEA" and that "the limitations period[] in the . . . ADEA give[s] rise to substantive, non-waivable rights." Id. (emphasis added). Moreover, the court proceeded to explain that "like Title VII, the ADEA emphasizes the importance of the pre-suit cooperative process, outlining the EEOC's obligation upon receiving a charge to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion . . . " and "[a]ltering the time limitations surrounding these processes risks undermining the statute's uniform application and frustrating efforts to foster employer cooperation." Id.

The Sixth Circuit relied on an earlier case, Logan v. MGM Grand Detroit Casino, 939 F.3d 824, 833 (6th Cir. 2019), where the court had held that an employer could not abrogate the limitations period for a Title VII claim by contract. As the court reasoned, although statutes of limitations are traditionally regarded as procedural mechanisms, there are exceptions to this general rule where statutes that "create rights and remedies contain their own limitation periods." Id. (citing Davis v. Mills, 194 U.S. 451, 454 (1904)). In such instances, the statute of limitations is considered a "substantive right" that "generally is not waivable in advance by employees." Id. at 829. In Thompson, the court extended this ruling to the ADEA. See Thompson, 985 F.3d at 521.

Importantly, the EEOC submitted an amicus brief in Thompson, also taking the position that the ADEA's limitations period is a substantive, non-waivable right that an

13

App.127

employer can abridge by contract. See Thompson, EEOC Brief, 2020 WL 1160190, at

*19-23.[7]  As the EEOC explained, "the ADEA's statutory limitations period is a

substantive right and prospective waivers of its limitations period are unenforceable." Id.

at *19. The EEOC explained further:

> Thus, while Title VII and the ADEA may differ in a few ways with respect to pre-suit procedures, they are extremely similar in every way material to the question before the Court here and in *Logan*: whether the ADEA's statutory limitations periods, like Title VII's, are substantive rights not waivable in advance. As this Court observed regarding Title VII, ADEA "enforcement relies on a combination of public and private action and mandates that the EEOC . . . must afford non-compliant employers the chance to voluntarily cure their violations before . . . litigation may be brought against them." *Logan*, 939 F.3d at 827. Like Title VII, the ADEA sets out a "pre-suit process" that serves the Congressional purpose of "cooperation and voluntary compliance . . . as the preferred means of eradicating workplace discrimination." *Id.* at 828. Accordingly, through the ADEA's pre-suit process, "Congress 'established a procedure whereby ... the [EEOC] would have an opportunity to investigate individual charges of discrimination, to promote voluntary compliance with the requirements of [the statute].'" *Id.*
>
> Of particular importance here, both statutes provide similar limitations periods with "important implications for an employee who has suffered workplace discrimination." *Logan*, 939 F.3d at 829. As described above, the limitations period under the ADEA does differ somewhat from Title VII, in that the former permits the charging party to file suit once the initial sixty-day post-charge-filing period has passed and without requiring a right-to-sue notice. But this distinction is not a material difference for purposes of determining whether the ADEA's statutory limitations period is a substantive right not waivable in advance.

Id. at *23. While some courts have attempted to distinguish between Title VII and the

---

[7]      The EEOC's reasonable interpretation of the ADEA is entitled to deference. See EEOC v. Comm. Office Prods. Co., 486 U.S. 107, 115 (1988) ("[I]t is axiomatic that the EEOC's interpretation of [the ADEA], for which it has primary enforcement responsibility, need . . . only be reasonable to be entitled to deference."). The EEOC's interpretations of the ADEA reflect "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 399 (2008) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)). See also Jones v. American Postal Workers Union, 192 F.3d 417, 427 (4th Cir. 1999) (holding that an EEOC interpretation in an amicus brief was entitled to deference).

14

ADEA with respect to whether their timing schemes were procedural or substantive,[8] such distinctions are no longer viable in light of Thompson and the EEOC's position set forth in its amicus brief in that case.

Numerous courts have likewise refused to enforce contractual limitations periods in cases concerning the ADEA, Title VII, and similar statutes. See Castellanos v. Raymours Furniture Co., Inc., 291 F. Supp. 3d 294, 298 (E.D.N.Y. March 12, 2018) (striking an arbitration agreement's shortening of the limitations period for a Fair Labor Standards Act claim); Friedmann v. Raymour Furniture Co., Inc., 2012 WL 4976124 (E.D.N.Y. Oct. 16, 2012) (refusing to enforce a shortening of an employee's limitations period to pursue claims under the ADEA and Americans with Disabilities Act); see also Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 125-26 (2d Cir. 2010) (indicating that if the employer had not waived a shortened statute of limitations for a Title VII claim, the court may well have invalidated the arbitration agreement in question).[9]

---

[8]    For example, IBM may cite to Cerjanec v. FCA US, LLC, 2017 WL 6407337, *7-10 (E.D. Mich. Dec. 15, 2017), and Smithson v. Hamlin Pub, Inc., 2016 WL 465564, *2-3 (E.D. Mich. Feb. 8, 2016), in which the court found that a contractual shortening of the ADEA limitations period from 300 days to 180 days was permissible because the ADEA was distinguishable from Title VII.  But those cases have now been overturned by Thompson. See Thompson, 985 F.3d at 521.  Likewise, IBM may cite to Hagan v. Katz Communications, Inc., 200 F. Supp. 3d 435, 444-45 (S.D.N.Y. 2016), but in that case there was no argument that the ADEA's timing scheme had been abridged in any way – the plaintiff simply argued that the ADEA's limitations period should not have been incorporated into the arbitration agreement at all.

[9]    See also Graham Oil v. Arco Products Co., 43 F.3d 1244, 1248-49 (9th Cir. 1994) (effort to truncate the limitations period was unenforceable, because it "expressly forfeits [the plaintiff's] statutorily-mandated right to a one-year statute of limitations."); Sanford v. Quicken Loans, 2014 WL 266410 (E.D. Mich. Jan. 24, 2014) (refusing to enforce shortening of Title VII limitations period); Mazurkiewicz v. Clayton Homes, Inc., 971 F.Supp.2d 682 (S.D. Tex.2013) (same); Cole v. Convergys Customer Mgmt. Grp.,

15

Similarly, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, Standard No. 1, provides that all statutes of limitations under applicable statutes must remain available in arbitration. See https://www.jamsadr.com/employment-minimum-standards

Simply put, to the extent that the Arbitration Agreement purports to shorten Claimant's ADEA limitations period, it is unenforceable. The Arbitrator should thus allow Claimant's claim to proceed.

### C. The Arbitrator Incorrectly Held that Claimant Could not Piggyback on the EEOC Charges Filed in by the Named Plaintiffs in the Rusis Matter

Claimant also respectfully submits that the Arbitrator was incorrect to conclude that Claimant's claim was not tolled under the piggybacking doctrine. Under IBM's interpretation of the Arbitration Agreement, Claimant has been left in an untenable position that he would *not* be in if his ADEA claim was to be adjudicated in court rather than arbitration.  Even though Claimant would be deemed timely to participate in the Rusis lawsuit (or even his own individual lawsuit) under the piggybacking rule in court, if the piggybacking rule were permitted to be waived in arbitration, IBM's interpretation, which the Arbitrator has adopted, means that Claimant cannot advance his claim **at all**. That result cannot stand.

---

Inc., 2012 WL 6047741 (D. Kan. Dec. 5, 2012) (same); O'Phelan v. Fed. Express Corp., 2005 WL 2387647 (N.D. Ill. Sept. 27, 2005) (same); Mabry v. W. & S. Life Ins. Co., 2005 WL 1167002 (M.D.N.C. Apr. 19, 2005) (same); Wineman v. Durkee Lakes Hunting & Fishing Club, Inc., 352 F. Supp. 2d 815, 821 (E.D. Mich. Jan. 13, 2005) (holding that an arbitration provision shortening the limitations period for a claim under the Fair Labor Standards Act could not be enforced because "[a] contractual agreement that limits an employee's enforcement rights can have public policy implications beyond those affecting the private parties to the contract"); Lewis v. Harper Hosp., 241 F.Supp.2d 769 (E.D. Mich. 2002) (refusing to enforce shortening of Title VII limitations period); Salisbury v. Art Van Furniture, 938 F. Supp. 435 (W.D. Mich. 1996) (same).

16

The Supreme Court has recognized that arbitration is an acceptable alternative forum to pursuing discrimination claims, but only so long as an employee can pursue his or her claims there just as they would be able to in court – and not sacrifice any substantive rights. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991).  The Arbitrator must therefore hold the purported piggybacking waiver in IBM's arbitration agreement to be invalid.[10]  It is unenforceable because the ADEA's timing scheme is a non-waivable substantive right under the ADEA, and the purported waiver would impermissibly prevent the effective vindication of Claimant's claims in arbitration. Id.

The ADEA's statutory period can be tolled by the filing of a classwide EEOC charge by a similarly situated individual under the "piggybacking" or "single filing" rule. As the Second Circuit explained it, "[a]ccording to the piggybacking rule, 'where one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims aris[e] out of similar discriminatory treatment in the same time frame." Holowecki, 440 F.3d at 564 (quoting Snell v. Suffolk County, 782 F.2d 1094, 1100 (2d Cir. 1986)); see also Livingston v. City of Chicago, 2019 WL 194848, *3 (N.D. Ill. Jan. 14, 2019).

The purpose of the EEOC charge filing requirement is not to limit the time for suit, but instead to afford the EEOC a prompt "opportunity to 'seek to eliminate any

---

10    Again, the arbitrator is empowered to make this finding because questions of timeliness are questions of procedural arbitrability for the arbitrator to decide. See Graham Construction Co., 2006 WL 8448849, at *5 (M.D.N.C. Sept. 29, 2006). The Arbitration Agreement states that "Any issue concerning the arbitrability of a particular issue or claim pursuant to this section (except for issues concerning the enforceability of the class action or collective action waivers) must be resolved by the arbitrator and not a court. See Arbitration Agreement at 28, Ex. B to Arb. Demand.

alleged unlawful practice by informal methods of conciliation, conference, and persuasion.'" Tolliver v. Xerox Corp., 918 F.2d 1052, 1057, 1059 (2d Cir. 1990). The EEOC "has interpreted the ADEA filing requirements to be satisfied 'so long as the matter complained of was within the scope of [a] previously filed charge, regardless of who filed.'" Id. Additionally, courts have found that the administrative prerequisites of discrimination statutes such as the ADEA and Title VII "must be interpreted liberally to effectuate [their] purpose of eradicating employment discrimination," and courts must look to "fairness, and not excessive technicality" in addressing such issues. Cronas v. Willis Group Holdings Ltd., 2007 WL 2739769, at *2 (S.D.N.Y. Sept. 17, 2007).

As such, the Second Circuit has adopted the piggybacking rule to excuse the administrative charge filing requirement where an individual falls within the scope of a timely filed administrative charge that describes similar discrimination. See Tolliver, 918 F.2d at 1057. As the Eleventh Circuit has described, the "principle behind the piggybacking rule is to give effect to the remedial purposes of the ADEA and to not exclude otherwise suitable plaintiffs from an ADEA class action simply because they have not performed the 'useless act of filing a charge.'" Grayson v. K Mart Corp., 79 F.3d 1086, 1103 (11th Cir. 1996).

In Tolliver, the Second Circuit held that the piggybacking rule applies, not only in ADEA collective actions, but also in individual ADEA cases (where the plaintiffs piggyback off of other individuals who filed similar EEOC charges but then pursued their claims in separate cases from the plaintiffs). The court reasoned that "[t]he purpose of the charge filing requirement is fully served by an administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a

similar grievance elect to join a preexisting suit **or initiate their own.**" 918 F.2d at 1057

(emphasis added). <u>See also</u> <u>Cronas</u>, 2007 WL 2739769, at *6 (permitting a plaintiff to

proceed with an individual Title VII claim even though the plaintiff had not timely filed his

own EEOC charge, because he could take advantage of piggybacking from an earlier

class EEOC charge).[11]  Moreover, in <u>Tolliver</u>, the Second Circuit acknowledged that the

impact of the piggybacking rule was to permit individuals to institute lawsuits outside the

ADEA's 300 (or 180 day) window, but explained that "[t]he charge filing requirement . . .

sets a time limit, not for the purpose of limiting time for suit, but for the purpose of

affording a prompt opportunity to attempt conciliation." <u>Tolliver</u>, 918 F.2d at 1059.[12]

Here, Claimant should be permitted to piggyback on the EEOC charges filed by

the named plaintiffs in the <u>Rusis</u> case[13] (or even earlier-filed age discrimination charges

filed against IBM[14]). Thus, the piggybacking rule would toll the time that Claimant had to

---

[11]     IBM may argue that Claimant worked in North Carolina, and thus that the Second
Circuit's piggybacking interpretation is inapplicable. However, the arbitration agreement
does not mandate application of the law of the circuit in which the individual works or
resides. Instead, the agreement reads: "The Arbitrator shall apply the substantive law
(and the law of remedies, if applicable) of the state in which the claim arose, or federal
law, or both, as applicable to the claim(s) asserted." Demand, Exhibit 2.  Claimant
contends that his claim arose in New York, as IBM's headquarters are in Armonk, New
York. Furthermore, the case that Claimant could use to piggyback, <u>Rusis</u>, is in the
Southern District of New York.

[12]     Piggybacking is available regardless of whether the employee has
unsuccessfully attempted to join a collective action. See <u>Tolliver</u>, 918 F.2d at 1057.

[13]     The <u>Rusis</u> plaintiffs filed EEOC charges on May 10, 2018 (Edvin Rusis); July 2,
2018 (Henry Gerrits and Phil McGonegal), and November 14, 2016 (Sally Gehring).
Claimant was terminated mid-2020, and his claim would be timely under the
piggybacking rule, in light of those charges. Again, Claimant can provide those charges
to the Arbitrator upon request.

[14]     The EEOC Letter of Determination indicates that there were charges alleging age
discrimination against IBM going back to 2014, and its investigation covered the time

19

file his arbitration demand. Those charges alleged that IBM engaged in class-wide age discrimination, and Claimant was terminated in the manner described in those charges (and no more than 180 days before the filing of those charges); thus, Claimant's claims fall within the scope of those discrimination charges.

Indeed, in light of the EEOC's determination finding "reasonable cause to believe that [IBM] has discriminated against [58 charging parties] and others a [a nationwide class of those similarly situated] on account of their age," the EEOC has obviously had the opportunity to investigate the claims alleged in the Rusis plaintiffs' charges on a classwide basis.[15] The EEOC has had ample ability to investigate and conciliate these claims, and IBM has been put on notice of the discrimination allegation.  Under the piggybacking rule, the Rusis plaintiffs' charges thus should toll Claimant's statutory limitations period under the ADEA. See Tolliver, 918 F.2d at 1057; Cronas, 2007 WL 2739769, at *6.

IBM has argued successfully in Claimant's arbitration, however, that the piggybacking rule cannot help Claimant, who signed an arbitration agreement, because the arbitration agreement states that "[t]he filing of a charge or complaint with a government agency ...shall not substitute for or extend the time for submitting a demand for arbitration." Arbitration Agreement at 31, Ex. B to Arb. Demand.  In other words, IBM argued, and the arbitrator agreed, that the arbitration agreement does not allow for

---

period 2013-18. Claimant can also provide the EEOC Determination upon the Arbitrator's request.

[15]    Several of the Rusis plaintiffs, including Plaintiff Sally Gehring and opt-in Plaintiffs Mark Johnson, Robert Gasiorowski, and Andrew Peavy, were three of the charging parties included in the EEOC's determination. Claimant can also provide and these plaintiffs' documents should the Arbitrator find them useful.

piggybacking.  However, in order for the arbitration agreement to be enforceable, this purported waiver of the piggybacking rule cannot not enforceable.

The Supreme Court made clear in Gilmer, 500 U.S. at 28, that even though a statutory claim (there, also an ADEA claim) may be subject to arbitration generally, "the prospective litigant [must be able to] effectively . . . vindicate his or her statutory cause of action in the [specific] arbitral forum." Here, IBM insists that Claimant cannot pursue his ADEA claims **at all** in arbitration, even though, absent the arbitration agreement, there is no question that he could pursue her claims in court by relying on the piggybacking rule.

Moreover, as Claimant explained in Section III.A, *supra*, courts have routinely found provisions of arbitration agreements or contracts shortening the time to file discrimination claims (which is effectively what a waiver of the piggybacking rule is) to be unenforceable, including in the context of ADEA claims. See Thompson, 985 F.3d at 521; Logan, 939 F.3d at 833; see also Ragone, 595 F.3d at 125-26; Castellanos, 291 F. Supp. 3d at 298; Friedmann, 2012 WL 4976124 (refusing to enforce a shortening of an employee's limitations period to pursue claims under the ADEA and Americans with Disabilities Act).[16] It bears repeating that the EEOC itself considers the timing scheme in the ADEA to be a substantive, non-waivable right that cannot be abridged by contract. See Thompson, EEOC Brief, 2020 WL 1160190, at *19-23.

Moreover, IBM's agreement cannot waive Claimant's claims under the ADEA, since IBM did not provide the disclosures required under the OWBPA (disclosures

---

[16]    See also Graham Oil, 43 F.3d at 1248-49; Sanford, 2014 WL 266410; Mazurkiewicz, 971 F.Supp.2d 682; Cole, 2012 WL 6047741 (same); O'Phelan, 2005 WL 2387647; Mabry, 2005 WL 1167002; Wineman, 352 F. Supp. 2d at 821; Lewis, 241 F.Supp.2d 769; Salisbury, 938 F. Supp. 435.

21

regarding the ages of employees selected and not selected for layoff.  The OWBPA

mandates strict requirements that employers must meet in order to obtain a valid waiver

from an employee of "any right or claim" under the ADEA. See 29 U.S.C. § 626

(f)(1)(H); 29 C.F.R. § 1625.22(f); see also Oubre, 522 U.S. at 427.[17]  Importantly, the

EEOC has taken the position that the OWBPA protects employees from waiving rights

by abridging their time to pursue their claims if they did not receive the proper

disclosures:

> The ADEA does have one other arguably relevant provision with no analogue in Title VII: 29 U.S.C. § 626(f) . . ., which expressly governs waivers of "rights or claims under this chapter." However, § 626(f), read together with *Logan*'s holding that a statutory limitation period is a substantive right, only strengthens the argument against construing the ADEA's limitations period as prospectively waivable.

Thompson, EEOC Brief, 2020 WL 1160190, at *25. Because IBM did not provide

OWBPA disclosures to Claimant, Claimant cannot have waived his statute of limitations

rights under the piggybacking rule by signing the arbitration agreement.  To the extent

the agreement purports or is held to waive that rule, that provision is invalid.

Tellingly, the Thompson court even pointed to the OWBPA as an indicator that

the ADEA's limitations period was a substantive right that could not be waived:

> The ADEA's waiver provision further supports the conclusion that**, as a**

---

[17]    The OWBPA's requirements have been enforced strictly. See, e.g., Kruchowski v. Weyerhaeuser Co., 446 F.3d 1090, 1093-96 (10th Cir. 2006) (finding waiver invalid where OWBPA disclosures did not include entire decisional unit); Loksen v. Columbia Univ., 2013 WL 5549780, at *7-8 (S.D.N.Y. Oct. 14, 2013) (finding substantial compliance not enough; omission of even one person from group of 17 considered, although probably immaterial, invalidated waiver); Butcher v. Gerber Prods. Co., 8 F. Supp. 2d 307, 314 (S.D.N.Y. 1998) (holding that releases that did not contain all the elements listed in 29 U.S.C.S. § 626(f)(1)(A)-(H) of the OWBPA, were invalid and because employers were required to comply with the OWBPA upon their first notification to employees, their later correspondence could not cure the earlier deficiencies).

**substantive right, its self-contained limitation period may not be prospectively waived.** It provides that "[a]n individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f). A waiver may not be "knowing and voluntary" if it includes waiver of "rights or claims that may arise after the date the waiver is executed." *Id.* § 626(f)(C). The statute's strict limitations on waivers align with "the general rule in this circuit that an employee may not prospectively waive his or her rights under either Title VII or the ADEA." Adams v. Philip Morris, Inc., 67 F.3d 580, 584 (6th Cir. 1995).

Thompson, 985 F.3d at 521.[18]

Claimant expects that IBM will argue that the OWBPA protects only substantive

rights and that the limitations period at issue here is procedural. But as Claimant has

explained, the ADEA's timing scheme is a substantive right rather than a procedural

---

[18]    Moreover, the arbitration agreement's purported waiver of the piggybacking rule also cannot be valid because the OWBPA requires that, in order for a waiver to be valid, it must be "a part of an agreement between the individual and the employer that is **calculated to be understood by such individual, or by the average individual eligible to participate.**" 29 U.S.C. § 626(f)(1(A) (emphasis added). The timing provision of the arbitration agreement is not only incoherent, but requires the reader to have the expertise of an employment discrimination lawyer and a thorough understanding of administration exhaustion to parse it.  To even attempt to understand the statute of limitations that applies to them, the IBM employees would have to understand: (1) the administrative and court statute of limitations under the ADEA; (2) which types of claims "must first be brought before a government agency"; and (3) the deadline for filing with the administrative agency in their state.  That is certainly more information than the average IBM employee has, and even by its own terms the language is ambiguous and confusing. The OWBPA's requirement that the language of the waiver be calculated to be understood by the employee has been strictly construed by numerous courts, including against IBM.  See Syverson v. International Business Machines Corp.,472 F.3d 1072, 1082-87 (9th Cir. 2007) (invalidating a waiver that contained both a release and a covenant not to sue because average individuals might be confused and think that they could still bring an action under the ADEA); Thomforde v. International Business Machines Corp., 406 F.3d 500, 503-05 (8th Cir. 2005) (same); Bogacz v. MTD Products, Inc., 694 F. Supp. 2d 400, 404-11 (W.D. Pa. 2010) (invalidating a release that contained both a waiver and covenant not to as confusing, since the language of the agreement suggested that employees could not bring suit, even to test validity of waiver); Rupert v. PPG Industries, Inc., 2009 WL 596014, at *38-49 (W.D. Pa. Feb. 26, 2009) (recommending invalidation of release that contained both a waiver and covenant not to sue, since it was confusing); see also 29 C.F.R. § 1625.22(b)(3) (2005) (the comprehensibility requirement "usually will require the limitation or elimination of technical jargon and of long, complex sentences.").

23

**App.137**

right, just like in Title VII. See Thompson, 985 F.3d at 521; Logan, 939 F.3d at 829-33; Thompson, EEOC Brief, 2020 WL 1160190, at *19.

Even if the piggybacking rule was a procedural right, the express language of the OWBPA does not distinguish between procedural and substantive rights, stating that "[a]n individual may not waive **any right or claim**" without first receiving the OWBPA disclosures. 29 U.S.C. § 626(f)(1). See Hammaker v. Brown & Brown, Inc., 214 F. Supp. 2d 575, 578-81 (E.D. Va. 2002) (holding the OWBPA to apply to procedural rights and substantive rights under the ADEA and noting that the OWBPA must be interpreted broadly in furtherance of "the OWBPA's purpose to protect the rights and benefits of older workers"); Thiele v. Merrill Lynch, Pierce, Fenner & Smith, 59 F. Supp. 3d 1060, 1064-65 (S.D. Cal. 1999) (examining the legislative purpose of the OWBPA and concluding that the OWBPA was intended to substantive rights and procedural rights under the ADEA equally).[19]   In sum, because the enforcement of the piggybacking waiver in IBM's arbitration agreement would abridge Claimant's right altogether to pursue his claims under the ADEA, the Arbitrator must hold the waiver to be invalid.

## D.    The Arbitrator Should Have Applied Equitable Tolling

As Claimant explained in his Opposition to IBM's Motion to Dismiss, the Supreme Court has made clear that timely filing of a charge of discrimination is not a jurisdictional

---

[19]    While a court recently held that the OWBPA did not protect the procedural right of proceeding as a collective action under the ADEA, see Estle v. International Business Machines Corp., 2020 WL 5633154, at *3-7 (S.D.N.Y. Sept. 21, 2020), that case did not address the question at issue here. (In Estle, the plaintiffs sought to invalidate the class action waiver in IBM's arbitration agreement.  In contrast, here, Claimant is not trying to avoid arbitration or the impact of the class action waiver. Instead, he seeks to avoid a result in which his ability to proceed on his ADEA claim is precluded altogether.) Moreover, the plaintiffs in Estle have appealed that court's decision to the Second Circuit, and that appeal was recently argued on September 29, 2021. See Estle v. International Business Machines Corp., No. 20-3372 (2d Cir.).

24

prerequisite, but rather "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes, 455 U.S. at 393. As the court explained in Zipes, "[b]y holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement **subject to waiver as well as tolling** when **equity so requires**, we honor the **remedial purpose of the legislation** as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer. Id. at 398 (emphasis added). Subsequent decisions have adopted this reasoning. See Ft. Bend County, Texas v. Davis, 139 S. Ct. 1843, 1846 (2019) ("Title VII's charge-filing instruction is not jurisdictional, a term generally reserved to describe the classes of cases a court may entertain []or the persons over whom a court may exercise adjudicatory authority []. Prerequisites to suit like Title VII's charge-filing instruction . . . are . . . claim-processing rules that must be timely raised to come into play."). In other words, "[a] statutory condition that requires a party to take some action before filing a lawsuit is not automatically 'a *jurisdictional* prerequisite to suit.'" Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010) (quoting Zipes, 455 U.S. at 393). Moreover, it bears repeating that this is not even an issue of *filing*, as Claimant timely filed the demand with JAMS – it is merely an issue of *serving*.

The Arbitration Agreement provides the Arbitrator the authority to apply equitable tolling. The Arbitration Agreement clearly provides that "the arbitrator(s) is authorized to award any party the **full remedies** that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction[.]" Arbitration Agreement at 31-32, Ex. B to Arb. Demand (emphasis added). Such remedies include equitable tolling,

25

which is frequently applied in discrimination cases, see Zipes, 455 U.S. at 393, as well as equitable modification. See Berklee College of Music, 858 F.2d at 33.

The Arbitration Agreement thus empowers the Arbitrator to apply the doctrine of equitable tolling to allow Claimant to pursue his claim. Given the circumstances of this case, doing so would be in the interest of justice and fairness.

## IV.    CONCLUSION

For the foregoing reasons, the Arbitrator should grant reconsideration of the Order of Dismissal and permit Claimant's claim to proceed.

Respectfully Submitted,
JOHN HOLTMAN, Claimant

By his attorneys,

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan
Thomas Fowler
Michelle Cassorla
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com; tfowler@llrlaw.com;
mcassorla@llrlaw.com

Dated:    December 8, 2021

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing document was served on all counsel of record for Respondent IBM by JAMS Access on December 8, 2021.

<u>*/s/ Michelle Cassorla*</u>
Michelle Cassorla

27

**JAMS Arbitration**
**Before the Honorable Richard A. Levie**

| | |
|---|---|
| **JOHN HOLTMAN,** | |
| **Claimant,** | |
| **v.** | **Reference No. 1410008728** |
| **INTERNATIONAL BUSINESS MACHINES CORP.,** | |
| **Respondent.** | |

## DECLARATION OF THOMAS FOWLER

I, Thomas Fowler, hereby declare as follows:

1. I am an adult resident of Holliston, Massachusetts. I am an associate at the law firm Lichten & Liss-Riordan, P.C. I am one of the attorneys representing the Claimant in the above-captioned matter.

2. Over the course of the pandemic, Lichten & Liss-Riordan has taken stringent measures to ensure the safety of all attorneys, staff, and clients. Specifically, the office has been closed starting in March 2020 and throughout the pandemic, and the number of individuals who are permitted to be physically present at the office has been sharply limited, especially during the periods of time that the number of COVID-19 cases have surged.

3. Because COVID-19 cases were surging severely in Massachusetts and the rest of the country in November 2020, the firm's office was closed completely. Due to safety concerns, neither the firm's paralegals nor attorneys were working in the office

– instead, they were all working from home. Because no one was in the office, the firm's ability to mail documents via the US Postal Service was significantly disrupted.

    4.     As such, while the firm was able to file the Claimant's Arbitration Demand with JAMS electronically on November 17, 2020, the disruption in the office mail logistics caused a one-day delay in the service of the Arbitration Demand on IBM by mail.

    5.     Additionally, following a long illness, my father died in November 2020. His funeral took place on November 15, 2020. As a result, I was out of the office the week the demand in this case was filed.

Signed under the pains and penalties of perjury on December 8, 2021.

<u>/s/ Thomas Fowler</u>
Thomas Fowler

2

# EXHIBIT 13

**In the Matter of Arbitration between**

| | |
|---|---|
| JOHN HOLTMAN,<br><br>               Claimant<br><br>and<br><br>INTERNATIONAL BUSINESS MACHINES<br>CORP.,<br><br>               Respondent. | JAMS Ref. No. 1410008728 |

## ORDER DENYING MOTION FOR RECONSIDERATION[1]
### (January 6, 2022)

In this arbitration, John Holtman ("Claimant" or "Mr. Holtman") alleges that International Business Machines Corp. ("IBM") terminated him on account of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (hereafter, the "ADEA"). On November 19, 2021, the Arbitrator issued an Order of Dismissal, which granted IBM's Motion to Dismiss on the ground that Mr. Holtman failed to commence this arbitration in the manner required by the "Arbitration Procedures" in the parties' "Separation Agreement."[2]

---

[1] The Order of Dismissal, including the procedural history, facts, and analysis found therein, are incorporated by reference herein. For efficiency and economy, this Order recites only those facts and discusses only those legal arguments the Arbitrator considers necessary to establish the basis for resolution of Mr. Holtman's motion. To the extent that any factual assertion or legal argument is not specifically mentioned herein, the Arbitrator has decided that it is either not persuasive and/or not essential to establish the basis for this Order.

[2] The Separation Agreement is attached as Exhibit B-Attachment 2 to Claimant's Arbitration Demand (the "Demand"). The arbitration clause is found in section 5, page 28, of the Separation Agreement. The "Arbitration Procedures," including a limitations period and method for submitting a claim against IBM, are set forth in "Attachment 3: Arbitration Procedure and

On December 8, 2021, Claimant submitted a Motion for Reconsideration pursuant to the "Reconsideration and Review" provision of the Arbitration Procedures, which provides that such a motion may be filed within 20 days of the "Arbitrator's decision." (Demand, Exhibit B, Attachment 3 at p. 31). Respondent submitted opposition to Claimant's motion.[3]

After review of all submissions, the Arbitrator concludes that the Motion for Reconsideration should be denied for the reasons stated below.

## I.    Applicable Law and Standard

The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age" (29 U.S.C.A. § 623(a)(1)), but there are certain prerequisites to filing a lawsuit in court alleging a claim under the ADEA. The ADEA requires that claimants first file a charge with the EEOC within a prescribed time period. *See id.* § 626(d). For a person like Claimant who was employed in North Carolina the period for filing an EEOC charge is 180 days.[4]

Under the ADEA, the limitations period begins to run from the point in time that the employee receives notice of the alleged unlawful employment practice. *See Hamilton v. 1st Source Bank*, 928 F.2d 86, 88 (4th Cir. 1990) (citing cases). Courts in the Fourth Circuit have strictly

---

Collection Action Waiver (Attachment to Separation Agreement)," which is also part of Exhibit B.

[3] The Arbitration Procedures include a schedule for filing a motion for reconsideration and opposition to that motion, but not a schedule for a reply.

[4] IBM asserts, without dispute, that Claimant was employed in North Carolina and that the applicable period for filing in North Carolina is 180 days. (Response to Motion to Dismiss at 1).

2

construed statutes of limitations for filing charges both with the EEOC and under Title VII. *See, e.g., Harvey v. New Bern Police Dep't*, 813 F.2d 652, 655 (4th Cir. 1987); *Anderson v. Am. Airlines, Inc.*, 2018 WL 4258505, at *2 (W.D.N.C. Sept. 5, 2018); *Bond v. Potter*, 348 F. Supp.2d 525, 529 (M.D.N.C. 2005); *Kimes v. Laboratory Corp. of American, Inc.*, 313 F. Supp.2d 555, 560 (M.D.N.C. 2004).

The Separation Agreement permits a party to file a motion to reconsider, but does not set forth a standard for adjudication of such motion.[5] Notably, however, the Arbitration Procedures allow the parties to make "motions permitted by the Federal Rules of Civil Procedure" ("Fed. R. Civ. Pro."). (Demand, Exhibit B, Attachment 3 at p. 31). In his motion, Claimant cites to the Arbitration Procedures as well as to Fed. R. Civ. Pro. 59(e) and 60. The Arbitrator considers the Federal Rules to supply an appropriate standard for adjudicating Claimant's motion.

Rule 59(e) states that a judgment may be amended "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) ("Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.").

---

[5] The JAMS Employment Arbitration Rules & Procedures, which, together with the Arbitration Procedures, apply in this arbitration, do not address motions for reconsideration.

3

Fed. R. Civ. P. 60 sets forth six bases for relief:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Notably, Rule 60 "'does not authorize a motion merely for reconsideration of a legal issue.'" *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 400 (4th Cir. 1995) [quoting *United States v. Williams*, 674 F.2d 310, 312 (4th Cir. 1982)]. As explained by the Fourth Circuit Court of Appeals, "[w]here the motion is nothing more than a request that the district court change its mind [ ] it is not authorized by Rule 60(b)." *Williams*, 674 F.2d at 313 [citing Wright & Miller, 11 Federal Practice and Procedure§ 2858].

## II.    Arguments of the Parties

Claimant argues that the Arbitrator should reconsider the Order of Dismissal for the following reasons:

(1)    Because Claimant filed his Demand with JAMS on the last permissible day of the 180-day limitations period, dismissal is not required (even though Claimant

4

did not mail the Demand to IBM until a day or so later). (Mot. at 2, 6-7; *see* Claimant's Opposition to IBM's Motion to Dismiss ("Cl. Opp.") at 2 ["Claimant timely filed his demand."]).

(2)         The Arbitration Procedures are ambiguous because the phrase "no later than the deadline for the filing of such a claim," could refer, as IBM argues, to the 180-day deadline that Claimant had to file a charge with the EEOC or, as now argued by Claimant, the deadline within which Claimant had to file a claim in court, which would be more than 180 days. The Arbitrator should adopt Claimant's (new) interpretation of the Arbitration Procedures as permitting him to submit the Demand to IBM at a minimum of 240 days after he received notice of his termination, and thus find that he timely submitted the Demand. (Mot. at 2, 8-12).

(3)         The timing provisions of the ADEA are part of substantive law, and therefore imposing a deadline that is shorter than the time Claimant would have had to file an ADEA claim in court, the Arbitration Procedures impermissibly abridge a substantive right under the ADEA. (Mot. at 3, 12-15[citing, *inter alia*, *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 521 (6th Cir. 2021); *Thompson v. Fresh Prods., LLC*, EEOC Brief, 2020 WL 1160190, at *19 (6th Cir. Mar. 2, 2020); *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019)]).

(4)         (a) "The Arbitrator incorrectly determined that Claimant could not utilize the piggybacking rule," because Claimant would have been able to piggyback had the claim been filed in court.

5

(b) As a consequence of (4a), the effect of the Separation Agreement is, as argued in (3) above, to impermissibly abridge the limitations period. That is, the "piggybacking waiver"[6] is invalid and unenforceable because "the ADEA's timing scheme is a non-waivable substantive right under the ADEA, and the purported waiver would impermissibly prevent the effective vindication of Claimant's claims in arbitration." (Mot. at 17; *id.* at 4, 16-23 [citing, *inter alia*, *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057-59 (2d Cir. 1990); *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565-70 (2d Cir. 2006); *Thompson* (*supra*); *Logan* (*supra*)]; *see* Cl. Opp. at 2, 8-9.

(c) A permissible waiver did not occur because IBM did not provide the disclosures required under the Older Workers Benefit Protection Act ("OWBPA"). (Mot. at 21-24).

(5)    The Arbitrator should have applied equitable tolling, "[a]s Claimant explained in his Opposition to IBM's Motion to Dismiss"; and fairness dictates that the limitation period not be strictly enforced. (Mot. at 4, 24-26; *see* Cl. Opp. at 5-7).

IBM responds as follows:

---

[6] Piggybacking is precluded under the Arbitration Procedures which state that "The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration." (Demand, Exhibit B, Attachment 3 at p. 31).

6

(i)     "[T]he Arbitrator correctly enforced the Arbitration Agreement's plain terms and dismissed Claimant's claim as untimely" and that each of the arguments raised in his reconsideration motion fail. (Resp. Opp. at 1).

(ii)    Claimant argued points (1) and (5)[7] in opposition to the Motion to Dismiss and the Arbitrator correctly rejected these arguments. As to (1), the Arbitrator held that submitting the Demand to JAMS was insufficient, as the Arbitration Procedures required submission of the Demand to IBM. In connection with (5), the Arbitrator ruled that "'Claimant ha[d] not provided any persuasive arguments even arguably supporting any finding of a legal, factual, or equitable nature to excuse the untimely submission of the Demand.'" (Resp. Opp. at 6 [quoting Order of Dismissal at 8]).

(iii)   Claimant's new argument (2) above – that the Arbitration Procedures are ambiguous as to the applicable limitations period – should be rejected because the Arbitration Procedures are not ambiguous in that they expressly distinguish between the deadline for filing a claim in court and the deadline for filing a claim with an agency. (Resp. Opp. at 16 [quoting Demand, Exhibit B, Attachment 3 at p. 31]).

---

[7] IBM also argues, in connection with (4) above, that the Arbitrator correctly ruled that the piggyback doctrine did not apply. (Resp. Opp. at 6 [citing Order of Dismissal at 9 ("because Claimant was not required to file an EEOC charge, 'the piggybacking doctrine is wholly inapplicable in the arbitration context.'" (quoting *Rusis v. Int'l Bus. Machs. Corp.*, 529 F. Supp. 3d 178, 193 (S.D.N.Y. 2021)]). To the extent that argument (4) is an attempt to relitigate the Arbitrator's conclusion as to the applicability of the piggybacking doctrine, it is rejected both because it is procedurally improper and because Claimant has not raised any argument that shows any error in the Arbitrator's conclusion.

7

(iv)      In connection with arguments (3) and (4), as a threshold matter, the Arbitrator does not have authority to adjudicate the enforceability of the Arbitration Procedures because the Separation Agreement "explicitly states that '[a]ny issue concerning the validity or enforceability of this Agreement . . . shall be decided **only by a court** of competent jurisdiction'"; and, indeed, Claimant had made this very point in *Rusis*, arguing that "'*the enforceability of the agreements is an exclusive matter for the courts*.'" (Resp. Opp. at 23 [quoting first Demand, Exhibit B, Attachment 3 at p. 28 and second *Rusis*, 529 F. Supp. 3d at 194, all emphasis in Resp. Opp.]).

(v)      On the merits, arguments (3) and (4) fail because the statutory limitations period was not truncated, the Arbitration Procedures, including the limitation provision and the piggybacking waiver, did not prevent Claimant from pursuing his ADEA claim and/or cause him to waive a substantive right under the ADEA or the OWBPA.

### III.    Discussion

Claimant has not shown any basis for relief from the Order of Dismissal.

Arguments (1) and (5) were previously made in opposition to the Motion to Dismiss and rejected by the Arbitrator in the Order of Dismissal. The Arbitration Procedures unambiguously require submission to IBM – not JAMS – within the limitations period in order to avoid waiver of the claim. Under the Arbitration Procedures, the failure to timely submit the Demand results in waiver of the claim. Claimant has not raised made any additional factual or legal assertions that serve to excuse Claimant's failure to timely submit his Demand. (*See* Order of Dismissal at 8).

8

Claimant has not provided evidence to show, or articulated a credible basis to believe, that the difficult circumstances he cites – the closure of Claimant's counsel's office due to the pandemic, and the unfortunate death of attorney Thomas Fowler's father –actually prevented mailing of the Demand on November 17, 2020, particularly as that mailing was accomplished a day later on November 18, 2020 (or shortly thereafter).

Each of the remaining arguments could have earlier been raised (or were already raised) and can be rejected for that reason alone. Nonetheless, there are reasons apart from Claimant's failure to raise these arguments at an earlier time that warrant their rejection.

Argument (2) – regarding the supposed ambiguity in the Arbitration Procedures as to whether it is the deadline to file an EEOC charge or the deadline to file an action in court that applies – requires little discussion. The Arbitration Procedures are not ambiguous. They provide that:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making **or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.** If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

(Demand, Exhibit B, Attachment 3 at p. 31). The only reasonable interpretation of the bolded language, taken together with the underlined language, is that where, as here, there is a requirement to file a claim before a government agency, the deadline for filing an agency claim applies, not the

9

deadline for filing in court. *See Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993) ["Contract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage."].

Claimant's arguments about the enforceability of the limitations provision, do not provide grounds to disturb the Order of Dismissal. As a threshold matter, the arbitration clause unambiguously provides that issues of enforceability are for the courts, not the Arbitrator. (Demand, Exhibit B, Attachment 2 at p. 28). In fact, as noted by Respondent, Claimant made this very point in the district court in the *Rusis* case. *See Rusis*, 529 F. Supp. 3d at 194 ("In seeking a 'threshold ruling' on the piggybacking issue, Plaintiffs stress that the separation agreements provide that the enforceability of the agreements is an exclusive matter for the courts, and courts commonly decide such threshold issues of enforceability or validity before compelling the parties to arbitration.").

In any event, as a matter of fact and law, the limitations provision does not "impermissibly truncate the ADEA limitations period," regardless of whether the ADEA limitations period is a substantive statutory right. First, the Arbitration Procedures do not shorten the statute of limitations – they provide Claimant with the same amount of time to submit the Demand as he would have had to file a charge with the EEOC.[8]

---

[8] This fact also disposes of Claimant's new argument that the Arbitration Procedures violate Standard 1 of the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, which provides that "All remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, as well as statutes of limitations, must remain available in the arbitration. Post-arbitration remedies, if any, must remain

10

Second, under the Separation Agreement (and the Federal Arbitration Act), Claimant was required to arbitrate his claim; he could not file a charge with the EEOC and litigate in court, and thus any later deadlines to file a claim in court (which are triggered by the filing of an EEOC charge) are not implicated.

Third, the non-application of the piggybacking rule does not shorten the statute of limitations. The piggybacking rule is not part of the statute. It is a "a judge-made exception to administrative prerequisites," not a statute of limitations. (Order of Dismissal at 9).

Claimant's arguments that the limitations period and piggybacking waiver caused Claimant to waive a substantive right under the ADEA and the OWBPA are also without merit. As just indicated, the Arbitration Procedures do not truncate the time to bring a claim, and the piggybacking doctrine is not a statutory right.

Furthermore, the cases cited by Claimant do not support his position. Neither *Thompson v. Fresh Products, LLC* nor *Logan v. MGM Grand Detroit Casino*, concerned arbitration agreements. In those cases, the Sixth Circuit addressed contracts which truncated the time aggrieved employees could file *lawsuits*. 985 F.3d at 519; 939 F.3d at 826. Notably, the *Logan* found that *Morrison v. Circuit City Stores*,[9] an earlier case which addressed limitations in the arbitration context, was not

---

available to an employee." In addition, those standards only apply to pre-dispute arbitration agreements; Mr. Holtman entered into the Separation Agreement after his dispute arose.

[9] In *Morrison* the Sixth Circuit held that certain parts of the arbitration agreement were unenforceable. However, in a footnote, the court in cursory fashion addressed challenges to a provision limiting discovery and a one-year statute of limitations for bringing an arbitration. After citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the court rejected the challenge to the discovery provision and then stated, "Morrison has failed to show that the one-

11

controlling because that case required that "'the liberal policy favoring arbitration'" be balanced with "'the important goals of federal anti-discrimination statutes.'" *Logan*, 939 F.3d at 838 [quoting *Morrison v. Circuit City Stores*, Inc., 317 F.3d 646, 653 (6th Cir. 2003) (en banc)]; *id.* ["outside the arbitration context, Congress has not authorized litigants to alter the Title VII limitations periods"].[10]

Claimant's argument invoking the OWBPA is equally misplaced. No substantive right of Claimant's has been implicated by his agreement to arbitrate his ADEA claim. As explained by the Supreme Court, "the ADEA does not preclude arbitration of claims brought under the statute." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) [citing *Gilmer*, 500 U.S. at 26-33].

The Separation Agreement does not bar ADEA claims or present insurmountable obstacles to pursing them. That agreement, which Claimant entered into after his dispute arose, provided Claimant with the same amount of time to submit his Demand to IBM that he had to file a charge

---

year limitations period in the agreement unduly burdened her or would unduly burden any other claimant wishing to assert claims arising from their employment." *Morrison*, 317 F.3d at 673 n.16.

[10] The few cases cited by Claimant which did address limitations periods in arbitration agreements are distinguishable. *See, e.g., Wineman v. Durkee Lakes Hunting & Fishing Club, Inc.*, 352 F. Supp. 2d 815 (E.D. Mich. 2005) (arbitration agreement purported to truncate the time to bring an FLSA claim to six months, whereas the statute of limitations for FLSA claims is two or three years, depending on whether the alleged conduct is willful). The cases which do not address arbitration clauses are inapposite and, as with *Logan*, can serve to highlight the importance of an arbitral context. *See, e.g., O'Phelan v. Fed. Exp. Corp.*, 2005 WL 2387647, at *4 (N.D. Ill. Sept. 27, 2005) (finding that contract provision limiting time to file Title VII claim to six months was not enforceable but distinguishing arbitration clauses: "arbitration clauses, such as that in *Gilmer*, ultimately lead to resolution of a dispute, whereas enforcement of a six month limitation on claims effectively prevents the plaintiff from having any mechanism for redress under Title VII due to the EEOC's administrative requirements").

12

with the EEOC. Under these circumstances, no substantive right was waived, and specific disclosures were not required. *See 14 Penn Plaza LLC*, 556 U.S. at 260 ["Respondents incorrectly counter that an individual employee must personally 'waive' a '[substantive] right' to proceed in court for a waiver to be 'knowing and voluntary' under the ADEA. 29 U.S.C. § 626(f)(1). As explained below, however, the agreement to arbitrate ADEA claims is not the waiver of a 'substantive right' as that term is employed in the ADEA."].

### IV.    Conclusion

For the foregoing reasons, Claimant's Motion for Reconsideration is denied.[11]

So ordered.

_Richard A. L_

Hon. Richard A. Levie (Ret.)
Arbitrator

Dated: January 6, 2022
Washington, DC

---

[11] To the extent that any argument has not been addressed in this Order, it has been considered and either rejected or found unnecessary to a determination of the issues in contention.

13

# EXHIBIT 14

**JAMS ARBITRATION HON. RICHARD A. LEVIE (RET.)**

JOHN HOLTMAN,

        Claimant,

   v.

INTERNATIONAL BUSINESS MACHINES
CORP.,

       Respondent.

Reference No. 1410008728


**RESPONDENT INTERNATIONAL BUSINESS MACHINE CORP.'S BRIEF IN
OPPOSITION TO CLAIMANT JOHN HOLTMAN'S
MOTION FOR RECONSIDERATION**

## **INTRODUCTION**

In his November 19, 2021 Order,[1] the Arbitrator correctly enforced the Arbitration Agreement's plain terms and dismissed Claimant's claim as untimely. In particular, the Arbitrator held that the Arbitration Agreement required Claimant to mail his arbitration demand to IBM within 180 days and that any untimely-filed claim would be "waived." (Order at 7–8.) Accordingly, the Arbitrator held that the Arbitration Agreement "requires dismissal" of Claimant's ADEA claim against IBM because Claimant "did not mail his Demand until . . . one day after the time period expired for submitting a Demand." (*Id.*) The Arbitrator then rejected all of Claimant remaining arguments in opposition to IBM's Motion to Dismiss. (*See id.* at 7–10.)

Claimant now moves for reconsideration of the Arbitrator's Order on many of the same grounds. Indeed, he puts forth the same arguments that his claim is timely and that the Arbitrator has the authority to disregard the Arbitration Procedures' explicit limitations, filing, and waiver provisions. But Claimant cannot use his Motion for Reconsideration to re-litigate issues that the Arbitrator already disposed of. *See, e.g.*, *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 401 n.2 (4th Cir. 1995). And even if he could, Claimant's arguments all fail – as the Arbitrator has already determined.

Claimant also moves for reconsideration based on brand new arguments that he did not make in opposition IBM's Motion to Dismiss. But it is wholly improper to make new arguments on a motion for reconsideration. *See, e.g.*, *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) ("[Reconsideration] may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment . . . ."). Claimant's motion, therefore, is a non-starter and should be denied.

---

[1] Order refers to the Arbitrator's November 19, 2021 order granting IBM's Motion to Dismiss.

Even if Claimant could properly make new arguments, which he cannot, Claimant's contentions are baseless. Claimant asserts that the limitations provision "could be plausibly interpreted to mean . . . 180 days . . . [the period] Claimant had to file a charge with the EEOC . . . or . . . the time that Claimant had to file such a claim in court" – "at least 270 days." (Mot. for Reconsideration at 8–9, 9 n.3.) But Claimant's interpretation violates bedrock principles of contract law. *First*, Claimant's interpretation voids multiple terms in the limitations provision. But contracts cannot be construed to nullify terms therein. *See, e.g.*, *Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993). *Second*, Claimant's construction makes the limitations period indefinite and unknowable. Contracts, however, cannot be interpreted in a manner that creates an absurd result. *See, e.g.*, *Chi. Title Ins. Co. v. 100 Inv. Ltd. P'ship*, 355 F.3d 759, 764 (4th Cir. 2004).

Claimant also contends for the first time that Arbitration Agreement's 180-day limitations period and "waiver" of the "piggybacking rule" are "unenforceable" because they "impermissibly abridge the ADEA limitations period" and prevent Claimant from "pursu[ing] his ADEA claims **at all** in arbitration." (Mot. for Reconsideration at 12–16, 21 (emphasis in original).) This, however, is a bald attempt to blame *IBM* for Claimant's late filing. To begin, under the clear terms of the Arbitration Agreement, the Arbitrator does not have authority to adjudicate enforceability of the Arbitration Agreement's limitations provision or piggybacking waiver. Only a court may do so. (*See* Ex. B to Claimant's Arbitration Demand at 31); *see, e.g.*, *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010). In any event, the Arbitration Agreement does not shorten the limitations period for Claimant's claim but instead adopts the ADEA statute of limitations. (*See* Ex. B to Claimant's Arbitration Demand at 31.) And, the Arbitration Agreement's waiver of the single-filing doctrine

likewise does not shorten the ADEA's statute of limitations.  Rather, the single-filing doctrine is not part of the statute.  *See* 29 U.S.C. § 626(d).  Moreover, nothing in the Arbitration Agreement prevents Claimant from pursuing his ADEA claim in arbitration.  Indeed, Claimant could have done so *if he timely filed his Arbitration Demand*.

Thus, the Arbitrator should affirm his decision, and deny Claimant's Motion for Reconsideration.

## ARGUMENT

A party seeking reconsideration under Rule 60(b) must make a showing of "exceptional circumstances" before proceeding "to satisfy one or more of the rule's six grounds for relief from judgment . . . ."  *Wenrer v. Carbo*, 731 F.2d 204, 206–207 (4th Cir. 1984); *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990) ("The remedy provided by [Rule 60] is extraordinary and is only to be invoked upon a showing of exceptional circumstances.") (cleaned up).  Simply put, motions for reconsideration may be granted only in extraordinary circumstances.  *See Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (*en banc*).

Fourth Circuit law is clear that, "[w]here the motion seeks reconsideration of legal issues already addressed in an earlier ruling, the motion is not authorized by Rule 60(b)."  *United States v. Va. Am. Mgmt. Co.*, 166 F.3d 1211, 1211 (4th Cir. 1998) (per curiam) (citing *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 401 n.2 (4th Cir. 1995) ("If a party attempts to raise in a motion for reconsideration a legal issue already decided by the [arbitrator], it follows that no abuse of discretion has taken place."); *see also United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982) ("Where the motion is nothing more than a request that the district court change its mind, . . . it is not authorized . . . .") (citing Wright & Miller, 11 Federal Practice and Procedure § 2858).

-3-

Additionally, on reconsideration, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 140 S.Ct. 1698, 1703 (2020) (citing Wright & Miller, 11 Federal Practice and Procedure § 2910.1); *see, e.g.*, *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) ("[Reconsideration] may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance."); *Caisee Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."). "The motion is therefore tightly tied to the underlying judgment." *Banister*, 140 S.Ct. at 1703; *see A&C Constr. & Installation, Co. WLL & Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020) ("The district court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.") (cleaned up); Wright & Miller, 11 Federal Practice and Procedure § 2857 ("The cases show that although the courts have sought to accomplish justice, they have . . . a scrupulous regard for the aims of finality.").

Now, on reconsideration, Claimant repackages old arguments that the Arbitrator already rejected. And as before, they are meritless. Claimant's attempts to raise new arguments are similarly futile because he may not raise issues on reconsideration that he could have advanced in his Opposition to IBM's Motion to Dismiss.

*Thus, Claimant's Motion for Reconsideration should be denied on these bases alone.* But in either case, IBM will address each of Claimant's arguments.

-4-

**App.163**

**I.    THE ARBITRATOR RIGHTLY HELD THAT CLAIMANT'S DEMAND WAS UNTIMELY AND MUST BE DISMISSED UNDER THE ARBITRATION AGREEMENT'S CLEAR TERMS.**

In his Order, the Arbitrator enforced the Arbitration Agreement's "clear and unambiguous" terms and dismissed Claimant's ADEA claim as time-barred.  (*See* Order at 8.)  In brief, the Arbitrator held that "Claimant's failure to timely submit his Demand to the IBM Arbitration Coordinator requires dismissal of this Arbitration."  (*Id.* at 7.)  More specifically, the Arbitrator found that to initiate arbitration under the Arbitration Agreement, Claimant was required to "'submit[] a written demand for arbitration to the IBM Arbitration Coordinator'" by November 17, 2020.  (Order at 3 (quoting Ex. B to Claimant's Arbitration Demand at 31), 4, 7.)  Yet, Claimant "did not mail his Demand until November 18, 2021 . . . ."  (*Id.* at 7.)  Thus, the Arbitrator correctly concluded that Claimant's ADEA claim was untimely and granted IBM's Motion to Dismiss.

The Arbitrator also rebuffed Claimant's "equitable" arguments.  For one, the Arbitrator rejected Claimant's assertion that the Arbitration Agreement's filing requirements can be set aside as "non-jurisdictional."  (*Id.* at 8.)  The Arbitrator explained, "[t]he issue here is whether Claimant complied with the Arbitration Procedures and what are the consequences of that failure."  The Arbitrator continued, "[Claimant] did not comply with the Arbitration Procedures and the Arbitration Procedures unambiguously set forth the consequences of that failure – waiver of the claim.  That ends the inquiry."  (*Id.*)  This conclusion was a logical one, giving full effect to the unambiguous terms of the parties' bargained-for agreement.

Relatedly, the Arbitrator saw through Claimant's half-hearted attempt to re-write the terms of the Arbitration Agreement that he agreed to.  (Order at 7.)  The agreement unequivocally required Claimant to send his Demand to IBM's Arbitration Coordinator to initiate arbitration.  (*Id.*)  The Arbitrator easily concluded that Claimant failed to satisfy this condition – thereby "requir[ing] dismissal" of Claimant's claim.  (*Id.* at 7–8.)  And, the Arbitrator then recognized

-5-

that "Claimant has not provided any persuasive arguments even arguably supporting any finding of a legal, factual, or equitable nature to excuse the untimely submission of the Demand." (*Id.* at 8 (internal citation omitted).)  Finally, the Arbitrator made short work of Claimant's attempt to "piggyback" on the *Rusis* named plaintiffs' EEOC charges.  (*Id.* at 9–10.)  The Arbitrator concluded, "[t]he Arbitration Procedures are very explicit . . . that 'the filing of a charge of complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration.'" (*Id.* at 3 (quoting Ex. B to Claimant's Arbitration Demand at 32).)  Accordingly, "because Claimant was not required to file an EEOC charge, 'the piggybacking doctrine is wholly inapplicable in the arbitration context.'"  (*Id.* at 9 (quoting *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 193 (S.D.N.Y. 2021).)

In sum, the Arbitrator found that, under the express terms of the Arbitration Agreement, Claimant's ADEA claim is untimely and thus waived.  This conclusion was not erroneous:  It was sensible and well-reasoned.

## II.    CLAIMANT IMPERMISSIBLY RE-LITIGATES ARGUMENTS THAT THE ARBITRATOR ALREADY REJECTED.

### A.    Claimant's November 17, 2020 Submission To JAMS Is Irrelevant.

As before, Claimant attempts to re-write the clear terms of his Arbitration Agreement's filing and limitations provisions.  He asserts that he "**did** in fact timely file his arbitration demand with JAMS," and that his "only transgression" was that "he should have mailed a copy of the demand to IBM the same day he filed it, rather than the next day."  (Mot. for Reconsideration at 1 (emphasis in original).)  But Claimant made this same argument in opposing IBM's Motion to Dismiss.  (*See* Opp. to Mot. to Dismiss at 3–4.)  And the Arbitrator squarely rejected it.  The Arbitrator first found that the "Arbitration Procedures include a process . . . for initiating an arbitration" – namely, "'*submit[ting] a written demand for arbitration to the IBM Arbitration*

-6-

*Coordinator . . . .'"*  (Order at 3 (quoting Ex. B to Arbitration Demand at 31) (emphasis in original).)  Consequently, the Arbitrator held:

> Claimant's failure to timely submit his Demand to the IBM Arbitration Coordinator requires dismissal of this Arbitration.  In essence, Claimant did not get his Demand to the IBM Arbitration Coordinator in a timely fashion and the Arbitrator reads the Arbitration Agreement as unambiguously setting the procedure for initiating a demand and there are no reasons presented that would warrant excusing Claimant's failure to timely submit a demand.

(Order at 7.)  Thus, Claimant's argument "is nothing more than a request that the" Arbitrator change his mind and should be rejected accordingly.  *See Williams*, 674 F.2d at 313.

**B.      The Arbitration Agreement's Limitations Periods Must Be Strictly Enforced.**

Claimant also repeats his already-rejected argument that arbitrator may "lenien[tly]" construe arbitration agreements' limitations periods to permit time-barred claims.  (Mot. for Reconsideration at 10–12.)  But, once again, Claimant raised this contention before (*see* Opp. to Mot. to Dismiss at 4–7), and cannot repackage it on reconsideration.

The Arbitrator already rejected Claimant's argument because it is inapplicable to Claimant's arbitration agreement with its "very clear" and "unambiguous" limitations and waiver provisions.  (Order at 8.)  Specifically, the Arbitrator determined that the limitations provision is "clear and unambiguous," and "include[s] a . . . deadline for initiating an arbitration . . ." – namely, the ADEA's deadline for "fil[ing] a charge with the EEOC" – "180 days." (*Id.* at 3–4, 8.)  The Arbitrator also concluded that "[c]ourts in the Fourth Circuit have strictly construed statutes of limitations for filing charges both with the EEOC and Title VII charges." (*Id.* at 5).  And, the Arbitrator "disagree[d] with Claimant's assertion that the [waiver provision] [is] ambiguous," entitling the Arbitrator to determine waiver. (*Id.* at 8.)  Rather, the waiver provision is "very clear" and "means that untimely claims are waived." (*Id.* at 8.)

-7-

For his part, in seeking reconsideration, Claimant adds nothing to warrant a change to this result.  Claimant once again does not cite a single case holding that arbitrators have authority to make exceptions to an arbitration agreement's clear and mandatory terms.  Indeed, Claimant merely re-cites the cases he previously put forth in support of his contention that the Arbitrator may make "*de minimis*" exceptions to the Arbitration Agreement's limitations, filing, and waiver provisions.  (*Compare* Mot. for Reconsideration at 10–12 *with* Opp. to Mot. to Dismiss at 4–7.) IBM already proved that none of Claimant's cases hold that an arbitration agreement's explicit limitations and waiver provisions may be "lenien[tly]" construed to permit arbitrators to make exceptions thereto.  (Reply at 9–10, 12–14.)  Indeed, the Arbitrator agreed with IBM that these cases are inapposite because, unlike the Arbitration Agreement here, they involve ambiguous contractual terms and "stand[] for the unremarkable proposition that in the absence of clear terms . . . requiring strict enforcement of a statute of limitations, arbitrators have discretion to 'overlook *de minimis* violations' of that agreement."  (*See* Order at 8 n.5 (discussing *Berklee Coll. of Music v. Berklee Chapter of Mass. Fed'n of Teachers, Loc. 4412, AFT, AFL-CIO*, 858 F.2d 31, 32 (1st Cir. 1988)).)

Thus, Claimant's assertion that the Arbitration Procedures' limitations period should be flexibly construed is meritless.

### C.    Fairness Concerns Do Not Permit The Arbitrator To Contradict The Arbitration Agreement's Terms.

Claimant also suggests (again) that the Arbitrator should contravene the Arbitration Agreement's filing, limitations, and waiver provisions "in the interest of justice and fairness." (Mot. for Reconsideration at 25–26.)  Specifically, Claimant asserts that his deadline to demand arbitration should be "equitabl[y] toll[ed]" based on the same "fairness" considerations that Claimant raised in his Opposition:  (i) Claimant's counsel's firm "w[as] working remotely due to

the COVID-19 pandemic . . . and there was no mechanism for regularly sending out correspondence by mail"; and (ii) "timing of mail deliveries [wa]s uncertain . . . during the pandemic." (*Id.* at 1–2.)

The Arbitrator disposed of this argument, finding Claimant's fairness considerations to be lacking. (*See* Order at 1 n.1, 8, 10 n.7.) To begin, "[c]ourts strictly adhere to the time limits . . . and rarely allow equitable tolling of limitations periods." *Eaton v. Dig. Equip. Corp.*, 16 Fed. App'x 95, 96 (4th Cir. 2001). "For equitable tolling to apply, a litigant must establish (1) that he has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Wafraa v. Ali*, 1 F.4th 289, 294 (4th Cir. 2021) (cleaned up). "Its invocation must be reserved for those rare instances where – due to circumstance **external to the party's own conduct** – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.* (emphasis added) (cleaned up).

Here, the Arbitrator held that "Claimant has not provided any finding of a legal, factual or equitable nature to exclude the untimely submission of the Demand." (Order at 8.) Indeed, the Arbitrator found Claimant's purported bases for equitable tolling to be sufficiently unpersuasive as to merit no discussion. (*Id.* at 1 n.1 ("[T]his Order of Dismissal . . . discusses only those legal arguments that the Arbitrator considers necessary to establish the basis for resolution of IBM's motion. To the extent any factual or legal argument is not specifically mentioned herein, the Arbitrator has decided that it is either not persuasive and/or not essential . . . ."), 10 n.7 ("To the extent that any argument has not been addressed in this Order of Dismissal, it has been considered and either rejected or found unnecessary to a determination of the issues in contention.").)

Further, IBM has already established that Claimant's fairness considerations cannot be a basis for equitable tolling. (Reply at 17–20.) Namely, IBM demonstrated that courts routinely

dismiss untimely employment discrimination claims that are late-filed due to attorney error or inadvertence, and even when the late filing is caused by circumstances significantly more dire than those here, including infirmity or medical emergency. (*Id.* at 17–19.) IBM also showed that *Claimant's counsel's error caused Claimant's claim to be untimely.* (*Id.*) As such, equitable tolling cannot apply.[2] (*Id.*)

In sum, in his Order, the Arbitrator answered the question of equitable tolling's applicability, and Claimant has asserted nothing to change the Arbitrator's conclusion.

### D.    The Single-Filing Doctrine Does Not Apply.

Claimant also tries resurrecting his assertion that his claim is timely because "the time he had to file his Arbitration Demand" was "toll[ed]" by the filing of purported "classwide EEOC charge[s]" by the three named plaintiffs in *Rusis*. (*Id.* at 16–21.) Not surprisingly, Claimant's argument on this point is repetitive of his Opposition, and Claimant adds nothing that changes the Arbitrator's decision. (*Compare id.* at 16–21 *with* Opp. to Mot. to Dismiss at 7–9.)

Here, the Arbitrator already rejected application of the single-filing doctrine. (Order at 9–10.) The Arbitrator held, "[t]here are **several** reasons to reject application of the piggybacking doctrine to excuse Claimant's failure to timely provide notice." (*Id.* at 9 (emphasis added).) The Arbitrator explained, "[u]nder the judge-made exception to the requirement that ADEA plaintiffs *exhaust their remedies*, courts have *tolled the filing of EEOC charges* of individual plaintiffs where another's charge 'contained sufficient information to notify prospective defendants of their

---

[2] In his Motion for Reconsideration, Claimant's counsel, Thomas Fowler, asserts for the first time that Claimant's Demand was late-filed because Mr. Fowler was out of the office to attend his father's funeral. (Decl. of T. Fowler in Support of Mot. for Reconsideration at ¶ 5.) While Mr. Fowler's father's passing is unquestionably sad, it is not grounds for equitable tolling. As IBM pointed out in its Reply (at 19), Claimant is not represented by a solo practitioner, but rather by a well-known law firm with numerous attorneys, paralegals, and support staff. Indeed, this is evident from the very fact that Mr. Fowler did not appear on Claimant's Opposition. Rather, two other attorneys at the firm – Michelle Cassorla and Shannon Liss-Riordan – appeared. Simply put, Claimant's counsel's firm had ample resources to mail Claimant's Demand during Mr. Fowler's absence.

potential liability and permit the EEOC to attempt informal conciliation . . . .'" (*Id.* (quoting *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995) (emphasis added).)  Here, however, "[t]he Arbitration Procedures are very explicit . . . that '[t]he filing of a charge or complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration.'" (*Id.* at 4 (quoting Ex. B to Claimant's Demand at 31).)  The Arbitrator continued, "as the *Rusis* court itself noted, because Claimant was not required to file an EEOC charge 'the piggybacking doctrine is wholly inapplicable in the arbitration context.'" (*Id.* (quoting *Rusis v. Int'l Bus. Machs. Corp.*, 529 F. Supp. 3d 178, 193 (S.D.N.Y. 2021)).)  Accordingly, "[t]he issue here is whether Claimant complied with the terms of the Arbitration Procedures, not whether his time to file a charge with the EEOC should be tolled . . . ."  *Id.*  Thus, "the Arbitrator does not agree that the piggybacking doctrine can be applied to modify the terms of the parties' agreement." (*Id.* at 10.)  The Arbitrator should not entertain Claimant's request for reconsideration of a legal issue that was already decided.

In any event, that the Arbitrator correctly rejected Claimant's piggybacking theory.  In its Reply (at 22–28), IBM demonstrated that the single-filing doctrine cannot apply in this arbitration.  Indeed, IBM answered all of Claimant's now-repeated piggybacking suppositions.  (*Id.*)  In the interest of brevity, IBM will only summarize its arguments here, and refers the Arbitrator to its prior briefing.  Claimant's attempt to extend his limitations period by invoking a narrow, judicially-created exception to the EEOC charge-filing requirement is flawed for several reasons.

- *First*, Claimant's argument is a non-starter because the Arbitration Procedures provide that filing a charge does not extend the time for Claimant to file an arbitration demand:  "[F]iling of a charge or complaint with a government agency . . . shall not . . . extend the time for

-11-

submitting a demand for arbitration." (Reply at 22 (quoting Ex. B to Claimant's Arbitration Demand at 31).)

- *Second*, Claimant may not avail himself of tolling from a purported "class" EEOC charge because Claimant agreed to a class action waiver in his Separation Agreement: Claimant may not "receive any recovery from a class or collective action involving [ADEA] claims"; Claimant's ADEA claim may not be "initiated, maintained, heard, or determined on a multiparty, class action basis or collective action basis." (Reply at 22–23 (quoting Ex. B to Claimant's Arbitration Demand at 28).)

- *Third*, Claimant cannot avail himself of piggybacking because the rationale for the piggybacking doctrine does not apply in the context of this arbitration. This is because, under the Arbitration Procedures, Claimant can assert ADEA claims in arbitration without filing an EEOC charge. (*See* Ex. B to Claimant's Arbitration Demand at 31). And, piggybacking "is a judge-made exception to the requirement of administrative exhaustion." *See, e.g.*, *King v. McMillan*, 233 F. App'x 242, 244–45 (4th Cir. 2007). (Reply at 23.)

- *Fourth*, the Fourth Circuit and circuit courts throughout the country hold that piggybacking cannot apply in individual, stand-alone lawsuits. *See, e.g.*, *King*, 233 Fed. App'x at 245; *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 599 (5th Cir. 2006); *Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 900 (7th Cir. 2003); *Bettcher v. Brown Schs., Inc.*, 262 F.3d 492, 495 (5th Cir. 2001); *Whalen v. W.R. Grace & Co.*, 56 F.3d 504, 505–506 (2d Cir. 1995); *Inda v. United Air Lines, Inc.*, 565 F.2d 554, 559 (9th Cir. 1977). This is because allowing individual, stand-alone lawsuits to piggyback off of EEOC charges filed by others

-12-

improperly abrogates the ADEA charge-filing requirement.[3]  *See* 29 U.S.C. § 626(d).  (Reply at 24–26.)

- *Fifth*, the single-filing doctrine is additionally inapplicable because the *Rusis* named plaintiffs' EEOC charges do not give IBM sufficient notice of Claimant's claim.[4]  (Reply at 26–27.)  This is because the *Rusis* charges do not include any assertions that the *Rusis* named plaintiffs are representing a class of similarly-situated individuals.  (Reply at 26–27.)

- *Sixth*, the single-filing rule is also inapplicable because Claimant is not similarly situated to the *Rusis* named plaintiffs.  Namely, Claimant and the *Rusis* named plaintiffs held different

---

[3] For his part, Claimant now relies on *Tolliver v. Xerox Corp.*, 918 F.2d 1052 (2d Cir. 1990) for the proposition that "the piggybacking rule applies, not only in ADEA collective actions, but also in individual ADEA cases . . . ." (Mot. for Reconsideration at 18).  Claimant easily could have made this argument in his Opposition, but did not do so.  In any event, Claimant's reliance on *Tolliver* is misplaced.  *Tolliver*, by allowing individual lawsuits to piggyback off of EEOC charges filed by others, 918 F.2d at 1059–60, improperly abrogates the ADEA charge-filing framework.  *See* 29 U.S.C. § 626(d); *Bettcher v. Brown Schs., Inc.*, 262 F.3d 492, 495 (5th Cir. 2001) (permitting individual lawsuits to piggyback "would allow the single filing exception to consume the statutory rule, which clearly requires all ADEA plaintiffs to file a charge before filing a lawsuit").  Further, *Tolliver* does not involve an arbitration agreement, let alone an arbitration agreement stating that the filing of an EEOC charge does not extend the time for filing an arbitration demand.  Here, too, it would be improper to allow Claimant to abrogate the plain language of his Arbitration Agreement, particularly since Claimant points to no authority for the proposition that piggybacking applies to contravene the terms of an arbitration agreement.

Claimant also contends that "in *Tolliver*, the Second Circuit acknowledged that the impact of the piggybacking rule was to permit individuals to institute lawsuits outside the ADEA's 300 (or 180 day) window" and that "the piggybacking doctrine would toll the time that Claimant had to file his arbitration demand."  (Mot. for Reconsideration at 19 (citing Tolliver, 918 F.2d at 1057, 1059), 20.)  Nothing in *Tolliver* suggests this.  To the contrary, *Tolliver* explained that the single-filing doctrine does *not* extend the statute of limitations for ADEA claims:

> Nor need we have concern that application of the single filing rule will oblige [defendant] to defend against stale claims.  The ADEA statute of limitations provides adequate assurance that stale claims will not remain viable.  The charge filing requirement of section 7(d) sets a time limit . . . for the purpose of affording a prompt opportunity to attempt conciliation.  That opportunity existed within the 300 days specified in section 7(d).

*Tolliver*, 918 F.2d at 1059.  Moreover, the *Rusis* court recently rejected this interpretation of the single-filing doctrine: "the piggybacking doctrine neither 'tolls' the statute of limitations nor is it intended to permit otherwise time-barred claims to proceed in litigation."  *Rusis*, 2021 WL 1164659, at *4 n.4.

[4] Claimant additionally asserts that the EEOC's investigation of the *Rusis* named plaintiffs' EEOC charges put "IBM on notice" such that Claimant may piggyback on the *Rusis* named plaintiffs' EEOC charges.  (Mot. for Reconsideration at 19–20)  This is baseless.  As set forth *supra* at 13–14, the *Rusis* named plaintiffs' EEOC charges did not, and cannot, put IBM on notice of Claimant's ADEA claim.  Further, the EEOC investigation, and any alleged notice resulting therefrom, is simply irrelevant.  As set forth *supra* at 12, the single-filing doctrine does not extend to individual, stand-alone lawsuits, let alone individual arbitrations where the arbitration agreement precludes piggybacking.

-13-

positions, worked in different job groups, had different managers, and separated from IBM years apart. (Reply at 27–28.) For this same reason, Claimant's contention (Mot. for Reconsideration at 20) that the EEOC's investigation of the *Rusis* named plaintiffs' charges put IBM "on notice" of Claimant's "discrimination allegation" so as to permit piggybacking is baseless.

Thus, the Arbitrator correctly concluded that the single-filing doctrine cannot apply to this arbitration, and Claimant reprisal of his prior arguments does not change this result.

### III.    CLAIMANT'S NEW ARGUMENTS THAT HIS CLAIM IS TIMELY OR NEED NOT BE DISMISSED FAIL.

Claimant's also makes a series of entirely new arguments in support of his Motion for Reconsideration. Under controlling Supreme Court and Fourth Circuit law, this is plainly improper, and the Arbitrator should reject Claimant's newly-raised arguments on this basis alone. *Supra* at 1–2. Even so, Claimant's new-founded contentions are all meritless.

#### A.    The Limitations Period In The Arbitration Agreement Is Not Ambiguous.

In his Motion for Reconsideration, Claimant asserts for the first time that the Arbitration Agreement's limitations period is "anything but clear." (Mot. for Reconsideration at 7–10.) Namely, Claimant contends that the limitations provision "could be plausibly interpreted to mean . . . 180 days . . . [the period] Claimant had to file a charge with the EEOC . . . or . . . the time that Claimant had to file such a claim in court" – "at least 270 days." (*Id.* at 8–9, 9 n.4.) Claimant easily could have raised this argument in his Opposition to IBM's Motion to Dismiss. But he did not. As such, Claimant cannot raise it now. *Supra* at 2–3.

In any event, IBM *has* proven that the limitations provision provided Claimant 180 days to file his Demand. (Mot. to Dismiss at 1, 5–6.) Indeed, in his Order, the Arbitrator reached this exact conclusion. (Order at 7.) The Arbitrator found that the limitations provision is "clear and

-14-

unambiguous." (*Id.*) The Arbitrator explained, the "Arbitration Procedures include a . . . deadline for initiating an arbitration . . . ." (*Id.* at 3.) "Under the procedures, Claimant agreed to initiate an arbitration by 'submit[ting] a written demand for arbitration to the IBM Arbitration Coordinator . . . no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.'" (*Id.* at 3–4.) The Arbitrator continued, **"[t]he ADEA requires that claimants first file a charge with the EEOC** within a prescribed time period. **For a person like Claimant**, who was employed in North Carolina, **the period for filing an EEOC charge is 180 days**." (*Id. at* 4 (citing 29 U.S.C. § 626(d)) (emphasis added), 5 ("Under the ADEA, Claimant would have had 180 days . . . to file a charge with the EEOC.").)

Further, it is particularly disingenuous for Claimant to assert this new position considering that, in his Opposition to IBM's Motion to Dismiss, Claimant repeatedly conceded that the arbitration agreement gave him 180 days to demand arbitration of his ADEA claim. (*See* Opp. to Mot. to Dismiss at 4 ("There is no dispute that Claimant submitted his demand to JAMS within the 180-day window"), 6 ("In light of all of these circumstances, an exception to the 180-day filing deadline is warranted.")). And the Arbitrator *found* that Claimant admitted to the 180-day filing period: "IBM asserts, **without dispute**, that Claimant was employed in North Carolina and that the applicable period for filing in North Carolina is 180 days." (Order at 4 n.4 (emphasis added).) Claimant cannot use a motion for reconsideration to take a position contrary to what he conceded in his Opposition to IBM's Motion to Dismiss. Thus, Claimant's novel ambiguity argument should be dismissed out of hand.

-15-

In any event, Claimant's theory is specious because it violates multiple black-letter tenets of contract interpretation.

### 1.    Claimant's Construction Renders Limitations Provision Terms Meaningless.

First, Claimant's proposed construction makes terms therein meaningless and superfluous – a result prohibited by basic principles of contract interpretation.  Arbitration agreements are interpreted "according to state law principles governing contract formation."  *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020).  "Contract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage."  *Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993); *see also Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 277 (4th Cir. 1987) (pointing to "that universal rule of contract law that, in construing language in a contract, an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless") (cleaned up); *PMA Cap. Ins. Co. v. U.S. Airways, Inc.*, 626 S.E.2d 369, 372 (Va. 2006) ("No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.").

Here, the limitations provision contains two clauses, immediately next to each other, that distinguish between the limitations period for claims that are first brought before a government agency, on the one hand, and those that are not.  The Arbitration Agreement provides:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.

-16-

(Ex. B to Arbitration Demand at 31.)  The term "claim[s] . . . which must first be brought before a government agency" must be read in conjunction with the term—"no later than the deadline for the filing of such a claim"—that immediately follows.  (*See id.* at 27.)  And, the term "claim[s] . . . which must first be brought before a government agency" carves out the limitations period for such claims from the first clause's general "statute of limitation (deadline for filing)" for claims that are not first brought before a government agency.  (*See id.*)

For both limitations provision clauses to have meaning, the second clause must prescribe a limitations period for claims that are first brought before a government agency different from the statute of limitations for filing an action in court.  The only reasonable construction of the limitations provision's second clause is the limitations period for submitting a claim to a government agency.  If the limitations provision's second clause is interpreted to mean the limitations period for filing a claim *in court*, then the limitations provision's second clause is same as the first clause and is rendered superfluous.

Claimant's supposition that the limitations provision's second clause "could be plausibly interpreted to mean that the arbitration demand must be filed within the . . . time that the Claimant had to file such a claim in court" (Mot. for Reconsideration at 8) ignores basic principles of contract interpretation.  Simply put, Claimant asserts that the limitations provision's second clause means the same thing as the first clause.  Similarly, Claimant's suggested construction makes the term "claim[s] . . . which must first be brought before a government agency" meaningless.  And, it renders the Arbitration Agreement's inclusion of the two clauses – distinguishing the limitations

-17-

period for claims that must first be brought before a government agency and those that do not – superfluous.[5, 6]

Thus, as a matter of contract law, Claimant's argument that the limitations provision's second clause means the "deadline for a plaintiff to bring a claim in court" fails because such interpretation voids multiple contract terms.

### 2.    Claimant's Interpretation Renders The Limitations Period Non-Existent Or Indefinite.

Second, Claimant's suggested construction also makes the limitations period non-existent or, in the alternative, entirely indefinite and unknowable.  As a result, Claimant attempts to violate another basic tenet of contract interpretation:  Courts should avoid reading contracts in a way that leads to an absurd results and should instead adopt a more reasonable and probable construction. *See, e.g.*, *Levine v. Emps. Ins. Co. of Wausau*, 887 F.3d 623, 632 (4th Cir. 2018) ("Virginia courts will not read contracts to produce absurd results."); *Chi. Title Ins. Co. v. 100 Inv. Ltd. P'ship*, 355 F.3d 759, 764 (4th 2004) ("It is axiomatic under Maryland law that a court should avoid reading in a contract in a way that produces an absurd result, especially when a reasonable interpretation is available.") (cleaned up); *Statoil USA Onshore Props. Inc. v. Pine Res., LLC*, 675 Fed. App'x 285, 290 (4th Cir. 2017) ("West Virginia courts will not interpret a contract in a manner that creates an absurd result.") (cleaned up); *Fairbanks, Morse & Co. v. Twin Cities Supply*

---

[5] Claimant asserts that his ADEA claim is not one "that must first be brought before a government agency" because:  (i) Claimant "would not have had to file an EEOC charge . . . because he could have relied on the [*Rusis*] EEOC charges"; and (ii) the Arbitration Agreement "excuses the requirement for Claimant to exhaust his administrative remedy . . . prior to filing an arbitration demand."  (Mot. for Reconsideration at 9 n.4.)  This does nothing to change the *ADEA's statutory requirement* that, as a precondition to suit, ADEA claims must first be submitted to a government agency.

[6] Claimant additionally contends that the limitations provision provides him with a "choice" as to the deadline for his ADEA claim – either the first or second clause – because the limitations provision employs the conjunction "or."  (*See* Mot. for Reconsideration at 9 n.5.)  This is an unnatural reading of the limitations provision and a distortion of the word "or."  On its face, the limitations provision provides mandatory limitations periods – one for claims that must first be brought before a government agency and one for claims that do not.

-18-

*Co.*, 86 S.E. 1051, 1054 (N.C. 1915) ("All instruments should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results."). In short, Claimant's proposed construction would lead to the absurd result of having no limitations period at all for an ADEA claim in arbitration.

Individuals who work in a non-"deferral" state have 180 days to submit a charge to the EEOC. *See* 29 U.S.C. § 626(d). Claimant worked for IBM in North Carolina, which is a non-deferral state. *See* E.E.O.C, Raleigh District Office, https://www.eeoc.gov/field-office/raleigh/timeliness (last visited Nov. 16, 2021). In the usual course, an individual who files a charge with the EEOC must wait for the EEOC to investigate and then issue a Notice of Right to Sue. Only at that point can the individual bring an ADEA claim in court. After a Notice of Right to Sue is issued, the individual has 90 days to initiate a lawsuit in court. 28 U.S.C. § 626(e); E.E.O.C., Filing a Lawsuit, https://www.eeoc.gov/filing-lawsuit (last visited Dec. 17, 2021) ("Once you receive a Notice of Right to Sue, you must file your lawsuit within 90 days."). The ADEA's 90-day lawsuit filing period does not commence upon the culmination of the 180-day charge-filing period. *See* 29 U.S.C. § 626(e); E.E.O.C., Filing a Lawsuit, https://www.eeoc.gov/filing-lawsuit (last visited Nov. 16, 2021). Rather, it is triggered only when the EEOC issues a Notice of Right to Sue. *See* 29 U.S.C. § 626(e); E.E.O.C., Filing a Lawsuit, https://www.eeoc.gov/filing-lawsuit (last visited Dec. 17, 2021). On average, EEOC investigations "take approximately 10 months," but may take years. *Compare* E.E.O.C., What You Can Expect After You File a Charge, https://www.eeoc.gov/what-you-can-expect-after-you-file-charge (last visited Dec. 17, 2021) *with E.E.O.C. v. Propak Logistics, Inc.*, 746 F.3d 145, 147–51, 152–54 (4th Cir. 2014) (affirming district court decision "ordering [EEOC] pay attorneys' fees

-19-

to a prevailing defendant employer" where defendant "suffered prejudice . . . from the EEOC's" five and one-half year investigation).

Claimant contends that the limitations provision's second clause "could be plausibly interpreted to mean that the arbitration demand must be filed within the . . . time that the Claimant had to file such a claim in court." (Mot. for Reconsideration at 8.)  As a result, Claimant argues, the limitations period is "at least 270 days" – the sum of the 180-day charge-filing period and the 90-day lawsuit filing period.  (*Id.* at 9, 9 n.4.)  But Claimant's interpretation violates a canon of contract interpretation because it would void the limitations provision.  This is because, after the filing of an EEOC charge with a government agency, there is no date-certain deadline for bringing an ADEA action *in court* until *after* the EEOC issues its Notice of Right to Sue.  *Supra* at 14–18. Thus, Claimant's construction of the arbitration agreement's limitations period – that it may be the same as the deadline to file an ADEA claim *in court* rather than the deadline to submit a charge to a government agency – effectively reads the limitations period out of the agreement.

Therefore, Claimant's construction of the limitations provision renders the limitations period non-existent or, alternatively, indefinite.

### 3.    Ambiguity Cannot Be Construed Against IBM Because The Limitations Provision Is Not Genuinely Ambiguous.

Claimant additionally contends that any ambiguity in the limitations provision "must be construed in Claimant's favor as the non-drafter, meaning that the Arbitrator must apply the interpretation that renders his claim timely." (Mot. for Reconsideration at 3.)  The limitations provision, however, is not genuinely ambiguous.  The North Carolina Supreme Court has explained that "[i]ntent is derived not from a particular contract term but from the contract as a whole." *State v. Philip Morris USA Inc.*, 685 S.E.2d 85, 90 (N.C. 2009).  And "in reviewing the entire agreement, [the court's] task is not 'to find discord in differing clauses, but to harmonize all

-20-

clauses if possible.' " *Id.* at 91 (quoting *Peirson v. Am. Hardwar Mut. Ins. Co.*, 107 S.E.2d 137, 139 (N.C. 1959)); *Zagaroli v. Neill*, No. 15 CVS 2635, 2018 WL 1589148, at *21 (N.C. Sup. Ct. Mar. 28, 2018) ("The contract is to be construed consistently with reason and common sense."). Parties can also "differ as to the interpretation of language without its being ambiguous . . . ." *Walton v. City of Raleigh*, 467 S.E.2d 410, 412 (N.C. 1996); *see also Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 379 (N.C. 1986) ("Although it is possible to perceive ambiguity in the [agreement's] language, it strains at logic to do so.").

Here, the Arbitrator has already determined that the limitations provision is "clear and unambiguous" and "include[s] a . . . deadline for initiating an arbitration . . ." – 180 days. (Order at 3, 8.) But, even if it were equivocal – which it is not – any purported ambiguity is easily dispelled. *Supra* at 14–20. Thus, under North Carolina law, any alleged ambiguity in the limitations provision cannot be inferred against IBM.[7]

## B. The Arbitration Agreement's Limitations Provision And Piggybacking Waiver Do Not Waive A Substantive Right Under The ADEA.

Claimant's next new argument is that the Arbitration Agreement's 180-day limitations period and "waiver" of the "piggybacking rule" are "unenforceable" because they "impermissibly abridge the ADEA limitations period." (Mot. for Reconsideration at 12–16, 21.) Claimant goes so far as to allege that, because of these provisions, "Claimant cannot pursue his ADEA claims **at**

---

[7] Claimant's suggestion that the limitations provision is so "unclear" that the Arbitrator should "substitute a 'reasonable time'" (Mot. for Reconsideration at 10 n.5) is meritless. Here, the Arbitrator has already determined that the limitations provision is "clear and unambiguous" and "include[s] a . . . deadline for initiating an arbitration . . . ." (Order at 3, 8.) In any event, Claimant's cases (Mot. for Reconsideration at 10 n.5) are all distinguishable. Specifically, in *NCR Corp. v. CBS Liquor Control Inc.*, the arbitration agreement did not include any limitations provision at all. 874 F. Supp. 168, 172–73 (S.D. Ohio 1993). And, in *Anthony v. Affiliated Computer Services* and *Hagan v. Katz Communications, Inc.*, the arbitration agreements adopted the applicable statute of limitations but *did not specify separate limitations periods for claims that must first be brought before a government agency and those that do not*. 621 Fed. App'x 49, 51 (2d Cir. 2015); 200 F. Supp. 3d 435, 444–45 (S.D.N.Y. 2016).

-21-

**all** in arbitration." (Mot. for Reconsideration at 16, 21 (emphasis in original).) Claimant's contention fails for multiple reasons.

> 1.    **Under The Arbitration Agreement, The Arbitrator Does Not Have Authority To Adjudicate Enforceability Of The Agreement's Terms.**

As a threshold matter, under the clear terms of the Arbitration Agreement and controlling Supreme Court law, the Arbitrator does not have authority to adjudicate enforceability of the Arbitration Agreement's limitations provision or piggybacking waiver. Only a court may do so. (*See* Ex. B to Claimant's Arbitration Demand at 31.)

To begin, under the Federal Arbitration Act ("FAA") and controlling Supreme Court law, the Arbitrator is bound to apply the arbitration agreement according to its terms, including procedures set forth therein. (Reply at 1–2); *see, e.g., Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). "[A]n arbitrator derives his or her powers from the parties' agreement to . . . submit their disputes to private dispute resolution." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010). As such, when "arbitrators . . . give effect to . . . contractual limitations [in arbitration agreements] . . . [they] must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Id.* at 684. Following these first principles, parties cannot be compelled to arbitrate issues that they have not agreed to submit to arbitration. *See, e.g., Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes – *but only those disputes* – that the parties have agreed to submit to arbitration.") (emphasis in original) (citation and internal quotations omitted); *Volt Info. Scis., Inc. v Bd. of Trs. of Leland Stan. Junior Univ.*, 489 U.S. 468, 478 (1989) ("the FAA does not require parties to arbitrate when they have not agreed to do so, [] nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement") (internal citations omitted). The Supreme Court has also

affirmed that courts **must** adjudicate challenges to the validity or enforceability of an arbitration agreement **unless** the arbitration agreement "clearly and unmistakably" specifies that the arbitrator has authority to do so. *See, e.g.*, *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010); *Granite Rock Co.*, 561 U.S. at 299–300 (noting that, "where a party contests" the "enforceability" of the arbitration agreement, "absent a valid provision specifically committing such disputes to an arbitrator", "the court must resolve the disagreement").

Here, the Arbitration Agreement explicitly states that "[a]ny issue concerning the validity or enforceability of this Agreement . . . shall be decided **only by a court** of competent jurisdiction." (*See* Ex. B to Claimant's Arbitration Demand at 31 (emphasis added).) Thus, under the terms of the arbitration agreement, the Arbitrator lacks authority to decline to enforce any provision of the arbitration agreement. Only a Court may do so.

Of relevance here, in *Rusis*, Claimant's counsel took precisely this position – asking *the court* to find that identical arbitration agreements' limitations provisions and piggybacking waivers – are unenforceable. *See Rusis v. Int'l Bus. Machs. Corp.*, No. 18-CV-8434 (VEC), 2021 WL 1164659 (S.D.N.Y. Mar. 26, 2021). In *Rusis*, "more than 100" former IBM employees – all represented by Claimant's counsel – sought to join the *Rusis* collective action despite having agreed to resolve ADEA claims solely in individual arbitration. *Id.* at *2. IBM promptly filed a motion to dismiss and to compel arbitration in the *Rusis* case. In response, these former employees asked the court to issue a "threshold ruling" that the limitations provision and piggybacking waiver should be deemed "unenforceable." *Id.* at *4. In doing so, the former employees "*stress[ed] that the separation agreements provide that the enforceability of the agreements is an exclusive matter for the courts.*" *Id.* at *6 (emphasis added). The court granted IBM's motion and dismissed these plaintiffs from the case. Thus, Claimant's counsel *has conceded that only a court has authority to*

-23-

adjudicate enforceability.  For this reason, as well, Claimant's argument should be dismissed out of hand.[8]

### 2.    Claimant's Argument That The Limitations Provision And Piggybacking Waiver Prevent Him From Pursuing His ADEA Claim In Arbitration Is Baseless.

In any event, Claimant's supposition that the limitations provision and piggybacking waiver "impermissibly abridge the ADEA limitations period" and prevent Claimant from pursuing his ADEA claim "**at all**" in arbitration (Mot. for Reconsideration at 12–16, 21 (emphasis in original)) are baseless.

First, the Arbitration Agreement does not shorten the limitations period for Claimant's claim, but rather adopts the ADEA statute of limitations.  (*See* Ex. B to Claimant's Arbitration Demand at 31 ("To initiate arbitration, you must submit a written demand . . . if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.").)  Indeed, in court, the Claimant would have precisely the same period to initiate his claim: As a precondition to suit, the ADEA requires Claimant to file a charge with a government agency within 180 days.  *Supra* at 14–15.

Second, the Arbitration Agreement's piggybacking waiver does not shorten the *ADEA's statute of limitations*.  The single-filing doctrine is not part of the statute.  *See* 29 U.S.C. § 626(d).

---

[8] Claimant cites *Graham Constr. Co. v. The Daniel Grp., Inc.*, No. 06CV352, 2006 WL 8448849, at *5 (M.D.N.C. Sept. 29, 2006) for the proposition that the Arbitrator may refuse to enforce the Arbitration Agreement's limitations provision and piggybacking waiver because "questions of timeliness are questions of procedural arbitrability." (Mot. for Reconsideration at 17 n. 10.)  But IBM does not dispute the Arbitrator's authority to adjudicate the *timeliness* of Claimant's claim.  Indeed, in its Motion to Dismiss, IBM asked the Arbitrator to do exactly this – and the Arbitrator held Claimant's claim is untimely.  Claimant, by contrast, is asking the Arbitrator to *invalidate* the Arbitration Agreement's limitations provision and piggybacking waiver.  (Mot. for Reconsideration at 12–16, 21.) This the Arbitrator cannot do.  *Supra* at 19–20.

At any rate, *Graham* is inapposite because the court did not address, nor did any party raise, the enforceability of any arbitral provision.  Rather, the question before the arbitrator was the timeliness of the plaintiff's claim under Tennessee law, and whether the arbitrator could consider a *statutory* exception to the law's statute of limitations. 2006 WL 8448849, at *1, *4–5.

-24-

Rather, as the Arbitrator aptly recognized, it is "a judge-made exception to administrative prerequisites." (Order at 9.) *See also, e.g.*, *King v. McMillan*, 233 F. App'x 242, 244–45 (4th Cir. 2007) ("The single-filing rule is a judge-made exception to the requirement of administrative exhaustion.").

*Third*, nothing in the Arbitration Agreement "prevent[s] the effective vindication of Claimant's [ADEA] claim[] in arbitration." (Mot. for Reconsideration at 17, 21.) Here, the *cause for* Claimant's late filing is entirely between Claimant and his counsel. And, Claimant's attempt to redirect blame to IBM must be dismissed out of hand. As the *Rusis* court explained, it was "patently absurd" for the former IBM employees to claim that IBM sought to "prevent [them] from pursuing their claims in any forum." 2021 WL 1164659 at *6 n.8. Those plaintiffs "conveniently ignore[d]" that they could have sought relief if they had "*file[d] timely arbitration demands in the first instance*." *Id.* (emphasis added). They did not "identify any obstacle, let alone one imposed by IBM, that prevented [them] from filing an arbitration demand on their ADEA claims within the . . . deadline established by the separation agreements." *Id.* (emphasis added). Accordingly, the court would "not countenance Plaintiffs' attempts to set the fault at IBM's feet when they need look no further than their own counsel for the appropriate locus of blame." *Id.* This same reasoning applies here.

Thus, the Arbitration Agreement's limitations provision and piggybacking waiver do not shorten the ADEA's statute of limitations and in no way prevent Claimant from pursuing his ADEA claim in arbitration.

### 3. The Arbitration Agreement's Limitations Period And Piggybacking Waiver Do Not Waive A "Substantive Right" Under The ADEA And OWBPA.

Claimant also now asserts – for the first time – that the limitations provision and piggybacking waiver are unenforceable because they waive Claimant's "substantive rights" under

-25-

the ADEA. (Mot. for Reconsideration at 12–16, 21.) Claimant additionally claims that, to properly obtain a waiver of Claimant's "right" to extend the statutory limitations period through piggybacking, IBM was required to satisfy the information disclosure requirements of the Older Workers Benefit Protection Act ("OWBPA"). (*Id.* at 21–24.) Claimant easily could have advanced these arguments in his Opposition, but did not do so. Regardless, Claimant's contentions fail for multiple reasons.

First, IBM has established that the limitations provision and piggybacking waiver do not truncate the ADEA statute of limitations and the single-filing doctrine is not an ADEA *statutory* right. *Supra* at 9–12.

Second, even if the Arbitration Agreement did truncate the limitations period for Claimant's ADEA claim – which it does not – the limitations provision and piggybacking waiver remain enforceable. Indeed, IBM has demonstrated that courts routinely enforce shortened limitations periods in arbitration agreements, including for ADEA claims. (Reply at 14–15.) *See, e.g.*, *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 480 (6th Cir. 2005); *Wilkerson v. Fed. Express*, 2011 WL 2176823, at *1, *4 (D. Md. June 2, 2011); *Lugihibl v. Fifth Third Bank*, 2015 WL 1235221, at *1 (N.D. Ill. Mar. 16, 2015).

Third, it is well-settled that the limitations period is a procedural right – and not a substantive right – under the ADEA. *See, e.g.*, *Browning v. AT&T Paradyne*, 120 F.3d 222, 225 (11th Cir. 1997) ("[T]he ADEA limitations period is a procedural rather than substantive requirement . . . ."); *Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 665 (8th Cir. 1995) ("ADEA statute of limitations is 'a procedural rather than a substantive requirement.' ") (internal citations omitted); *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 891 (2d Cir. 1995) (ADEA statute of limitations not a "substantive right[]").

For his part, Claimant relies on *Thompson v. Fresh Products, LLC*, 985 F.3d 509 (6th Cir. 2021) and *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019), to support his claim that "contractually shortenin[ing] the limitations period of the ADEA" is "unenforceable" because the limitations period is a "substantive" ADEA right.  (Mot. for Reconsideration at 13–15, 21–22.)  Claimant, however, mischaracterizes *Thompson* and *Logan*.  Specifically, *Thompson* and *Logan did not involve arbitration agreements*, and *Logan* expressly carved-out arbitration from its holding.  *Logan*, 985 F.3d at 838.  To begin, *Thompson* involved an employee handbook and *Logan* involved an employment application, both of which shortened the limitations period for all **lawsuits** to six months.  985 F.3d at 519; 939 F.3d at 826.  *Thompson*, following *Logan*, concluded that the handbook's timing provision was unenforceable because it improperly curtailed the plaintiff's **right to sue** under the ADEA.  985 F.3d at 519.

*Logan*, however, ***excluded arbitration agreements from its holding***.  The *Logan* court explained that the rationale for striking down contractually-shortened limitations periods for ADEA **lawsuits** is **inapplicable in the arbitral context.**  939 F.3d at 838 ("Through the Federal Arbitration Act, Congress expressly authorized arbitration in lieu of litigation for resolving disputes, including controversies involving federal statutes.") (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 673 n.16 (6th Cir. 2003) (rejecting argument that a truncated limitations period in an arbitration agreement rendered the agreement unenforceable)).  Put differently, by choosing arbitration, parties may consent to rules that are "'more limited than that generally allowed in federal district court'" so long as they are not "'unduly burdensome.'"  *Id.* (quoting *Morrison*, 317 F.3d at 637 n.16).  By contrast, "**outside the arbitration context**, Congress has not authorized litigants to alter the Title VII limitations period."  *Id.* (emphasis added).  By affirming

-27-

*Logan*, *Thompson* upheld its arbitration carve-out.  Thus, *Thompson* and *Logan* are inapplicable

here.[9]

---

[9] Claimant's remaining authorities (Mot. for Reconsideration at 15–16, 16 n.10) likewise do not help him, and instead involve circumstances far afield from those here or, alternatively,  make clear that *arbitration agreements may truncate the ADEA statute of limitations*:

- *Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294 (E.D.N.Y. 2018) involved the special-damages rule under the Fair Labor Standards Act ("FLSA"), for which there is no ADEA counterpart.  The *Castellanos* court held that the FLSA statute of limitations cannot be shortened because doing so would affect the amount of damages a plaintiff can recover.  Under the FLSA, an employee "can recover damages for pay periods" only "as far back as the statute of limitations reaches." This unique statutory feature led the court to "conclude[] that arbitration provisions shortening the limitations period to bring FLSA claims are unenforceable." *Castellanos*, 291 F. Supp. 3d at 299–300.

- In *Wineman v. Durkee Lakes Hunting & Fishing Club, Inc.*, 352 F. Supp. 2d 815 (E.D. Mich. 2005), the court refused to enforce an arbitration agreement that limited the time to bring FLSA claims to six months, far shorter than the FLSA's two-year limitations period (and three-year period for willful claims).  *Id.* at 818, 823.  The Arbitration Procedures, by contrast, do not shorten the period for Claimant's ADEA claim.  In any event, the *Wineman* court focused on the unique legislative purpose of the FLSA, while conceding that "federal courts . . . have found that a six-month limitations period in an employment contract is not per se unreasonable." *Id.* at 820.

- In *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010), a Title VII case, the Second Circuit noted, without deciding the issue, that "[h]ad the defendants attempted to enforce the arbitration agreement as originally written it is not clear that we would hold in their favor." *Ragone*, 595 F.3d at 125–26.  The potentially offending provisions were the *combination* of a 90-day limitations period for demanding arbitration of a Title VII claim *plus* a fee-shifting provision that required fees to be awarded to the prevailing party.  *See id.*  Here, the Arbitration Procedures neither shorten the limitations period nor shift fees to the prevailing party.

- *Graham Oil Co. v. ARCO Prods. Co., a Div. of Atl. Richfield Co.*, 43 F.3d 1244, 1246 (9th Cir. 1994)*, as amended* (Mar. 13, 1995) did involve an arbitration agreement, but involved a reduction in the one-year statutory limitations period of the Petroleum Marketing Practices Act to just 90 days, which the court found unreasonable. *Id.* at 1247–48.  Here, the Arbitration Procedures follow the statutory limitations period.

- *O'Phelan v. Fed. Express Corp.*, No. 03 C 00014, 2005 WL 2387647 (N.D. Ill. Sept. 27, 2005) is distinguishable because the case did not involve an arbitration agreement.  Rather, it involved an employment contract that limited the time for filing a Title VII discrimination suit in court to six months. *Id.* at *3.  The court found this problematic because the "EEOC retains exclusive jurisdiction for 180 days" before plaintiff may obtain a right-to-sue letter, thereby "prevent[ing] the plaintiff from having any mechanism for redress" during the contractual limitations period.  *Id.* at *3–4.  The *O'Phelan* court was careful to distinguish this circumstance from that involving an arbitration agreement.  *Id.* at *4 ("arbitration clauses . . . ultimately lead to resolution of a dispute, whereas enforcement of a six month limitation on claims effectively prevents the plaintiff from having any mechanism for redress under Title VII due to the EEOC's administrative requirements").

- In *Salisbury v. Art Van Furniture*, 938 F. Supp. 435, 437 (W.D. Mich. 1996), the court found fault with a similar employment contract provision, limiting the time to file a suit in court, for similar reasons as the *O'Phelan* court.

- *Sanford v. Quicken Loans*, No. 13-11929, 2014 WL 266410, at *1 (E.D. Mich. Jan. 24, 2014) also did not involve an arbitration agreement, but rather an employment contract that reduced the limitations period for ADEA *lawsuits* to one year.  The court held the limitations period was unenforceable because it denied ADEA plaintiffs "a meaningful opportunity to complete the administrative process." *Id.* at *4.  Under the Arbitration Agreement, by contrast, Claimant is not required to exhaust administrative remedies.

- *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F. Supp. 2d 682, 687 (S.D. Tex. 2013) likewise did not involve an arbitration agreement.  In fact, the court differentiated another case on that very basis: The case "misse[d] the

-28-

Fourth, the law is also clear that the OWBPA disclosure requirements apply only to substantive – and not procedural – ADEA rights.  The OWBPA provides that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1).  The OWBPA sets forth various disclosure requirements that waivers of ADEA claims must satisfy for a waiver to be knowing and voluntary.  *See id.* at §§ 626(f)–(h).

Interpreting the OWBPA, the U.S. Supreme Court has squarely held that not all ADEA "rights" are subject to the OWBPA disclosure requirements.  Instead, the Court has clearly delineated a difference between substantive rights (which *are* subject to the OWBPA disclosure requirements), and procedural rights (which are *not* subject to the OWBPA disclosure requirements).  *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 259 (2009) ("the agreement to

---

mark . . . because it involved an agreement to arbitrate employment discrimination claims within one year.  Enforcement of that provision did not create the catch-22 that having to comply with both EEOC exhaustion and the six-month limitations period creates, because an EEOC filing is not a prerequisite to arbitration." *Id.* at 687.  As the *Mazurkiewicz* court recognized, case law rejecting a shorter ADEA limitations period do not implicate arbitration agreements.  Regardless, the provision at issue here **mirrors** the ADEA's limitations period.

- *Cole v. Convergys Customer Mgmt. Grp., Inc.*, No. 12-2402, 2012 WL 6047741, at *4 (D. Kan. Dec. 5, 2012) did not involve an arbitration agreement or the ADEA.  Rather, it involved an employment agreement that limited the limitations period under Title VII to six months.  In finding the shortened statute of limitations unenforceable, the court relied on *O'Phelan* and its rationale.

- *Mabry v. W. & S. Life Ins. Co.*, No. 03 CV 848, 2005 WL1167002 (M.D.N.C. Apr. 19, 2005) likewise did not involve an arbitration agreement, but an employment agreement that limited the statute of limitations under the Americans with Disabilities Act to six months.  The court concluded that the provision was unenforceable because it required "a party to prematurely **file suit**" and "would unnecessarily increase the burden on federal courts . . . ." *Id.* at *5 (emphasis added).  As discussed, the philosophy underlying that ruling is inapplicable in the arbitral context.

- *Lewis v. Harper Hosp.*, 241 F. Supp. 2d 769, 771–72 (E.D. Mich. 2002) yet again does not involve an arbitration agreement, but rather an employment contract.  There, too, the court differentiated litigation and arbitration: "While arbitration ultimately leads to resolution of the complaint, the effect of the limitations clause at issue could ultimately leave Plaintiff without redress given the EEOC filing requirements." *Id.* at 772.  So while parties can validly shorten a limitations period in the arbitral context, litigation implicates different policy concerns.  *See id.*

-29-

arbitrate ADEA claims is not the waiver of a 'substantive right' as that term is employed in the ADEA"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991) ("[I]f Congress intended the *substantive protection* afforded [by the ADEA] to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history.") (emphasis added) (citation and internal quotation omitted).

Circuit Courts – following the Supreme Court precedent – have likewise held that the OWBPA applies only to substantive – and not procedural – rights under the ADEA. *See, e.g.*, *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1165 (8th Cir. 2017) ("*14 Penn Plaza* thus interprets one of § 626(f)(1)'s references to 'right[s] or claim[s]' to mean substantive rights to be free from age discrimination, not procedural 'rights' to pursue age discrimination claims in court."); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 13 (1st Cir. 1999) (rejecting plaintiff's argument that "OWBPA's reference to 'right' [] include[s] procedural rights" and noting that "[m]ost courts which have considered the issue have interpreted OWBPA's reference to 'any right' to apply to substantive rights"); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 181 (3d Cir. 1998), *overruled on other grounds by Green Tree Fin. Corp.–Al. v. Randolph*, 531 U.S. 79 (2000) ("[T]he protection [] [OWBPA] affords is limited to the waiver of substantive rights under the ADEA."); *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) ("Congress, through the OWBPA, has protected terminated employees who waive their substantive rights under ADEA . . . .").

In contrast to the great weight of authority supporting IBM's position, Claimant cites two district court decisions, *Hammaker v. Brown & Brown, Inc.*, 214 F. Supp. 2d 575 (E.D. Va. 2002) and *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 1060 (S.D. Cal. 1999), for the proposition that, under the ADEA and OWBPA, there is no difference between substantive

-30-

and procedural rights.  (Mot. for Reconsideration at 24.)  But these decisions were overruled by subsequent Supreme Court precedent and are otherwise off point.  Neither *Hammaker* nor *Thiele* address whether the limitations period is a substantive right under the ADEA.  Rather, *Hammaker* and *Thiele* address only whether the right to a jury trial is a substantive right.  214 F. Supp. 2d at 577–81; 59 F. Supp. 2d at 1063–65.  Regardless, these decisions have been overruled by *14 Penn Plaza*, 556 U.S. at 259.[10]

Thus, Claimant's OWBPA argument is similarly baseless.

## C. The JAMS Minimum Standards Are Inapplicable.

Finally, Claimant argues for the first time that "[a]bridging the ADEA limitations period . . . violates JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, Standard No. 1."  (Mot. for Reconsideration at 3, 16.)  But the JAMS Minimum Standards are inapplicable here for multiple reasons.

*First*, the JAMS Minimum Standards, on their face, do not apply to this arbitration.  "[T]he Minimum Standards of Procedural Fairness . . . apply to arbitrations based on pre-dispute agreements that are required as a condition of employment."  (JAMS Minimum Standards at 2.)  The arbitration agreement at issue here was not a condition of Claimant's employment.  Instead, the arbitration agreement was part of a separation agreement offered to Claimant, which Claimant voluntarily signed after he was advised in writing to "consult with a lawyer before you accept this agreement."  (Ex. B to Claimant's Arbitration Demand at 25.)

---

[10] Indeed, courts have rejected Claimant's precise argument that contractually-shortened limitations periods for ADEA claims constitute a waiver of rights that necessitates OWBPA disclosures.  *See, e.g.*, *Ravenscraft v. BNP Media, Inc*., 2010 WL 1541455, at *3 (N.D. Ill. Apr. 15, 2010) ("The shortening of a limitations period . . . is not a waiver of a claim" under OWBPA; "[P]laintiff was not giving up any substantive rights. . . . She simply limited the period of time in which to exercise that substantive right.").

-31-

*Second*, the JAMS Minimum Standards do not apply because they were not among the rules to which the parties specifically agreed would apply to this arbitration. The FAA permits parties to agree which rules govern an arbitration. Where the parties expressly agree on the rules that apply, the arbitrator must apply *only* those rules. *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1621 (2018) ("[The FAA] requires courts to rigorously enforce arbitration agreements according to their terms, including terms that specify . . . the rules under which that arbitration will be conducted."); *Volt Info. Scis., Inc.*, 489 U.S. at 469 (parties may "specify by contract the rules under which the arbitration will be conducted").

Here, the IBM Arbitration Procedures, which are part of the arbitration agreement, specify that the arbitration be held "in accordance with the JAMS Employment Arbitration Rules & Procedures (***and no other rules***), which are currently available at https://www.jamsadr.com/rules-employment-arbitration." (Ex. B to Claimant's Arbitration Demand at 27 (emphasis added).) The IBM Arbitration Procedures further provide that "[t]o the extent any of the terms, conditions or requirements of the arbitration procedures in this document conflict with the applicable Arbitration Rules, the terms, conditions or requirements of the procedures in this document shall govern." (*Id.*) Thus, the arbitration agreement clearly identifies the governing rules: the IBM Arbitration Procedures, the JAMS Employment Arbitration Rules & Procedures (to the extent they do not conflict with the IBM Arbitration Procedures), and "no other rules." (*Id.*) This is yet another reason that the JAMS Minimum Standards do not apply.

*Third*, even if the JAMS Minimum Standards do apply, the Arbitration Agreement complies with these standards, including Standard No. 1. As discussed, the limitations period (180 days) is the same as that which would apply to any individual who seeks to bring an ADEA claim in court. *Supra* at 14–18. And, the Arbitration Agreement's prohibition on piggybacking

-32-

does not change this conclusion because piggybacking is not part of the ADEA statute of limitations. *Supra* at 10–14. Indeed, in accepting this arbitration, JAMS has already indicated that the arbitration agreement complies with the JAMS Minimum Standards. (*See* JAMS Minimum Standards at 2 (stating that if the JAMS Minimum Standards apply, "JAMS will accept the [arbitration] assignment only if the proceeding complies with the" JAMS Minimum Standards).)

*Fourth*, even if the Arbitration Agreement did *not* meet the JAMS Minimum Standards (which it does), that would not be a proper basis for the Arbitrator to decline to enforce the statute of limitations provision in the contract. Instead, under the JAMS Minimum Standards, all JAMS can do is decline the arbitration assignment. (JAMS Minimum Standards at 2.) **Only a court** has authority to determine that a provision in the arbitration agreement is unenforceable.[11] *Supra* at 22–23.

Thus, the JAMS Minimum Standards are inapplicable.

## <u>CONCLUSION</u>

For the reasons stated here, IBM respectfully requests that the Arbitrator deny Claimant's Motion for Reconsideration and uphold his Order dismissing Claimant's claim with prejudice.

---

[11] JAMS' acceptance of the arbitration assignment is further evidence that the arbitration agreement – in its entirety – complies with the JAMS Minimum Standards.

-33-

Dated:  December 17, 2021                    Respectfully submitted,


*/s/ Craig S. Friedman*
Craig S. Friedman
JONES DAY
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30309
Tel: 404-581-8412
Fax: 404-581-8330
csfriedman@jonesday.com

Ilana R. Yoffe
Christian Bashi
Grace Gale
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: 212-326-3747
Fax: 212-755-7306
iyoffe@jonesday.com
cbashi@jonesday.com
ggale@jonesday.com

*Attorneys for Respondent IBM*

-34-

**PROOF OF SERVICE**

I hereby certify that on December 17, 2021, I served "Respondent International Business

Machine Corp.'s Brief in Opposition to Claimant's Motion for Reconsideration" by e-mail and e-

filing via JAMS Access on:

> Shannon Liss-Riordan, Esq.
> Thomas P. Fowler, Esq.
> Lichten & Liss-Riordan, P.C.
> 729 Boylston St., Suite 2000
> Boston, MA 02116

Dated:  December 17, 2021

> */s/ Ilana R. Yoffe*
> Ilana R. Yoffe

**JAMS ARBITRATION BEFORE THE HON. RICHARD LEVIE**

JOHN HOLTMAN,

        Claimant,

   v.

INTERNATIONAL BUSINESS MACHINES CORP.,

        Respondent.

Reference No. 1410008728

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT IBM'S MOTION TO DISMISS ARBITRATION AS UNTIMELY PURSUANT TO THE PARTIES' SEPARATION AGREEMENT**

Craig Friedman
JONES DAY
1221 Peachtree Street
Suite 400
Atlanta, GA 30361
Tel: 404-581-8412
Fax: 404-581-8330
csfriedman@jonesday.com

Ilana Yoffe
Grace Gale
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: 212-326-3747
Fax: 212-755-7306
iyoffe@jonesday.com
ggale@jonesday.com

June 30, 2021

*Attorneys for Respondent IBM*

## I.    INTRODUCTION

On May 21, 2020, John Holtman ("Holtman" or "Claimant") was notified that his employment with IBM was being terminated.  Claimant now claims that he was terminated because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.  At the time of his separation from IBM, Claimant signed a Resource Action Separation Agreement (the "Separation Agreement") in which he agreed to arbitrate any claims he might have under, as relevant here, the ADEA.  *See* Holtman's Arbitration Demand, Ex. B.  Claimant agreed to arbitrate such claims pursuant to the IBM Arbitration Procedures attached to and incorporated by reference in the Separation Agreement.  *Id.*  The Separation Agreement unambiguously requires that Claimant serve a written arbitration demand on IBM within the deadline for filing an administrative charge for the claim to be arbitrated – 180 days under the ADEA – or his claim would "be deemed waived." *Id.* at 31.  At earliest, on November 18, 2020 – more than 180 days after his notice of termination from IBM – Claimant demanded arbitration of his ADEA claim, which is Claimant's sole claim in this matter.  *See* Holtman's Arbitration Demand at 3.  Because Claimant's deadline to initiate arbitration had passed before November 18, 2020, his ADEA claim is untimely.  Accordingly, because Claimant's claim is untimely and he has thus waived his claim pursuant to the parties' Separation Agreement, IBM respectfully moves for the dismissal of this matter.

## II.    RELEVANT FACTUAL BACKGROUND

On May 21, 2020, Claimant received notice from IBM that his employment would be ending.  IBM's Response to Arbitration Demand at 1.  Claimant signed a Separation Agreement in exchange for certain payments and benefits from IBM.  Arbitration Demand, Ex. B.  In the Separation Agreement, Claimant waived and released all claims that he had against IBM, except

for certain specified "Covered Claims." *Id.* at 28. Covered Claims include claims under the ADEA. *Id.* Claimant agreed that any Covered Claims would "be resolved on an individual basis by private, confidential, final and binding arbitration according to the IBM Arbitration Procedures and Collective Action Waiver (which are attached and incorporated as part of this Agreement) and under the auspices of JAMS." *Id.* (emphasis added).

The IBM Arbitration Procedures and Collective Action Waiver (the "Arbitration Procedures" or "Procedures") prescribe the process for Claimant to initiate arbitration of any Covered Claim and the deadline by which he must do so. Specifically, Claimant was required to initiate arbitration by "submit[ting] a written demand for arbitration to the IBM Arbitration Coordinator" no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one that must be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not timely submitted, the claim shall be deemed waived. The filing of a charge or complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration. *Id.* at 31. After the arbitration demand is submitted to the IBM Arbitration Coordinator, IBM "file[s] the demand with the appropriate arbitration administrator." *Id.* at 32.

Here, on or after November 18, 2020, Claimant submitted to the IBM Arbitration Coordinator a written demand to arbitrate his ADEA claim. Though Claimant's Arbitration Demand is dated November 17, 2020, the printed United States Postal Service shipping and postage label affixed to the envelope containing the Arbitration Demand is dated November 18, 2020:

2



*See* Ex. 1 (United States Postal Service shipping and postage label).   This means that the Arbitration Demand could not have been submitted to the IBM Arbitration Coordinator until November 18, 2020 at the earliest.

Tracking information provided by the U.S.P.S. further confirms that the above postage and shipping label was not printed until November 18, 2020.  *See* Ex. 2 (United States Postal Service tracking information).   This tracking information also shows that the U.S.P.S. did not take possession of the package until November 20, 2020, meaning that the Arbitration Demand could have been served as late as November 20, 2020:

3

**November 20, 2020, 2:38 pm**
USPS in possession of item
BRIGHTON, MA 02135

**November 18, 2020, 4:46 pm**
Shipping Label Created, USPS Awaiting Item
BOSTON, MA 02116

*Id.*

## III.    ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).[1]  "Although for the purposes of a motion to dismiss [the arbitrator] must take all of the factual allegations in the complaint as true, [the arbitrator is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Walker v. Pheasant Ridge Senior Living*, 2018 WL 3539444, at *2-*3 (W.D. Va. July 23, 2018) (granting 12(b)(6) motion to dismiss ADEA and Title VII claims because plaintiff "fail[ed] to timely file a charge" with the EEOC and also "failed to timely file" the law suit within the applicable statutes of limitations).  In resolving a motion to dismiss, an arbitrator may consider documents that are submitted with a Claimant's complaint, or are "integral" to a Claimant's complaint, where authenticity is not disputed.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

---

[1] Under the Arbitration Procedures, "the parties may file and the arbitrator shall hear and decide at any point in the proceeding motions permitted by the Federal Rules of Civil Procedure, including but not limited to . . . motions to dismiss."  Holtman's Arbitration Demand, Ex. B at 31.

4

A.    **Holtman's Claim Should Be Dismissed Because it is Untimely and Deemed Waived.**

The Arbitration Procedures to which Claimant agreed – and which were attached to his Demand for Arbitration – specify that the limitations period by which he must request or initiate arbitration is the same as that which would govern the claim if it were brought before a governmental agency or in court.  Arbitration Demand, Ex. B.  The Arbitration Procedures also specify the procedure for demanding arbitration.  *Id.*  If the Claimant does not demand arbitration by the appropriate deadline according to these procedures, then "the claim shall be deemed waived."  *Id.* at 31.  The Arbitrator must enforce the arbitration agreement, including its filing and limitations requirements, as written.  *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Santoro v. Accenture Fed. Servs., LLC*, 748 F.3d 217, 221 (4th Cir. 2014) ("[The FAA] represents a broad federal policy favoring arbitration agreements, and courts must rigorously enforce arbitration agreements according to their terms.") (internal citations and quotations omitted).

The ADEA specifies the deadline for bringing claims under the statute.  Under the ADEA, as a precondition to suit, individuals are required to file a charge with the EEOC within 180 days of the date of the alleged wrongful act.[2]  42 U.S.C. § 2000e-5(e)(l); 29 U.S.C. §§ 626(d), 633(b); *see also Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019).  The 180-day limit begins from the date upon which an employee receives notice of the alleged unlawful employment practice, not at the

---

[2] Prior to filing a lawsuit under the ADEA, an individual must first file a charge with the EEOC or an analogous state agency within 180 or 300 days (depending on the State) of the employment action being challenged.  *See* 29 U.S.C. § 626(d) ("[A] charge shall be filed . . . within 180 days after the alleged unlawful employment practice; or [in a deferral state], within 300 days after the alleged unlawful practice occurred . . .").  In North Carolina, the deadline is 180 days.

5

**App.200**

time that his termination formally becomes effective.  *See Hamilton v. 1st Source Bank*, 928 F.2d 86, 89 (4th Cir. 1990) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980)).  This is because the "proper focus" is "the time of the discriminatory act, not the point at which the consequences of the act become painful."  *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981).  The Fourth Circuit strictly enforces filing deadlines for employment discrimination claims, and routinely dismisses at the pleadings stage those filed even one day late.  *See, e.g.*, *Anderson v. Am. Airlines, Inc.*, 2018 WL 4258505, at *2 (W.D.N.C. Sept. 5, 2018) (granting 12(b)(6) motion to dismiss Title VII claim filed one day late); *Cook v. Unisys Fed. Gov't, Grp.*, 2015 WL 5690928, at *14 (W.D. Va. Sept. 3, 2015), report and recommendation adopted, 2015 WL 5690976 (W.D. Va. Sept. 28, 2015) (same for Title VII, ADEA, and ADA claims); *Douglas v. US Airways Grp., Inc.*, 2011 WL 1769747, at *5 (W.D.N.C. May 9, 2011) (because the complaint was "untimely filed by one day…this [Title VII] action is time barred as a matter of law").

Under the separation agreement, Claimant must "submit a written demand for arbitration to the IBM Arbitration Coordinator" to initiate the proceedings.[3]  *See* Holtman's Arbitration Demand, Ex. B at 31; *see also Huey v. Dep't of Health & Human Servs.*, 782 F.2d 1575, 1578 (Fed. Cir. 1986) (finding an arbitration demand is filed when it is placed in the mail).  Because Claimant did not print the shipping label used to mail the Arbitration Demand to IBM until November 18, 2020, that is the earliest date it could have been submitted.  Additionally, the mail carrier did not mark receipt of the demand until November 20, 2020.  Therefore, the demand was

---

[3] The date that Claimant submitted his arbitration demand to *JAMS* is irrelevant.  The arbitration agreement requires that the demand be submitted to the IBM Arbitration Coordinator within the limitations period, not to the arbitration provider.  The Arbitrator is without authority to alter the requirements of the arbitration agreement.  *See, e.g.*, *Italian Colors Rest.*, 570 U.S. at 233; *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ("[The Federal Arbitration Act] . . . requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."); *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) ("Consistent with the FAA's text, courts must rigorously enforce arbitration agreements according to their terms . . . .") (internal citation and quotations omitted).

6

submitted at some point between November 18, 2020 and November 20, 2020 – or, one to three days after the November 17, 2020 deadline to demand arbitration.  Accordingly, as required by the Separation Agreement, Holtman's claim should be "deemed waived" and this matter should be dismissed with prejudice in its entirety.

## IV.    CONCLUSION

For the foregoing reasons, IBM respectfully requests that Claimant's claim in this matter be dismissed with prejudice.

7

Dated:  June 30, 2021                    Respectfully submitted,


                                         */s/ Craig S. Friedman*
                                         Craig S. Friedman
                                         JONES DAY
                                         1221 Peachtree Street
                                         Suite 400
                                         Atlanta, GA 30361
                                         Tel: 404-581-8412
                                         Fax: 404-581-8330
                                         csfriedman@jonesday.com

                                         Ilana Yoffe
                                         Grace Gale
                                         JONES DAY
                                         250 Vesey Street
                                         New York, NY 10281
                                         Tel: 212-326-3747
                                         Fax: 212-755-7306
                                         iyoffe@jonesday.com
                                         ggale@jonesday.com

                                         *Attorneys for Respondent IBM*

8

## <u>PROOF OF SERVICE</u>

I hereby certify that on June 30, 2021 I served "Respondent IBM's Motion to Dismiss Arbitration as Untimely Pursuant to the Parties' Separation Agreement" and all attachments by email and e-filing via JAMS Access on:

Shannon Liss-Riordan
Thomas Fowler
Matthew Patton
Lichten & Liss-Riordan, P.C.
729 Boylston St.
Suite 2000
Boston, MA 02116
sliss@llrlaw.com
tfowler@llrlaw.com
mpatton@llrlaw.com

*/s/ Grace Gale*
Grace Gale

9

# Exhibit 1

10



# Exhibit 2

3/10/2021                    USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

## Track Another Package +

**Tracking Number:** 9405511899564181949318

Remove ×

Your item was picked up at a postal facility at 10:23 am on November 23, 2020 in ARMONK, NY 10504.

USPS Tracking Plus™ Available ⌄

## ⨂ Delivered

November 23, 2020 at 10:23 am
Delivered, Individual Picked Up at Postal Facility
ARMONK, NY 10504

Get Updates ⌄

Feedback

---

**Text & Email Updates** ⌄

---

**Tracking History** ⌃

November 23, 2020, 10:23 am
Delivered, Individual Picked Up at Postal Facility
ARMONK, NY 10504
Your item was picked up at a postal facility at 10:23 am on November 23, 2020 in ARMONK, NY 10504.

November 23, 2020, 8:20 am
Out for Delivery
ARMONK, NY 10504

---

https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=2&text28777=&tLabels=9405511899564181949318%2C&tABt=false    1/3

13

**App.208**

3/10/2021                                    USPS.com® - USPS Tracking® Results

**November 23, 2020, 8:09 am**
Arrived at Post Office
ARMONK, NY 10504

**November 23, 2020, 3:01 am**
Departed USPS Regional Facility
WHITE PLAINS NY DISTRIBUTION CENTER

**November 22, 2020**
In Transit to Next Facility

**November 21, 2020, 3:40 pm**
Arrived at USPS Regional Facility
WHITE PLAINS NY DISTRIBUTION CENTER

**November 21, 2020, 12:37 pm**
Departed USPS Regional Facility
JERSEY CITY NJ NETWORK DISTRIBUTION CENTER

**November 21, 2020, 10:52 am**
Arrived at USPS Regional Facility
JERSEY CITY NJ NETWORK DISTRIBUTION CENTER

**November 20, 2020, 9:48 pm**
Arrived at USPS Regional Origin Facility
NASHUA NH DISTRIBUTION CENTER

**November 20, 2020, 6:45 pm**
Departed Post Office
BRIGHTON, MA 02135

**November 20, 2020, 2:38 pm**
USPS in possession of item
BRIGHTON, MA 02135

**November 18, 2020, 4:46 pm**
Shipping Label Created, USPS Awaiting Item
BOSTON, MA 02116

https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=2&text28777=&tLabels=9405511899564181949318%2C&tABt=false        2/3

14

**USPS Tracking Plus™**                                                    ⌄

**Product Information**                                                    ⌄

See Less ⌃

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

Feedback

15

**App.210**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

————————————————————————  )
                                                        )
**JAMES OWENS,**                              )
                                                        )
    **Petitioner,**                         )
                                                        )
      **v.**                                      )
                                                        )   **Case No. 22-cv-00901 (APM)**
**INTERNATIONAL BUSINESS MACHINES**  )
**CORP.,**                                           )
                                                        )
    **Respondent.**                      )
————————————————————————  )


————————————————————————  )
                                                        )
**JOHN HOLTMAN,**                         )
                                                        )
    **Petitioner,**                         )
                                                        )
      **v.**                                      )
                                                        )   **Case No. 22-cv-00852 (APM)**
**INTERNATIONAL BUSINESS MACHINES**  )
**CORP.,**                                           )
                                                        )
    **Respondent.**                      )
————————————————————————  )


## <u>MEMORANDUM OPINION</u>

### I.

In these non-consolidated actions, Petitioners ask the court to vacate rulings dismissing as untimely their arbitration requests against Respondent International Business Machines Corporation ("IBM"). The Petitioner in *Owens* is James Owens, a former employee of IBM who worked at the corporation from 1997 to 2020, and the Petitioner in *Holtman* is John Holtman, a former employee of IBM who worked at the corporation from 1983 to 2020.

**App.211**

IBM terminated the Petitioners' employment as part of a layoff in May 2020. Owens was 50 years old at the time and Holtman was 60. Petitioners signed a severance agreement, which offered the employees a severance payment in exchange for a waiver of legal claims, other than claims under the Age Discrimination in Employment Act ("ADEA"), which would need to be pursued in individual arbitration. The arbitration agreement includes a timing provision that states:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not timely submitted, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

Owens Mot. to Provisionally Seal Documents, ECF No. 4 [hereinafter Owens Mot. to Seal], Ex. 1, ECF No. 4-3 [hereinafter Owens Ex. 1[1]], at 32; Holtman Mot. to Provisionally Seal Documents, ECF No. 3 [hereinafter Holtman Mot. to Seal], Ex. C, ECF No. 3-3 [hereinafter Holtman Ex. C], at 33. This provision gave Petitioners 180 days to demand arbitration of ADEA claims, which mirrors the ADEA limitations period. *See* 42 U.S.C. § 2000e-5(e)(l); 29 U.S.C. § 626(d). Petitioners' last day to timely demand arbitration in writing was on November 17, 2020.

Petitioners attempted to bring an ADEA claim against IBM in arbitration. Petitioners electronically filed their respective arbitration demands with JAMS, the designated alternative dispute forum, on November 17, 2020, and mailed the required written demands to IBM the *following day* on November 18, 2020. IBM moved to dismiss both matters as untimely. The

---

[1] ECF pagination is used for all exhibits.

arbitrator dismissed the matters on November 19, 2021, and denied Petitioners' Motions for Reconsideration on January 6 and January 7, 2022.

Before this court are the parties' cross-motions, with Petitioners seeking to vacate the arbitrator's dismissals and IBM seeking their confirmation. For the reasons that follow, Petitioners' Motions are denied and Respondent's Motions to Confirm Arbitration Awards are granted.

## II.

Petitioners move to vacate the arbitration rulings pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, which provides narrow grounds for a district court to vacate an arbitrator's decision. Specifically, 9 U.S.C. § 10 provides that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration," including, as relevant here, where "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. §§ 10(a)(3)–(a)(4).

Under the FAA, "judicial review of arbitral awards is extremely limited," *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354, (D.C. Cir. 2006) (quoting *Teamsters Loc. Union v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001)), and the court "must confirm an arbitration award where some colorable support for the award can be gleaned from the record," *LaPrade v. Kidder, Peabody & Co.*, 94 F. Supp. 2d 2, 4 (D.D.C. 2000). "[C]ourts may vacate an arbitrator's

3

decision only in very unusual circumstances." *Mesa Power Grp., v. Gov't of Can.*, 255 F. Supp. 3d 175, 182 (D.D.C. 2017) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013)).

"Section 10 of the FAA provides the FAA's *exclusive* grounds for vacating an award." *Id.* at 183 (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008)) (emphasis added) (cleaned up). "'[A]s long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000) (quoting *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). And under § 10(a)(4) "'it is only when an arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice' that his decision may be unenforceable.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)) (brackets omitted). In sum, "only if 'the arbitrator acts outside the scope of his contractually delegated authority'—issuing an award that 'simply reflects his own notions of economic justice' rather than 'drawing its essence from the contract'— may a court overturn his determination." *Oxford Health*, 569 U.S. at 569 (quoting *E. Associated Coal*, 531 U.S. at 62) (cleaned up). Therefore, "the sole question" is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

Petitioners also argue that an arbitration ruling may be vacated because it manifestly disregards the law. The Supreme Court has said, however, that Sections 10 and 11 "provide the FAA's exclusive grounds for expedited vacatur and modification." *Hall St.*, 552 U.S. at 584. The D.C. Circuit nevertheless has assumed without deciding that "manifest disregard of the law" survives as a separate ground for vacatur. *Affinity Fin. Corp. v. AARP Fin. Inc.*, 468 Fed. Appx.

4, 5 (D.C. Cir. 2012) ("Assuming without deciding that the 'manifest disregard of the law' standard still exists . . . ").  This court also assumes without deciding that "manifest disregard of the law" is a valid ground for vacatur under the FAA.  Assuming the doctrine survives, manifest disregard can only be established if "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."  *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001).

### III.

At the outset, the court notes that it does not rule on the parties' cross-motions in a vacuum. Various district courts have considered the same arguments made by the same petitioners' counsel against the same respondent.  In each instance, these courts have upheld arbitrators' dismissals on timeliness grounds.  *See Smith v. IBM*, No. 21-cv-03856-JPB, 2022 WL 1720140, at *7 (N.D. Ga. May 27, 2022); *Chandler v. IBM*, No. 21-cv-6319-JGK, 2022 WL 2473340, at *6–7 (S.D.N.Y. July 6, 2022); *Lodi v. IBM*, No. 21-cv-6336-JGK, 2022 WL 2669199, at *4 (S.D.N.Y. July 11, 2022); *In re IBM Arb. Agreement Litig.*, No. 21-cv-6296-JMF, 2022 WL 2752618, at * 7–9 (S.D.N.Y. July 14, 2022).  This court does so, too.

Illustrative is *Smith v. IBM*, a case involving the same petitioner's counsel and nearly identical facts and arguments at issue here—an arbitration demand served one day late.  *See* 2022 WL 1720140 at *2.  There, the district court dismissed the petition to vacate and granted IBM's motion to confirm.  *Id.* at *7.  As to FAA § 10(a)(3), the petitioner in *Smith* argued that the arbitrator had ignored factual evidence including a timely JAMS filing and logistical difficulties brought on by the COVID-19 pandemic, but the district court found that the petitioner's arguments were merely "founded on a disagreement with the Arbitrator's conclusion."  *Id.* at *3.  Further, the

petitioner asserted that the arbitrator did not assess the burden of the mailing requirement versus the "prevailing standard for conducting business electronically," but the court found that the arbitrator "was not obliged to do so; rather, his duty was to enforce the terms of the Agreement between the parties." *Id.* at *4. As to the petitioner's FAA § 10(a)(4) arguments, including a purported failure to apply equitable tolling, the district court found that the arbitrator had followed the terms of the arbitration agreement in dismissing the petitioner's claim as untimely. *Id.* at *5. Lastly, the court found without merit the arguments related to the enforceability of the agreement's timing provision. *Id.* at *5–7. This court reaches the same conclusions here.

### A.    FAA Section 10(a)(3)

Petitioners argue that the arbitrator "failed to consider key facts pertinent to this case, including that Petitioner timely filed his demand with JAMS, that the COVID-19 pandemic made same-day mailing impracticable, and that IBM's requirement that Petitioner mail his demand was unreasonable." Owen's Mot. to Seal, Owens Pet. to Vacate Arb. Award, ECF No. 4-1 [hereinafter Owens Pet.] ¶ 26; *see also* Holtman Mot. to Seal., Holtman Pet. to Vacate Arb. Award, ECF No. 3-1 [hereinafter Holtman Pet.] ¶ 27. Specifically, as to FAA § 10(a)(3), Petitioners claim that the arbitrator failed "to give *any* consideration to the factual circumstances surrounding Petitioner's submission of his arbitration demand in this case." Owen's Mot. to Seal., Owens Mot. to Vacate Arb. Award, ECF No. 4-2 [hereinafter Owens Mot.], at 9; Holtman Mot. to Seal., Holtman Mot. to Vacate Arb. Award, ECF No. 3-2 [hereinafter Holtman Mot.], at 10. But Petitioners are incorrect. The arbitrator in both cases took into account Petitioners' arguments from the briefing, and the arbitrator simply rejected Petitioners' arguments, stating that Petitioners failed to provide "any persuasive arguments . . . even arguably supporting any finding of a legal, factual or equitable nature to excuse the untimely submission of the Demand." Owens Mot. at 11; Holtman Mot. at

6

11.  Further, the arbitrator summarized Petitioners' position regarding the JAMS filing in denying the motions for reconsideration, stating "[Petitioner] argues that the Arbitrator should reconsider the Order of Dismissal for the following reasons . . . (1) [b]ecause [Petitioner] filed his Demand with JAMS on the last permissible day of the 180-day limitations period, dismissal is not required (even though [he] did not mail the Demand to IBM until a day or so later)."  Owens Ex. 1 at 132–33; Holtman Ex. C at 133–134.  The arbitrator similarly considered and rejected arguments related to the hardships created by the COVID-19 pandemic, stating "[Petitioner] has not provided evidence to show, or articulated a credible basis to believe, that the difficult circumstances he cites — the closure of [Petitioner's] counsel's office due to the pandemic . . . actually prevented mailing of the Demand on November 17, 2020, particularly as that mailing was accomplished a day later on November 18, 2020 (or shortly thereafter)."  Owens Ex. 1 at 137; Holtman Ex. C at 138.  Further, as in *Smith*, the arbitrator is not obligated to assess the fairness or difficulties of having a mailing requirement instead of permitting electronic filing—the arbitrator's duty is to enforce the terms of the agreement of the parties.  *See Smith*, 2022 WL 1720140, at *4.  Under such circumstances, the arbitrator plainly did not refuse to hear evidence and is not guilty of misconduct.  Petitioners' arguments are mere "disagreement[s] with the Arbitrator's conclusion."  *Id.* at *3.

### B.    FAA Section 10(a)(4)

As to FAA § 10(a)(4), Petitioners argue that the arbitrator "did not follow the procedures set out in IBM's agreement and did not afford Petitioner the rights available to him under the law."  Owens Pet. at 9; Holtman Pet. at 11.  They argue that the arbitrator "exceeded his authority by failing to apply the remedies available," including equitable tolling.  Owens Mot. at 11–12; Holtman Mot. at 12–13; *cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding

7

**App.217**

that the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") is subject to equitable tolling).

Petitioners are again mistaken. First, filing a charge with the EEOC is not at issue here, nor is it a prerequisite for arbitration under the agreement—therefore, *Zipes* is inapposite. And in this case, the arbitrator interpreted the plain language of the arbitration agreement. The agreement prescribes the process for initiating arbitration and the deadline to send the written demand by mail—the Petitioners here did not follow the procedure by the agreed-upon deadline. The arbitrator referenced the contract procedures in finding the claims untimely and did so again in denying the motion for reconsideration. Owens Ex. 1 at 93, 136; Holtman Ex. C at 94, 137. Furthermore, the arbitrator did consider Petitioners' equitable arguments and declined to apply the suggested doctrines, stating that Petitioners had not "provided any persuasive arguments even arguably supporting any finding of a . . . equitable nature to excuse the untimely submission of the Demand." Owens Ex. 1 at 135; Holtman Ex. C at 136. It is clear that the arbitrator did not dispense his own brand of "industrial justice" in interpreting the plain language of the contract language and refusing to deviate from the *agreed-upon* procedure. *See Stolt-Nielsen S.A.*, 559 U.S. at 671.

### C.    Enforceability of the Timing Requirement

Petitioners also argue, in the alternative, that even if their claims were untimely, the court should declare unenforceable the provision in IBM's arbitration agreement that purports to waive what is known as the "piggybacking" rule. Owens Mot. at 13–22; Holtman Mot. at 14–22. "The single-file [piggybacking] rule allows an individual plaintiff, who has not filed an EEOC charge, to satisfy the administrative exhaustion requirements under Title VII by relying on a charge filed by another plaintiff." *Campbell v. Nat'l R.R. Passenger Corp.*, 163 F. Supp. 2d 19, 25 (D.D.C. 2001). Petitioners argue that the piggybacking rule is a non-waivable substantive right, and

therefore, cannot be waived by the arbitration agreement's written demand provision.  Owens Mot. to Provisionally Seal Documents, ECF No. 19, Owens Reply in Support of Mot. to Vacate Arb. Award, ECF No. 19-1 [hereinafter Owens Reply], at 5–6; Holtman Mot. to Provisionally Seal Documents, ECF No. 18, Holtman Reply in Support of Mot. to Vacate Arb. Award, ECF No. 18-1 [hereinafter Holtman Reply], at 5–8 (citing *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 521 (6th Cir. 2021) and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)).  Similarly, Petitioners argue that they could not have waived this right without making requisite disclosures under Older Workers' Benefits Protection Act ("OWBPA").  Owens Mot. at 19–22; Holtman Reply at 6; *see* 29 U.S.C. § 626 (f)(1)(H); 29 C.F.R. § 1625.22(f) (2014); *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426–427 (1998).

Petitioners' challenge fails at the outset because it does not fall within any of the exclusive grounds for vacating an arbitration award.  In *Smith*, in rejecting an identical argument, the district court held "[t]his alone shows Plaintiff failed to carry her burden" on a motion to vacate.  *Smith*, 2022 WL 1720140, at *5.  This court agrees.  Not only does this challenge not fall within the grounds set by the FAA for vacatur, the argument is also meritless.  Here, Petitioners had 180 days to file a claim—the same default filing period provided by the ADEA.  They failed to do so and thus waived their ability to file the claim under the terms of the agreement.  The piggybacking rule has no role to play in the arbitration context, as it only excuses plaintiffs from the requirement to file an administrative charge with the EEOC—which is not at issue here under an agreement that did not include a charge-filing requirement.  *See also Smith*, 2022 WL 1720140, at *6.  Petitioners "could have avoided this entire issue" by filing "timely arbitration demands," which would have avoided the "need to resort to a (far-fetched) argument that the piggybacking doctrine saves their untimely demands."  *Rusis v. IBM*, 529 F. Supp. 3d 178, 194 n.8 (S.D.N.Y. 2021).

9

Furthermore, "the purported right to take advantage of the piggybacking rule is not a substantive, non-waivable right protected by the ADEA." *Chandler*, 2022 WL 2473340, at *4; *see Gilmer*, 500 U.S. at 26 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.") (alterations in original).  The rule is not even a part of the limitations period in the ADEA—it instead pertains to the administrative exhaustion requirement.  Thus, Petitioners' reliance on *Thompson*, which concluded that the limitations period in the ADEA gives rise to a substantive, non-waivable right, 985 F.3d at 521, is irrelevant.  *See Chandler*, 2022 WL 2473340, at *6 (distinguishing *Thompson* and stating, "the Timing Provision did not shorten the ADEA statute of limitations by not adopting the piggybacking rule because that rule is an exhaustion doctrine, not an aspect of the ADEA statute of limitations, and the plaintiff in this case was not required to exhaust any administrative remedies").

Petitioners similarly were not entitled to protections under the OWBPA.  "The OWBPA provides that an individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." *Chandler*, 2022 WL 2473340, at *5 (internal quotation marks omitted) (quoting *Estle v. IBM.*, 23 F.4th 210, 213 (2d Cir. 2022)).  "If a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer must provide certain information to the individual for the waiver to be knowing and voluntary." *Id.*  Petitioners argue that they could not have waived their right to use the piggybacking rule because IBM did not provide them with the disclosures required under the OWBPA before the they signed the agreement.  However, OWBPA disclosures are only required for waiving substantive rights, and the piggybacking rule is not one of them.  *See Chandler*, 2022

10

**App.220**

WL 2473340, at *5; *Lodi*, 2022 WL 2669199, at *3–5; *In re IBM Arb. Agreement*, 2022 WL 2752618, at *7–8.

### D.    Manifest Disregard of the Law

This court also finds that none of Petitioners' arguments come close to meeting the standard of the arbitrator knowing a legal principle and refusing to apply it or ignoring it altogether. The arbitrator properly construed the timing provision of the agreement by its plain language, and Petitioners cannot blame the arbitrator to undo their untimely request.

### IV.

For the foregoing reasons, Petitioners' Motions to Vacate the Arbitration Awards are denied. Respondent's Motions to Confirm the Arbitration Awards are granted. A final, appealable order accompanies this Memorandum Opinion.

Dated:  December 9, 2022

Amit P. Mehta
United States District Court Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOHN HOLTMAN,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. 22-cv-00852 (APM)** |
| ) | |
| **INTERNATIONAL BUSINESS MACHINES** ) | |
| **CORP.,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

### <u>ORDER</u>

For the reasons set forth in the court's Memorandum Opinion, ECF No. 27, Respondent's

Motion to Confirm Arbitration Award, ECF No. 14, is granted.  Petitioner's Motion to Vacate

Arbitration Award, ECF No. 2, is denied.

This is a final, appealable order.

Dated:  December 9, 2022

Amit P. Mehta
United States District Court Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
JOHN HOLTMAN,                             )        Civil Action No. 1:22-cv-852
                                          )
                                          )
                      Petitioner,         )
                                          )
              v.                          )
                                          )
INTERNATIONAL BUSINESS                    )
MACHINES CORP.,                           )
                                          )
                      Respondent.         )
_____  )


### NOTICE OF APPEAL

Petitioner John Holtman hereby appeals from this Court's Opinion and Order granting IBM's

Motion to Confirm Arbitration Award and denying Petitioner's Motion to Vacate Arbitration Award

(Dkts. 27, 28).


Dated:  January 9, 2023            Respectfully submitted,

                                   /s/Shannon Liss-Riordan
                                   Shannon Liss-Riordan (*Admitted Pro Hac Vice*)
                                   Michelle Cassorla, D.C. Bar No. 1022193
                                   LICHTEN & LISS-RIORDAN, P.C.
                                   729 Boylston Street, Suite 2000
                                   Boston, MA 02116
                                   (617) 994-5800
                                   sliss@llrlaw.com
                                   *Attorneys for Petitioner*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 9, 2023, I electronically filed the forgoing paper with the Clerk of Court using the ECF system which will send electronic notification of such filing to all counsel of record for the Parties in this action.

/s/Shannon Liss-Riordan
Shannon Liss-Riordan

JAMES OWENS,
Petitioner-Appellant,

v.

INTERNATIONAL BUSINESS MACHINES
CORP.,
Respondent-Appellee

Appeal No. 23-7005
(U.S. District Court for the District of Columbia Case
No. 2:22-cv-0901)

# TAB B

APPEAL,CLOSED,TYPE-E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:22-cv-00901-APM

| | |
|---|---|
| OWENS v. INTERNATIONAL BUSINESS MACHINES CORP. | Date Filed: 04/04/2022 |
| Assigned to: Judge Amit P. Mehta | Date Terminated: 12/10/2022 |
| Case: 1:22-cv-00852-APM | Jury Demand: None |
| Case in other court: 23-07002 | Nature of Suit: 896 Arbitration |
| Cause: 09:0010 Petition to Vacate Arbitration Award | Jurisdiction: Diversity |

**Petitioner**

**JAMES OWENS**                    represented by  **Shannon Liss-Riordan**
                                                   LICHTEN & LISS-RIORDAN, P.C.
                                                   729 Boylston Street
                                                   Suite 2000
                                                   Boston, MA 02116
                                                   617-994-5800
                                                   Fax: 617-994-5801
                                                   Email: sliss@llrlaw.com
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Michelle Ruth Cassorla**
                                                   LICHTEN & LISS-RIORDAN, P.C.
                                                   729 Boylston St.
                                                   Suite 2000
                                                   Boston, MA 02116
                                                   (614) 994-5800
                                                   Email: mcassorla@llrlaw.com
                                                   *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**INTERNATIONAL BUSINESS**          represented by  **Craig Friedman**
**MACHINES CORP.**                                  JONES DAY
                                                   1221 Peachtree Street, NE
                                                   Suite 400
                                                   Atlanta, GA 30361
                                                   404-581-3939
                                                   Email: csfriedman@jonesday.com
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Patrick M. Corley**
                                                   JONES DAY - ATLANTA
                                                   1221 Peachtree Street N.E.

**App.225**

Suite 400
Atlanta, GA 30361
404-581-8211
Email: pcorley@jonesday.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Stephen Shymansky**
JONES DAY-WASHINGTON
51 Louisiana Avenue NW
Washington, DC 20001
202-879-3724
Email: rsshymansky@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas R. Chiavetta**
JONES DAY
51 Louisiana Avenue, Nw
Washington, DC 20001
(202) 879-3975
Fax: (202) 626-1700
Email: tchiavetta@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/04/2022 | 1 | PETITION TO VACATE ARBITRATION AWARD against INTERNATIONAL BUSINESS MACHINES CORP. ( Filing fee $ 402 receipt number ADCDC-9147976) filed by JAMES OWENS. (Attachments: # 1 Civil Cover Sheet)(Cassorla, Michelle) (Entered: 04/04/2022) |
| 04/04/2022 | 2 | NOTICE OF RELATED CASE by JAMES OWENS. Case related to Case No. 1:22-cv-00852. (Cassorla, Michelle) (Entered: 04/04/2022) |
| 04/04/2022 | 3 | MOTION to Vacate *Arbitration Award* by JAMES OWENS. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14)(Cassorla, Michelle) (Entered: 04/04/2022) |
| 04/04/2022 | 4 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JAMES OWENS (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Cassorla, Michelle) (Entered: 04/04/2022) |
| 04/05/2022 | | Case Directly Assigned to Judge Amit P. Mehta. (znmg) (Entered: 04/05/2022) |
| 04/05/2022 | | SUMMONS Not Issued as to INTERNATIONAL BUSINESS MACHINES CORP. (znmg) (Entered: 04/05/2022) |
| 04/08/2022 | 5 | WAIVER OF SERVICE. INTERNATIONAL BUSINESS MACHINES CORP. waiver sent on 4/8/2022, answer due 6/7/2022. (Cassorla, Michelle) (Entered: 04/08/2022) |

**App.226**

| 04/14/2022 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Shannon Liss-Riordan, Filing fee $ 100, receipt number ADCDC-9170844. Fee Status: Fee Paid. by JAMES OWENS. (Attachments: # 1 Declaration DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF MOTION TO ADMIT PRO HAC VICE, # 2 Text of Proposed Order PROPOSED ORDER GRANTING MOTION)(Cassorla, Michelle) (Entered: 04/14/2022) |
|---|---|---|
| 04/15/2022 |  | MINUTE ORDER granting 6 Motion for Admission Pro Hac Vice of Attorney Shannon Liss-Riordan. Attorney Shannon Liss-Riordan is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Signed by Judge Amit P. Mehta on 4/15/2022. (lcapm2) (Entered: 04/15/2022) |
| 04/19/2022 | 7 | NOTICE of Appearance by Shannon Liss-Riordan on behalf of JAMES OWENS (Liss-Riordan, Shannon) (Entered: 04/19/2022) |
| 05/11/2022 | 8 | NOTICE of Appearance by Ryan Stephen Shymansky on behalf of INTERNATIONAL BUSINESS MACHINES CORP. (Shymansky, Ryan) (Entered: 05/11/2022) |
| 05/17/2022 | 9 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Craig S. Friedman, Filing fee $ 100, receipt number ADCDC-9243755. Fee Status: Fee Paid. by INTERNATIONAL BUSINESS MACHINES CORP.. (Attachments: # 1 Declaration)(Shymansky, Ryan) (Entered: 05/17/2022) |
| 05/17/2022 | 10 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Patrick M. Corley, Filing fee $ 100, receipt number ADCDC-9243770. Fee Status: Fee Paid. by INTERNATIONAL BUSINESS MACHINES CORP.. (Attachments: # 1 Declaration)(Shymansky, Ryan) (Entered: 05/17/2022) |
| 05/17/2022 |  | MINUTE ORDER granting 9 and 10 Motions for Admission Pro Hac Vice. Attorneys Craig S. Friedman and Patrick M. Corley are hereby admitted pro hac vice to appear in this matter. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Amit P. Mehta on 5/17/2022. (lcapm2) (Entered: 05/17/2022) |
| 06/06/2022 | 11 | NOTICE of Appearance by Patrick M. Corley on behalf of INTERNATIONAL BUSINESS MACHINES CORP. (Corley, Patrick) (Entered: 06/06/2022) |
| 06/07/2022 | 12 | ENTERED IN EROR.....NOTICE of Appearance by Ryan Stephen Shymansky on behalf of INTERNATIONAL BUSINESS MACHINES CORP. (Shymansky, Ryan) Modified on 6/8/2022 (zjf). (Entered: 06/07/2022) |
| 06/07/2022 | 13 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by INTERNATIONAL BUSINESS MACHINES CORP. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support) (Shymansky, Ryan) (Entered: 06/07/2022) |
| 06/07/2022 | 14 | RESPONSE re 3 MOTION to Vacate *Arbitration Award* filed by INTERNATIONAL BUSINESS MACHINES CORP.. (Attachments: # 1 Memorandum in Support) (Shymansky, Ryan) (Entered: 06/07/2022) |
| 06/07/2022 | 15 | MOTION to Confirm *Arbitration Award* by INTERNATIONAL BUSINESS MACHINES CORP.. (Shymansky, Ryan) (Entered: 06/07/2022) |
| 06/08/2022 |  | NOTICE OF ERROR regarding 12 Notice of Appearance. The following error(s) need correction: Other- Please refile using their assigned login/password. (zjf) (Entered: 06/08/2022) |

| 06/08/2022 | 16 | NOTICE of Appearance by Craig Friedman on behalf of INTERNATIONAL BUSINESS MACHINES CORP. (Friedman, Craig) (Entered: 06/08/2022) |
|---|---|---|
| 06/08/2022 | 17 | ERRATA *NOTICE OF ERRATA* by INTERNATIONAL BUSINESS MACHINES CORP.. (Corley, Patrick) (Entered: 06/08/2022) |
| 06/08/2022 | 18 | MOTION to Confirm *Arbitration Award* by INTERNATIONAL BUSINESS MACHINES CORP.. (Attachments: # 1 Memorandum in Support)(Corley, Patrick) (Entered: 06/08/2022) |
| 06/14/2022 | 19 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JAMES OWENS (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Reply in Support of Motion to Vacate)(Cassorla, Michelle) (Entered: 06/14/2022) |
| 06/15/2022 |  | MINUTE ORDER provisionally granting motions to seal, ECF Nos. 13, 19. The memoranda and exhibits appended to ECF Nos. 13 and 19 shall provisionally remain under seal, pending further briefing on the request for sealing and further order of the court. Signed by Judge Amit P. Mehta on 6/15/2022. (lcapm2) (Entered: 06/15/2022) |
| 06/15/2022 |  | NOTICE OF ERROR re 19 Sealed Motion for Leave to File Document Under Seal; emailed to mcassorla@llrlaw.com, cc'd 7 associated attorneys -- The PDF file you docketed contained errors: 1. **Please note the following for future filings; do not refile document**, 2. FYI: DO NOT REFILE. Attorney signature must match login/password in future fillings. (zeg, ) (Entered: 06/15/2022) |
| 06/21/2022 | 20 | RESPONSE re 18 MOTION to Confirm *Arbitration Award* filed by JAMES OWENS. (Liss-Riordan, Shannon) (Entered: 06/21/2022) |
| 06/28/2022 | 21 | REPLY to opposition to motion re 18 MOTION to Confirm *Arbitration Award* filed by INTERNATIONAL BUSINESS MACHINES CORP.. (Corley, Patrick) (Entered: 06/28/2022) |
| 06/28/2022 | 22 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by INTERNATIONAL BUSINESS MACHINES CORP. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Reply In Support of Motion to Confirm)(Corley, Patrick) (Entered: 06/28/2022) |
| 07/06/2022 | 23 | NOTICE OF SUPPLEMENTAL AUTHORITY by INTERNATIONAL BUSINESS MACHINES CORP. (Attachments: # 1 Exhibit A)(Corley, Patrick) (Entered: 07/06/2022) |
| 07/08/2022 |  | NOTICE OF ERROR re 23 NOTICE OF SUPPLEMENTAL AUTHORITY; emailed to pcorley@jonesday.com, cc'd 7 associated attorneys -- The PDF file you docketed contained errors: 1. **Please note the following for future filings; do not refile document**, 2. FYI: Attorney signature must match login/password in future fillings. (Duncan, Erica) (Entered: 07/08/2022) |
| 07/18/2022 | 24 | NOTICE OF SUPPLEMENTAL AUTHORITY by INTERNATIONAL BUSINESS MACHINES CORP. (Attachments: # 1 Exhibit A)(Friedman, Craig) (Entered: 07/18/2022) |
| 07/19/2022 | 25 | NOTICE OF SUPPLEMENTAL AUTHORITY by INTERNATIONAL BUSINESS MACHINES CORP. (Attachments: # 1 Exhibit A)(Friedman, Craig) (Entered: 07/19/2022) |
| 08/26/2022 | 26 | MOTION to Withdraw as Attorney by INTERNATIONAL BUSINESS MACHINES CORP.. (Shymansky, Ryan) (Entered: 08/26/2022) |
| 08/26/2022 |  | MINUTE ORDER granting 26 Ryan Shymansky's Motion to Withdraw Appearance as Counsel for Defendant IBM. Signed by Judge Amit P. Mehta on 8/26/2022. (lcapm2) (Entered: 08/26/2022) |

| 09/12/2022 | 27 | NOTICE of Appearance by Thomas R. Chiavetta on behalf of INTERNATIONAL BUSINESS MACHINES CORP. (Chiavetta, Thomas) (Entered: 09/12/2022) |
| 12/09/2022 | | MINUTE ORDER provisionally granting Petitioner's 4 Sealed Motion for Leave to File Document Under Seal and Respondent's 22 Sealed Motion for Leave to File Document Under Seal. The mere fact that a case is pertaining to a confidential arbitration does not entitle it to be under seal as there is a strong presumption in favor of public access to judicial proceedings. See EEOC v. Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1409 (D.C. Cir. 1996); Grynberg v. BP P.L.C., 205 F. Supp. 3d 1, 3-4 (D.D.C. 2016). The Parties shall submit a brief of no more than five pages by December 23, 2022, regarding the need to file documents and the court's Memorandum Opinion under seal. Alternatively, the parties may suggest redactions to their papers and the court's opinion. Signed by Judge Amit P. Mehta on 12/9/2022. (lcapm1) (Entered: 12/09/2022) |
| 12/09/2022 | 28 | MEMORANDUM OPINION re: Petitioner's 3 Motion to Vacate Arbitration Award and Respondent's 15 and 18 Motion to Confirm Arbitration Award. Please see the attached Memorandum Opinion for additional details. Signed by Judge Amit P. Mehta on 12/09/2022. (zjd) (Entered: 12/10/2022) |
| 12/10/2022 | 29 | ORDER. For the reasons stated in the 28 Memorandum Opinion, the court grants Respondent's 15 and 18 Motion to Confirm Arbitration Award and denies Petitioner's 3 Motion to Vacate Arbitration Award. Please see the attached Order for further details. Signed by Judge Amit P. Mehta on 12/09/2022. (lcapm1) (Entered: 12/10/2022) |
| 12/23/2022 | 30 | RESPONSE TO ORDER OF THE COURT re Order,,, *on December 9, 2022* filed by INTERNATIONAL BUSINESS MACHINES CORP.. (Friedman, Craig) (Entered: 12/23/2022) |
| 12/31/2022 | 31 | ORDER denying 4 13 19 22 Sealed Motions for Leave to File Documents Under Seal. The court, however, will afford Respondent an opportunity to identify particular portions of the record the disclosure of which would cause actual prejudice to Respondent if made publicly available. Respondent shall identify such portions by January 17, 2023. See attached Order for additional details. Signed by Judge Amit P. Mehta on 12/31/2022. (lcapm1) (Entered: 12/31/2022) |
| 01/09/2023 | 32 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 29 Order, by JAMES OWENS. Filing fee $ 505, receipt number ADCDC-9774149. Fee Status: Fee Paid. Parties have been notified. (Liss-Riordan, Shannon) Modified docket event/text on 1/9/2023 (zed). (Entered: 01/09/2023) |
| 01/09/2023 | 33 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 32 Notice of Appeal to DC Circuit. (zed) (Entered: 01/09/2023) |
| 01/10/2023 | | USCA Case Number 23-7002 for 32 Notice of Appeal to the Federal Circuit, filed by JAMES OWENS. (zed) (Entered: 01/11/2023) |
| 01/17/2023 | 34 | RESPONSE TO ORDER OF THE COURT re 31 Order on Sealed Motion for Leave to File Document Under Seal, filed by INTERNATIONAL BUSINESS MACHINES CORP.. (Friedman, Craig) (Entered: 01/17/2023) |
| 01/18/2023 | | MINUTE ORDER. For the reasons stated in the court's Order of December 31, 2023, and in light of Defendant's response on January 17, 2023, these proceedings shall be unsealed in their entirety. Signed by Judge Amit P. Mehta on 1/18/2023. (lcapm1) (Entered: 01/18/2023) |

**App.229**

4/11/23, 2:46 PM                          District of Columbia live database

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/11/2023 14:46:15 | | | |
| **PACER Login:** | sliss1969 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-00901-APM |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

**App.230**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES OWENS,<br>121 Tuxedo Ct.<br>Forest City, NC 28043 | )<br>)<br>)<br>)    Civil Action No. 1:22-cv-901<br>) |
| Petitioner, | )<br>) |
| v. | )<br>) |
| INTERNATIONAL BUSINESS<br>MACHINES CORP.,<br>1 New Orchard Rd.<br>Armonk, NY 10504 | )<br>)<br>)<br>) |
| Respondent. | )<br>) |

## PETITION TO VACATE ARBITRATION AWARD

1.      Petitioner James Owens worked for Respondent International

Business Machines Corporation (hereinafter "IBM").  He has attempted to bring a

claim against IBM in arbitration for discrimination under the Age Discrimination

in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq*., in connection

with the termination of his employment.

2.      However, the arbitrator dismissed Petitioner's claim in arbitration as

untimely.  Pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C.

§1, *et seq*., Petitioner hereby moves to vacate the arbitration award dismissing his

claim.

1

3.      As discussed below, the Arbitrator dismissed Petitioner's claim as untimely without considering key facts pertinent to this case, ignoring that Petitioner timely filed his demand with JAMS, that the COVID-19 pandemic made same-day mailing impracticable, and that IBM's requirement that Petitioner mail his demand was unreasonable.  In short, Petitioner was not able to pursue his rights in arbitration as he would have been able to in court.

4.      Moreover, in court, Petitioner's claim would not have been untimely for the additional reason that he would have been allowed to "piggyback" off of earlier similar discrimination claims filed by others.  The provision of IBM's arbitration agreement that purports to waive the "piggybacking" rule that would apply in court is not enforceable.

5.      Petitioner thus seeks vacatur of the arbitrator's award as he timely filed his arbitration demand or in the alternative a declaration that IBM's arbitration agreement that purports to waive the single filing rule and block the Petitioner's age discrimination claim to be unenforceable and void. This action is brought pursuant to Section 10 of the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* and the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

2

**PARTIES**

6.      Petitioner James Owens is a resident and domiciliary of Forest City, North Carolina.  For 23 years, until his termination, he was an employee of Defendant. His last day of work was in September 2020.

7.      Respondent International Business Machines Corporation ("IBM") is incorporated and maintains its principal place of business in New York.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction pursuant to 28 U.S.C. §1332 as the action is between citizens of different states and the amount in controversy exceeds $75,000.

9.      Venue is proper in this District pursuant to 9 U.S.C. § 10 and 28 U.S.C. § 1391, as the arbitration award was made in this judicial district, in Washington, D.C.

**BRIEF SUMMARY OF FACTS AND PROCEEDINGS**

10.      Petitioner worked at IBM from 1997 to 2020.

11.      Petitioner contends that he fell victim to a years-long companywide discriminatory scheme implemented by IBM's top management to build a younger workforce, by reducing its population of older workers in order to make room for the hiring of younger workers.

3

**App.233**

12.     This discriminatory scheme is detailed in the Second Amended
Complaint in the matter of <u>Rusis et al. v. International Business Machines Corp.</u>,
C.A. No. 18-cv-08434 (S.D.N.Y.) (Dkt. 179), a class and collective action pending
in the Southern District of New York, brought under the Age Discrimination in
Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*  Briefly stated,
in <u>Rusis</u>, the plaintiffs allege that IBM has pushed out thousands of older workers
over a several year period, while hiring younger workers (which the company often
refers to as "Early Professional Hires" or "New Collar" workers), in order to better
compete with newer technology companies, such as Google, Facebook, Amazon,
and others.

13.     Indeed, IBM has been investigated for age discrimination by the
Equal Employment Opportunity Commission ("EEOC").  Following a multi-year
investigation, on August 31, 2020, the EEOC issued a classwide determination in
which it found reasonable cause to believe that IBM discriminated against older
employees during the period 2013 to 2018.  The EEOC stated in its determination
letter that its conclusion was supported by dozens of interviews it had conducted
across the company, as well as analysis of data, and it rejected IBM's attempt to
justify and defend the layoffs of the 58 charging parties, whose claims had been
consolidated for investigation, through individualized explanations.

14.     When it laid off employees, including Petitioner, IBM avoided providing disclosures of the ages of employees who had been laid off and those not laid off (and other related information), as required by the Older Workers' Benefits Protections Act ("OWBPA"), 29 U.S.C. § 626(f)(1)(H), by not including a waiver of ADEA claims in the release that it asked the employees to sign.  Instead, it offered the employees subject to layoff a very modest severance payment in exchange for a waiver of almost all legal claims, other than a claim under the ADEA.  The agreement provided, however, that if the employee chose to pursue a claim under the ADEA, it would need to be in individual arbitration.

15.     In May 2020, Petitioner learned that he was being terminated as part of a reduction-in-force (which IBM calls a "Resource Action" or "RA") conducted by IBM.

16.     Petitioner unsuccessfully applied for other positions within IBM after learning of the Resource Action. His last day of work at IBM was in September 2020.

17.      Petitioner was 50 years old at the time of his termination.

18.      Petitioner signed the arbitration agreement and later proceeded to attempt to pursue a claim of discrimination under the ADEA in arbitration.

19.     The arbitration agreement includes a provision that states: "To initiate arbitration, you must submit a written demand for arbitration to the IBM

5

Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not timely submitted, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration."

20.      The arbitration agreement also states: "Any issue concerning the validity or enforceability of this Agreement . . . shall be decided only by a court of competent jurisdiction."

21.      On November 17, 2020, Petitioner electronically filed his arbitration demand, alleging age discrimination under the ADEA, with JAMS. The following day, Petitioner mailed his demand to IBM.

22.       IBM moved to dismiss Petitioner's arbitration demand as untimely on May 21, 2021.

23.       Petitioner filed his opposition on June 4, 2021, and the Arbitrator issued an order granting IBM's motion to dismiss his claim on November 19, 2021.

24.       Petitioner filed a motion for reconsideration on December 8, 2021.

**App.236**

25.    The arbitrator denied the Motion for Reconsideration on January 7, 2022 (the "Award").

26.    The arbitrator failed to consider key facts pertinent to this case, including that Petitioner timely filed his demand with JAMS, that the COVID-19 pandemic made same-day mailing impracticable, and that IBM's requirement that Petitioner mail his demand was unreasonable.

27.    The arbitrator failed to comply with the Parties' agreement and afford Petitioner the full remedies available under the law by declining to apply the doctrine of equitable tolling.

28.    The arbitrator failed to adequately review and consider the arguments made in Petitioner's Motion for Reconsideration.

29.    The arbitrator's manifest disregard of the facts presented by Petitioner in opposition to IBM's Motion to Dismiss; his failure to follow the procedures set out in IBM's agreement and afford Petitioner the rights available to him under the law; and his rejection of Petitioner's Motion to Reconsider constitute grounds for vacating the Award in this case.

30.    In addition, pursuant to the ADEA, individuals are required to file a charge with the EEOC within 300 days of the date of the alleged wrongful act (or within 180 days in non-deferral jurisdictions). 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d), 633(b).

31.    However, under the single filing rule, also referred to as the "piggybacking" doctrine, individuals may pursue discrimination claims even if they did not timely file their own administrative charge of discrimination at the EEOC.  See Tolliver v. Xerox Corp., 918 F.2d 1052, 1057-59 (2d Cir. 1990); see also Holowecki v. Federal Exp. Corp., 440 F.3d 558, 565-70 (2d Cir. 2006).  All that is required for "piggybacking" is that the earlier filed charge of discrimination is similar to the discrimination claim that the individual wants to pursue. See Tolliver, 918 F.2d at 1057-59; Grayson v. K Mart Corp., 79 F.3d 1086, 1102 (11th Cir. 1996) ("piggybacking is available in ADEA cases). The single filing rule is thus a part of the statute of limitations law for ADEA claims.

32.    Although Petitioner would be timely to bring his age discrimination claim in court under the single filing rule by virtue of piggybacking onto similar charges timely filed at the EEOC, see Tolliver, 918 F.2d at 1057-59; Holowecki, 44 F.3d at 565-70, IBM's arbitration agreement purports to render Petitioner's ADEA claim untimely in arbitration, in that it states that "[t]he filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration."  Thus, IBM's enforcement of this provision has effectively waived Petitioner's right to rely on the single filing rule and thus has significantly truncated Petitioner's ADEA limitations period.

8

33.     Courts do not permit employers to truncate the limitations periods of ADEA claims by contract because the ADEA limitations period is a substantive, non-waivable right.[1] See Thompson v. Fresh Products, LLC, 985 F.3d 509, 519-20 (6th Cir. 2021).  The EEOC has also taken the position that ADEA limitations periods cannot be abridged by contract. See Thompson, EEOC Brief, 2020 WL 1160190, at *19-25 (S.D.N.Y. March 2, 2020).

34.     Moreover, the law is clear that arbitration is a viable alternative to court only where employees can pursue the same claims they could pursue in court; the law is also clear that employees cannot be required to give up substantive rights if they proceed with their claims in arbitration, rather than in court. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) ("the prospective litigant [must be able to] effectively . . . vindicate his or her statutory cause of action in the [specific] arbitral forum").

WHEREFORE, Petitioner requests that this Court enter the following relief:

a) Vacate the arbitrator's award as the Arbitrator manifestly disregarded the facts presented by Petitioner; he did not follow the procedures set out in IBM's agreement and did not afford Petitioner the rights available to him under the law; and he denied Petitioner's Motion for Reconsideration.

---

[1]     As noted above (paragraph 15), Petitioner cannot be deemed to have waived his rights under the ADEA because IBM did not provide the disclosures regarding the ages of employees who were laid off and were not laid off, as required by the OWBPA.  See Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-27 (1998).

9

b) Find and declare that the provision of IBM's arbitration agreement that purports to waive the single filing, or "piggybacking", rule, and under which IBM contends that Petitioner's claim under the ADEA is untimely, is unenforceable and otherwise void, so that Petitioner may pursue his claim in arbitration.

c) Any other relief to which Petitioner may be entitled.

> Respectfully submitted,
>
> JAMES OWENS,
>
> By his attorneys,
>
> _/s/ Michelle Cassorla_
> Michelle Cassorla, D.C. Bar No. 1022193
> Shannon Liss-Riordan
> (_pro hac vice anticipated_)
> LICHTEN & LISS-RIORDAN, P.C.
> 729 Boylston Street, Suite 2000
> Boston, MA 02116
> (617) 994-5800
> Email: mcassorla@llrlaw.com
>            sliss@llrlaw.com

Dated:        April 4, 2022

10

**App.240**

# EXHIBIT 1
# TO MOTION TO VACATE ARBITRATION AWARD



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
New York Direct Dial: (929) 506-5270
FAX (212) 336-3625
Website:  www.eeoc.gov

## DETERMINATION

**Respondent**
IBM Corporation
c/o Alison B. Marshall, Esq.
Partner
Jones Day
51 Louisiana Ave. NW
Washington, DC, 20001

### Charging Parties' EEOC Charge Numbers

| | | | | |
|---|---|---|---|---|
| 430-2019-00626 | 520-2016-02972 | 520-2016-02992 | 520-2017-00983 | 523-2018-01980 |
| 433-2018-02866 | 520-2016-02973 | 520-2016-02993 | 520-2017-01501 | 525-2018-01267 |
| 433-2018-03485 | 520-2016-02974 | 520-2016-02994 | 520-2018-04032 | 531-2016-02066 |
| 450-2018-06667 | 520-2016-02975 | 520-2016-02995 | 520-2018-04720 | 541-2015-01642 |
| 451-2017-00048 | 520-2016-02976 | 520-2016-03319 | 520-2019-01305 | 541-2018-02866 |
| 451-2018-04006 | 520-2016-02978 | 520-2016-03391 | 520-2019-02106 | 541-2018-03431 |
| 451-2019-00005 | 520-2016-02979 | 520-2016-03422 | 520-2019-02362 | 551-2017-01130 |
| 451-2019-00008 | 520-2016-02980 | 520-2016-03423 | 520-2019-02592 | 551-2018-01672 |
| 451-2019-00136 | 520-2016-02982 | 520-2017-00068 | 520-2020-03595 | 560-2016-01229 |
| 510-2016-03889 | 520-2016-02984 | 520-2017-00087 | 523-2016-00799 | 560-2016-01509 |
| 510-2017-02206 | 520-2016-02986 | 520-2017-00203 | 523-2018-01040 | |
| 510-2019-00820 | 520-2016-02990 | 520-2017-00818 | 523-2018-01319 | |

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under the Age Discrimination in Employment Act (ADEA) of 1967, as amended, Respondent IBM is an employer within the meaning of the ADEA. All requirements for coverage have been met.

Charging Parties allege they and a class of similarly situated individuals were discharged based on their age. Individual Charging Parties also alleged discrimination based on national origin, sex, race, retaliation, and disability.

Respondent denies discriminating against Charging Parties. Respondent asserts that Charging Parties were discharged as part of a series of Resource Actions designed to reduce headcounts and decrease costs. Respondent contends there was no centralized decision-making, and that each individual manager was responsible for selecting individuals in his or her group that would be laid off. Respondent offered various reasons for selection for layoff including performance, relevant skills, utilization, and consolidation of services.

The Commission's investigation reveals that Respondent conducted Resource Actions analyzed by the EEOC between 2013 and 2018 that had an adverse impact on employees in the protected age group (PAG). The investigation uncovered top-down messaging from Respondent's highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires. Analysis shows it was primarily older workers (85.85%) in the total potential pool of those considered for layoff. Evidence uncovered older employees who were laid off and told that their skills were out of date, only to be brought back as contract workers, at a lower rate of pay with fewer benefits. EEOC received corroborating testimony from dozens of witnesses nationwide supporting a discriminatory animus based on age. See above for a list of Charge Numbers covered by this Determination.

Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Parties and others on account of their age.

Based on the above, the evidence obtained during the investigation was insufficient to establish a violation of Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Americans with Disabilities Act of 1990, as amended, based on national origin, sex, race, retaliation, and disability.

This determination is final. The ADEA requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with the ADEA and the Commission's Procedural Regulations.

A commission representative will contact each party in the near future to begin conciliation. If you decline to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

**Judy Keenan**  Digitally signed by Judy Keenan
DN: cn=Judy Keenan, o=ENFORCEMENT, ou=EEOC/
FOR, email=ARLEAN.NIETO@EEOC.GOV, c=US
Date: 2020.08.31 11:32:42 -04'00'

Date _____

Judy Keenan, Director
New York District Office

# EXHIBIT 2

## TO MOTION TO VACATE
## ARBITRATION AWARD

# Demand for Arbitration Form

## Instructions for Submittal of Arbitration to JAMS

## INSTRUCTIONS

Please submit this form to your local JAMS Resolution Center. Once the below items are received, a JAMS professional will contact all parties to commence and coordinate the arbitration process, including the appointment of an arbitrator and scheduling a hearing date.

📞 1-800-352-JAMS

🖥 www.jamsadr.com

If you wish to proceed with an arbitration by executing and serving a Demand for Arbitration on the appropriate party, please submit the following items to JAMS with the requested number of copies:

**A. Demand for Arbitration** *(2 copies)*

**B. Proof of service of the Demand on the appropriate party** *(2 copies)*

**C. Entire contract containing the arbitration clause** *(2 copies)*
- *To the extent there are any court orders or stipulations relevant to this arbitration demand, e.g. an order compelling arbitration, please also include two copies.*

**D. Administrative Fees**
- *For two-party matters, the Filing Fee is $1,500. For matters involving three or more parties, the filing fee is $2,000. The entire Filing Fee must be paid in full to expedite the commencement of the proceedings. Thereafter, a Case Management Fee of 12% will be assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation. JAMS also charges a $1,500 filing fee for counterclaims. For matters involving consumers, the consumer is only required to pay $250. See JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses. For matters based on a clause or agreement that is required as a condition of employment, the employee is only required to pay $400. See JAMS Policy on Employment Arbitrations, Minimum Standards of Fairness.*

- *A refund of $600 will be issued if the matter is withdrawn within five days of filing. After five days, the filing fee is non-refundable.*

**Once completed, please submit to your local JAMS Resolution Center.**
*Resolution Center locations can be found on the JAMS website at: http://www.jamsadr.com/locations/.*



# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## TO RESPONDENT (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

Add more respondents on **page 6.**

| | |
|---|---|
| **RESPONDENT NAME** | International Business Machines Corp. |
| **ADDRESS** | 1 New Orchard Road |

| CITY | Armonk | STATE | NY | ZIP | 10504 |
|---|---|---|---|---|---|

| PHONE | | FAX | | EMAIL | |
|---|---|---|---|---|---|

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| **REPRESENTATIVE/ATTORNEY** | |
| **FIRM/ COMPANY** | |
| **ADDRESS** | |

| CITY | | STATE | | ZIP | |
|---|---|---|---|---|---|

| PHONE | | FAX | | EMAIL | |
|---|---|---|---|---|---|

## FROM CLAIMANT

Add more claimants on **page 7.**

| | |
|---|---|
| **CLAIMANT NAME** | James Owens c/o Lichten & Liss-Riordan, P.C. |
| **ADDRESS** | |

| CITY | | STATE | | ZIP | |
|---|---|---|---|---|---|

| PHONE | | FAX | | EMAIL | |
|---|---|---|---|---|---|

### CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| **REPRESENTATIVE/ATTORNEY** | Shannon Liss-Riordan, Thomas Fowler |
| **FIRM/ COMPANY** | Lichten & Liss-Riordan, P.C. |
| **ADDRESS** | 729 Boylston St, Suite 2000 |

| CITY | Boston | STATE | MA | ZIP | 02116 |
|---|---|---|---|---|---|

| PHONE | 617-994-5800 | FAX | 617-994-5801 | EMAIL | sliss@llrlaw.com, tfowler@llrlaw.com |
|---|---|---|---|---|---|

# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## MEDIATION IN ADVANCE OF THE ARBITRATION

☐   If mediation in advance of the arbitration is desired, please check here and a JAMS Case Manager will assist the parties in coordinating a mediation session.

## NATURE OF DISPUTE / CLAIMS & RELIEF SOUGHT BY CLAIMANT

CLAIMANT HEREBY DEMANDS THAT YOU SUBMIT THE FOLLOWING DISPUTE TO FINAL AND BINDING ARBITRATION.
A MORE DETAILED STATEMENT OF CLAIMS MAY BE ATTACHED IF NEEDED.

Claimant James Owens brings this claim under the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. §621 *et seq.* against International Business Machines Corp. ("IBM"). His claim is the same as that set forth in the class action lawsuit currently pending in federal court, <u>Rusis v. International Business Machines Corp.</u>, C.A. No. 1:18-cv-08434 (S.D.N.Y.) (Complaint attached as Exhibit A). However, because Mr. Owens signed an arbitration clause as a part of a severance agreement (which was for three month's pay and did not release federal age discrimination claims), he is required to pursue this claim in arbitration.

Mr. Owens currently resides in Forest City, North Carolina. Mr. Owens worked for IBM for approximately twenty-three (23) years before his layoff, effective September 2020. At the time of his layoff, Mr. Owens was fifty (50) years old. Mr. Owens was employed as a Project Manager. Throughout his employment at IBM, Mr. Owens consistently received high performance ratings and positive feedback for his work. Following notice of his termination, Mr. Owens applied to multiple open positions, for which he was well qualified, through the IBM Job Marketplace. However, Mr. Owens was not considered for any of these positions.

AMOUNT IN CONTROVERSY (US DOLLARS) _____

# Demand for Arbitration Form (continued)
## Instructions for Submittal of Arbitration to JAMS

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows. *Please cite location of arbitration provision and attach two copies of entire agreement.*

**ARBITRATION PROVISION LOCATION**

See paragraph 5 of the agreement (attached here as Exhibit B).

## RESPONSE

The respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. *Send the original response and counter-claim to the claimant at the address stated above with two copies to JAMS.*

## REQUEST FOR HEARING

**REQUESTED LOCATION**    Washington, D.C.

## ELECTION FOR EXPEDITED PROCEDURES (IF COMPREHENSIVE RULES APPLY)

*See: Comprehensive Rule 16.1*

☐    By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

## SUBMISSION INFORMATION

**SIGNATURE**    /s/ Shannon Liss-Riordan    **DATE**    11/17/2020

**NAME (PRINT/TYPED)**    Shannon Liss-Riordan

# Demand for Arbitration Form (continued)

## Instructions for Submittal of Arbitration to JAMS

Completion of this section is <u>required for all consumer or employment claims</u>.

## CONSUMER AND EMPLOYMENT ARBITRATION

Please indicate if this is a CONSUMER ARBITRATION.  For purposes of this designation, and whether this case will be administered in California or elsewhere, JAMS is guided by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e)*, as defined below, and the JAMS Consumer and Employment Minimum Standards of Procedural Fairness:

[☑] <u>YES</u>, this **is** a CONSUMER ARBITRATION.

[ ] <u>NO</u>, this **is not** a CONSUMER ARBITRATION.

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1. The contract is with a consumer party, as defined in these standards;
2. The contract was drafted by or on behalf of the non-consumer party; and
3. The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1. An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2. An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3. An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4. An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

In addition, JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter.

If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.

## EMPLOYMENT MATTERS

If this is an EMPLOYMENT matter, Claimant must complete the following information:

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

[ ] Less than $100,000     [ ] $100,000 to $250,000     [ ] More than $250,000     [☑] Decline to State

## WAIVER OF ARBITRATION FEES

**In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees.** In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, and DAVID HO ENG, individually and on behalf of all other similarly situated individuals, ) ) ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 1:18-cv-08434 |
| v. ) ) ) | **JURY DEMANDED** |
| INTERNATIONAL BUSINESS MACHINES CORP. ) ) ) | |
| Defendant. ) ) | |

### FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1.     This is a class and collective action brought by Edvin Rusis, Henry Gerrits,

Phil McGonegal, and David Ho Eng on behalf of themselves and all other similarly situated

employees who have worked for Defendant International Business Machines Corporation

(hereinafter "IBM"), alleging that IBM, through its termination and hiring practices, has

violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. §

621 *et seq.*, as well as the laws of the various states in which the employees worked.

As described further below, IBM has discriminated, and continues to discriminate,

against its older workers, both by laying them off (or terminating or constructively

discharging them) disproportionately to younger workers and then not hiring them for

open positions. Over the last several years, IBM has been in the process of

systematically reducing its employment of older workers in order to build a younger

workforce. Between 2012 and the present, IBM has laid off at least 20,000 employees

1

over the age of forty. Such discriminatory layoff and hiring practices constitute unlawful

discrimination under the ADEA and state anti-discrimination law.

2.      Plaintiffs bring these claims on behalf of themselves and similarly situated

IBM employees across the country who may choose to opt in to this action pursuant to

29 U.S.C. §§ 216(b), 626(b).

3.      Plaintiffs also bring class claims under the laws of the states in which they

have worked pursuant to Fed. R. Civ. P. 23.

**II.**    **PARTIES**

4.      Plaintiff Edvin Rusis is fifty-nine (59) years old and resides in Laguna

Niguel, California. Mr. Rusis worked for IBM for approximately fifteen (15) years before

his separation, effective June 27, 2018.

5.      Plaintiff Henry Gerrits is sixty-seven (67) years old and resides in Cary,

North Carolina. Mr. Gerrits worked for IBM for approximately thirty-three (33) years,

before his separation, effective on June 27, 2018.

6.      Plaintiff Phil McGonegal is fifty-five (55) years old and resides in Atlanta,

Georgia. Mr. McGonegal worked for IBM for approximately thirty-four (34) years before

his separation, effective approximately June 30, 2018.

7.      Plaintiff David Ho Eng is 56 years old and resides in Sacramento,

California. Plaintiff Eng worked for IBM in New Jersey for approximately six (6) years

before his separation, effective approximately March 31, 2018.

8.      Plaintiffs bring these claims on behalf of themselves and similarly situated

IBM employees across the country who may choose to opt in to this action pursuant to

29 U.S.C. §§ 216(b), 626(b).

9.      Plaintiff Rusis also brings this case as a class action on behalf of himself and similarly situated individuals over the age of forty (40) who worked for IBM in California whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

10.     Plaintiff Gerrits also brings this case as a class action on behalf of himself and similarly situated individuals over the age of forty (40) who worked for IBM in North Carolina whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

11.     Plaintiff Eng also brings this case as a class action on behalf of himself and similarly situated individuals over the age of forty (40) who worked for IBM in New Jersey whose employment separated within the relevant period, pursuant to Fed. R. Civ. P. 23.

12.     Defendant International Business Machines Corp. is a New York corporation with its principal place of business in Armonk, New York. IBM is an American multinational technology business that offers services and goods ranging from computing, cloud platforms, advanced analytics tools and others.

III.    **JURISDICTION AND VENUE**

13.     This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq.* This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

14.    The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in Armonk, New York.

IV.    **STATEMENT OF FACTS**

15.    Plaintiffs were among thousands of IBM employees to be laid off recently, as the result of a shift in IBM's personnel focus to the generation of workers referred to as "Millennials" (which IBM defines as the generation born after 1980) that began in approximately 2012.  At that time, IBM began a program to reform itself into a leading company in the fields of cloud services, big data analytics, mobile, security and social media. As a part of this transformation, IBM endeavored to begin heavily recruiting Millennials in order to make the face of IBM younger, while at the same time pushing out older employees. In an article published by ProPublica following an investigation of IBM's hiring practices, ProPublica reported that it estimates that "in the past five years alone, IBM has eliminated more than 20,000 American employees ages 40 and over, about 60 percent of its estimated total U.S  job cuts during those years." Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

16.    As reported by ProPublica, IBM's shift in focus toward the Millennial workforce came as "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." Id. In response to that problem, IBM's CEO Virginia Rommetty "launched a major overhaul that aimed to make IBM a major player in the emerging technologies of cloud services, big data analytics, mobile security and social media, or what came to be known inside

4

as CAMS" and "sought to sharply increase hiring of people born after 1980." Id.

Additionally, IBM embraced the belief that "CAMS are driven by Millennial traits." Id.

17.    Moreover, in 2006 one of IBM's consulting arms issued a paper that

referred to workers in the "Baby Boomer" generation as "gray hairs" and "old heads,"

stated that "successor generations . . . are generally much more innovative and

receptive to technology than baby boomers," and advised that "What businesses can't

afford to do is simply rehire their experienced workers and put them back into their old

jobs." See, The Maturing Workforce: Innovation in Workforce Enablement, IBM

Business Consulting Services, https://www-935.ibm.com/services/uk/bcs/pdf/maturing-

workforce-feus01291-1.pdf (2006).

18.    As another expression of IBM's shift in focus to embrace Millennials, at a

2014 IBM conference called "Reinvention in the Age of the Millennial," IBM announced

its intent to "embrace the 'Millennial mindset'" and announced that "What's good for

Millennials is good for everyone." See Reinvention in the Age of the Millennial,

https://ibmcai.com/2014/12/16/reinvention-in-the-age-of-the-millennial/ (Dec. 16, 2014).

19.    IBM has reduced the population of its older workers through several

methods. Many older employees have been laid off through reductions in force or

layoffs, which IBM refers to as "Resource Actions."  (Meanwhile, IBM shields its

youngest employees from layoff, exempting recent college graduates from reduction for

nine months from their hire date.)  IBM has also reduced its population of older workers

by terminating older employees for pretextual reasons, or by constructively discharging

them, or by conditioning their continued employment on untenable choices they are

unlikely to accept, such as relocation.

20.    Prior to 2014, IBM provided lists to any workers who were laid off, which disclosed the positions and ages of all the employees laid off from their business units at the same time, as well as a list showing the positions and ages of all those in the business units that were not being laid off.  IBM distributed this information, presumably, in order to comply with the Section 626(f) of the ADEA, which requires disclosure of this information if an employer seeks to obtain a release of age discrimination claims from a group of employees. However, in 2014, in an apparent effort to conceal its systematic effort to shed its older workers, IBM stopped disclosing this information to the employees. While IBM could no longer include a release of ADEA claims in its severance agreements with its employees as a result, it opted instead to require its employees to agree to binding individual arbitration of those claims, in order to receive a small severance payment.  Many IBM employees who were laid off, including the named plaintiffs in this action, rejected the severance offer and did not sign the arbitration agreement.

21.    Plaintiff Rusis began working at IBM in 2003 as a strategic services specialist and later became a solution manager for IBM's global system integrator alliances. In March 2018, Plaintiff Rusis received a letter from IBM stating that he was being laid off, effective on June 27, 2018. After being notified that he would be laid off, Plaintiff Rusis used IBM's internal hiring platform to apply for five positions for which he was qualified, including one position on his former Global System Integrator Sales team. Plaintiff Rusis did not receive a response regarding any of these job applications.

22.    Plaintiff Gerrits began working for IBM, in August 1985, and most recently held the position of global commodity manager. On March 29, 2018, Plaintiff Gerrits

received a letter from his manager informing him that he was being laid off by IBM effective June 27, 2018. Plaintiff Gerrits was one of the oldest employees in his group. Although Plaintiff Gerrits applied to several positions through IBM's internal hiring platform for which he was qualified, he did not receive any response to his applications.

23.    Plaintiff McGonegal began working for IBM in 1986 in Atlanta, Georgia. Most recently, Plaintiff McGonegal worked for IBM as a second line manager of its asset management organization. Plaintiff McGonegal was let go by IBM on June 30, 2018.

24.    Plaintiff Eng began working for IBM in 2012, and most recently held the position of Senior IT Specialist. Mr. Eng was let go by IBM on March 31, 2018. Following his separation, Mr. Eng attempted to find a new position through IBM's internal hiring platform, and a hiring manager indicated that he wished to hire Mr. Eng. One of Mr. Eng's IBM Career Managers, however, prevented Mr. Eng's hire for the new position.

25.    Upon information and belief, IBM does not permit individuals who have been laid off through its Resource Actions to be considered for other positions through IBM's internal hiring platform. It has used this type of technique to prevent its older workers who have been laid off from obtaining new positions within the company.

**V.    COLLECTIVE ACTION ALLEGATIONS**

26.    Plaintiffs bring this case as a collective action on behalf of IBM employees over the age of forty (40) who have worked anywhere in the country whose employment separated within the relevant period, who may opt in to this action.

27.    These employees who may opt in to this collective action are similarly situated to the named Plaintiffs. They have all worked for IBM under substantially similar

7

conditions and have all been subjected to IBM's policy and practices of targeting for layoff and disproportionately ending the employment of employees over forty (40) years old. They have also all been subject to IBM's policy of precluding those employees from consideration for other open internal IBM positions for which they are qualified.

**VI.    CLASS ACTION ALLEGATIONS**

28.    Plaintiffs also bring class action claims pursuant to Fed. R. Civ. P. 23 under the laws of California, North Carolina, and New Jersey on behalf of IBM employees over the age of forty (40) who have worked for IBM in those respective states and whose employment separated within the relevant period.

29.    These California, North Carolina, and New Jersey classes all meet the prerequisites of Fed. R. Civ. P. 23 in that:

a.    The classes are so numerous that joining all members is impracticable. The exact number of the members of each class is unknown, but it is estimated that there have been well more than forty (40) IBM employees over the age of forty (40) whose employment has ended in each of these states within the relevant period. As a result, joinder of all of these individuals is impracticable.

b.    There are questions of fact and law common to all of the putative class members, because all of those individuals were subject to IBM's uniform effort to shift its personnel focus to Millennials, leading to the unlawful termination of a disproportionate number of older IBM employees, in violation of the laws of their respective states.

8

c.  With respect to these common issues, the claims of the named plaintiffs are typical of the claims of IBM employees over the age of forty (40) who had worked in each of these states and who lost their jobs with IBM.

d.  Plaintiffs and their counsel will fairly and adequately represent the interests of each class. The named plaintiffs have no interests adverse to or in conflict with the class members whom they propose to represent. Plaintiffs' counsel have litigated and successfully resolved many dozens of class action cases involving employment law and have substantial experience representing employees in discrimination claims.

e.  The questions of law or fact common to all members of each class predominate over any questions affecting only individual members. The common questions include, among other things, whether IBM targeted older employees for layoff, or otherwise disproportionately ended the employment of older workers, and whether IBM refused to consider hiring those employees to other open positions for which they were qualified due to their age.

f.  Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery for many IBM employees in these states, briefing of legal issues, and court proceedings.

**VII. <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>**

30.    Several of the Plaintiffs timely filed Class Charges of Discrimination with the EEOC. More than sixty (60) days have passed since they submitted those Charges of Discrimination.

**<u>COUNT I</u>**

(Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*)
(On Behalf of Plaintiffs and Class)

31.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

32.    IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiffs, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the ADEA. IBM's violation of the ADEA has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs and similarly situated employees have lost their jobs.

33.    This claim is brought on behalf of a class of IBM employees across the country who may choose to opt in to this case, pursuant 29 U.S.C. §§ 216(b), 626(b).

## COUNT II

(California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.*)
(On Behalf of Plaintiff Rusis and a California Class)

34.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

35.     Plaintiff Rusis brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in California during the relevant period and have been subjected to the discriminatory practices described herein.  IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiff Rusis, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.* IBM's violation of California law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Rusis and similarly situated employees who have worked in California have lost their jobs.

11

## **COUNT III**

(North Carolina Employment Practices Act,
N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3, common law wrongful discharge)
(On Behalf of Plaintiff Gerrits and a North Carolina Class)

36.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

37.    Plaintiff Gerrits brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in North Carolina during the relevant and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Gerrits, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the North Carolina Employment Practices Act, N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3 and common law wrongful discharge. IBM's violation of North Carolina law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Gerrits and similarly situated employees have lost their jobs.

12

**COUNT IV**
(New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*)
(On Behalf of Plaintiff Eng and a New Jersey Class)

38.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

39.    Plaintiff Eng brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in New Jersey during the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Eng, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* IBM's violation of New Jersey law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Eng and similarly situated employees have lost their jobs.

**JURY DEMAND**

Plaintiffs request a trial by jury on all claims.

13

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1.      Permission for Plaintiffs to notify other IBM employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

2.      Find and declare that IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*;

3.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count II and appoint Plaintiff Rusis and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in California, and whose employment with IBM ended within the relevant time period;

4.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count III and appoint Plaintiff Gerrits and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in North Carolina, and whose employment with IBM ended within the relevant time period;

5.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count IV and appoint Plaintiff Eng and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in New Jersey, and whose employment with IBM ended within the relevant time period;

6.      Award compensatory damages, including back pay and front pay, in an amount according to proof;

7.      Reinstate Plaintiffs and similarly situated employees to their positions;

8.      Award all costs and attorney's fees incurred prosecuting this claim;

9.      Award liquidated damages and all appropriate statutory and regulatory damages;

10.     Award interest;

11.     Issue injunctive relief in the form of an order directing IBM to comply with the ADEA and applicable state law.

12.     Any other relief to which Plaintiffs and class members may be entitled.

Dated: December 11, 2018

                         Respectfully submitted,

                         EDVIN RUSIS, HENRY GERRITS, and
                         PHIL MCGONEGAL, AND DAVID HO ENG on
                         behalf of themselves and all others similarly
                         situated,

                         By their attorneys,


                         /s/ Shannon Liss-Riordan_____
                         Shannon Liss-Riordan, NY Bar No. 2971927
                         Thomas Fowler,
                         *pro hac vice* forthcoming
                         LICHTEN & LISS-RIORDAN, P.C.
                         729 Boylston Street, Suite 2000
                         Boston, MA 02116
                         (617) 994-5800
                         Email:  sliss@llrlaw.com, tfowler@llrlaw.com

**App.265**

# EXHIBIT B

# Employee Information Package

**Attachment 2:  Separation Agreement**

You are being offered payments and benefits as part of a resource action that you otherwise would not have been entitled to receive. You will receive and be entitled to keep these payments and benefits only if you sign and comply with all terms of this Agreement. This Agreement requires you to release IBM and related parties from claims you may have as described below. This Agreement also requires you to arbitrate certain claims that are not released on an individual basis.

By accepting this Agreement and the benefits and payments it provides, you agree that if you choose to pursue certain claims that are not released under this Agreement, then such claims must be submitted to arbitration on an individual basis as provided below and may not be pursued in court.

You should thoroughly review and understand the effect of this Agreement before you accept it.

The Resource Action Summary Plan Description is the only document that describes your eligibility for the payments and benefits you are being offered under this Agreement. Any other written or oral representations, promises, or other agreements of any kind made to you in connection with your decision to accept this Agreement will not be recognized.

**1.  Definitions of certain words used in this agreement**

For purposes of this Agreement and its attachment, certain words have specific definitions.

- "Agreement" means this Separation Agreement.

- "IBM" means International Business Machines Corporation and all of its subsidiary and affiliated companies and all of their respective former or current directors, officers, employees, agents, and benefits plans (and fiduciaries, insurers or other agents of those plans), and all successors and assigns of these entities or individuals.

- "You" or "your" means you and anyone acting as your representative, successor or heir.

- "Release" means your waiver of claims as specified below.

**2.  What you release by accepting this agreement**

By accepting this Agreement, you release IBM from ALL claims that you may have against it at the time of accepting, whether or not related to your employment with IBM or the termination of your employment (EXCEPT FOR THOSE SPECIFICALLY IDENTIFIED IN SECTION 3), and including, without limitation:

- all claims arising under any federal, state, local or foreign law dealing with or regulating employment, including, but not limited to: (1) laws prohibiting discrimination and/or harassment based on race, national origin, ancestry, color, creed, religion, sex, gender, sexual orientation, gender identity and/or expression, genetic information, pregnancy, marital status, disability, medical condition, veteran status, or any other statutorily protected status, as well as claims in any forum alleging retaliation; (2) family and medical leave; (3) claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"); and (4) all waivable claims related to wages and hours, including under state or local labor or wage payment laws

- all state and local laws prohibiting discrimination on the basis of age

- claims based on contract, tort, or any other legal theory

- all claims whether or not you know about them at the time you accept this Agreement

**App.267**

# Employee Information Package

- any right to raise or pursue any internal appeals, including but not limited to those eligible for review under the IBM Open Door process related to a claim that you release under this Agreement

- if you have worked or are working in California, you expressly agree to waive the protection of section 1542 of the California Civil Code because you are releasing all claims, whether they are known or unknown; Section 1542 of the California Civil Code states:

  o "A general release does not extend to claims that a creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, which if known by him or her, would have materially affected his or her settlement with the debtor or released party."

  o In the event that you do not understand the waiver of your rights under section 1542 or its legal effect on you, you should talk to a lawyer.

**3.  What you do not release by accepting this agreement**

By accepting this Agreement, you do not release:

- any claims that arise after the date you accept this Agreement

- any claims that by law cannot be waived by private agreement without judicial or governmental supervision, such as under the federal Fair Labor Standards Act of 1938, provided however such claims are subject to arbitration on an individual basis as described below

- any claims that IBM failed to pay wages that IBM acknowledged were due and owing at the time you accept this Agreement

- your right to file a charge with or participate in any investigation or proceeding conducted by the U.S. Equal Employment Opportunity Commission (EEOC) or other government agency; even though you can file a charge or participate in an investigation or proceeding conducted by the EEOC or other government agency, by accepting this Agreement you are waiving your ability to obtain relief of any kind from IBM to the extent permitted by law. **Notwithstanding the foregoing, you are not prohibited from receiving an award for information provided to any government agency <u>as permitted under law</u>.**

- your non-forfeitable rights to accrued benefits (within the meaning of sections 203 and 204 of the Employee Retirement Income Security Act of 1974) under the IBM Personal Pension Plan and the IBM 401(k) Plus Plan

- any right you may have to challenge the validity of this Agreement

- your right to enforce this Agreement and to receive the benefits and payments pursuant to the Resource Action Plan

- any claim under the Federal Age Discrimination in Employment Act of 1967 or the West Virginia Human Rights Act, provided however such claims are subject to arbitration on an individual basis as described below

- your ability to comply with any lawful subpoena or court order or taking any other actions affirmatively authorized by law.

**4.  You can take up to 30 days before accepting this agreement**

You can take up to thirty (30) days from the date you received this Agreement or until your last date of employment, **<u>whichever is longer</u>**, to consider this Agreement and the accompanying separation program information.  If you accept

# Employee Information Package

and sign (by hard copy or electronically) this Agreement before the expiration of the 30-day period, you acknowledge that you knowingly and voluntarily waived the ability to wait the full 30 days. **Employees may not sign the Agreement before their last date of employment with IBM**.

FOR EMPLOYEES WORKING IN MINNESOTA ONLY: This Agreement is not effective for FIFTEEN DAYS after you accept it. You can revoke this Agreement during that time. To revoke this Agreement, your manager or the Project Office must receive a written notice of revocation from you within that time period. You understand that if you do revoke, you will not be entitled to any payments or benefits under this Agreement or the resource action.

### 5. Arbitration and waiver of class claims and jury trial

You agree that any and all legal claims or disputes between you and IBM under the federal Age Discrimination in Employment Act of 1967 (ADEA) or the West Virginia Human Rights Act, as well as any and all claims or disputes between you and IBM that have not or cannot be released by private agreement as a matter of law, such as under the federal Fair Labor Standards Act of 1938 (FLSA) – collectively, "Covered Claims" –  will be resolved on an individual basis by private, confidential, final and binding arbitration according to the IBM Arbitration Procedures and Collective Action Waiver (which are attached and incorporated as part of this Agreement) and under the auspices of JAMS, or if there is no JAMS office within 100 miles of your most recent assigned IBM office location, then an arbitration forum provider to be mutually agreed to by the parties. Regardless of the designated arbitration administrator, the arbitration shall be held in accordance with the JAMS Employment Arbitration Rules & Procedures. You understand and agree that you are giving up your right to a court action for Covered Claims, including any right to a trial before a judge or jury in federal or state court. This agreement to arbitrate does not apply to government agency proceedings.

To the maximum extent permitted by applicable law, you agree that no Covered Claims may be initiated, maintained, heard or determined on a class action, collective action or multi-party basis either in court or in arbitration, and that you are not entitled to serve or participate as a class action member or representative or collective action member or representative or receive any recovery from a class or collective action involving any Covered Claims either in court or in arbitration.

You further agree that if you are included within any class action or collective action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of this Agreement, including the class action or collective action waivers contained in this section, shall be decided only by a court of competent jurisdiction. Any issue concerning the arbitrability of a particular issue or claim pursuant to this section (except for issues concerning the enforceability of the class action or collective action waivers) must be resolved by the arbitrator and not a court.

This arbitration agreement shall not prohibit applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration. Your agreement to arbitrate certain claims pursuant to this Agreement shall not prohibit you from filing a charge or complaint with and seeking relief from the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state or local administrative agency concerning claims that are not released under this Agreement.

This agreement to arbitrate claims shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA").  If for any reason the FAA is held inapplicable to this Agreement, then the State of New York's law of arbitrability shall apply.

### 6. Enforceability

If any part of this Agreement other than the class action or collective action waiver is held to be invalid or unenforceable, the remaining provisions of this Agreement will not be affected in any way, except that if your release

# Employee Information Package

of claims or agreement to arbitrate Covered Claims is held to be unenforceable, then at its option IBM may seek to recover to the maximum extent permitted by law the payments and value of benefits that you received under this Agreement. If the class action or collective action waiver provisions associated with a Covered Claim are held to be invalid or unenforceable, then any class action or collective action involving such Covered Claim(s) must be brought in court and not in arbitration.

Except as otherwise noted, this Agreement will be governed by the substantive laws of New York.

By accepting this Agreement, you acknowledge that you fully understand any and all rights you have with respect to the claims you are releasing and your agreement to arbitrate Covered Claims. You agree that the payments and benefits you have or will receive under this Agreement are good and valuable consideration for entering into this Agreement. You acknowledge that you have been provided adequate time to consult with a lawyer or other advisor of your own choosing before entering into this Agreement. You further agree that you are voluntarily signing this Agreement without any threats, coercion or duress, whether economic or otherwise, and that you intend to be bound by the terms of this Agreement.

YOU ARE ADVISED TO CONSULT WITH A LAWYER BEFORE YOU SIGN THIS AGREEMENT

Employee Name (print): _____

Serial #: _____

Signature: _____

Date: _____

# Employee Information Package

### Attachment 3:  Arbitration Procedure and Collective Action Waiver (Attachment to Separation Agreement)

IBM is committed to administering its employment policies fairly and treating all employees with respect and dignity. Occasionally, however, disagreements may arise between an individual employee and IBM or between employees in a context that involves IBM. IBM believes that the resolution of those types of disagreements is best accomplished through internal dispute resolution processes.

For many decades, IBM employees have had several options to initiate a thorough and timely review of their work-related concerns when they are unable to reach a resolution with their managers. The IBM Open Door Process is one of these options, and IBM's experience makes us confident that it is a highly effective way to resolve employee concerns. The Open-Door Process is offered as the primary dispute resolution forum for IBMers.

IBM recognizes, however, that from time to time IBM and its employees may desire an additional option to have their concerns reviewed. To that end, IBM has introduced the following Arbitration Program which is a private and confidential dispute resolution procedure in which the parties present their respective positions concerning certain claims to an impartial third-party arbitrator who determines the merits of the claims and renders a final and binding decision. The rules and procedures governing IBM's arbitration program are set forth below.

Covered Claims: Individuals who accept the payments and benefits of the Resource Action Plan are required to submit any and all "Covered Claims" to final and binding arbitration and waive their right to a court action of such claims, including any right to a trial before a judge or jury in federal or state court. "Covered Claims" are any and all legal claims or disputes between the employee and IBM under the federal Age Discrimination in Employment Act of 1967 ("ADEA") or the West Virginia Human Rights Act, as well as any and all claims or disputes that have not or cannot be released by private agreement as a matter of law (such as under the federal Fair Labor Standards Act of 1938 (FLSA)).

These Arbitration Procedures shall not prohibit applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration.

WAIVERS: TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AND IBM  AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD, OR DETERMINED ON A MULTIPARTY, CLASS ACTION BASIS OR COLLECTIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT YOU ARE NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS ACTION MEMBER OR REPRESENTATIVE, OR COLLECTIVE ACTION MEMBER OR REPRESENTATIVE, OR RECEIVE ANY RECOVERY FROM A CLASS OR COLLECTIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR ARBITRATION.

You further agree that if you are included within any class action or collective action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of any of the class action or collective action Waivers included as part of your agreement to arbitrate certain claims shall be decided only by a court of competent jurisdiction. Any issue concerning the arbitrability of a particular issue or claim (except for issues concerning the enforceability of the class action or collective action Waivers) must be resolved by the arbitrator and not a court. Your agreement to arbitrate Covered Claims does not preclude you from pursuing or participating in a class action or collective action in court where your claim is based solely on your status as a customer or an investor and does not arise out of or in any way relate to your employment relationship with the Company.

**Pre-Arbitration Dispute Resolution**

You are strongly encouraged to first resolve any Covered Claims informally through the IBM Open Door Process (Appeals@us.ibm.com) or the Project Office. If you are not satisfied and wish to pursue your matter further, then you are encouraged to request a mediation wherein you and IBM will attempt to find common ground to voluntarily resolve

**App.271**

# Employee Information Package

your Covered Claims with the aid of a neutral third party not employed by IBM. You can request mediation through the IBM Open Door Process by contacting Appeals@us.ibm.com. If mediation does not result in resolution of your Covered Claims, then you still have the option of pursuing arbitration by following the procedures set forth below.

**Arbitration Procedures**

Covered Claims will be resolved by arbitration conducted under the auspices of JAMS, or if there is no JAMS office within 100 miles of your most recent assigned IBM office location, then an arbitration forum provider to be mutually agreed to by the parties in writing. Regardless of the designated arbitration administrator, the arbitration shall be held in accordance with the JAMS Employment Arbitration Rules & Procedures (and no other rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration. IBM will supply you with a printed copy of those rules upon your request. The arbitration shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing. Arbitration shall be held in the county in which you worked or work for IBM at the time the claim arose, or if not possible, in the county closest to such location. To the extent any of the terms, conditions or requirements of the arbitration procedures in this document conflict with the applicable Arbitration Rules, the terms, conditions or requirements of the procedures in this document shall govern.

In any arbitration, the parties may file, and the arbitrator shall hear and decide at any point in the proceeding motions permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine, but not motions to consolidate claims, parties or actions. The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. Arbitrators are required to issue a written award, and their award shall be final and binding. Any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction.

**Reconsideration and Review**

Either party shall have the right, within twenty (20) days of issuance of the Arbitrator's decision, to file with the Arbitrator (and the Arbitrator shall have jurisdiction to consider and rule upon) a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by law) shall then be final and conclusive upon the parties.

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

**Remedies**

You and IBM agree the arbitrator(s) is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and expert fees and costs, to the same extent as would a court under applicable law.

**Time Limits and Procedure for Initiating Arbitration**

To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

# Employee Information Package

To initiate arbitration, you must pay the equivalent of the filing fee for the court of general jurisdiction in the state where you last worked for IBM. IBM shall pay 100 percent of the required arbitration administration fee in excess of your payment.

The written demand for arbitration shall be submitted to the IBM Arbitration Coordinator, IBM Corporate Litigation, North Castle Drive, Armonk, New York 10504, with a check for your payment of the filing fee made payable to "International Business Machines Corporation."

Your written demand shall set forth the dispute, including the alleged act or omission at issue and the names of all persons allegedly involved in the act or omission; your name, address, telephone number, and email address; and your IBM employee serial number. IBM will promptly file the demand with the appropriate arbitration administrator, together with the applicable administrative fee as provided in the arbitration administrator's fee schedule.

### Representation

Any party may be represented by an attorney for purposes of arbitrating a Covered Claim. Each party is responsible for payment of its own costs and attorneys' fees, unless otherwise awarded by the Arbitrator under the standards provided by law.

### Discovery

Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party and to subpoena documents from third parties to the extent allowed by law. Requests for additional depositions or discovery may be made to the Arbitrator selected pursuant to this Agreement. The Arbitrator may grant such additional discovery if the Arbitrator finds that the party has demonstrated that it needs that discovery to adequately arbitrate the claim, taking into account the parties' mutual desire to have a speedy, less-formal, cost-effective dispute-resolution mechanism.

### Privacy and Confidentiality

Privacy and confidentiality are important aspects of arbitration. Only parties, their representatives, witnesses and necessary administrative staff of the arbitration forum may attend the arbitration hearing. The arbitrator may exclude any non-party from any part of a hearing.

To protect the confidentiality of proprietary information, trade secrets or other sensitive information, the parties shall maintain the confidential nature of the arbitration proceeding and the award. The parties agree that any information related to the proceeding, such as documents produced, filings, witness statements or testimony, expert reports and hearing transcripts is confidential information which shall not be disclosed, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision by reason of this paragraph.

### Designation of Witnesses

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

### Subpoenas

Each party shall have the right to subpoena witnesses and documents to the extent allowed by law, subject to any limitations the Arbitrator shall impose for good cause shown.

# EXHIBIT 3
## TO MOTION TO VACATE
## ARBITRATION AWARD

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, DAVID HO ENG, BRIAN HAUPT, PHILIP MONSON, CLAUDIA ZIEGLER, SALLY GEHRING, and JOHN MASON, individually and on behalf of all other similarly situated individuals, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) Civil Action No. 1:18-cv-08434 |
| v. | )<br>) **JURY DEMANDED** |
| INTERNATIONAL BUSINESS MACHINES CORP. | )<br>)<br>) |
| Defendant. | ) |

## SECOND AMENDED CLASS
## AND COLLECTIVE ACTION COMPLAINT

1.      This is a class and collective action brought by Edvin Rusis, Henry Gerrits, Phil McGonegal, David Ho Eng, Brian Haupt, Philip Monson, Claudia Ziegler, Sally Gehring, and John Mason, on behalf of themselves and all other similarly situated employees who have worked for Defendant International Business Machines Corporation (hereinafter "IBM"), alleging that IBM, through its termination and hiring practices, has violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq*., as well as the laws of the various states in which the employees worked.[1] As described further below, IBM has discriminated, and continues to discriminate,

---

[1]      Pursuant to the Court's Order of March 26, 2021 (Dkt. 156), Plaintiff David Ho Eng asserts his claim only under New Jersey state law, as the Court dismissed his ADEA claim.

1

against its older workers, both by laying them off (or terminating or constructively

discharging them) disproportionately to younger workers and then not hiring them for

open positions. Over the last several years, IBM has been in the process of

systematically reducing its employment of older workers in order to build a younger

workforce. Between 2012 and the present, IBM has laid off at least 20,000 employees

over the age of forty. Such discriminatory layoff and hiring practices constitute unlawful

discrimination under the ADEA and state anti-discrimination law.

2.      Plaintiffs bring these claims on behalf of themselves and similarly situated

IBM employees across the country who may choose to opt in to this action pursuant to

29 U.S.C. §§ 216(b), 626(b).

3.      Plaintiffs also bring class claims under the laws of the states in which they

have worked pursuant to Fed. R. Civ. P. 23.

**II.    <u>PARTIES</u>**

4.      Plaintiff Edvin Rusis is 62 years old and resides in Laguna Niguel,

California. Mr. Rusis worked for IBM for approximately fifteen (15) years before his

separation, effective June 27, 2018.

5.      Plaintiff Henry Gerrits is 70 years old and resides in Cary, North Carolina.

Mr. Gerrits worked for IBM for approximately thirty-three (33) years, before his

separation, effective on June 27, 2018.

6.      Plaintiff Phil McGonegal is 58 years old and resides in Atlanta, Georgia.

Mr. McGonegal worked for IBM for approximately thirty-four (34) years before his

separation, effective approximately June 30, 2018.

**App.276**

7.      Plaintiff David Ho Eng is 59 years old and resides in Sacramento, California. Plaintiff Eng worked for IBM in New Jersey for approximately six (6) years before his separation, effective approximately March 31, 2018.

8.      Plaintiff Brian Haupt is 62 years old and resides in Weare, New Hampshire. Plaintiff Haupt worked for IBM for approximately eighteen (18) years before his separation, effective approximately June 27, 2018.

9.      Plaintiff Philip Monson is 61 years old and resides in Stoneham, Massachusetts. Plaintiff Monson worked for IBM for approximately twenty-nine (29) years before his separation, effective approximately September 4, 2019.

10.      Plaintiff Claudia Ziegler is 60 years old and resides in Aventura, Florida. Plaintiff Ziegler worked for IBM for approximately thirty-seven (37) years before her separation, effective approximately December 17, 2020.

11.      Plaintiff Sally Gehring is 64 years old and resides in Carlsbad, California. Plaintiff Gehring worked for IBM for approximately forty (40) years before her separation, effectively approximately May 31, 2016.

12.      Plaintiff John Mason is 59 years old and resides in Westfield, New Jersey. Plaintiff Mason worked for IBM for approximately fourteen (14) years before his separation, effectively approximately June 27, 2018.

13.      Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

14.      Plaintiffs Rusis and Gehring also bring this case as a class action on behalf of themselves and similarly situated individuals over the age of forty (40) who

worked for IBM in California whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

15.    Plaintiff Gerrits also brings this case as a class action on behalf of himself and similarly situated individuals over the age of forty (40) who worked for IBM in North Carolina whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

16.    Plaintiffs Eng and Mason also bring this case as a class action on behalf of themselves and similarly situated individuals over the age of forty (40) who worked for IBM in New Jersey whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

17.    Plaintiffs Haupt and Monson also bring this case as a class action on behalf of themselves and similarly situated individuals over the age of forty (40) who worked for IBM in Massachusetts whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

18.    Plaintiff Ziegler also brings this case as a class action on behalf of herself and similarly situated individuals over the age of forty (40) who worked for IBM in New York whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

19.    Defendant International Business Machines Corp. is a New York corporation with its principal place of business in Armonk, New York. IBM is an American multinational technology business that offers services and goods ranging from computing, cloud platforms, advanced analytics tools and others.

### III.     JURISDICTION AND VENUE

20.     This Court has general federal question jurisdiction over this matter

pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought a claim pursuant to the

federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq*. This Court has

supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C.

§1367.

21.     The Southern District of New York is the proper venue for this action

pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in

Armonk, New York.

### IV.     STATEMENT OF FACTS

22.     Plaintiffs were among thousands of IBM employees to be laid off (or

otherwise separated from IBM) recently, as the result of a shift in IBM's personnel focus

to the generation of workers referred to as "Millennials" (which IBM defines as the

generation born after 1980) that began in approximately 2012.  At that time, IBM began

a program to reform itself into a leading company in the fields of cloud services, big data

analytics, mobile, security and social media. As a part of this transformation, IBM

endeavored to begin heavily recruiting Millennials in order to make the face of IBM

younger, while at the same time pushing out older employees. At the direction of IBM's

CEO Virginia Rometty and other corporate leaders, IBM instituted a plan to bring in

25,000 younger employees that it referred to as "Early Professional Hires" or "New

Collar Hires." At the same time, in order to make room for these younger workers, IBM

sought to reduce its headcount of older workers over a period of several years.

23.    In an article published by ProPublica following an investigation of IBM's

hiring practices, ProPublica reported that it estimates that "in the past five years alone,

IBM has eliminated more than 20,000 American employees ages 40 and over, about 60

percent of its estimated total U.S. job cuts during those years." Peter Gosselin and

Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018),

https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

24.    As reported by ProPublica, IBM's shift in focus toward the Millennial

workforce came as "IBM was falling behind . . . by failing to quickly devise innovative

uses for the internet like its new rivals, Google, Facebook, and Amazon." Id. In

response to that problem, IBM's CEO Virginia Rometty "launched a major overhaul that

aimed to make IBM a major player in the emerging technologies of cloud services, big

data analytics, mobile security and social media, or what came to be known inside as

CAMS" and "sought to sharply increase hiring of people born after 1980." Id.

Additionally, IBM embraced the belief that "CAMS are driven by Millennial traits." Id.

25.    Moreover, in 2006 one of IBM's consulting arms issued a paper that

referred to workers in the "Baby Boomer" generation as "gray hairs" and "old heads,"

stated that "successor generations . . . are generally much more innovative and

receptive to technology than baby boomers," and advised that "What businesses can't

afford to do is simply rehire their experienced workers and put them back into their old

jobs." See, The Maturing Workforce: Innovation in Workforce Enablement, IBM

Business Consulting Services, https://www-935.ibm.com/services/uk/bcs/pdf/maturing-

workforce-feus01291-1.pdf (2006).

26.    As another expression of IBM's shift in focus to embrace Millennials, at a 2014 IBM conference called "Reinvention in the Age of the Millennial," IBM announced its intent to "embrace the 'Millennial mindset'" and announced that "What's good for Millennials is good for everyone." See Reinvention in the Age of the Millennial, https://ibmcai.com/2014/12/16/reinvention-in-the-age-of-the-millennial/ (Dec. 16, 2014).

27.    Throughout the company, IBM implemented a plan to replace its headcount of older workers with younger ones.  In conversations and corporate planning documents, executives and managers used terms such as "continuous talent refresh," "correcting seniority mix," and "shifting headcount" toward "Early Professional Hires."  Indeed, IBM had a goal of achieving 55% Early Professional Hires by 2020.  In 2017, IBM CEO Virginia Rometty boasted on CNBC's Mad Money that 50% of all IBM employees were now Millennials.

28.    IBM has reduced the population of its older workers through several methods. Many older employees have been laid off through reductions in force or layoffs, which IBM refers to as "Resource Actions."  (Meanwhile, IBM shields its youngest employees from layoff, exempting recent college graduates following their hire date.)  IBM has also reduced its population of older workers by terminating older employees for pretextual reasons, or by constructively discharging them, or by conditioning their continued employment on untenable choices they are unlikely to accept, such as relocation.

29.    Additionally, while older workers who lost their jobs through layoffs that IBM calls "Resource Actions" have frequently been encouraged to use IBM's internal hiring platform to apply for other open IBM positions for which they are qualified, IBM

7

has generally prevented workers subject to these layoffs to be hired into other positions. IBM has put obstacles in the way of such workers being hired into different positions, thus helping to ensure that these older workers are removed from the company and younger workers placed into open positions.

30.    Prior to 2014, IBM provided lists to any workers who were laid off, which disclosed the positions and ages of all the employees laid off from their business units at the same time, as well as a list showing the positions and ages of all those in the business units that were not being laid off.  IBM distributed this information, presumably, in order to comply with the Section 626(f) of the ADEA, which requires disclosure of this information if an employer seeks to obtain a release of age discrimination claims from a group of employees. However, in 2014, in an apparent effort to conceal its systematic effort to shed its older workers, IBM stopped disclosing this information to the employees. While IBM could no longer include a release of ADEA claims in its severance agreements with its employees as a result, it opted instead to require its employees to agree to binding individual arbitration of those claims, in order to receive a small severance payment.  Many IBM employees who were laid off, including the named plaintiffs in this action, rejected the severance offer and did not sign the arbitration agreement.

31.    On approximately August 31, 2020, the Equal Employment Opportunity Commission ("EEOC") issued a classwide determination following an investigation of age discrimination at IBM. In that determination, the EEOC found reasonable cause to believe that IBM discriminated older employees through layoffs that took place between 2013 and 2018.  The EEOC explained in this determination letter that its investigation

8

**App.282**

uncovered "top-down messaging from IBM's highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." The EEOC revealed that it had analyzed data from across the company and that it was primarily older workers (85%) who were in the total potential pool of those considered for layoff.  The EEOC stated in the determination letter that its conclusion was supported by dozens of interviews it had conducted across the company, and it rejected IBM's attempt to justify and defend each of the 58 layoffs analyzed in that investigation through individualized explanations.

32.     Plaintiff Rusis began working at IBM in 2003 as a strategic services specialist and later became a solution manager for IBM's global system integrator alliances. In March 2018, Plaintiff Rusis received a letter from IBM stating that he was being laid off, effective on June 27, 2018. After being notified that he would be laid off, Plaintiff Rusis used IBM's internal hiring platform to apply for five positions for which he was qualified, including one position on his former Global System Integrator Sales team. Plaintiff Rusis did not receive a response regarding any of these job applications.

33.     Plaintiff Gerrits began working for IBM, in August 1985, and most recently held the position of global commodity manager. On March 29, 2018, Plaintiff Gerrits received a letter from his manager informing him that he was being laid off by IBM effective June 27, 2018.  Plaintiff Gerrits was one of the oldest employees in his group. Although Plaintiff Gerrits applied to several positions through IBM's internal hiring platform for which he was qualified, he did not receive any response to his applications.

9

**App.283**

34.    Plaintiff McGonegal began working for IBM in 1986 in Atlanta, Georgia.

Most recently, Plaintiff McGonegal worked for IBM as a second line manager of its asset

management organization. Plaintiff McGonegal was let go by IBM on June 30, 2018.

35.    Plaintiff Eng began working for IBM in 2012, and most recently held the

position of Senior IT Specialist. Plaintiff Eng worked for IBM in New Jersey. Mr. Eng

was let go by IBM on March 31, 2018. Following his separation, Mr. Eng attempted to

find a new position through IBM's internal hiring platform, and a hiring manager

indicated that he wished to hire Mr. Eng. One of Mr. Eng's IBM Career Managers,

however, prevented Mr. Eng's hire for the new position.

36.    Plaintiff Haupt began working for IBM in approximately 2000. Plaintiff

Haupt worked as a software sales specialist on a subscription software support team in

Massachusetts. Plaintiff Haupt was one of the oldest employees in his group. After IBM

notified Plaintiff Haupt on March 29, 2018, that he would be laid off effective June 27,

2018, he applied to other positions at IBM. Although Plaintiff Haupt applied to more than

a dozen positions through IBM's internal hiring platform for which he was qualified, he

did not receive any response to his applications.

37.    Plaintiff Monson began working for IBM in approximately 1990. Plaintiff

Monson worked for IBM in Massachusetts, in IBM's Digital Sales group. Plaintiff

Monson was laid off in a Resource Action effective September 4, 2019. Plaintiff Monson

was replaced by three younger employees.

38.    Plaintiff Ziegler began working for IBM in approximately 1983. In her final

position prior to her termination, Plaintiff Ziegler worked in New York and held the

position of content producer in IBM's Marketing and Communications group. On

November 17, 2020, Plaintiff Ziegler was informed that she would be laid off effective

December 17, 2020. Following her termination, a younger employee took over Plaintiff

Ziegler's job duties.

39.     Plaintiff Gehring began working for IBM in approximately 1976. Plaintiff

Gehring worked for IBM in California as a software engineer. On March 2, 2016, Plaintiff

Gehring was informed that she would be laid off in a Resource Action effective May 31,

2016. Plaintiff Gehring was one of the fifty-eight (58) individuals whose charges were

included in the EEOC's investigation that led to the agency's determination finding

reasonable cause to believe that IBM engaged in age discrimination against older

workers, issued on August 31, 2020.  She filed a charge of discrimination with the

EEOC in approximately November 2016 alleging that IBM had discriminated against her

and other employees on the basis of age.

40.     Plaintiff Mason began working for IBM in 2004 and most recently held a

position in IBM's Strategic Programs & Experience Design group within the Global

Business Services Organization. Plaintiff Mason worked in New Jersey. Plaintiff Mason

was informed in March 2018 that he would be laid off in a Resource Action, effective

June 27, 2018. After he was informed that he would be terminated, Plaintiff Mason

reached out to numerous managerial contacts in other areas of IBM in order to inquire

out other positions, but he was not able to find another position at IBM. Prior to his

termination, Plaintiff Mason mentored younger IBM employees through IBM's

Consulting by Degrees program.

## V.    COLLECTIVE ACTION ALLEGATIONS

41.    Plaintiffs bring this case as a collective action under the ADEA on behalf of IBM employees over the age of forty (40) who have worked anywhere in the country whose employment separated within the relevant period, who may opt in to this action.

42.    These employees who may opt in to this collective action are similarly situated to the named Plaintiffs. They have all worked for IBM under substantially similar conditions and have all been subjected to IBM's policy and practices of targeting for layoff and disproportionately ending the employment of employees over forty (40) years old. They have also all been subject to IBM's policy of precluding those employees from consideration for other open internal IBM positions for which they are qualified.

## VI.    CLASS ACTION ALLEGATIONS

43.    Plaintiffs also bring class action claims pursuant to Fed. R. Civ. P. 23 under the laws of California, North Carolina, New Jersey, Massachusetts, and New York, on behalf of IBM employees over the age of forty (40) who have worked for IBM in those respective states and whose employment separated within the relevant period.

44.    These California, North Carolina, New Jersey, Massachusetts, and New York classes all meet the prerequisites of Fed. R. Civ. P. 23 in that:

   a. The classes are so numerous that joining all members is impracticable. The exact number of the members of each class is unknown, but it is estimated that there have been well more than forty (40) IBM employees over the age of forty (40) whose employment has ended in each of these

**App.286**

states within the relevant period. As a result, joinder of all of these individuals is impracticable.

b. There are questions of fact and law common to all of the putative class members, because all of those individuals were subject to IBM's uniform effort to shift its personnel focus to Millennials, leading to the unlawful termination of a disproportionate number of older IBM employees, in violation of the laws of their respective states.

c. With respect to these common issues, the claims of the named plaintiffs are typical of the claims of IBM employees over the age of forty (40) who had worked in each of these states and who lost their jobs with IBM.

d. Plaintiffs and their counsel will fairly and adequately represent the interests of each class. The named plaintiffs have no interests adverse to or in conflict with the class members whom they propose to represent. Plaintiffs' counsel have litigated and successfully resolved many dozens of class action cases involving employment law and have substantial experience representing employees in discrimination claims.

e. The questions of law or fact common to all members of each class predominate over any questions affecting only individual members. The common questions include, among other things, whether IBM targeted older employees for layoff, or otherwise disproportionately ended the employment of older workers, and whether IBM refused to consider hiring those employees to other open positions for which they were qualified due to their age.

13

**App.287**

f.   Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery for many IBM employees in these states, briefing of legal issues, and court proceedings.

## VII.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

45.    Plaintiffs Rusis, Gerritts, McGonegal, Ziegler, and Gehring timely filed Class Charges of Discrimination with the EEOC. More than sixty (60) days have passed since they submitted those Charges of Discrimination.


## COUNT I

(Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*)
(On Behalf of Plaintiffs and Class)


46.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

47.    IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiffs, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the ADEA. IBM's violation of the ADEA has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs and similarly situated employees have lost their jobs.

48.    This claim is brought on behalf of a class of IBM employees across the country who may choose to opt in to this case, pursuant 29 U.S.C. §§ 216(b), 626(b).

## COUNT II

(California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.*)
(On Behalf of Plaintiffs Rusis, Gehring, and a California Class)

49.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

50.     Plaintiffs Rusis and Gehring bring this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in California during the relevant period and have been subjected to the discriminatory practices described herein.  IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiffs Rusis and Gehring, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq*. IBM's violation of California law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs Rusis, Gehring, and similarly situated employees who have worked in California, have lost their jobs.

**App.289**

## COUNT III

(North Carolina Employment Practices Act,
N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3, common law wrongful discharge)
(On Behalf of Plaintiff Gerrits and a North Carolina Class)

51.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

52.    Plaintiff Gerrits brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in North Carolina during the relevant and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Gerrits, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the North Carolina Employment Practices Act, N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3 and common law wrongful discharge. IBM's violation of North Carolina law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Gerrits and similarly situated employees have lost their jobs.

## COUNT IV
(New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*)
(On Behalf of Plaintiff Eng and a New Jersey Class)

53.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

54.    Plaintiffs Eng and Mason bring this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in New Jersey during

**App.290**

the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiffs Eng and Mason, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq*. IBM's violation of New Jersey law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs Eng, Mason, and similarly situated employees have lost their jobs.

## **COUNT V**
(Massachusetts Anti-Discrimination Law, G.L. c. 151B § 4(1B))
(On Behalf of Plaintiffs Haupt, Monson, and a Massachusetts Class)

55.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

56.     Plaintiffs Haupt and Monson bring this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in Massachusetts during the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiffs Haupt and Monson, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the Massachusetts Anti-Discrimination Law, G.L. c. 151B, § 4(1B). IBM's violation of Massachusetts law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs Haupt, Monson, and similarly situated employees have lost their jobs.

17

**COUNT VI**
(New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*)
(On Behalf of Plaintiff Ziegler and a New York Class)

57.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

58.    Plaintiff Ziegler brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in New York during the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Ziegler, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. IBM's violation of New York law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Ziegler and similarly situated employees have lost their jobs.

**JURY DEMAND**

Plaintiffs request a trial by jury on all claims.

**App.292**

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1.      Permission for Plaintiffs to notify other IBM employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

2.      Find and declare that IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*;

3.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count II and appoint Plaintiffs Rusis and Gehring, and their counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in California, and whose employment with IBM ended within the relevant time period;

4.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count III and appoint Plaintiff Gerrits and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in North Carolina, and whose employment with IBM ended within the relevant time period;

5.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count IV and appoint Plaintiffs Eng and Mason, and their counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in New Jersey, and whose employment with IBM ended within the relevant time period;

6.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count V and appoint Plaintiffs Haupt and Monson, and their counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in Massachusetts, and whose employment with IBM ended within the relevant time period;

7.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count VI and appoint Plaintiff Ziegler and her counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in New York, and whose employment with IBM ended within the relevant time period;

8.      Award compensatory damages, including back pay and front pay, in an amount according to proof;

9.      Reinstate Plaintiffs and similarly situated employees to their positions;

10.     Award all costs and attorney's fees incurred prosecuting this claim;

11.     Award liquidated damages and all appropriate statutory and regulatory damages;

12.     Award interest;

13.    Issue injunctive relief in the form of an order directing IBM to comply with the ADEA and applicable state law.

14.    Any other relief to which Plaintiffs and class members may be entitled.


Respectfully Submitted,

EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, DAVID HO ENG, BRIAN HAUPT, PHILIP MONSON, CLAUDIA ZIEGLER, SALLY GEHRING, and JOHN MASON, on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan

Shannon Liss-Riordan (NY Bar No. 2971927)
Thomas Fowler, *pro hac vice*
Zachary Rubin (NY Bar No. 5442025)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, tfowler@llrlaw.com, zrubin@llrlaw.com


Dated:    July 21, 2021


## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of the foregoing document was served on all counsel of record for Defendant in this matter by electronic mail on July 21, 2021.


/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

20

**App.294**

# EXHIBIT 4
## TO MOTION TO VACATE
## ARBITRATION AWARD

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | 480-2018-03200 |

_____ and EEOC

State or local Agency, if any

| Name (indicate Mr. Ms. Mrs.)<br>Mr. Edvin Rusis | Home Phone (Incl. Area Code)<br>617-994-5800 | Date of Birth<br>03/23/1959 |
|---|---|---|

Street Address                                        City, State and ZIP Code

, c/o Shannon Liss-Riordan, Lichten & Liss-Riordan, P.C., 729 Boylston Street, Suite 2000, Boston, MA 02116

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>International Business Machines Corp. ("IBM") | No. Employees, Members<br>More than 10,000 | Phone No. (Include Area Code)<br>914-499-1900 |
|---|---|---|

Street Address                                        City, State and ZIP Code

New Orchard Road, Armonk, New York, 10504

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address                                        City, State and ZIP Code

---

DISCRIMINATION BASED ON (Check appropriate box(es).)

__ RACE   __ COLOR   __ SEX   __ RELIGION   __ NATIONAL ORIGIN

__ RETALIATION   _X_ AGE   __ DISABILITY   ___ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| March 2018 | June 27, 2018 (effective date of layoff) |

__ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

IBM is discriminating against its older workers, both by laying them off disproportionately to younger workers and not hiring them for open positions. Indeed, over the last several years, IBM has been in the process of systematically laying off its older employees in order to build a younger workforce. IBM has laid off at least 20,000 employees over the age of forty in the last five years. I am 59 years old, and I am being laid off by IBM effective June 27, 2018. Since receiving notice of my layoff, I have applied for several other open positions within IBM, for which I am eminently qualified, but I have not been hired for any of these positions, despite my lengthy service and successful experience as an employee for IBM. I believe that I and thousands of other employees have been discriminated against by IBM on the basis of age.

---

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 05/09/2018<br>_____     _____<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

# EXHIBIT 5
## TO MOTION TO VACATE
## ARBITRATION AWARD

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br> _X_ EEOC | |

_____ and EEOC
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*)<br>Mr. Henry Gerrits | Home Phone (Incl. Area Code)<br>617-994-5800 | Date of Birth<br>05/15/1951 |
|---|---|---|
| Street Address ███████████████████ City, State and ZIP Code  c/o Shannon Liss-Riordan, Lichten & Liss-Riordan, P.C., 729 Boylston Street, Suite 2000, Boston, MA 02116 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>International Business Machines Corp. ("IBM") | No. Employees, Members<br>More than 10,000 | Phone No. (Include Area Code)<br>914-499-1900 |
|---|---|---|
| Street Address City, State and ZIP Code<br>New Orchard Road, Armonk, New York, 10504 | | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address                              City, State and ZIP Code | | |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| __ RACE  __ COLOR  ___ SEX  __ RELIGION  __ NATIONAL ORIGIN<br><br>___ RETALIATION  _X_ AGE  __ DISABILITY  ___ OTHER (Specify below.) | Earliest            Latest<br>March 29, 2018   June 27, 2018 (effective date of layoff)<br><br>__ CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

IBM is discriminating against its older workers, both by laying them off disproportionately to younger workers and not hiring them for open positions.  Indeed, over the last several years, IBM has been in the process of systematically laying off its older employees in order to build a younger workforce.  IBM has laid off at least 20,000 employees over the age of forty in the last five years.  I am 67 years old, and I am being laid off by IBM effective June 27, 2018. Since receiving notice of my layoff, I have applied for several other open positions within IBM, for which I am eminently qualified, but I have not been hired for any of these positions, despite my lengthy service and successful experience as an employee for IBM.  I believe that I and thousands of other employees have been discriminated against by IBM on the basis of age.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>*Henry Gerrits*<br><br>07/02/18 _____<br>Date     *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

**App.298**

# EXHIBIT 6
## TO MOTION TO VACATE
## ARBITRATION AWARD

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| | ___ FEPA<br>_X_ EEOC | |

_____ and EEOC
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Phil McGonegal | 617-994-5800 | 06/14/1963 |

| Street Address | City, State and ZIP Code |
|---|---|
| ███████████████████████████, c/o Shannon Liss-Riordan, Lichten & Liss-Riordan, P.C., 729 Boylston Street, Suite 2000, Boston, MA 02116 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| International Business Machines Corp. ("IBM") | More than 10,000 | 914-499-1900 |

| Street Address | City, State and ZIP Code |
|---|---|
| New Orchard Road, Armonk, New York, 10504 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*)<br><br>__ RACE   __ COLOR   __ SEX   __ RELIGION   __ NATIONAL ORIGIN<br><br>___ RETALIATION   _X_ AGE   __ DISABILITY   ___ OTHER (Specify below.) | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest          Latest<br>May 2018        June 30, 2018 (effective<br>                         date of layoff)<br><br>__ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

IBM is discriminating against its older workers, both by laying them off disproportionately to younger workers and not hiring them for open positions. Indeed, over the last several years, IBM has been in the process of systematically laying off its older employees in order to build a younger workforce. IBM has laid off at least 20,000 employees over the age of forty in the last five years. I am 55 years old, and I am let go by IBM effective June 30, 2018. I believe that I and thousands of other employees have been discriminated against by IBM on the basis of age.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>06/18/18<br><br>_____   *Phil McGonegal*<br>*Date*              *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

**App.300**

# EXHIBIT 7
# TO MOTION TO VACATE
# ARBITRATION AWARD

# Employee Information Package

**Attachment 2:  Separation Agreement**

You are being offered payments and benefits as part of a resource action that you otherwise would not have been entitled to receive. You will receive and be entitled to keep these payments and benefits only if you sign and comply with all terms of this Agreement. This Agreement requires you to release IBM and related parties from claims you may have as described below. This Agreement also requires you to arbitrate certain claims that are not released on an individual basis.

By accepting this Agreement and the benefits and payments it provides, you agree that if you choose to pursue certain claims that are not released under this Agreement, then such claims must be submitted to arbitration on an individual basis as provided below and may not be pursued in court.

You should thoroughly review and understand the effect of this Agreement before you accept it.

The Resource Action Summary Plan Description is the only document that describes your eligibility for the payments and benefits you are being offered under this Agreement. Any other written or oral representations, promises, or other agreements of any kind made to you in connection with your decision to accept this Agreement will not be recognized.

**1.  Definitions of certain words used in this agreement**

For purposes of this Agreement and its attachment, certain words have specific definitions.

- "Agreement" means this Separation Agreement.

- "IBM" means International Business Machines Corporation and all of its subsidiary and affiliated companies and all of their respective former or current directors, officers, employees, agents, and benefits plans (and fiduciaries, insurers or other agents of those plans), and all successors and assigns of these entities or individuals.

- "You" or "your" means you and anyone acting as your representative, successor or heir.

- "Release" means your waiver of claims as specified below.

**2.  What you release by accepting this agreement**

By accepting this Agreement, you release IBM from ALL claims that you may have against it at the time of accepting, whether or not related to your employment with IBM or the termination of your employment (EXCEPT FOR THOSE SPECIFICALLY IDENTIFIED IN SECTION 3), and including, without limitation:

- all claims arising under any federal, state, local or foreign law dealing with or regulating employment, including, but not limited to: (1) laws prohibiting discrimination and/or harassment based on race, national origin, ancestry, color, creed, religion, sex, gender, sexual orientation, gender identity and/or expression, genetic information, pregnancy, marital status, disability, medical condition, veteran status, or any other statutorily protected status, as well as claims in any forum alleging retaliation; (2) family and medical leave; (3) claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"); and (4) all waivable claims related to wages and hours, including under state or local labor or wage payment laws

- all state and local laws prohibiting discrimination on the basis of age

- claims based on contract, tort, or any other legal theory

# Employee Information Package

- all claims whether or not you know about them at the time you accept this Agreement

- any right to raise or pursue any internal appeals, including but not limited to those eligible for review under the IBM Open Door process related to a claim that you release under this Agreement

- if you have worked or are working in California, you expressly agree to waive the protection of section 1542 of the California Civil Code because you are releasing all claims, whether they are known or unknown; Section 1542 of the California Civil Code states:

  - "A general release does not extend to claims that a creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, which if known by him or her, would have materially affected his or her settlement with the debtor or released party."

  - In the event that you do not understand the waiver of your rights under section 1542 or its legal effect on you, you should talk to a lawyer.

**3.  What you do not release by accepting this agreement**

By accepting this Agreement, you do not release:

- any claims that arise after the date you accept this Agreement

- any claims that by law cannot be waived by private agreement without judicial or governmental supervision, such as under the federal Fair Labor Standards Act of 1938, provided however such claims are subject to arbitration on an individual basis as described below

- any claims that IBM failed to pay wages that IBM acknowledged were due and owing at the time you accept this Agreement

- your right to file a charge with or participate in any investigation or proceeding conducted by the U.S. Equal Employment Opportunity Commission (EEOC) or other government agency; even though you can file a charge or participate in an investigation or proceeding conducted by the EEOC or other government agency, by accepting this Agreement you are waiving your ability to obtain relief of any kind from IBM to the extent permitted by law. **Notwithstanding the foregoing, you are not prohibited from receiving an award for information provided to any government agency <u>as permitted under law</u>.**

- your non-forfeitable rights to accrued benefits (within the meaning of sections 203 and 204 of the Employee Retirement Income Security Act of 1974) under the IBM Personal Pension Plan and the IBM 401(k) Plus Plan

- any right you may have to challenge the validity of this Agreement

- your right to enforce this Agreement and to receive the benefits and payments pursuant to the Resource Action Plan

- any claim under the Federal Age Discrimination in Employment Act of 1967 or the West Virginia Human Rights Act, provided however such claims are subject to arbitration on an individual basis as described below

- your ability to comply with any lawful subpoena or court order or taking any other actions affirmatively authorized by law.

**4.  You can take up to 30 days before accepting this agreement**

# Employee Information Package

You can take up to thirty (30) days from the date you received this Agreement or until your last date of employment, **whichever is longer**, to consider this Agreement and the accompanying separation program information.  If you accept and sign (by hard copy or electronically) this Agreement before the expiration of the 30-day period, you acknowledge that you knowingly and voluntarily waived the ability to wait the full 30 days. **Employees may not sign the Agreement before their last date of employment with IBM**.

FOR EMPLOYEES WORKING IN MINNESOTA ONLY: This Agreement is not effective for FIFTEEN DAYS after you accept it. You can revoke this Agreement during that time. To revoke this Agreement, your manager or the Project Office must receive a written notice of revocation from you within that time period. You understand that if you do revoke, you will not be entitled to any payments or benefits under this Agreement or the resource action.

**5.  Arbitration and waiver of class claims and jury trial**

You agree that any and all legal claims or disputes between you and IBM under the federal Age Discrimination in Employment Act of 1967 (ADEA) or the West Virginia Human Rights Act, as well as any and all claims or disputes between you and IBM that have not or cannot be released by private agreement as a matter of law, such as under the federal Fair Labor Standards Act of 1938 (FLSA) – collectively, "Covered Claims" –  will be resolved on an individual basis by private, confidential, final and binding arbitration according to the IBM Arbitration Procedures and Collective Action Waiver (which are attached and incorporated as part of this Agreement) and under the auspices of JAMS, or if there is no JAMS office within 100 miles of your most recent assigned IBM office location, then an arbitration forum provider to be mutually agreed to by the parties. Regardless of the designated arbitration administrator, the arbitration shall be held in accordance with the JAMS Employment Arbitration Rules & Procedures. You understand and agree that you are giving up your right to a court action for Covered Claims, including any right to a trial before a judge or jury in federal or state court. This agreement to arbitrate does not apply to government agency proceedings.

To the maximum extent permitted by applicable law, you agree that no Covered Claims may be initiated, maintained, heard or determined on a class action, collective action or multi-party basis either in court or in arbitration, and that you are not entitled to serve or participate as a class action member or representative or collective action member or representative or receive any recovery from a class or collective action involving any Covered Claims either in court or in arbitration.

You further agree that if you are included within any class action or collective action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of this Agreement, including the class action or collective action waivers contained in this section, shall be decided only by a court of competent jurisdiction. Any issue concerning the arbitrability of a particular issue or claim pursuant to this section (except for issues concerning the enforceability of the class action or collective action waivers) must be resolved by the arbitrator and not a court.

This arbitration agreement shall not prohibit applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration. Your agreement to arbitrate certain claims pursuant to this Agreement shall not prohibit you from filing a charge or complaint with and seeking relief from the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state or local administrative agency concerning claims that are not released under this Agreement.

This agreement to arbitrate claims shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA").  If for any reason the FAA is held inapplicable to this Agreement, then the State of New York's law of arbitrability shall apply.

**6. Enforceability**

# Employee Information Package

If any part of this Agreement other than the class action or collective action waiver is held to be invalid or unenforceable, the remaining provisions of this Agreement will not be affected in any way, except that if your release of claims or agreement to arbitrate Covered Claims is held to be unenforceable, then at its option IBM may seek to recover to the maximum extent permitted by law the payments and value of benefits that you received under this Agreement. If the class action or collective action waiver provisions associated with a Covered Claim are held to be invalid or unenforceable, then any class action or collective action involving such Covered Claim(s) must be brought in court and not in arbitration.

Except as otherwise noted, this Agreement will be governed by the substantive laws of New York.

By accepting this Agreement, you acknowledge that you fully understand any and all rights you have with respect to the claims you are releasing and your agreement to arbitrate Covered Claims. You agree that the payments and benefits you have or will receive under this Agreement are good and valuable consideration for entering into this Agreement. You acknowledge that you have been provided adequate time to consult with a lawyer or other advisor of your own choosing before entering into this Agreement. You further agree that you are voluntarily signing this Agreement without any threats, coercion or duress, whether economic or otherwise, and that you intend to be bound by the terms of this Agreement.

YOU ARE ADVISED TO CONSULT WITH A LAWYER BEFORE YOU SIGN THIS AGREEMENT

Employee Name (print): _____

Serial #: _____

Signature: _____

Date: _____

# Employee Information Package

## Attachment 3:  Arbitration Procedure and Collective Action Waiver (Attachment to Separation Agreement)

IBM is committed to administering its employment policies fairly and treating all employees with respect and dignity. Occasionally, however, disagreements may arise between an individual employee and IBM or between employees in a context that involves IBM. IBM believes that the resolution of those types of disagreements is best accomplished through internal dispute resolution processes.

For many decades, IBM employees have had several options to initiate a thorough and timely review of their work-related concerns when they are unable to reach a resolution with their managers. The IBM Open Door Process is one of these options, and IBM's experience makes us confident that it is a highly effective way to resolve employee concerns. The Open-Door Process is offered as the primary dispute resolution forum for IBMers.

IBM recognizes, however, that from time to time IBM and its employees may desire an additional option to have their concerns reviewed. To that end, IBM has introduced the following Arbitration Program which is a private and confidential dispute resolution procedure in which the parties present their respective positions concerning certain claims to an impartial third-party arbitrator who determines the merits of the claims and renders a final and binding decision. The rules and procedures governing IBM's arbitration program are set forth below.

Covered Claims: Individuals who accept the payments and benefits of the Resource Action Plan are required to submit any and all "Covered Claims" to final and binding arbitration and waive their right to a court action of such claims, including any right to a trial before a judge or jury in federal or state court. "Covered Claims" are any and all legal claims or disputes between the employee and IBM under the federal Age Discrimination in Employment Act of 1967 ("ADEA") or the West Virginia Human Rights Act, as well as any and all claims or disputes that have not or cannot be released by private agreement as a matter of law (such as under the federal Fair Labor Standards Act of 1938 (FLSA)).

These Arbitration Procedures shall not prohibit applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration.

WAIVERS: TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AND IBM  AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD, OR DETERMINED ON A MULTIPARTY, CLASS ACTION BASIS OR COLLECTIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT YOU ARE NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS ACTION MEMBER OR REPRESENTATIVE, OR COLLECTIVE ACTION MEMBER OR REPRESENTATIVE, OR RECEIVE ANY RECOVERY FROM A CLASS OR COLLECTIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR ARBITRATION.

You further agree that if you are included within any class action or collective action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of any of the class action or collective action Waivers included as part of your agreement to arbitrate certain claims shall be decided only by a court of competent jurisdiction. Any issue concerning the arbitrability of a particular issue or claim (except for issues concerning the enforceability of the class action or collective action Waivers) must be resolved by the arbitrator and not a court. Your agreement to arbitrate Covered Claims does not preclude you from pursuing or participating in a class action or collective action in court where your claim is based solely on your status as a customer or an investor and does not arise out of or in any way relate to your employment relationship with the Company.

**Pre-Arbitration Dispute Resolution**

You are strongly encouraged to first resolve any Covered Claims informally through the IBM Open Door Process (Appeals@us.ibm.com) or the Project Office. If you are not satisfied and wish to pursue your matter further, then you

# Employee Information Package

are encouraged to request a mediation wherein you and IBM will attempt to find common ground to voluntarily resolve your Covered Claims with the aid of a neutral third party not employed by IBM. You can request mediation through the IBM Open Door Process by contacting Appeals@us.ibm.com. If mediation does not result in resolution of your Covered Claims, then you still have the option of pursuing arbitration by following the procedures set forth below.

**Arbitration Procedures**

Covered Claims will be resolved by arbitration conducted under the auspices of JAMS, or if there is no JAMS office within 100 miles of your most recent assigned IBM office location, then an arbitration forum provider to be mutually agreed to by the parties in writing. Regardless of the designated arbitration administrator, the arbitration shall be held in accordance with the JAMS Employment Arbitration Rules & Procedures (and no other rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration. IBM will supply you with a printed copy of those rules upon your request. The arbitration shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing. Arbitration shall be held in the county in which you worked or work for IBM at the time the claim arose, or if not possible, in the county closest to such location. To the extent any of the terms, conditions or requirements of the arbitration procedures in this document conflict with the applicable Arbitration Rules, the terms, conditions or requirements of the procedures in this document shall govern.

In any arbitration, the parties may file, and the arbitrator shall hear and decide at any point in the proceeding motions permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine, but not motions to consolidate claims, parties or actions. The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. Arbitrators are required to issue a written award, and their award shall be final and binding. Any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction.

**Reconsideration and Review**

Either party shall have the right, within twenty (20) days of issuance of the Arbitrator's decision, to file with the Arbitrator (and the Arbitrator shall have jurisdiction to consider and rule upon) a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by law) shall then be final and conclusive upon the parties.

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

**Remedies**

You and IBM agree the arbitrator(s) is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and expert fees and costs, to the same extent as would a court under applicable law.

**Time Limits and Procedure for Initiating Arbitration**

To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

# Employee Information Package

To initiate arbitration, you must pay the equivalent of the filing fee for the court of general jurisdiction in the state where you last worked for IBM. IBM shall pay 100 percent of the required arbitration administration fee in excess of your payment.

The written demand for arbitration shall be submitted to the IBM Arbitration Coordinator, IBM Corporate Litigation, North Castle Drive, Armonk, New York 10504, with a check for your payment of the filing fee made payable to "International Business Machines Corporation."

Your written demand shall set forth the dispute, including the alleged act or omission at issue and the names of all persons allegedly involved in the act or omission; your name, address, telephone number, and email address; and your IBM employee serial number. IBM will promptly file the demand with the appropriate arbitration administrator, together with the applicable administrative fee as provided in the arbitration administrator's fee schedule.

### Representation

Any party may be represented by an attorney for purposes of arbitrating a Covered Claim. Each party is responsible for payment of its own costs and attorneys' fees, unless otherwise awarded by the Arbitrator under the standards provided by law.

### Discovery

Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party and to subpoena documents from third parties to the extent allowed by law. Requests for additional depositions or discovery may be made to the Arbitrator selected pursuant to this Agreement. The Arbitrator may grant such additional discovery if the Arbitrator finds that the party has demonstrated that it needs that discovery to adequately arbitrate the claim, taking into account the parties' mutual desire to have a speedy, less-formal, cost-effective dispute-resolution mechanism.

### Privacy and Confidentiality

Privacy and confidentiality are important aspects of arbitration. Only parties, their representatives, witnesses and necessary administrative staff of the arbitration forum may attend the arbitration hearing. The arbitrator may exclude any non-party from any part of a hearing.

To protect the confidentiality of proprietary information, trade secrets or other sensitive information, the parties shall maintain the confidential nature of the arbitration proceeding and the award. The parties agree that any information related to the proceeding, such as documents produced, filings, witness statements or testimony, expert reports and hearing transcripts is confidential information which shall not be disclosed, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision by reason of this paragraph.

### Designation of Witnesses

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

### Subpoenas

Each party shall have the right to subpoena witnesses and documents to the extent allowed by law, subject to any limitations the Arbitrator shall impose for good cause shown.

# EXHIBIT 8
# TO MOTION TO VACATE
# ARBITRATION AWARD

**JAMS Arbitration**
**Before the Honorable Richard A. Levie**

**JAMES OWENS,**

          **Claimant,**

    **v.**

**INTERNATIONAL BUSINESS MACHINES CORP.,**

        **Respondent.**

**Reference No. 1410008730**

## <u>DECLARATION OF THOMAS FOWLER</u>

I, Thomas Fowler, hereby declare as follows:

1.    I am an adult resident of Holliston, Massachusetts. I am an associate at the law firm Lichten & Liss-Riordan, P.C. I am one of the attorneys representing the Claimant in the above-captioned matter.

2.    Over the course of the pandemic, Lichten & Liss-Riordan has taken stringent measures to ensure the safety of all attorneys, staff, and clients. Specifically, the office has been closed starting in March 2020 and throughout the pandemic, and the number of individuals who are permitted to be physically present at the office has been sharply limited, especially during the periods of time that the number of COVID-19 cases have surged.

3.    Because COVID-19 cases were surging severely in Massachusetts and the rest of the country in November 2020, the firm's office was closed completely. Due to safety concerns, neither the firm's paralegals nor attorneys were working in the office

– instead, they were all working from home. Because no one was in the office, the firm's ability to mail documents via the US Postal Service was significantly disrupted.

4.    As such, while the firm was able to file the Claimant's Arbitration Demand with JAMS electronically on November 17, 2020, the disruption in the office mail logistics caused a one-day delay in the service of the Arbitration Demand on IBM by mail.

5.    Additionally, following a long illness, my father died in November 2020. His funeral took place on November 15, 2020. As a result, I was out of the office the week the demand in this case was filed.

Signed under the pains and penalties of perjury on December 8, 2021.

<u>/s/ Thomas Fowler</u>
Thomas Fowler

2

# EXHIBIT 9
# TO MOTION TO VACATE ARBITRATION AWARD

**JAMS ARBITRATION BEFORE THE HON. RICHARD LEVIE**

| | |
|---|---|
| JAMES OWENS, | |
|     Claimant, | Reference No. 1410008730 |
| v. | |
| INTERNATIONAL BUSINESS MACHINES CORP., | |
|     Respondent. | |

**RESPONDENT IBM'S MOTION TO DISMISS ARBITRATION AS UNTIMELY PURSUANT TO THE PARTIES' SEPARATION AGREEMENT**

Respondent International Business Machines Corporation ("IBM") files this Motion to Dismiss Arbitration as Untimely Pursuant to the Parties' Separation Agreement ("Motion") and the attached Memorandum of Law and the exhibits thereto in support of the Motion.

WHEREFORE, for the reasons set forth in the Memorandum of Law, IBM respectfully requests that this Motion be granted and that Claimant's claim in this matter be dismissed with prejudice in its entirety.

Dated: May 21, 2021                Respectfully submitted,

*/s/ Craig S. Friedman*
Craig S. Friedman
JONES DAY
1420 Peachtree Street
Suite 800
Atlanta, GA 30309
Tel: 404-581-8412
Fax: 404-581-8330
csfriedman@jonesday.com

Ilana R. Yoffe
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: 212-326-3747
iyoffe@jonesday.com

Kyle M. Everett
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Tel: 202-789-3668
keverett@jonesday.com

*Attorneys for Respondent IBM*

2

**<u>PROOF OF SERVICE</u>**

I hereby certify that on May 21, 2021, I served "Respondent IBM's Motion to Dismiss

Arbitration as Untimely Pursuant to the Parties' Separation Agreement" and all attachments by e-

filing on JAMS Access and by e-mail on:

Shannon Liss-Riordan
Michelle Cassorla
Thomas Fowler
Lichten & Liss-Riordan, P.C.
729 Boylston St.
Suite 2000
Boston, MA 02116
sliss@llrlaw.com
mcassorla@llrlaw.com
tfowler@llrlaw.com

*/s/ Ilana R. Yoffe*
Ilana R. Yoffe

3

# EXHIBIT 10
# TO MOTION TO VACATE
# ARBITRATION AWARD

**JAMS Arbitration**
**Before the Honorable Richard A. Levie**

JAMES OWENS,

        Claimant,

   v.

INTERNATIONAL BUSINESS MACHINES CORP.,

        Respondent.

Reference No. 1410008730

## CLAIMANT'S OPPOSITION TO IBM'S MOTION TO DISMISS

### I.     INTRODUCTION

Claimant James Owens worked for IBM for more than 23 years.  See Arbitration Demand. In September 2020,[1] Claimant, who was 50 years old at the time, was terminated from his position at IBM in a "Resource Action."  In order to receive severance pay from IBM, Claimant was required to sign a separation agreement with an arbitration and class waiver provision.  See Ex. B to Arbitration Demand.  This agreement provides, in relevant part:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived.

The agreement includes a mailing address for the IBM Arbitration Coordinator.  Claimant filed his arbitration demand with JAMS on November 17, 2020, alleging that IBM unlawfully

---

[1] Claimant learned of the Resource Action in May 2020; he worked at IBM until September 30, 2020.

discriminated against him on the basis of age. Claimant, through his counsel, mailed his demand to the IBM Arbitration Coordinator the following day, November 18, 2020. These events took place during the height of the COVID-19 pandemic and a week before Thanksgiving, during a period of significant and well-publicized delays and disruptions in USPS service.[2]

Despite the fact that Claimant timely initiated this arbitration with JAMS, IBM seeks to dismiss Claimant's demand on the basis of the **one-day** delay in *serving* his arbitration demand on IBM. IBM's motion must be denied for several reasons. First, Claimant timely filed his demand. Second, Claimant's delay in serving IBM is *de minimis* and warrants an exception to be made by the Arbitrator, especially given that the filing requirement is non-jurisdictional; considerations of fairness also warrant tolling the statute of limitations on Claimant's demand by a day, so as to make his claim timely. Finally, even if the Arbitrator finds that Claimant's demand was not timely made, Claimant can piggyback on similar age discrimination claims filed in Rusis v. International Business Machines Corp., C.A. No. 1:18-cv-08434 (S.D.N.Y.).[3]

## II.    LEGAL STANDARD

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the arbitrator should accept as true the factual allegations made by Claimant. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell A. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (complaint must contain "sufficient actual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at

---

[2]    While Respondent notes that USPS did not take possession of the envelope until November 20, there is no dispute that it is postmarked November 18, 2020.

[3]    Claimant makes clear in his Arbitration Demand that his claim is the same as that set forth in Rusis; the demand includes the Rusis complaint as Exhibit A.

555–56.  A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely[.]"  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

### III.    ARGUMENT

#### A.  Claimant Timely Filed His Demand

IBM does not dispute that Claimant timely filed the arbitration demand in this case with JAMS.  Instead, IBM seeks to dismiss Claimant's demand on the basis of an alleged **one-day** delay in serving IBM with his discrimination charge.  Yet IBM points to no actual evidence in support of its statement that Claimant was informed of his layoff on May 21, 2020, relying simply on a completely unsupported statement in its brief that May 21, 2020, was the date he was notified.  At this early stage of the case, and based on these unsupported facts, it is improper to dismiss Claimant's arbitration demand.

Moreover, even assuming that May 21, 2020, was the date Claimant was notified, the procedure set out by IBM for initiating arbitration provides that Claimant is to submit his arbitration demand to IBM "no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim."  See Arbitration Demand, Ex. B.  It further states that "[i]f the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived."  Id.

The Supreme Court has made clear that "rules of procedure should be liberally construed and ... 'mere technicalities' should not stand in the way of consideration of a case on its merits." Torres v. Oakland Scavenger Company, 487 U.S. 312 (1988) (quoting Foman v. Davis, 371 U.S. 178, 181 (1962)).  "Sometimes, as with the federal procedural rules, a separate rule specifically grants to a court the power to extend time limits imposed by other rules. [] In other instances,

3

however, courts construe absolute-sounding language (say, in a statute of limitations) against a background of judicially created exceptions." <u>Berklee College of Music v. Berklee Chapter of Massachusetts Fedn. of Teachers, Loc. 4412, AFT, AFL-CIO</u>, 858 F.2d 31, 33 (1st Cir. 1988) (citing <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 392 (1982); <u>Bailey v. Glover</u>, 88 U.S. (21 Wall.) 342, 348–49(1874); <u>Cerbone v. International Ladies' Garment Workers' Union</u>, 768 F.2d 45, 48–50 (2nd Cir.1985)).  Specifically, "shall" language such as the one used in IBM's provision can be interpreted by the arbitrator to permit late filing and/or tolling of the statute of limitations.  <u>Id</u>.

The agreement does not, by its terms, categorically bar a claim that has been submitted outside the statute of limitations.  It provides, rather vaguely, that such a claim "shall be deemed waived."  <u>See</u> <u>Berklee</u>, 858 F.2d at 33 ("it is not difficult to find other, more specific language the parties might have used had they intended to deprive the arbitrator of the power to make '*de minimis*' exceptions. As the arbitrator here noted, some labor contracts do contain express provisions that noncompliance with a particular time limit means the grievance will 'be considered settled.'").  Here, the agreement is even less clear than the one in <u>Berklee</u>, which provided that time limits "may only be waived by mutual written consent".  The instant agreement provides that an untimely claim "shall be deemed waived," but does not specify by whom – a reasonable reading here is that the Arbitrator makes the determination as to whether the claim is waived.  Here, the Arbitrator should find that Claimant's demand was timely made.

**B. Claimant's Delay in Serving IBM is *De Minimis***

Assuming (again without any support in the factual record) that May 21, 2020, is the date Claimant's claim accrued, any delay in serving IBM was *de minimis*.  There is no dispute that Claimant submitted his demand to JAMS within the 180-day window; the **only** issue is whether

4

**App.320**

the fact that Claimant mailed a copy of the filed demand to IBM one day outside this window would warrant dismissal of his claim.  It is well established that an arbitrator can make an exception for a *de minimis* departure from the arbitration agreement's terms in similar situations. See Berklee, 858 F.2d at 33 ("the contract's statement that the time limits "may only be waived by mutual written consent," is less clear than may at first appear. . . this 'exceptions' clause would not apply where the arbitrator, in effect, excused noncompliance not because of 'waiver,' but because of, say, inequity or the *de minimis* nature of the violation."); Crafts Precision Industries, Inc. v. Lodge No. 1836 of Dist. 38, Intern. Ass'n of Machinists and Aerospace Workers, 889 F.2d 1184, 1185 (1st Cir. 1989) ("We begin by repeating what we said in Berklee . . . Although an arbitrator's decision must fall within the bounds of his contractually delegated authority, that authority typically (and certainly here) includes the power to interpret the contract itself."); Baltimore County v. Baltimore County Dep. Sheriffs, 2016 WL 687503, at *8–9 (Md. Spec. App. Feb. 18, 2016) ("the Berklee court determined that the language in the parties' contract regarding the waiver of time limits applied only to waivers by the parties themselves.  It was not intended to apply to the arbitrator's waiver of limits for reasons of fairness or *de minimis* errors . . . § 4.5 contains no language circumscribing the arbitrator's ability to waive time limits.") (internal citations omitted).

In addition to the minimal nature of Claimant's purported delay, fairness concerns weigh against dismissing his demand as untimely.  IBM's arbitration procedures required Claimant to **mail** his demand to the IBM Arbitration Coordinator.  This procedural hurdle made the notification requirement more cumbersome than it needed to be, particularly given the email-based nature of IBM's business, the extensive use of email in JAMS proceedings, and the fact

that most, if not all, workplaces had been operating remotely last fall.[4]  The fact that IBM faults

Claimant for an untimely submission by mail is somewhat ironic – if IBM's goal was to receive

prompt notice of arbitration demands like Claimant's, the logical course of action would have

been to require service **by email**, which can be made instantaneously.[5]  In light of all these

circumstances, an exception to the 180-day filing deadline is warranted.[6]  See, e.g., Pioneer Inv.

Services Co. v. Brunswick Associates Ltd. Partn., 507 U.S. 380, 388 (1993) ("courts [are]

---

[4]     Like most other law firms, during the COVID-19 pandemic, Lichten & Liss-Riordan has switched entirely to remote work. In November 2020, during the time period at issue, LLR attorneys and staff were working remotely.  No attorneys or staff members were regularly present in the office, and the firm was not using mail on a regular basis to conduct business – service was made by email for most matters, and filings were made electronically.

[5]     In the course of the pandemic, the USPS reduced its service, and has implemented changes resulting in well-documented delays. See Natl. Assn. for Advancement of Colored People v. U.S. Postal Serv., 496 F. Supp. 3d 1, 7 (D.D.C. 2020), enforcement granted,  WL 6441317 (D.D.C. Oct. 27, 2020), and appeal dismissed, 20-5375, 2021 WL 672392 (D.C. Cir. Feb. 10, 2021) (noting reductions in "late trips" and "extra trips" in 2020 and resulting impact on service levels); Richardson v. Trump, 496 F. Supp. 3d 165, 179 (D.D.C. 2020), appeal dismissed sub nom. Richardson v. Biden, 20-5367, 2021 WL 672397 (D.C. Cir. Feb. 8, 2021) ("[s]ome parts of the country saw on-time delivery drop by 15-20 percentage points in the weeks following Mr. DeJoy's July 2020 changes"); Jones v. U.S. Postal Serv., 488 F. Supp. 3d 103, 123 (S.D.N.Y. 2020), order clarified, 2020 WL 6554904 (S.D.N.Y. Sept. 29, 2020) (finding that 2020 mail procedures have slowed mail service).

[6]     In an analogous situation, an arbitrator developed a process for filing late forms:

> The form established three categories to justify an extension of time: (1) "Hurricane Floyd", which permitted petitioners to indicate that they "resid[ed] and/or farm[ed] in one of the North Carolina counties declared by the federal government to be a disaster area as a result of Hurricane Floyd" and that they were "unable to submit [their] claim before the October 12, 1999 deadline because of this disaster;" (2) "Homebound", which permitted petitioners to indicate that they "became homebound due to illness and/or physical disability, and remained homebound, during the time-period beginning on August 12, 1999, and ending on October 12, 1999;" and (3) "Other Extraordinary Circumstances Beyond Your Control", which served as a catch-all category.

Pigford v. Veneman, 2001 WL 1426685, at *1 (D.D.C. Nov. 13, 2001).

permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."); see also Zipes, 455 U.S. at 398 (noting "remedial purpose" of anti-discrimination law).

Moreover, the Supreme Court has made clear that timely filing of a charge of discrimination is not a jurisdictional prerequisite, but rather "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes, 455 U.S. at 393. As the court explained in Zipes, "[b]y holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement **subject to waiver as well as tolling** when **equity so requires**, we honor the **remedial purpose of the legislation** as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer. Id. at 398. Subsequent decisions have adopted this reasoning. See Ft. Bend County, Texas v. Davis, 139 S. Ct. 1843, 1846 (2019) ("Title VII's charge-filing instruction is not jurisdictional, a term generally reserved to describe the classes of cases a court may entertain []or the persons over whom a court may exercise adjudicatory authority []. Prerequisites to suit like Title VII's charge-filing instruction . . . are . . . claim-processing rules that must be timely raised to come into play."). In other words, "[a] statutory condition that requires a party to take some action before filing a lawsuit is not automatically 'a *jurisdictional* prerequisite to suit.'" Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010) (quoting Zipes, 455 U.S. at 393).

For these reasons, the Arbitrator should find that Claimant's demand is not subject to dismissal as his one-day delay in serving IBM was *de minimis*.

**C. Claimant Can Piggyback on Other Timely Filed Claims**

Even if the Arbitrator declines to hold that Claimant's demand is timely, Claimant can "piggyback" on other timely filed age discrimination claims against IBM, including those

pending in the Rusis case. In effect, the piggybacking rule would indicate that Claimant's period

to file was tolled by the filing of the EEOC charges that predicated the Rusis case. "The single

filing (or 'piggybacking') rule is a judge-made exception to the requirement that plaintiffs

exhaust their administrative remedies prior to filing suit." Ruehl v. Viacom, Inc., 500 F.3d 375,

385–86 (3d Cir. 2007) (citing Commun. Workers of Am. v. New Jersey Dept. of Personnel, 282

F.3d 213, 217 (3d Cir. 2002)). "[A] charge will be adequate to support piggybacking under the

single filing rule if it contains sufficient information to notify prospective defendants of their

potential liability and permit the EEOC to attempt informal conciliation of the claims before a

lawsuit if filed." Howlett v. Holiday Inns, Inc., 49 F.3d 189, 195 (6th Cir. 1995). "A plaintiff

may piggyback on another plaintiff's charge provided '(1) the relied upon charge [to which he

is piggybacking] is not invalid, and (2) the individual claims of the filing and non-filing plaintiff

[the named filing plaintiff and the piggybacking plaintiff] arise out of similar discriminatory

treatment in the same time frame.'" Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1217

(11th Cir. 2001 (quoting Grayson v. K Mart Corp., 79 F.3d 1086, 1101-1102 (11th Cir. 1996).

    Importantly, "an individual may piggyback onto another's EEOC charge even if her

claims accrued after the date on which the charge was filed. Rusis, 2021 WL 1164659, at *31;

Anson v. Univ. of Tex. Health Sci. Ctr. at Hous., 962 F.2d 539, 543 (5th Cir. 1992) ("We hold

simply that a district court does not err in denying intervention to one whose claim had not yet

arisen at the time of the filing by another of an administrative charge which alleges only past

personal complaints regarding one who employs as many as 2,500 people.").

    In his arbitration demand, Plaintiff makes clear that his age discrimination claims are

substantially the same as those made in Rusis. In Rusis, the court held that an individual "may

piggyback . . . onto the properly filed charge of an individual who subsequently commenced a

suit in reliance on that charge[.]" <u>Rusis</u>, 2021 WL 1164659, at *17.[7]  The court further clarified

that "the Rusis/Gerrits charges . . . permit piggybacking [] for former IBM employees who were

terminated as part of an IBM Resource Action []." <u>Id.</u> at *20.  Claimant is therefore able to

"piggyback" onto the claims in <u>Rusis</u>.

### IV.    CONCLUSION

For the foregoing reasons, Respondent IBM's Motion to Dismiss should be denied.


Respectfully Submitted,

JAMES OWENS,

By his attorneys,

<u>*/s/ Michelle Cassorla*_____</u>
Shannon Liss-Riordan
Michelle Cassorla
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; mcassorla@llrlaw.com


Dated:        June 4, 2021

---

[7]    The court in <u>Rusis</u> declined to address whether arbitration claimants can use piggybacking to toll their filing periods, in light of the class action waiver in their separation agreements, so this remains an open question.  <u>See</u> <u>Rusis</u>, 2021 WL 1164659, at *7 ("regardless of whether it would be more convenient for the Court to decide the piggybacking issue at this juncture, the valid class and collective action waiver in the Arbitration Opt-Ins' separation agreements must be given effect"). Nevertheless, dismissal of Claimant's demand due to untimeliness is improper at this juncture.

9

**App.325**

# EXHIBIT 11
# TO MOTION TO VACATE
# ARBITRATION AWARD

**In the Matter of Arbitration between**

| |
|---|
| **JAMES OWENS,** |
| **Claimant** |
| **and** |
| **INTERNATIONAL BUSINESS MACHINES CORP.** |
| **Respondent.** |

**JAMS Ref. No. 1410008730**

**ORDER of DISMISSAL[1]**
**(November 19, 2021)**

In this arbitration, James Owens ("Claimant" or "Mr. Owens") asserts that International Business Machines Corp. ("IBM") terminated him because of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (hereafter, the "ADEA"). The arbitration was brought pursuant to an arbitration clause in the separation agreement entered into by IBM and Mr. Owens at the time of Claimant's separation from IBM (the "Separation Agreement").[2]

---

[1] For efficiency and economy, this Order of Dismissal recites only those facts and discusses only those legal arguments that the Arbitrator considers necessary to establish the basis for resolution of IBM's motion. To the extent that any factual assertion or legal argument is not specifically mentioned herein, the Arbitrator has decided that it is either not persuasive and/or not essential to establish the basis for this Order of Dismissal.

[2] The Separation Agreement is attached as Exhibit B-Attachment 2 to Claimant's Arbitration Demand (the "Demand").

IBM served a motion to dismiss the arbitration on the ground that Claimant failed to commence this arbitration in a timely manner pursuant to the provisions of the Arbitration Procedures attached to the Separation Agreement. (Demand, Exhibit B, Attachment 3 at p. 31). Claimant opposed the Motion and IBM served a reply. Additionally, exhibits were submitted in connection with the pending Motion. After review of all submissions, the Arbitrator concludes that the Motion to Dismiss should be granted for the reasons stated below.[3]

## I.    Procedural History

Claimant's Demand using a JAMS form is dated November 17, 2020 and has a Proof of Service noting that it was addressed to the IBM Arbitration Coordinator and was deposited in the U.S. mail that same day. IBM's Response to the Demand included an assertion that the Demand was untimely. In support of its untimeliness argument, IBM asserted that Claimant had been provided notice of his termination on May 21, 2020, but had not served his Demand on IBM until November 18, 2020 (Motion, Exh. 1), which is more than the 180-day period established by the Arbitration Procedures in the Separation Agreement applicable here.

On May 6, 2021, the Arbitrator held a telephonic preliminary conference with the parties. That same day, the Arbitrator issued Order # 1. As reflected in Order # 1: (a) the parties agree that the claim in this arbitration is arbitrable; (b) the applicable substantive law is federal law under the

---

[3] The Arbitrator recognizes and appreciates the high quality of the written presentations by all counsel throughout these proceedings. It follows that this Order of Dismissal is based solely upon the Arbitrator's review of the submissions and is not a reflection of the quality of the parties' respective presentations.

2

ADEA, including the law of the Fourth Circuit and other Circuits; and (c) the proceeding is governed by the JAMS Employment Arbitration Rules & Procedures and IBM's Arbitration Procedures.

## II.    Facts and the Separation Agreement

Claimant was terminated from his position at IBM in a "Resource Action." (Opp. at 1). Claimant acknowledges generally that he learned of the Resource Action in May 2021. (*id.* at 1 n.1). In contrast, IBM contends that Claimant received notice of the Resource Action on May 21, 2020. (Reply Exh. 1 – Email from M. Slater to J. Owens dated May 21, 2020).

Thereafter, Claimant signed a Separation Agreement which included "an arbitration clause as a part of a severance agreement. . . ." (Demand at 3; Exh. B – Attachment 2). The Separation Agreement included a release by Claimant of all claims against IBM, but permitted claims under the ADEA. (*id.* at ¶¶ 2 & 3). The Separation Agreement also provided that any ADEA claim would "be resolved on an individual basis by private, confidential, final and binding arbitration [at JAMS]" and that "the IBM Arbitration Procedures and Collective Action Waiver" (the "Arbitration Procedures") would apply to such an arbitration. (*id.* at ¶ 5).

IBM's Arbitration Procedures include a process and deadline for initiating an arbitration of a Covered Claim. Under the procedures, Claimant agreed to initiate an arbitration by

> *submit[ting] a written demand for arbitration to the IBM Arbitration Coordinator* [located within "IBM Corporate Litigation" at an address in Armonk, New York] no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.

3

(Exh. B, Attachment 3 at p. 31)(emphasis supplied).. The Arbitration Procedures are very explicit that, "[i]f the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived" and that "[t]he filing of a charge or complaint with a government agency … shall not substitute for or extend the time for submitting a demand for arbitration." (*id.*). Under the procedures, after the IBM Arbitration Coordinator receives the demand, IBM "file[s] the demand with the appropriate arbitration administrator." (*id.* at p. 32).

As noted above, Claimant's Demand was dated November 17, 2020; however, it was not placed into the possession of the Postal Service until November 18, 2020. (Mot. to Dismiss, Exh. 1). Indeed, Claimant notes that the Demand was mailed to the IBM Arbitration Coordinator on November 18, 2020. (Opp. at 2).

### III.    Applicable Law

The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age" (29 U.S.C.A. § 623(a)(1)), but there are certain prerequisites to filing a lawsuit in court alleging a claim under the ADEA. The ADEA requires that claimants first file a charge with the EEOC within a prescribed time period. *See id.* § 626(d). For a person like Claimant, who was employed in North Carolina, the period for filing an EEOC charge is 180 days.[4]

---

[4] IBM asserts, without dispute, that Claimant was employed in North Carolina and that the applicable period for filing in North Carolina is 180 days. (Response at 1).

4

Under the ADEA, the limitations period begins to run from the point in time that the employee receives notice of the alleged unlawful employment practice. *See Hamilton v. 1st Source Bank*, 928 F.2d 86, 88 (citing cases)(4th Cir. 1990) (*en banc*). Courts in the Fourth Circuit have strictly construed statutes of limitations for filing charges both with the EEOC and Title VII charges. *See, e.g., Harvey v. New Bern Police Dep't,* 813 F.2d 652, 655 (4th Cir. 1987); *Anderson v. Am. Airlines, Inc.*, 2018 WL 4258505, at *2 (W.D.N.C. Sept. 5, 2018); *Bond v. Potter*, 348 F. Supp.2d 525, 529 (M.D.N.C. 2005); *Kimes v. Laboratory Corp. of American, Inc.*, 313 F. Supp.2d 555, 560 (M.D.N.C. 2004).

One basis on which to move for dismissal under Fed. R. Civ. Pro. 12(b)(6) is the failure to timely file a claim. *See Walker v. Pheasant Ridge Senior Living*, 2018 WL 3539444, at *2, *3 (W.D. Va. July 23, 2018) (granting 12(b)(6) motion to dismiss ADEA claim where plaintiff "fail[ed] to timely file a charge" with the EEOC and "failed to timely file" federal suit within the applicable statutes of limitations).

## IV.    Arguments of the Parties

IBM argues that the Arbitration should be dismissed because Claimant failed to timely mail its Demand to the IBM Arbitration Coordinator. IBM's argument is as follows:

(i) Claimant received notice of his termination on May 21, 2020.

(ii) Under the ADEA, Claimant would have had 180 days from May 21, 2020 – i.e., until November 17, 2020 – to file a charge with the EEOC.

(iii) As Claimant acknowledged, the Demand was not mailed to the IBM Arbitration Coordinator until November 18, 2020.

5

(iv) November 18, 2020 was one day after expiration of the limitations period.

(v) Failure to submit a timely demand waived a claim.

(vi) Arbitrators are required to enforce arbitration agreements as written. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Santoro v. Accenture Fed. Servs., LLC*, 748 F.3d 217, 221 (4th Cir. 2014).

In opposing IBM's Motion to Dismiss, Claimant argues that:

(i)      IBM has not submitted proof that he received notice of his termination on May 21, 2020.

(ii)      " 'rules of procedure should be liberally construed'" and "'mere technicalities should not stand in the way of consideration of a case on its merits' " [Opp. at 3 (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988) (some internal quotation marks omitted)].

(iii)      "[t]he agreement does not, by its terms, categorically bar a claim that has been submitted outside the statute of limitations. It provides, rather vaguely, that such a claim 'shall be deemed waived.'" (Opp. at 4).

(iv)      the "shall be deemed waived" language is ambiguous because it "does not specify by whom – a reasonable reading here is that the Arbitrator makes the determination as to whether the claim is waived." [(*id.* at 4) (citing *Berklee Coll. of Music v. Berklee Chapter of Mass. Fed'n of Teachers., Loc. 4412, AFT, AFL-CIO*, 858 F.2d 31, 32 (1st Cir. 1988) ("*Berklee*")].

6

(v)     where the departure from the time limit is *de minimis*, arbitrators are permitted to depart from the terms of the arbitration agreement, particularly given fairness concerns, including the difficulty of mailing the Demand during the pandemic. [Opp. at 5-7 (citing cases, including *Berklee*)].

(vi)    even if the Arbitrator finds that the Demand was untimely, it should follow the "piggybacking rule" and find that Claimant's limitations period was tolled by the filing of the EEOC charges in *Rusis v. IBM* (No. 18-cv-8434, S.D.N.Y.).

### V.    Discussion

The Arbitrator finds that Claimant's failure to timely submit his Demand to the IBM Arbitration Coordinator requires dismissal of this Arbitration. In essence, Claimant did not get his Demand to the IBM Arbitration Coordinator in a timely fashion and the Arbitrator reads the Arbitration Agreement as unambiguously setting the procedure for initiating a demand and there are no reasons presented that would warrant excusing Claimant's failure to submit a timely demand.

The record presented here establishes that Claimant was notified on May 21, 2020 and did not mail his Demand until November 18, 2020, which was one day after the time period expired for submitting a Demand.

With respect to Claimant's assertion of lack of proof as to notice to Claimant, the fact is that IBM submitted the email, dated May 21, 2020, notifying Mr. Owens of the resource action. (Reply Exh. 1). Moreover, Claimant submitted no compelling or persuasive evidence disputing the May 21 notice date.

7

The Arbitrator disagrees with Claimant's assertion that the Arbitration Procedures are ambiguous. The Arbitration Procedures are very clear that "[i]f the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived." (Demand, Exh. B at 28-29). This language means that untimely claims are waived.

Claimant argues that IBM's Arbitration Procedures are ambiguous because, while it states that an untimely claim "shall be deemed waived," it does not specify by whom the waiver is to be determined. The Arbitrator finds this argument to be non-persuasive in light of the clear and unambiguous language of the Agreement.

Claimant argues that under Supreme Court precedent, the timely filing of a charge is not jurisdictional and that it is instead "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." [Opp. at 7 (internal quotation marks omitted)]. The issue here is whether Claimant complied with the Arbitration Procedures and what are the consequences of that failure. He did not comply with the Arbitration Procedures and the Arbitration Procedures unambiguously set forth the consequences of that failure – waiver of the claim. That ends the inquiry. Claimant has not provided any persuasive arguments (Opp. at 5-6) even arguably supporting any finding of a legal, factual or equitable nature to excuse the untimely submission of the Demand.[5]

---

[5] The *Berklee* case, on which Claimant relies, does not compel a different conclusion. That case stands for the unremarkable proposition that in the absence of clear terms in a collective bargaining agreement ("CBA") requiring strict enforcement of a statute of limitations, arbitrators have discretion to "overlook *de minimis* violations" of that agreement. (858 F.2d at 32). The CBA

Claimant's invocation of the "piggybacking doctrine" is similarly misplaced. (Opp. at 8-9). Under that judge-made exception to the requirement that ADEA plaintiffs exhaust their remedies, courts have tolled the filing of EEOC charges of individual plaintiffs where another's charge "contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit if filed." *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995).[6]

There are several reasons to reject application of the piggybacking doctrine to excuse Claimant's failure to timely provide notice. The issue here is whether Claimant complied with the terms of the Arbitration Procedures, not whether his time to file a charge with the EEOC should be tolled under a judge-made exception to administrative prerequisites. Indeed, as the *Rusis* court itself noted, because Claimant was not required to file an EEOC charge "the piggybacking doctrine is wholly inapplicable in the arbitration context." *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 193 (S.D.N.Y. 2021).

---

required that certain grievances be filed within 10 days after the grievance occurred. However, unlike IBM's Arbitration Procedures here, the CBA "did not specify the legal consequences of a late filing …." (*id.*).

[6] "A plaintiff may piggyback on another plaintiff's charge provided '(1) the relied upon charge [to which he is piggybacking] is not invalid, and (2) the individual claims of the filing and non-filing plaintiff [the named filing plaintiff and the piggybacking plaintiff] arise out of similar discriminatory treatment in the same time frame.'" *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) [quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1101-02 (11th Cir. 1996)].

9

In short, the Arbitrator does not agree that the piggybacking doctrine can be applied to modify the terms of the parties' agreement.

## VI.    Conclusion

For the foregoing reasons, IBM's motion to dismiss is granted and this arbitration is dismissed with prejudice.[7]

So ordered.

_Richard A. L_

Hon. Richard A. Levie (Ret.)
Arbitrator

---

[7] To the extent that any argument has not been addressed in this Order of Dismissal, it has been considered and either rejected or found unnecessary to a determination of the issues in contention. This Order of Dismissal resolves all claims and defenses asserted in this proceeding.

10

**PROOF OF SERVICE BY E-Mail**

Re: Owens, James / International Business Machines Corp. (IBM)
Reference No. 1410008730

I, Teresa Menendez, not a party to the within action, hereby declare that on  November 19, 2021, I

served the attached Order of Dismissal (November 19, 2021) on the parties in the within action by electronic

mail at Washington, DISTRICT OF COLUMBIA, addressed as follows:

Shannon Liss-Riordan Esq.
Thomas P. Fowler Esq.
Michelle Cassorla Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston St.
Suite 2000
Boston, MA   02116
Phone: 617-994-5800
sliss@llrlaw.com
tfowler@llrlaw.com
mcassorla@llrlaw.com
   Parties Represented:
   James Owens

Craig S. Friedman Esq.
Jones Day
1420 Peachtree St NE
Suite 800
Atlanta, GA   30309
Phone: 404-521-3939
csfriedman@jonesday.com
   Parties Represented:
   International Business Machines Corporation

Kyle M. Everett Esq.
Jones Day
51 Louisiana Avenue NW
Washington, DC   20001
Phone: 202-879-3939
keverett@jonesday.com
   Parties Represented:
   International Business Machines Corporation

Ilana R. Yoffe Esq.
Jones Day
250 Vesey St.
New York, NY   10281
Phone: 212-326-3939
iyoffe@jonesday.com
   Parties Represented:
   International Business Machines Corporation

I declare under penalty of perjury the foregoing to be true and correct. Executed at Washington,

DISTRICT OF COLUMBIA on  November 19, 2021.

*Teresa Menendez*
Teresa Menendez
JAMS
tmenendez@jamsadr.com

**App.337**

# EXHIBIT 12
## TO MOTION TO VACATE
## ARBITRATION AWARD

**JAMS Arbitration**
**Before the Honorable Richard A. Levie**

---

**JAMES OWENS,**

        **Claimant,**

    **v.**

**INTERNATIONAL BUSINESS MACHINES CORP.,**

      **Respondent.**

**Reference No. 1410008730**

---

## CLAIMANT'S MOTION FOR RECONSIDERATION

### I.    INTRODUCTION

On November 19, 2021, the Arbitrator entered a ruling granting IBM's motion to dismiss Claimant's arbitration demand as untimely. As set out in Claimant's opposition brief, Claimaint **did** in fact timely file his arbitration demand with JAMS; the only transgression that IBM claims is that he should have mailed a copy of the demand to IBM the same day he filed it, rather than the next day.  At the time Claimant's arbitration demand was filed, in November 2020, attorneys and staff at Lichten & Liss-Riordan were working remotely due to the COVID-19 pandemic. There were no staff members present in the office, and there was no mechanism for regularly sending out correspondence by mail. (Fowler Decl. ¶¶ 1-4, attached) Whereas Claimant's Counsel could timely effectuate an online filing, mailed submissions were delayed by the pandemic and the shift to remote work.  Service of an arbitration demand is certainly not jurisdictional, and the Arbitrator was free to, and indeed should have, recognized this

demand as timely filed, even though it was not mailed out to IBM until the next day. (Even had it been mailed out the same day it was filed, timing of mail deliveries is uncertain, and especially has been during the pandemic, so IBM cannot even claim any prejudice whatsoever based upon the demand having been mailed the day after it was filed.) In addition, there are several other reasons the Arbitrator should reconsider the Order of Dismissal.

First, Claimant **did** timely file his demand with JAMS, meaning that his filing was not late even under IBM's interpretation of the limitations period of 180 days from the date that Claimant was notified of his termination by IBM.

Second, while the Arbitrator held that the Arbitration Agreement's limitations period was clear and that the Arbitrator could not deviate from those clear terms, Claimant respectfully submits that this conclusion is incorrect. The Arbitration Agreement is not at all clear as to what the limitations period actually is. As will be explained below, there are two plausible interpretations of the Arbitration Agreement's timing provision. Under one interpretation, Claimant had 180 days from the date that he was notified of his termination to submit an arbitration demand (the same amount of time that he would have to file an EEOC charge), and under the second interpretation, Claimant would have until the time that he would have to file an ADEA claim in court (which would exceed the 180 days that he would have to file an EEOC charge).

More specifically, although the Arbitration Agreement states that "if the claim is one which must first be brought before a government agency, [it must be submitted] no later than the deadline for the filing of such a claim," Arbitration Agreement at 31-32, Ex. B to Arb. Demand, nowhere does the arbitration agreement actually clarify whether it

2

means the deadline for the filing of an EEOC charge or the deadline for filing a lawsuit asserting a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 626 *et seq.*, in court. If the latter interpretation applies, November 17, 2020 was actually not the deadline for submitting Claimant's arbitration demand (which must then be considered timely). Because the Arbitration Agreement is ambiguous, it must be construed in Claimant's favor as the non-drafter, meaning that the Arbitrator must apply the interpretation that renders his claim timely. See Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 711 (4th Cir. 2001). Indeed, where there is at least a plausible interpretation to allow claimants' claims to proceed in arbitration, arbitrators are typically reluctant to dismiss claims on timeliness grounds. See Berklee College of Music v. Berklee Chapter of Massachusetts Fedn. of Teachers, Loc. 4412, AFT, AFL-CIO, 858 F.2d 31, 33 (1st Cir. 1988).

Third, IBM's urged interpretation of the Arbitration Agreement's timing provision would impermissibly truncate the ADEA limitations period by requiring Claimant to submit his arbitration demand within 180 days of the date that IBM notified him of his termination, even though he would have longer than 180 days to file an ADEA claim in court. See 29 U.S.C. §§ 626(d)(1) and (e). Courts and the EEOC have consistently taken the position that the timing schemes contained in discrimination statutes such as the ADEA are substantive rights that cannot be abridged by contract. See, e.g., Thompson v. Fresh Products, LLC, 985 F.3d 509, 521 (6th Cir. 2021); Thompson v. Fresh Products, LLC, EEOC Brief, 2020 WL 1160190, at *19-23 (6th Cir. March 2, 2020). Abridging the ADEA limitations period in this manner also violates JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, Standard No. 1.

**App.341**

See https://www.jamsadr.com/employment-minimum-standards (providing that all statutes of limitations under applicable statutes must remain available in arbitration.)

Fourth, the Arbitrator incorrectly determined that Claimant could not utilize the piggybacking rule. Under this rule, plaintiffs may file claims of discrimination years after they suffered discrimination by "piggybacking" onto earlier-filed claims, which put the company on notice of allegations that it engaged in illegal discrimination that affected a broad class of workers. See Tolliver v. Xerox Corp., 918 F.2d 1052, 1057-59 (2d Cir. 1990); Holowecki v. Federal Exp. Corp., 440 F.3d 558, 565-70 (2d Cir. 2006). This rule thus effectively extends the statute of limitations for plaintiffs bringing discrimination claims, where earlier classwide charges of discrimination have been filed against the company.  While Claimant would have been able to "piggyback" onto an earlier-filed class action age discrimination case against IBM (without any concern regarding timeliness of his claim) in court, the Arbitrator concluded that the Arbitration Agreement does not allow for such "piggybacking," effectively truncating the ADEA limitations period. Again, the ADEA limitations period may not be abridged by contract in this manner.

Fifth, the Arbitrator erred by not applying the doctrine of equitable tolling, despite the fact that fairness considerations clearly counsel in favor of permitting Claimant to proceed with his ADEA claim. The Arbitration Agreement empowers the Arbitrator to award in arbitration the full remedies that would be available to the Claimant in court. See Agreement at 31-32, Ex. B to Arb. Demand (emphasis added). Equitable tolling or equitable modification are frequently used as remedies under discrimination statutes like the ADEA in court. See, Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393

4

(1982); <u>Berklee College of Music</u>, 858 F.2d at 33. As such, the Arbitrator should have utilized this doctrine to allow Claimant to pursue his claim, which would be in the interest of fairness.

## II.    LEGAL STANDARD

The IBM Arbitration Procedures, incorporated in Claimant's Separation Agreement, provide that "[e]ither party shall have the right, within twenty (20) days of issuance of the Arbitrator's decision, to file with the Arbitrator . . . a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond." <u>See</u> Arbitration Agreement at 27. "The Arbitrator thereupon shall reconsider the issues raised by the Motion, and, promptly, either confirm or change the decision." <u>Id.</u>

Likewise, under Fed. R. Civ. P. Rule 59(e), the Arbitrator may reconsider the Order of Dismissal "to correct a clear error of law or prevent manifest injustice." <u>Pacific Ins. Co. v. American Nat. Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998). Additionally, under Fed. R. Civ. P. Rule 60 the Arbitrator may grant reconsideration for:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Whether under the Arbitration Agreement, Rule 59(e), or Rule 60, reconsideration of the Order of Dismissal is justified.

**App.343**

III.    **ARGUMENT**

A.    **Claimant Timely Filed His Arbitration Demand**

IBM does not dispute that Claimant filed the arbitration demand in this case with JAMS in a timely fashion. Instead, IBM seeks to dismiss Claimant's arbitration demand on the basis that he improperly mailed his demand to IBM the next day after filing.  This alleged single day delay of service on IBM, however, is not jurisdictional and does not operate to automatically bar his claims. In court, claims are routinely allowed to proceed where a complaint is timely filed but then not immediately served, or sometimes even when a complaint itself is not timely submitted. See Cooperwood v. Farmer, 315 F.R.D. 493, 497-99 (N.D. Ill. 2016) (refusing to dismiss a complaint where service of the complaint on the defendant was delayed by nine months); Sowers v. U.S., 141 F. Supp. 3d 471, 475-76 (E.D. Va. 2015) (refusing to dismiss an amended complaint even where the plaintiff filed it three weeks past the court's deadline). Here, the Arbitration Agreement was timely filed with JAMS with the required filing fee submitted, and there was a one day delay in serving the filed demand. That one-day delay of service does not justify dismissing Claimant's entire case, especially where the Arbitration Agreement itself states that its purpose is to "have a speedy, less-formal, cost-effective dispute-resolution." See Arbitration Agreement at 32, Ex. B to Arb. Demand. IBM's reliance on this technicality (that the demand wasn't served on IBM the same day that it was filed with JAMS), turns against the terms of the Arbitration Agreement and does not justify dismissal.[1]

_____

[1]    Notably, there is a stark contrast between IBM's mailing requirement and the prevailing standard for conducting business electronically. The procedure for notifying IBM of Claimant's intent to pursue arbitration required him to **mail in** his arbitration

6

**App.344**

To briefly reiterate what took place in this case, IBM contends that Claimant was notified that he would be laid off May 21, 2020, and that he had 180 days from that date to submit his arbitration demand, which IBM asserts passed on November 17, 2020. Claimant **did** initiate his arbitration with JAMS on November 17, 2020. What IBM now complains of is that Claimant mailed the demand to IBM the next day, rather than the same day it was electronically filed.  At the time, Claimant's counsel's office was closed due to the COVID-19 lockdown; also, at that time, Claimant's counsel Thomas Fowler was out of the office due to the death of his father.

In granting IBM's Motion to Dismiss, the Arbitrator determined that "[t]he Arbitration Procedures are very clear that if the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived."  See Order at 8 (citing Arbitration Procedures, Ex. B to Demand). However, the terms of the Arbitration Agreement are anything but clear. If anything, the Arbitration Agreement can reasonably be interpreted to provide a deadline for filing the arbitration demand based on the ADEA's deadline to file suit in court: 90 days after an EEOC notice of right to sue.

The procedure set out by IBM for initiating arbitration provides:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making **or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim**. If the demand for

---

demand to the IBM arbitration coordinator, and the agreement did not provide for serving it electronically. It is noteworthy that: (1) Claimant could initiate his demand by filing it online with JAMS; (2) his interactions with IBM, including signing his separation agreement, took place electronically; and (3) Claimant's firm (again, like most others around the country) had been largely conducting business electronically, particularly in light of the pandemic, as courts, administrative offices, and law firms remained closed and work was conducted remotely. See Fowler Decl. ¶¶ 1-5.

7

arbitration is not submitted in a timely manner, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

See Arbitration Agreement at 31-32, Ex. B to Arb. Demand (emphasis added) (emphasis added). Critically, however, where the Arbitration Agreement requires that the arbitration demand be submitted "no later than the deadline for the filing of such a claim," it does not clarify which filing deadline to which it refers. This phrase could be plausibly interpreted to mean that the arbitration demand must be filed within the 180 days that Claimant had to file a charge with the EEOC (as IBM asserts), or that the arbitration demand must be filed within the time that the Claimant had to file such a claim in court.

Therefore, aside from the fact that Claimant **did** timely initiate the arbitration even under the 180 day deadline by filing the demand with JAMS, the Arbitrator should find that the limitations period was actually the time that he had to file in court, which exceeds 180 days. Pursuant to the ADEA, individuals are required to file a charge with the EEOC within 300 days of the date of the alleged discriminatory act (or within 180 days in non-deferral jurisdictions such as in this case).  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d), 633(b).[2] With respect to filing in court, the time limit is from 60 days after a charge was filed with the EEOC to 90 days after the aggrieved employee receives a letter from the EEOC informing the individual that the EEOC completed its investigation. 29 U.S.C. §§ 626(d)(1) and (e). Therefore, if Claimant submitted a charge

---

[2]    The non-deferral states are Alabama, Arkansas, Georgia, Mississippi, and North Carolina, as well as the territories American Samoa, Guam, Wake Island, and the Commonwealth of the Northern Mariana Islands.  See Individual Field Office Webpages, *available at* http://www.eeoc.gov/field/.

8

to the EEOC on the 180th day after he received notice of his termination, he could not file a claim in court until 60 days later at minimum (meaning 240 days after he received notice of his termination), and even then, he would still have additional time to file in court **after** the EEOC issue a right-to-sue letter.[3]

The Arbitration Agreement is simply not clear as to whether it incorporates the time to file an EEOC charge or the time to file in court.[4] If the time limit for filing the arbitration demand is the time that Claimant had to file in court, he would have had until

---

[3]    In the scenario where an individual files a charge with the EEOC on the 180th day following the date of notification of termination, even if the EEOC were to issue a right-to-sue letter on the same day the charge was filed, the individual when then have another 90 days to file in court (270 days after the notification of termination). Therefore, in almost all cases, individuals have at least 270 days to file in court.

[4]    Moreover, the clause IBM relies on to assert untimeliness is only implicated "if the claim is one which must first be brought before a government agency . . . ." If the Claimant's claim is not a claim that must first be brought before a government agency, then the time period "is no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making." See Arbitration Agreement at 31-32, Ex. B to Arb. Demand. Here, as explained below, Claimant would not have had to file an EEOC charge before advancing his claim in court, because he could have relied on the EEOC charges filed by the named plaintiffs in Rusis v. International Business Machines Corp., Civ. Act. No. 18-cv-08434 (S.D.N.Y.). Additionally, the Arbitration Agreement itself excuses the requirement for Claimant to exhaust his administrative remedy before the EEOC prior to filing an arbitration demand, meaning that his claim is not one that "must first be brought before a government agency." See Arbitration Agreement at 31-32, Ex. B to Arb. Demand. And again, the law prescribes that someone filing an ADEA claim in court would have at least 240 days to file the lawsuit.

Additionally, the Arbitration Agreement actually provides the Claimant the choice, with respect to the limitations period, between "no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making **or,** if the claim is one which must be brought before a government agency, no later than the deadline for the filing such a claim." This language does not say that the second choice *must* be used if the Claimant's claim must be brought before a government agency.

**at least** January 16, 2020, to file the arbitration demand, given the fact that he could not have filed in court before that date.[5]

This ambiguity in the arbitration agreement compels the Arbitrator to interpret it in favor of the Claimant as the non-drafter. See Choice Hotels Intern., 252 F.3d at 711 (holding that "any doubts in the interpretation of [an arbitration agreement] must be resolved against the drafter."). As Justice Breyer noted when writing for the First Circuit, arbitrators have frequently shown leniency with respect to limitations periods often permit cases to be considered on their merits. See Berklee College of Music, 858 F.2d at 33. Justice Breyer noted that "[s]ometimes, as with the federal procedural rules, a separate rule specifically grants to a court the power to extend time limits imposed by other rules. [] In other instances, however, courts construe absolute-sounding language (say, in a statute of limitations) against a background of judicially created exceptions." Id. (Zipes, 455 U.S. at 392); Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348–49 (1874); Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 48–50 (2nd Cir.1985)).

---

[5]    Where an arbitration agreement is unclear with respect to a limitations period, the Arbitrator may substitute a "reasonable time." See NCR Corp. v. CBS Liquor Control, Inc., 874 F. Supp. 168, 172-73 (S.D. Ohio 1993) (because parties did not provide for a statute of limitations in their agreement, arbitrator did not err by "finding that the right to obtain arbitration had to be exercised within a reasonable time"), modified on other issues on reconsideration, No. C-3-01-031, 1993 WL 767119 (S.D. Ohio Dec. 24, 1993), aff'd sub nom. on other issues, NCR Corp. v. Sac-Co., 43 F.3d 1076 (6th Cir. 1995). See also Anthony v. Affiliated Computer Servs., Inc., 621 F. App'x 49, 51-52 (2d Cir. 2015) (upholding arbitration decision applying 90-day from EEOC notice deadline when agreement provided statute of limitations of "applicable time periods in which to bring such claims"); Hagan v. Katz Comms., Inc., 200 F. Supp. 3d 435, 444 (S.D.N.Y. Aug. 3, 2016) (upholding decision to apply 90-day from EEOC notice deadline when arbitration agreement required claims be received "within the applicable/relevant statute of limitations period")

10

In fact, Justice Breyer specifically cited to a case explaining the basis for ADEA tolling, Cerbone. Id. (citing Cerbone, 768 F.2d at 48-50). In upholding the arbitrator's decision allowing a facially untimely claim proceed in arbitration, Justice Breyer noted that "Arbitrators have read such exceptions into literally absolute-sounding time limits in labor contracts; sometimes they have done so in light of the parties' own history of practice . . . but sometimes not . . . ." Id. (internal citations omitted); see also See Crafts Precision Industries, Inc. v. Lodge No. 1836 of Dist. 38, Intern. Ass'n of Machinists and Aerospace Workers, 889 F.2d 1184, 1185 (1st Cir. 1989) ("We begin by repeating what we said in Berklee . . . Although an arbitrator's decision must fall within the bounds of his contractually delegated authority, that authority typically (and certainly here) includes the power to interpret the contract itself."); Baltimore County v. Baltimore County Dep. Sheriffs, 2016 WL 687503, at *8–9 (Md. Spec. App. Feb. 18, 2016) ("the Berklee court determined that the language in the parties' contract regarding the waiver of time limits applied only to waivers by the parties themselves.  It was not intended to apply to the arbitrator's waiver of limits for reasons of fairness or de minimis errors . . . § 4.5 contains no language circumscribing the arbitrator's ability to waive time limits.") (internal citations omitted).[6]

---

[6]     As Claimant explained in his initial Opposition, in an analogous situation, an arbitrator developed a process for filing late forms:

The form established three categories to justify an extension of time: (1) "Hurricane Floyd", which permitted petitioners to indicate that they "resid[ed] and/or farm[ed] in one of the North Carolina counties declared by the federal government to be a disaster area as a result of Hurricane Floyd" and that they were "unable to submit [their] claim before the October 12, 1999 deadline because of this disaster;" (2) "Homebound", which permitted petitioners to indicate that they "became homebound due to illness and/or physical disability, and remained homebound, during the time-period beginning on August 12, 1999,

11

While IBM has argued that the Arbitrator lacks the authority under the Arbitration Agreement to follow the ample authority that has refused to interpret the ADEA's limitations period rigidly and have even allowed for equitable tolling or for claims to otherwise proceed in light of the ADEA's remedial purposes, that is not the case. IBM could have drafted its arbitration agreement to be unambiguous – it could have stated specifically the number of days that the Claimant had to mail his arbitration demand to IBM, and it could have stated that any demand mailed after that time would be rejected. It did not. Further, if IBM did not wish to incorporate the law surrounding ADEA's limitations period, it should have so stated in the Arbitration Agreement – the Arbitrator is perfectly within his right to interpret the Agreement in the manner Claimant advocates, and doing so would advance justice and fairness.

**B.**    **IBM's Interpretation of the Timing Provision Would Impermissibly Abridge the ADEA Limitations Period**

IBM's position is that Claimant only had 180 days from the date that he was notified by IBM that he was being terminated to submit his arbitration demand. However, as explained in Section III.A *supra*, Claimant would have a longer time than that to file his claim in court (at least 240 days and likely more). IBM's interpretation, which the Arbitrator has accepted, thus impermissibly truncates the ADEA's limitations period.

Courts have routinely found provisions of arbitration agreements or contracts

---

and ending on October 12, 1999;" and (3) "Other Extraordinary Circumstances Beyond Your Control", which served as a catch-all category.

Pigford v. Veneman, CIV.A. 97-1978 (PLF), 2001 WL 1426685, at *1 (D.D.C. Nov. 13, 2001).

12

shortening the time to file discrimination claims to be unenforceable. The Sixth Circuit, for example, recently held that an employer cannot contractually shorten the limitations period of the ADEA.  See Thompson v. Fresh Products, LLC, 985 F.3d 509, 521 (6th Cir. 2021). The court explained that the timing provisions contained in the ADEA "are part of the **substantive law** of the cause of action created by the ADEA" and that "the limitations period[] in the . . . ADEA give[s] rise to substantive, non-waivable rights." Id. (emphasis added). Moreover, the court proceeded to explain that "like Title VII, the ADEA emphasizes the importance of the pre-suit cooperative process, outlining the EEOC's obligation upon receiving a charge to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion . . . " and "[a]ltering the time limitations surrounding these processes risks undermining the statute's uniform application and frustrating efforts to foster employer cooperation." Id.

The Sixth Circuit relied on an earlier case, Logan v. MGM Grand Detroit Casino, 939 F.3d 824, 833 (6th Cir. 2019), where the court had held that an employer could not abrogate the limitations period for a Title VII claim by contract. As the court reasoned, although statutes of limitations are traditionally regarded as procedural mechanisms, there are exceptions to this general rule where statutes that "create rights and remedies contain their own limitation periods." Id. (citing Davis v. Mills, 194 U.S. 451, 454 (1904)). In such instances, the statute of limitations is considered a "substantive right" that "generally is not waivable in advance by employees." Id. at 829. In Thompson, the court extended this ruling to the ADEA. See Thompson, 985 F.3d at 521.

Importantly, the EEOC submitted an amicus brief in Thompson, also taking the position that the ADEA's limitations period is a substantive, non-waivable right that an

13

employer can abridge by contract. See Thompson, EEOC Brief, 2020 WL 1160190, at

*19-23.[7]  As the EEOC explained, "the ADEA's statutory limitations period is a

substantive right and prospective waivers of its limitations period are unenforceable." Id.

at *19. The EEOC explained further:

> Thus, while Title VII and the ADEA may differ in a few ways with respect to pre-suit procedures, they are extremely similar in every way material to the question before the Court here and in *Logan*: whether the ADEA's statutory limitations periods, like Title VII's, are substantive rights not waivable in advance. As this Court observed regarding Title VII, ADEA "enforcement relies on a combination of public and private action and mandates that the EEOC . . . must afford non-compliant employers the chance to voluntarily cure their violations before . . . litigation may be brought against them." *Logan*, 939 F.3d at 827. Like Title VII, the ADEA sets out a "pre-suit process" that serves the Congressional purpose of "cooperation and voluntary compliance . . . as the preferred means of eradicating workplace discrimination." *Id.* at 828. Accordingly, through the ADEA's pre-suit process, "Congress 'established a procedure whereby ... the [EEOC] would have an opportunity to investigate individual charges of discrimination, to promote voluntary compliance with the requirements of [the statute].'" *Id.*

> Of particular importance here, both statutes provide similar limitations periods with "important implications for an employee who has suffered workplace discrimination." *Logan*, 939 F.3d at 829. As described above, the limitations period under the ADEA does differ somewhat from Title VII, in that the former permits the charging party to file suit once the initial sixty-day post-charge-filing period has passed and without requiring a right-to-sue notice. But this distinction is not a material difference for purposes of determining whether the ADEA's statutory limitations period is a substantive right not waivable in advance.

Id. at *23. While some courts have attempted to distinguish between Title VII and the

---

[7]    The EEOC's reasonable interpretation of the ADEA is entitled to deference. See EEOC v. Comm. Office Prods. Co., 486 U.S. 107, 115 (1988) ("[I]t is axiomatic that the EEOC's interpretation of [the ADEA], for which it has primary enforcement responsibility, need . . . only be reasonable to be entitled to deference."). The EEOC's interpretations of the ADEA reflect "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 399 (2008) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)). See also Jones v. American Postal Workers Union, 192 F.3d 417, 427 (4th Cir. 1999) (holding that an EEOC interpretation in an amicus brief was entitled to deference).

14

ADEA with respect to whether their timing schemes were procedural or substantive,[8] such distinctions are no longer viable in light of Thompson and the EEOC's position set forth in its amicus brief in that case.

Numerous courts have likewise refused to enforce contractual limitations periods in cases concerning the ADEA, Title VII, and similar statutes. See Castellanos v. Raymours Furniture Co., Inc., 291 F. Supp. 3d 294, 298 (E.D.N.Y. March 12, 2018) (striking an arbitration agreement's shortening of the limitations period for a Fair Labor Standards Act claim); Friedmann v. Raymour Furniture Co., Inc., 2012 WL 4976124 (E.D.N.Y. Oct. 16, 2012) (refusing to enforce a shortening of an employee's limitations period to pursue claims under the ADEA and Americans with Disabilities Act); see also Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 125-26 (2d Cir. 2010) (indicating that if the employer had not waived a shortened statute of limitations for a Title VII claim, the court may well have invalidated the arbitration agreement in question).[9]

---

[8]     For example, IBM may cite to Cerjanec v. FCA US, LLC, 2017 WL 6407337, *7-10 (E.D. Mich. Dec. 15, 2017), and Smithson v. Hamlin Pub, Inc., 2016 WL 465564, *2-3 (E.D. Mich. Feb. 8, 2016), in which the court found that a contractual shortening of the ADEA limitations period from 300 days to 180 days was permissible because the ADEA was distinguishable from Title VII.  But those cases have now been overturned by Thompson. See Thompson, 985 F.3d at 521.  Likewise, IBM may cite to Hagan v. Katz Communications, Inc., 200 F. Supp. 3d 435, 444-45 (S.D.N.Y. 2016), but in that case there was no argument that the ADEA's timing scheme had been abridged in any way – the plaintiff simply argued that the ADEA's limitations period should not have been incorporated into the arbitration agreement at all.

[9]     See also Graham Oil v. Arco Products Co., 43 F.3d 1244, 1248-49 (9th Cir. 1994) (effort to truncate the limitations period was unenforceable, because it "expressly forfeits [the plaintiff's] statutorily-mandated right to a one-year statute of limitations."); Sanford v. Quicken Loans, 2014 WL 266410 (E.D. Mich. Jan. 24, 2014) (refusing to enforce shortening of Title VII limitations period); Mazurkiewicz v. Clayton Homes, Inc., 971 F.Supp.2d 682 (S.D. Tex.2013) (same); Cole v. Convergys Customer Mgmt. Grp.,

15

Similarly, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, Standard No. 1, provides that all statutes of limitations under applicable statutes must remain available in arbitration. See https://www.jamsadr.com/employment-minimum-standards

Simply put, to the extent that the Arbitration Agreement purports to shorten Claimant's ADEA limitations period, it is unenforceable. The Arbitrator should thus allow Claimant's claim to proceed.

**C.    The Arbitrator Incorrectly Held that Claimant Could not Piggyback on the EEOC Charges Filed in by the Named Plaintiffs in the Rusis Matter**

Claimant also respectfully submits that the Arbitrator was incorrect to conclude that Claimant's claim was not tolled under the piggybacking doctrine. Under IBM's interpretation of the Arbitration Agreement, Claimant has been left in an untenable position that he would *not* be in if his ADEA claim was to be adjudicated in court rather than arbitration.  Even though Claimant would be deemed timely to participate in the Rusis lawsuit (or even his own individual lawsuit) under the piggybacking rule in court, if the piggybacking rule were permitted to be waived in arbitration, IBM's interpretation, which the Arbitrator has adopted, means that Claimant cannot advance his claim **at all**. That result cannot stand.

---

Inc., 2012 WL 6047741 (D. Kan. Dec. 5, 2012) (same); O'Phelan v. Fed. Express Corp., 2005 WL 2387647 (N.D. Ill. Sept. 27, 2005) (same); Mabry v. W. & S. Life Ins. Co., 2005 WL 1167002 (M.D.N.C. Apr. 19, 2005) (same); Wineman v. Durkee Lakes Hunting & Fishing Club, Inc., 352 F. Supp. 815, 821 (E.D. Mich. Jan. 13, 2005) (holding that an arbitration provision shortening the limitations period for a claim under the Fair Labor Standards Act could not be enforced because "[a] contractual agreement that limits an employee's enforcement rights can have public policy implications beyond those affecting the private parties to the contract"); Lewis v. Harper Hosp., 241 F.Supp.2d 769 (E.D. Mich. 2002) (refusing to enforce shortening of Title VII limitations period); Salisbury v. Art Van Furniture, 938 F. Supp. 435 (W.D. Mich. 1996) (same).

16

The Supreme Court has recognized that arbitration is an acceptable alternative forum to pursuing discrimination claims, but only so long as an employee can pursue his or her claims there just as they would be able to in court – and not sacrifice any substantive rights. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991).  The Arbitrator must therefore hold the purported piggybacking waiver in IBM's arbitration agreement to be invalid.[10]  It is unenforceable because the ADEA's timing scheme is a non-waivable substantive right under the ADEA, and the purported waiver would impermissibly prevent the effective vindication of Claimant's claims in arbitration. Id.

The ADEA's statutory period can be tolled by the filing of a classwide EEOC charge by a similarly situated individual under the "piggybacking" or "single filing" rule. As the Second Circuit explained it, "[a]ccording to the piggybacking rule, 'where one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims aris[e] out of similar discriminatory treatment in the same time frame." Holowecki, 440 F.3d at 564 (quoting Snell v. Suffolk County, 782 F.2d 1094, 1100 (2d Cir. 1986)); see also Livingston v. City of Chicago, 2019 WL 194848, *3 (N.D. Ill. Jan. 14, 2019).

The purpose of the EEOC charge filing requirement is not to limit the time for suit, but instead to afford the EEOC a prompt "opportunity to 'seek to eliminate any

---

[10]    Again, the arbitrator is empowered to make this finding because questions of timeliness are questions of procedural arbitrability for the arbitrator to decide. See Graham Construction Co., 2006 WL 8448849, at *5 (M.D.N.C. Sept. 29, 2006). The Arbitration Agreement states that "Any issue concerning the arbitrability of a particular issue or claim pursuant to this section (except for issues concerning the enforceability of the class action or collective action waivers) must be resolved by the arbitrator and not a court. See Arbitration Agreement at 28, Ex. B to Arb. Demand.

17

**App.355**

alleged unlawful practice by informal methods of conciliation, conference, and persuasion.'" <u>Tolliver v. Xerox Corp.</u>, 918 F.2d 1052, 1057, 1059 (2d Cir. 1990). The EEOC "has interpreted the ADEA filing requirements to be satisfied 'so long as the matter complained of was within the scope of [a] previously filed charge, regardless of who filed.'" <u>Id.</u> Additionally, courts have found that the administrative prerequisites of discrimination statutes such as the ADEA and Title VII "must be interpreted liberally to effectuate [their] purpose of eradicating employment discrimination," and courts must look to "fairness, and not excessive technicality" in addressing such issues. <u>Cronas v. Willis Group Holdings Ltd.</u>, 2007 WL 2739769, at *2 (S.D.N.Y. Sept. 17, 2007).

As such, the Second Circuit has adopted the piggybacking rule to excuse the administrative charge filing requirement where an individual falls within the scope of a timely filed administrative charge that describes similar discrimination. <u>See</u> <u>Tolliver</u>, 918 F.2d at 1057. As the Eleventh Circuit has described, the "principle behind the piggybacking rule is to give effect to the remedial purposes of the ADEA and to not exclude otherwise suitable plaintiffs from an ADEA class action simply because they have not performed the 'useless act of filing a charge.'" <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1103 (11th Cir. 1996).

In <u>Tolliver</u>, the Second Circuit held that the piggybacking rule applies, not only in ADEA collective actions, but also in individual ADEA cases (where the plaintiffs piggyback off of other individuals who filed similar EEOC charges but then pursued their claims in separate cases from the plaintiffs). The court reasoned that "[t]he purpose of the charge filing requirement is fully served by an administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a

**App.356**

similar grievance elect to join a preexisting suit **or initiate their own.**" 918 F.2d at 1057 (emphasis added). See also Cronas, 2007 WL 2739769, at *6 (permitting a plaintiff to proceed with an individual Title VII claim even though the plaintiff had not timely filed his own EEOC charge, because he could take advantage of piggybacking from an earlier class EEOC charge).[11]  Moreover, in Tolliver, the Second Circuit acknowledged that the impact of the piggybacking rule was to permit individuals to institute lawsuits outside the ADEA's 300 (or 180 day) window, but explained that "[t]he charge filing requirement . . . sets a time limit, not for the purpose of limiting time for suit, but for the purpose of affording a prompt opportunity to attempt conciliation." Tolliver, 918 F.2d at 1059.[12]

Here, Claimant should be permitted to piggyback on the EEOC charges filed by the named plaintiffs in the Rusis case[13] (or even earlier-filed age discrimination charges filed against IBM[14]). Thus, the piggybacking rule would toll the time that Claimant had to

---

[11]    IBM may argue that Claimant worked in North Carolina, and thus that the Second Circuit's piggybacking interpretation is inapplicable. However, the arbitration agreement does not mandate application of the law of the circuit in which the individual works or resides. Instead, the agreement reads: "The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted." Demand, Exhibit 2.  Claimant contends that his claim arose in New York, as IBM's headquarters are in Armonk, New York. Furthermore, the case that Claimant could use to piggyback, Rusis, is in the Southern District of New York.

[12]    Piggybacking is available regardless of whether the employee has unsuccessfully attempted to join a collective action. See Tolliver, 918 F.2d at 1057.

[13]    The Rusis plaintiffs filed EEOC charges on May 10, 2018 (Edvin Rusis); July 2, 2018 (Henry Gerrits and Phil McGonegal), and November 14, 2016 (Sally Gehring). Claimant was terminated mid-2020, and his claim would be timely under the piggybacking rule, in light of those charges. Again, Claimant can provide those charges to the Arbitrator upon request.

[14]    The EEOC Letter of Determination indicates that there were charges alleging age discrimination against IBM going back to 2014, and its investigation covered the time

19

file his arbitration demand. Those charges alleged that IBM engaged in class-wide age

discrimination, and Claimant was terminated in the manner described in those charges

(and no more than 180 days before the filing of those charges); thus, Claimant's claims

fall within the scope of those discrimination charges.

Indeed, in light of the EEOC's determination finding "reasonable cause to believe

that [IBM] has discriminated against [58 charging parties] and others a [a nationwide

class of those similarly situated] on account of their age," the EEOC has obviously had

the opportunity to investigate the claims alleged in the Rusis plaintiffs' charges on a

classwide basis.[15] The EEOC has had ample ability to investigate and conciliate these

claims, and IBM has been put on notice of the discrimination allegation.  Under the

piggybacking rule, the Rusis plaintiffs' charges thus should toll Claimant's statutory

limitations period under the ADEA. See Tolliver, 918 F.2d at 1057; Cronas, 2007 WL

2739769, at *6.

IBM has argued successfully in Claimant's arbitration, however, that the

piggybacking rule cannot help Claimant, who signed an arbitration agreement, because

the arbitration agreement states that "[t]he filing of a charge or complaint with a

government agency ...shall not substitute for or extend the time for submitting a demand

for arbitration." Arbitration Agreement at 31, Ex. B to Arb. Demand.  In other words, IBM

argued, and the arbitrator agreed, that the arbitration agreement does not allow for

---

period 2013-18. Claimant can also provide the EEOC Determination upon the
Arbitrator's request.

[15]     Several of the Rusis plaintiffs, including Plaintiff Sally Gehring and opt-in
Plaintiffs Mark Johnson, Robert Gasiorowski, and Andrew Peavy, were three of the
charging parties included in the EEOC's determination. Claimant can also provide and
these plaintiffs' documents should the Arbitrator find them useful.

20

piggybacking.  However, in order for the arbitration agreement to be enforceable, this purported waiver of the piggybacking rule cannot not enforceable.

The Supreme Court made clear in Gilmer, 500 U.S. at 28, that even though a statutory claim (there, also an ADEA claim) may be subject to arbitration generally, "the prospective litigant [must be able to] effectively . . . vindicate his or her statutory cause of action in the [specific] arbitral forum." Here, IBM insists that Claimant cannot pursue his ADEA claims **at all** in arbitration, even though, absent the arbitration agreement, there is no question that he could pursue her claims in court by relying on the piggybacking rule.

Moreover, as Claimant explained in Section III.A, *supra*, courts have routinely found provisions of arbitration agreements or contracts shortening the time to file discrimination claims (which is effectively what a waiver of the piggybacking rule is) to be unenforceable, including in the context of ADEA claims. See Thompson, 985 F.3d at 521; Logan, 939 F.3d at 833; see also Ragone, 595 F.3d at 125-26; Castellanos, 291 F. Supp. 3d at 298; Friedmann, 2012 WL 4976124 (refusing to enforce a shortening of an employee's limitations period to pursue claims under the ADEA and Americans with Disabilities Act).[16] It bears repeating that the EEOC itself considers the timing scheme in the ADEA to be a substantive, non-waivable right that cannot be abridged by contract. See Thompson, EEOC Brief, 2020 WL 1160190, at *19-23.

Moreover, IBM's agreement cannot waive Claimant's claims under the ADEA, since IBM did not provide the disclosures required under the OWBPA (disclosures

---

[16]    See also Graham Oil, 43 F.3d at 1248-49; Sanford, 2014 WL 266410; Mazurkiewicz, 971 F.Supp.2d 682; Cole, 2012 WL 6047741 (same); O'Phelan, 2005 WL 2387647; Mabry, 2005 WL 1167002; Wineman, 352 F. Supp. 2d at 821; Lewis, 241 F.Supp.2d 769; Salisbury, 938 F. Supp. 435.

21

regarding the ages of employees selected and not selected for layoff. The OWBPA

mandates strict requirements that employers must meet in order to obtain a valid waiver

from an employee of "any right or claim" under the ADEA. See 29 U.S.C. § 626

(f)(1)(H); 29 C.F.R. § 1625.22(f); see also Oubre, 522 U.S. at 427.[17] Importantly, the

EEOC has taken the position that the OWBPA protects employees from waiving rights

by abridging their time to pursue their claims if they did not receive the proper

disclosures:

> The ADEA does have one other arguably relevant provision with no analogue in
> Title VII: 29 U.S.C. § 626(f) . . ., which expressly governs waivers of "rights or
> claims under this chapter." However, § 626(f), read together with Logan's holding
> that a statutory limitation period is a substantive right, only strengthens the
> argument against construing the ADEA's limitations period as prospectively
> waivable.

Thompson, EEOC Brief, 2020 WL 1160190, at *25. Because IBM did not provide

OWBPA disclosures to Claimant, Claimant cannot have waived his statute of limitations

rights under the piggybacking rule by signing the arbitration agreement. To the extent

the agreement purports or is held to waive that rule, that provision is invalid.

Tellingly, the Thompson court even pointed to the OWBPA as an indicator that

the ADEA's limitations period was a substantive right that could not be waived:

> The ADEA's waiver provision further supports the conclusion that, **as a**

_____

[17]    The OWBPA's requirements have been enforced strictly. See, e.g., Kruchowski
v. Weyerhaeuser Co., 446 F.3d 1090, 1093-96 (10th Cir. 2006) (finding waiver invalid
where OWBPA disclosures did not include entire decisional unit); Loksen v. Columbia
Univ., 2013 WL 5549780, at *7-8 (S.D.N.Y. Oct. 14, 2013) (finding substantial
compliance not enough; omission of even one person from group of 17 considered,
although probably immaterial, invalidated waiver); Butcher v. Gerber Prods. Co., 8 F.
Supp. 2d 307, 314 (S.D.N.Y. 1998) (holding that releases that did not contain all the
elements listed in 29 U.S.C.S. § 626(f)(1)(A)-(H) of the OWBPA, were invalid and
because employers were required to comply with the OWBPA upon their first
notification to employees, their later correspondence could not cure the earlier
deficiencies).

22

**substantive right, its self-contained limitation period may not be prospectively waived.** It provides that "[a]n individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f). A waiver may not be "knowing and voluntary" if it includes waiver of "rights or claims that may arise after the date the waiver is executed." *Id.* § 626(f)(C). The statute's strict limitations on waivers align with "the general rule in this circuit that an employee may not prospectively waive his or her rights under either Title VII or the ADEA." Adams v. Philip Morris, Inc., 67 F.3d 580, 584 (6th Cir. 1995).

Thompson, 985 F.3d at 521.[18]

Claimant expects that IBM will argue that the OWBPA protects only substantive rights and that the limitations period at issue here is procedural. But as Claimant has explained, the ADEA's timing scheme is a substantive right rather than a procedural

---

[18]    Moreover, the arbitration agreement's purported waiver of the piggybacking rule also cannot be valid because the OWBPA requires that, in order for a waiver to be valid, it must be "a part of an agreement between the individual and the employer that is **calculated to be understood by such individual, or by the average individual eligible to participate.**" 29 U.S.C. § 626(f)(1)(A) (emphasis added). The timing provision of the arbitration agreement is not only incoherent, but requires the reader to have the expertise of an employment discrimination lawyer and a thorough understanding of administration exhaustion to parse it.  To even attempt to understand the statute of limitations that applies to them, the IBM employees would have to understand: (1) the administrative and court statute of limitations under the ADEA; (2) which types of claims "must first be brought before a government agency"; and (3) the deadline for filing with the administrative agency in their state.  That is certainly more information than the average IBM employee has, and even by its own terms the language is ambiguous and confusing. The OWBPA's requirement that the language of the waiver be calculated to be understood by the employee has been strictly construed by numerous courts, including against IBM.  See Syverson v. International Business Machines Corp.,472 F.3d 1072, 1082-87 (9th Cir. 2007) (invalidating a waiver that contained both a release and a covenant not to sue because average individuals might be confused and think that they could still bring an action under the ADEA); Thomforde v. International Business Machines Corp., 406 F.3d 500, 503-05 (8th Cir. 2005) (same); Bogacz v. MTD Products, Inc., 694 F. Supp. 2d 400, 404-11 (W.D. Pa. 2010) (invalidating a release that contained both a waiver and covenant not to as confusing, since the language of the agreement suggested that employees could not bring suit, even to test validity of waiver); Rupert v. PPG Industries, Inc., 2009 WL 596014, at *38-49 (W.D. Pa. Feb. 26, 2009) (recommending invalidation of release that contained both a waiver and covenant not to sue, since it was confusing); see also 29 C.F.R. § 1625.22(b)(3) (2005) (the comprehensibility requirement "usually will require the limitation or elimination of technical jargon and of long, complex sentences.").

23

**App.361**

right, just like in Title VII. See Thompson, 985 F.3d at 521; Logan, 939 F.3d at 829-33;

Thompson, EEOC Brief, 2020 WL 1160190, at *19.

Even if the piggybacking rule was a procedural right, the express language of the

OWBPA does not distinguish between procedural and substantive rights, stating that

"[a]n individual may not waive **any right or claim**" without first receiving the OWBPA

disclosures. 29 U.S.C. § 626(f)(1).  See Hammaker v. Brown & Brown, Inc., 214 F.

Supp. 2d 575, 578-81 (E.D. Va. 2002) (holding the OWBPA to apply to procedural rights

and substantive rights under the ADEA and noting that the OWBPA must be interpreted

broadly in furtherance of "the OWBPA's purpose to protect the rights and benefits of

older workers"); Thiele v. Merrill Lynch, Pierce, Fenner & Smith, 59 F. Supp. 3d 1060,

1064-65 (S.D. Cal. 1999) (examining the legislative purpose of the OWBPA and

concluding that the OWBPA was intended to substantive rights and procedural rights

under the ADEA equally).[19]  In sum, because the enforcement of the piggybacking

waiver in IBM's arbitration agreement would abridge Claimant's right altogether to

pursue his claims under the ADEA, the Arbitrator must hold the waiver to be invalid.

### D.    The Arbitrator Should Have Applied Equitable Tolling

As Claimant explained in his Opposition to IBM's Motion to Dismiss, the Supreme

Court has made clear that timely filing of a charge of discrimination is not a jurisdictional

---

[19]    While a court recently held that the OWBPA did not protect the procedural right
of proceeding as a collective action under the ADEA, see Estle v. International Business
Machines Corp., 2020 WL 5633154, at *3-7 (S.D.N.Y. Sept. 21, 2020), that case did not
address the question at issue here. (In Estle, the plaintiffs sought to invalidate the class
action waiver in IBM's arbitration agreement.  In contrast, here, Claimant is not trying to
avoid arbitration or the impact of the class action waiver. Instead, he seeks to avoid a
result in which his ability to proceed on his ADEA claim is precluded altogether.)
Moreover, the plaintiffs in Estle have appealed that court's decision to the Second
Circuit, and that appeal was recently argued on September 29, 2021. See Estle v.
International Business Machines Corp., No. 20-3372 (2d Cir.).

24

prerequisite, but rather "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes, 455 U.S. at 393. As the court explained in Zipes, "[b]y holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement **subject to waiver as well as tolling** when **equity so requires**, we honor the **remedial purpose of the legislation** as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer. Id. at 398 (emphasis added). Subsequent decisions have adopted this reasoning. See Ft. Bend County, Texas v. Davis, 139 S. Ct. 1843, 1846 (2019) ("Title VII's charge-filing instruction is not jurisdictional, a term generally reserved to describe the classes of cases a court may entertain []or the persons over whom a court may exercise adjudicatory authority [].  Prerequisites to suit like Title VII's charge-filing instruction . . . are . . . claim-processing rules that must be timely raised to come into play."). In other words, "[a] statutory condition that requires a party to take some action before filing a lawsuit is not automatically 'a *jurisdictional* prerequisite to suit.'" Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010) (quoting Zipes, 455 U.S. at 393). Moreover, it bears repeating that this is not even an issue of *filing*, as Claimant timely filed the demand with JAMS – it is merely an issue of *serving*.

The Arbitration Agreement provides the Arbitrator the authority to apply equitable tolling. The Arbitration Agreement clearly provides that "the arbitrator(s) is authorized to award any party the **full remedies** that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction[.]" Arbitration Agreement at 31-32, Ex. B to Arb. Demand (emphasis added). Such remedies include equitable tolling,

which is frequently applied in discrimination cases, see Zipes, 455 U.S. at 393, as well as equitable modification. See Berklee College of Music, 858 F.2d at 33.

The Arbitration Agreement thus empowers the Arbitrator to apply the doctrine of equitable tolling to allow Claimant to pursue his claim. Given the circumstances of this case, doing so would be in the interest of justice and fairness.

## IV.    CONCLUSION

For the foregoing reasons, the Arbitrator should grant reconsideration of the Order of Dismissal and permit Claimant's claim to proceed.

Respectfully Submitted,
JAMES OWENS, Claimant

By his attorneys,

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan
Thomas Fowler
Michelle Cassorla
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com; tfowler@llrlaw.com;
mcassorla@llrlaw.com

Dated:        December 8, 2021

26

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing document was

served on all counsel of record for Respondent IBM by JAMS Access on December 8,

2021.

*/s/ Michelle Cassorla*
Michelle Cassorla

27

**App.365**

**JAMS Arbitration**
**Before the Honorable Richard A. Levie**

**JAMES OWENS,**

        **Claimant,**

   **v.**

**INTERNATIONAL BUSINESS MACHINES CORP.,**

        **Respondent.**

**Reference No. 1410008730**

## <u>DECLARATION OF THOMAS FOWLER</u>

I, Thomas Fowler, hereby declare as follows:

1.     I am an adult resident of Holliston, Massachusetts. I am an associate at the law firm Lichten & Liss-Riordan, P.C. I am one of the attorneys representing the Claimant in the above-captioned matter.

2.     Over the course of the pandemic, Lichten & Liss-Riordan has taken stringent measures to ensure the safety of all attorneys, staff, and clients. Specifically, the office has been closed starting in March 2020 and throughout the pandemic, and the number of individuals who are permitted to be physically present at the office has been sharply limited, especially during the periods of time that the number of COVID-19 cases have surged.

3.     Because COVID-19 cases were surging severely in Massachusetts and the rest of the country in November 2020, the firm's office was closed completely. Due to safety concerns, neither the firm's paralegals nor attorneys were working in the office

– instead, they were all working from home. Because no one was in the office, the firm's ability to mail documents via the US Postal Service was significantly disrupted.

4.    As such, while the firm was able to file the Claimant's Arbitration Demand with JAMS electronically on November 17, 2020, the disruption in the office mail logistics caused a one-day delay in the service of the Arbitration Demand on IBM by mail.

5.    Additionally, following a long illness, my father died in November 2020. His funeral took place on November 15, 2020. As a result, I was out of the office the week the demand in this case was filed.

Signed under the pains and penalties of perjury on December 8, 2021.

/s/ Thomas Fowler
Thomas Fowler

2

**App.367**

# EXHIBIT 13
## TO MOTION TO VACATE
## ARBITRATION AWARD

**In the Matter of Arbitration between**

JAMES OWENS,

          Claimant

and

INTERNATIONAL BUSINESS MACHINES CORP.,

          Respondent.

JAMS Ref. No. 1410008730

**ORDER DENYING MOTION FOR RECONSIDERATION[1]**
**(January 7, 2022)**

    In this arbitration, James Owens ("Claimant" or "Mr. Owens") alleges that International Business Machines Corp. ("IBM") terminated him on account of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (hereafter, the "ADEA"). On November 19, 2021, the Arbitrator issued an Order of Dismissal, which granted IBM's Motion to Dismiss on the ground that Mr. Owens failed to commence this arbitration in the manner required by the "Arbitration Procedures" in the parties' "Separation Agreement."[2]

---

[1] The Order of Dismissal, including the procedural history, facts, and analysis found therein, are incorporated by reference herein. For efficiency and economy, this Order recites only those facts and discusses only those legal arguments the Arbitrator considers necessary to establish the basis for resolution of Mr. Owens's motion. To the extent that any factual assertion or legal argument is not specifically mentioned herein, the Arbitrator has decided that it is either not persuasive and/or not essential to establish the basis for this Order.

[2] The Separation Agreement is attached as Exhibit B-Attachment 2 to Claimant's Arbitration Demand (the "Demand"). The arbitration clause is found in section 5, page 28, of the Separation Agreement. The "Arbitration Procedures," including a limitations period and method for submitting a claim against IBM, are set forth in "Attachment 3: Arbitration Procedure and

On December 8, 2021, Claimant submitted a Motion for Reconsideration pursuant to the "Reconsideration and Review" provision of the Arbitration Procedures, which provides that such a motion may be filed within 20 days of the "Arbitrator's decision." (Demand, Exhibit B, Attachment 3 at p. 31). Respondent submitted opposition to Claimant's motion.[3]

After review of all submissions, the Arbitrator concludes that the Motion for Reconsideration should be denied for the reasons stated below.

## I.    Applicable Law and Standard

The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age" (29 U.S.C.A. § 623(a)(1)), but there are certain prerequisites to filing a lawsuit in court alleging a claim under the ADEA. The ADEA requires that claimants first file a charge with the EEOC within a prescribed time period. *See id.* § 626(d). For a person like Claimant who was employed in North Carolina the period for filing an EEOC charge is 180 days.[4]

Under the ADEA, the limitations period begins to run from the point in time that the employee receives notice of the alleged unlawful employment practice. *See Hamilton v. 1st Source Bank*, 928 F.2d 86, 88 (4th Cir. 1990) (citing cases). Courts in the Fourth Circuit have strictly

---

Collection Action Waiver (Attachment to Separation Agreement)," which is also part of Exhibit B.

[3] The Arbitration Procedures include a schedule for filing a motion for reconsideration and opposition to that motion, but not a schedule for a reply.

[4] IBM asserts, without dispute, that Claimant was employed in North Carolina and that the applicable period for filing in North Carolina is 180 days. (Response to Motion to Dismiss at 1).

2

construed statutes of limitations for filing charges both with the EEOC and under Title VII. *See, e.g.*, *Harvey v. New Bern Police Dep't*, 813 F.2d 652, 655 (4th Cir. 1987); *Anderson v. Am. Airlines, Inc.*, 2018 WL 4258505, at *2 (W.D.N.C. Sept. 5, 2018); *Bond v. Potter*, 348 F. Supp.2d 525, 529 (M.D.N.C. 2005); *Kimes v. Laboratory Corp. of American, Inc.*, 313 F. Supp.2d 555, 560 (M.D.N.C. 2004).

The Separation Agreement permits a party to file a motion to reconsider, but does not set forth a standard for adjudication of such motion.[5] Notably, however, the Arbitration Procedures allow the parties to make "motions permitted by the Federal Rules of Civil Procedure" ("Fed. R. Civ. Pro."). (Demand, Exhibit B, Attachment 3 at p. 31). In his motion, Claimant cites to the Arbitration Procedures as well as to Fed. R. Civ. Pro. 59(e) and 60. The Arbitrator considers the Federal Rules to supply an appropriate standard for adjudicating Claimant's motion.

Rule 59(e) states that a judgment may be amended "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) ("Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.").

———————————————

[5] The JAMS Employment Arbitration Rules & Procedures, which, together with the Arbitration Procedures, apply in this arbitration, do not address motions for reconsideration.

3

Fed. R. Civ. P. 60 sets forth six bases for relief:

>   (1) mistake, inadvertence, surprise, or excusable neglect;

>   (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

>   (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

>   (4) the judgment is void;

>   (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

>   (6) any other reason that justifies relief.

Notably, Rule 60 "'does not authorize a motion merely for reconsideration of a legal issue.'" *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 400 (4th Cir. 1995) [quoting *United States v. Williams*, 674 F.2d 310, 312 (4th Cir. 1982)]. As explained by the Fourth Circuit Court of Appeals, "[w]here the motion is nothing more than a request that the district court change its mind [ ] it is not authorized by Rule 60(b)." *Williams*, 674 F.2d at 313 [citing Wright & Miller, 11 Federal Practice and Procedure § 2858].

## II.    Arguments of the Parties

Claimant argues that the Arbitrator should reconsider the Order of Dismissal for the following reasons:

>   (1)       Because Claimant filed his Demand with JAMS on the last permissible day of the 180-day limitations period, dismissal is not required (even though Claimant

4

did not mail the Demand to IBM until a day or so later). (Mot. at 2, 6-7; *see* Claimant's Opposition to IBM's Motion to Dismiss ("Cl. Opp.") at 2 ["Claimant timely filed his demand."]).

(2)        The Arbitration Procedures are ambiguous because the phrase "no later than the deadline for the filing of such a claim," could refer, as IBM argues, to the 180-day deadline that Claimant had to file a charge with the EEOC or, as now argued by Claimant, the deadline within which Claimant had to file a claim in court, which would be more than 180 days. The Arbitrator should adopt Claimant's (new) interpretation of the Arbitration Procedures as permitting him to submit the Demand to IBM at a minimum of 240 days after he received notice of his termination, and thus find that he timely submitted the Demand. (Mot. at 2, 8-12).

(3)        The timing provisions of the ADEA are part of substantive law, and therefore by imposing a deadline that is shorter than the time Claimant would have had to file an ADEA claim in court, the Arbitration Procedures impermissibly abridge a substantive right under the ADEA. (Mot. at 3, 12-15 [citing, *inter alia, Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 521 (6th Cir. 2021); *Thompson v. Fresh Prods., LLC*, EEOC Brief, 2020 WL 1160190, at *19 (6th Cir. Mar. 2, 2020); *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019)]).

(4)        (a) "The Arbitrator incorrectly determined that Claimant could not utilize the piggybacking rule" because Claimant would have been able to piggyback had the claim been filed in court.

5

(b) As a consequence of (4a), the effect of the Separation Agreement is, as argued in (3) above, to impermissibly abridge the limitations period. That is, the "piggybacking waiver"[6] is invalid and unenforceable because "the ADEA's timing scheme is a non-waivable substantive right under the ADEA, and the purported waiver would impermissibly prevent the effective vindication of Claimant's claims in arbitration." (Mot. at 17; *id.* at 4, 16-23 [citing, *inter alia, Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057-59 (2d Cir. 1990); *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565-70 (2d Cir. 2006); *Thompson* (*supra*); *Logan* (*supra*)]; *see* Cl. Opp. at 2, 8-9).

(c) A permissible waiver did not occur because IBM did not provide the disclosures required under the Older Workers Benefit Protection Act ("OWBPA"). (Mot. at 21-24).

(5)    The Arbitrator should have applied equitable tolling, "[a]s Claimant explained in his Opposition to IBM's Motion to Dismiss"; and fairness dictates that the limitation period not be strictly enforced. (Mot. at 4, 24-26; *see* Cl. Opp. at 5-7).

---

[6] Piggybacking is precluded under the Arbitration Procedures which state that "The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration." (Demand, Exhibit B, Attachment 3 at p. 31).

6

IBM responds as follows:

(i)    "[T]he Arbitrator correctly enforced the Arbitration Agreement's plain terms and dismissed Claimant's claim as untimely" and that each of the arguments raised in his reconsideration motion fail. (Resp. Opp. at 1).

(ii)    Claimant argued points (1) and (5)[7] in opposition to the Motion to Dismiss and the Arbitrator correctly rejected these arguments. As to (1), the Arbitrator held that submitting the Demand to JAMS was insufficient, as the Arbitration Procedures required submission of the Demand to IBM. In connection with (5), the Arbitrator ruled that "'Claimant ha[d] not provided any persuasive arguments even arguably supporting any finding of a legal, factual, or equitable nature to excuse the untimely submission of the Demand.'" (Resp. Opp. at 6 [quoting Order of Dismissal at 8]).

(iii)    Claimant's new argument (2) above – that the Arbitration Procedures are ambiguous as to the applicable limitations period – should be rejected because the Arbitration Procedures are not ambiguous in that they expressly distinguish between the

---

[7] IBM also argues, in connection with (4) above, that the Arbitrator correctly ruled that the piggyback doctrine did not apply. (Resp. Opp. at 6 [citing Order of Dismissal at 9 ("because Claimant was not required to file an EEOC charge, 'the piggybacking doctrine is wholly inapplicable in the arbitration context.'" (quoting *Rusis v. Int'l Bus. Machs. Corp.*, 529 F. Supp. 3d 178, 193 (S.D.N.Y. 2021)]). To the extent that argument (4) is an attempt to relitigate the Arbitrator's conclusion as to the applicability of the piggybacking doctrine, it is rejected both because it is procedurally improper and because Claimant has not raised any argument that shows any error in the Arbitrator's conclusion.

7

deadline for filing a claim in court and the deadline for filing a claim with an agency. (Resp. Opp. at 16 [quoting Demand, Exhibit B, Attachment 3 at p. 31]).

(iv)    In connection with arguments (3) and (4), as a threshold matter, the Arbitrator does not have authority to adjudicate the enforceability of the Arbitration Procedures because the Separation Agreement "explicitly states that '[a]ny issue concerning the validity or enforceability of this Agreement . . . shall be decided **only by a court** of competent jurisdiction'"; and, indeed, Claimant had made this very point in *Rusis*, arguing that "'*the enforceability of the agreements is an exclusive matter for the courts.*'" (Resp. Opp. at 23 [quoting first Demand, Exhibit B, Attachment 3 at p. 28 and second *Rusis*, 529 F. Supp. 3d at 194, all emphasis in Resp. Opp.]).

(v)    On the merits, arguments (3) and (4) fail because the statutory limitations period was not truncated, the Arbitration Procedures, including the limitation provision and the piggybacking waiver, did not prevent Claimant from pursuing his ADEA claim and/or cause him to waive a substantive right under the ADEA or the OWBPA.

### III.    Discussion

Claimant has not shown any basis for relief from the Order of Dismissal.

Arguments (1) and (5) previously were made in opposition to the Motion to Dismiss and rejected by the Arbitrator in the Order of Dismissal. The Arbitration Procedures unambiguously require submission to IBM – not JAMS – within the limitations period in order to avoid waiver of the claim. Under the Arbitration Procedures, the failure to timely submit the Demand results in

8

waiver of the claim. Claimant has not raised made any additional factual or legal assertions that serve to excuse Claimant's failure to timely submit his Demand. (*See* Order of Dismissal at 8). Claimant has not provided evidence to show, or articulated a credible basis to believe, that the difficult circumstances he cites – the closure of Claimant's counsel's office due to the pandemic, and the unfortunate death of attorney Thomas Fowler's father –actually prevented mailing of the Demand on November 17, 2020, particularly as that mailing was accomplished a day later on November 18, 2020 (or shortly thereafter).

Each of the remaining arguments could have earlier been raised (or were already raised) and can be rejected for that reason alone. Nonetheless, there are reasons apart from Claimant's failure to raise these arguments at an earlier time that warrant their rejection.

Argument (2) – regarding the supposed ambiguity in the Arbitration Procedures as to whether it is the deadline to file an EEOC charge or the deadline to file an action in court that applies – requires little discussion. The Arbitration Procedures are not ambiguous. They provide that:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making **or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.** If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

9

(Demand, Exhibit B, Attachment 3 at p. 31). The only reasonable interpretation of the bolded language, taken together with the underlined language, is that where, as here, there is a requirement to file a claim before a government agency, the deadline for filing an agency claim applies, not the deadline for filing in court. *See Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993) ["Contract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage."].

Claimant's arguments about the enforceability of the limitations provision, do not provide grounds to disturb the Order of Dismissal. As a threshold matter, the arbitration clause unambiguously provides that issues of enforceability are for the courts, not the Arbitrator. (Demand, Exhibit B, Attachment 2 at p. 28). In fact, as noted by Respondent, Claimant made this very point in the district court in the *Rusis* case. *See Rusis*, 529 F. Supp. 3d at 194 ("In seeking a 'threshold ruling' on the piggybacking issue, Plaintiffs stress that the separation agreements provide that the enforceability of the agreements is an exclusive matter for the courts, and courts commonly decide such threshold issues of enforceability or validity before compelling the parties to arbitration.").

In any event, as a matter of fact and law, the limitations provision does not "impermissibly truncate the ADEA limitations period," regardless of whether the ADEA limitations period is a substantive statutory right. First, the Arbitration Procedures do not shorten the statute of limitations

10

– they provide Claimant with the same amount of time to submit the Demand as he would have had to file a charge with the EEOC.[8]

Second, under the Separation Agreement (and the Federal Arbitration Act), Claimant was required to arbitrate his claim; he could not file a charge with the EEOC and litigate in court, and thus any later deadlines to file a claim in court (which are triggered by the filing of an EEOC charge) are not implicated.

Third, the non-application of the piggybacking rule does not shorten the statute of limitations. The piggybacking rule is not part of the statute. It is a "a judge-made exception to administrative prerequisites," not a statute of limitations. (Order of Dismissal at 9).

Claimant's arguments that the limitations period and piggybacking waiver caused Claimant to waive a substantive right under the ADEA and the OWBPA are also without merit. As just indicated, the Arbitration Procedures do not truncate the time to bring a claim, and the piggybacking doctrine is not a statutory right.

Furthermore, the cases cited by Claimant do not support his position. Neither *Thompson v. Fresh Products, LLC* nor *Logan v. MGM Grand Detroit Casino*, concerned arbitration agreements. In those cases, the Sixth Circuit addressed contracts which truncated the time aggrieved employees

---

[8] This fact also disposes of Claimant's new argument that the Arbitration Procedures violate Standard 1 of the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, which provides that "All remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, as well as statutes of limitations, must remain available in the arbitration. Post-arbitration remedies, if any, must remain available to an employee." In addition, those standards only apply to pre-dispute arbitration agreements; Mr. Owens entered into the Separation Agreement after his dispute arose.

11

could file *lawsuits*. 985 F.3d at 519; 939 F.3d at 826. Notably, the *Logan* court found that *Morrison v. Circuit City Stores*,[9] an earlier case which addressed limitations in the arbitration context, was not controlling because that case required that "'the liberal policy favoring arbitration'" be balanced with "'the important goals of federal anti-discrimination statutes.'" *Logan*, 939 F.3d at 838 [quoting *Morrison v. Circuit City Stores*, Inc., 317 F.3d 646, 653 (6th Cir. 2003) (en banc)]; *id.* ["outside the arbitration context, Congress has not authorized litigants to alter the Title VII limitations periods"].[10]

Claimant's argument invoking the OWBPA is equally misplaced. No substantive right of Claimant's has been implicated by his agreement to arbitrate his ADEA claim. As explained by

---

[9] In *Morrison* the Sixth Circuit held that certain parts of the arbitration agreement were unenforceable. However, in a footnote, the court in cursory fashion addressed challenges to a provision limiting discovery and a one-year statute of limitations for bringing an arbitration. After citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the court rejected the challenge to the discovery provision and then stated, "Morrison has failed to show that the one-year limitations period in the agreement unduly burdened her or would unduly burden any other claimant wishing to assert claims arising from their employment." *Morrison*, 317 F.3d at 673 n.16.

[10] The few cases cited by Claimant which did address limitations periods in arbitration agreements are distinguishable. *See, e.g., Wineman v. Durkee Lakes Hunting & Fishing Club, Inc.*, 352 F. Supp. 2d 815 (E.D. Mich. 2005) (arbitration agreement purported to truncate the time to bring an FLSA claim to six months, whereas the statute of limitations for FLSA claims is two or three years, depending on whether the alleged conduct is willful). The cases which do not address arbitration clauses are inapposite and, as with *Logan*, can serve to highlight the importance of an arbitral context. *See, e.g., O'Phelan v. Fed. Exp. Corp.*, 2005 WL 2387647, at *4 (N.D. Ill. Sept. 27, 2005) (finding that contract provision limiting time to file Title VII claim to six months was not enforceable but distinguishing arbitration clauses: "arbitration clauses, such as that in *Gilmer*, ultimately lead to resolution of a dispute, whereas enforcement of a six month limitation on claims effectively prevents the plaintiff from having any mechanism for redress under Title VII due to the EEOC's administrative requirements").

12

the Supreme Court, "the ADEA does not preclude arbitration of claims brought under the statute." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) [citing *Gilmer*, 500 U.S. at 26-33].

The Separation Agreement does not bar ADEA claims or present insurmountable obstacles to pursuing them. That agreement, which Claimant entered into after his dispute arose, provided Claimant with the same amount of time to submit his Demand to IBM that he had to file a charge with the EEOC. Under these circumstances, no substantive right was waived, and specific disclosures were not required. *See 14 Penn Plaza LLC*, 556 U.S. at 260 ["Respondents incorrectly counter that an individual employee must personally 'waive' a '[substantive] right' to proceed in court for a waiver to be 'knowing and voluntary' under the ADEA. 29 U.S.C. § 626(f)(1). As explained below, however, the agreement to arbitrate ADEA claims is not the waiver of a 'substantive right' as that term is employed in the ADEA."].

### IV.    Conclusion

For the foregoing reasons, Claimant's Motion for Reconsideration is denied.[11]

So ordered.

Hon. Richard A. Levie (Ret.)
Arbitrator

Dated: January 7, 2022
Washington, DC

---

[11] To the extent that any argument has not been addressed in this Order, it has been considered and either rejected or found unnecessary to a determination of the issues in contention.

13

# EXHIBIT 14
## TO MOTION TO VACATE
## ARBITRATION AWARD

**JAMS ARBITRATION HON. RICHARD A. LEVIE (RET.)**

JAMES OWENS,

        Claimant,

   v.

INTERNATIONAL BUSINESS MACHINES CORP.,

       Respondent.

Reference No. 1410008730

**RESPONDENT INTERNATIONAL BUSINESS MACHINE CORP.'S BRIEF IN OPPOSITION TO CLAIMANT JAMES OWENS' MOTION FOR RECONSIDERATION**

## **INTRODUCTION**

In his November 19, 2021 Order,[1] the Arbitrator correctly enforced the Arbitration Agreement's plain terms and dismissed Claimant's claim as untimely. In particular, the Arbitrator held that the Arbitration Agreement required Claimant to mail his arbitration demand to IBM within 180 days and that any untimely-filed claim would be "waived." (Order at 7–8.) Accordingly, the Arbitrator held that the Arbitration Agreement "requires dismissal" of Claimant's ADEA claim against IBM because Claimant "did not mail his Demand until . . . one day after the time period expired for submitting a Demand." (*Id.*) The Arbitrator then rejected all of Claimant remaining arguments in opposition to IBM's Motion to Dismiss. (*See id.* at 7–10.)

Claimant now moves for reconsideration of the Arbitrator's Order on many of the same grounds. Indeed, he puts forth the same arguments that his claim is timely and that the Arbitrator has the authority to disregard the Arbitration Procedures' explicit limitations, filing, and waiver provisions. But Claimant cannot use his Motion for Reconsideration to re-litigate issues that the Arbitrator already disposed of. *See, e.g.*, *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 401 n.2 (4th Cir. 1995). And even if he could, Claimant's arguments all fail – as the Arbitrator has already determined.

Claimant also moves for reconsideration based on brand new arguments that he did not make in opposition IBM's Motion to Dismiss. But it is wholly improper to make new arguments on a motion for reconsideration. *See, e.g.*, *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) ("[Reconsideration] may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment . . . ."). Claimant's motion, therefore, is a non-starter and should be denied.

---

[1] Order refers to the Arbitrator's November 19, 2021 order granting IBM's Motion to Dismiss.

Even if Claimant could properly make new arguments, which he cannot, Claimant's contentions are baseless. Claimant asserts that the limitations provision "could be plausibly interpreted to mean . . . 180 days . . . [the period] Claimant had to file a charge with the EEOC . . . or . . . the time that Claimant had to file such a claim in court" – "at least 270 days." (Mot. for Reconsideration at 8–9, 9 n.3.) But Claimant's interpretation violates bedrock principles of contract law. *First*, Claimant's interpretation voids multiple terms in the limitations provision. But contracts cannot be construed to nullify terms therein. *See, e.g.*, *Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993). *Second*, Claimant's construction makes the limitations period indefinite and unknowable. Contracts, however, cannot be interpreted in a manner that creates an absurd result. *See, e.g.*, *Chi. Title Ins. Co. v. 100 Inv. Ltd. P'ship*, 355 F.3d 759, 764 (4th Cir. 2004).

Claimant also contends for the first time that Arbitration Agreement's 180-day limitations period and "waiver" of the "piggybacking rule" are "unenforceable" because they "impermissibly abridge the ADEA limitations period" and prevent Claimant from "pursu[ing] his ADEA claims **at all** in arbitration." (Mot. for Reconsideration at 12–16, 21 (emphasis in original).) This, however, is a bald attempt to blame *IBM* for Claimant's late filing. To begin, under the clear terms of the Arbitration Agreement, the Arbitrator does not have authority to adjudicate enforceability of the Arbitration Agreement's limitations provision or piggybacking waiver. Only a court may do so. (*See* Ex. B to Claimant's Arbitration Demand at 31); *see, e.g.*, *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010). In any event, the Arbitration Agreement does not shorten the limitations period for Claimant's claim but instead adopts the ADEA statute of limitations. (*See* Ex. B to Claimant's Arbitration Demand at 31.) And, the Arbitration Agreement's waiver of the single-filing doctrine

-2-

likewise does not shorten the ADEA's statute of limitations. Rather, the single-filing doctrine is not part of the statute. *See* 29 U.S.C. § 626(d). Moreover, nothing in the Arbitration Agreement prevents Claimant from pursuing his ADEA claim in arbitration. Indeed, Claimant could have done so *if he timely filed his Arbitration Demand*.

Thus, the Arbitrator should affirm his decision, and deny Claimant's Motion for Reconsideration.

## ARGUMENT

A party seeking reconsideration under Rule 60(b) must make a showing of "exceptional circumstances" before proceeding "to satisfy one or more of the rule's six grounds for relief from judgment . . . ." *Wenrer v. Carbo*, 731 F.2d 204, 206–207 (4th Cir. 1984); *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990) ("The remedy provided by [Rule 60] is extraordinary and is only to be invoked upon a showing of exceptional circumstances.") (cleaned up). Simply put, motions for reconsideration may be granted only in extraordinary circumstances. *See Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (*en banc*).

Fourth Circuit law is clear that, "[w]here the motion seeks reconsideration of legal issues already addressed in an earlier ruling, the motion is not authorized by Rule 60(b)." *United States v. Va. Am. Mgmt. Co.*, 166 F.3d 1211, 1211 (4th Cir. 1998) (per curiam) (citing *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 401 n.2 (4th Cir. 1995) ("If a party attempts to raise in a motion for reconsideration a legal issue already decided by the [arbitrator], it follows that no abuse of discretion has taken place."); *see also United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982) ("Where the motion is nothing more than a request that the district court change its mind, . . . it is not authorized . . . .") (citing Wright & Miller, 11 Federal Practice and Procedure § 2858).

Additionally, on reconsideration, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 140 S.Ct. 1698, 1703 (2020) (citing Wright & Miller, 11 Federal Practice and Procedure § 2910.1); *see, e.g.*, *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) ("[Reconsideration] may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance."); *Caisee Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."). "The motion is therefore tightly tied to the underlying judgment." *Banister*, 140 S.Ct. at 1703; *see A&C Constr. & Installation, Co. WLL & Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020) ("The district court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.") (cleaned up); Wright & Miller, 11 Federal Practice and Procedure § 2857 ("The cases show that although the courts have sought to accomplish justice, they have . . . a scrupulous regard for the aims of finality.").

Now, on reconsideration, Claimant repackages old arguments that the Arbitrator already rejected. And as before, they are meritless. Claimant's attempts to raise new arguments are similarly futile because he may not raise issues on reconsideration that he could have advanced in his Opposition to IBM's Motion to Dismiss.

*Thus, Claimant's Motion for Reconsideration should be denied on these bases alone.* But in either case, IBM will address each of Claimant's arguments.

-4-

**I.    THE ARBITRATOR RIGHTLY HELD THAT CLAIMANT'S DEMAND WAS UNTIMELY AND MUST BE DISMISSED UNDER THE ARBITRATION AGREEMENT'S CLEAR TERMS.**

In his Order, the Arbitrator enforced the Arbitration Agreement's "clear and unambiguous" terms and dismissed Claimant's ADEA claim as time-barred.  (*See* Order at 8.)  In brief, the Arbitrator held that "Claimant's failure to timely submit his Demand to the IBM Arbitration Coordinator requires dismissal of this Arbitration."  (*Id.* at 7.)  More specifically, the Arbitrator found that to initiate arbitration under the Arbitration Agreement, Claimant was required to "'submit[] a written demand for arbitration to the IBM Arbitration Coordinator'" by November 17, 2020.  (Order at 3 (quoting Ex. B to Claimant's Arbitration Demand at 31), 4, 7.)  Yet, Claimant "did not mail his Demand until November 18, 2021 . . . ."  (*Id.* at 7.)  Thus, the Arbitrator correctly concluded that Claimant's ADEA claim was untimely and granted IBM's Motion to Dismiss.

The Arbitrator also rebuffed Claimant's "equitable" arguments.  For one, the Arbitrator rejected Claimant's assertion that the Arbitration Agreement's filing requirements can be set aside as "non-jurisdictional."  (*Id.* at 8.)  The Arbitrator explained, "[t]he issue here is whether Claimant complied with the Arbitration Procedures and what are the consequences of that failure."  The Arbitrator continued, "[Claimant] did not comply with the Arbitration Procedures and the Arbitration Procedures unambiguously set forth the consequences of that failure – waiver of the claim.  That ends the inquiry."  (*Id.*)  This conclusion was a logical one, giving full effect to the unambiguous terms of the parties' bargained-for agreement.

Relatedly, the Arbitrator saw through Claimant's half-hearted attempt to re-write the terms of the Arbitration Agreement that he agreed to.  (Order at 7.)  The agreement unequivocally required Claimant to send his Demand to IBM's Arbitration Coordinator to initiate arbitration. (*Id.*)  The Arbitrator easily concluded that Claimant failed to satisfy this condition – thereby "requir[ing] dismissal" of Claimant's claim.  (*Id.* at 7–8.)   And, the Arbitrator then recognized

-5-

that "Claimant has not provided any persuasive arguments even arguably supporting any finding of a legal, factual, or equitable nature to excuse the untimely submission of the Demand." (*Id.* at 8 (internal citation omitted).)  Finally, the Arbitrator made short work of Claimant's attempt to "piggyback" on the *Rusis* named plaintiffs' EEOC charges.  (*Id.* at 9–10.)  The Arbitrator concluded, "[t]he Arbitration Procedures are very explicit . . . that 'the filing of a charge of complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration.'" (*Id.* at 3 (quoting Ex. B to Claimant's Arbitration Demand at 32).)  Accordingly, "because Claimant was not required to file an EEOC charge, 'the piggybacking doctrine is wholly inapplicable in the arbitration context.'"  (*Id.* at 9 (quoting *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 193 (S.D.N.Y. 2021).)

In sum, the Arbitrator found that, under the express terms of the Arbitration Agreement, Claimant's ADEA claim is untimely and thus waived.  This conclusion was not erroneous:  It was sensible and well-reasoned.

## II.    CLAIMANT IMPERMISSIBLY RE-LITIGATES ARGUMENTS THAT THE ARBITRATOR ALREADY REJECTED.

### A.    Claimant's November 17, 2020 Submission To JAMS Is Irrelevant.

As before, Claimant attempts to re-write the clear terms of his Arbitration Agreement's filing and limitations provisions.  He asserts that he "**did** in fact timely file his arbitration demand with JAMS," and that his "only transgression" was that "he should have mailed a copy of the demand to IBM the same day he filed it, rather than the next day." (Mot. for Reconsideration at 1 (emphasis in original).)  But Claimant made this same argument in opposing IBM's Motion to Dismiss.  (*See* Opp. to Mot. to Dismiss at 3–4.)  And the Arbitrator squarely rejected it.  The Arbitrator first found that the "Arbitration Procedures include a process . . . for initiating an arbitration" – namely, "'*submit[ting] a written demand for arbitration to the IBM Arbitration*

-6-

**App.389**

*Coordinator* . . . .'"  (Order at 3 (quoting Ex. B to Arbitration Demand at 31) (emphasis in original).)  Consequently, the Arbitrator held:

> Claimant's failure to timely submit his Demand to the IBM Arbitration Coordinator requires dismissal of this Arbitration.  In essence, Claimant did not get his Demand to the IBM Arbitration Coordinator in a timely fashion and the Arbitrator reads the Arbitration Agreement as unambiguously setting the procedure for initiating a demand and there are no reasons presented that would warrant excusing Claimant's failure to timely submit a demand.

(Order at 7.)  Thus, Claimant's argument "is nothing more than a request that the" Arbitrator change his mind and should be rejected accordingly.  *See Williams*, 674 F.2d at 313.

**B.    The Arbitration Agreement's Limitations Periods Must Be Strictly Enforced.**

Claimant also repeats his already-rejected argument that arbitrator may "lenien[tly]" construe arbitration agreements' limitations periods to permit time-barred claims.  (Mot. for Reconsideration at 10–12.)  But, once again, Claimant raised this contention before (*see* Opp. to Mot. to Dismiss at 4–7), and cannot repackage it on reconsideration.

The Arbitrator already rejected Claimant's argument because it is inapplicable to Claimant's arbitration agreement with its "very clear" and "unambiguous" limitations and waiver provisions.  (Order at 8.)  Specifically, the Arbitrator determined that the limitations provision is "clear and unambiguous," and "include[s] a . . . deadline for initiating an arbitration . . ." – namely, the ADEA's deadline for "fil[ing] a charge with the EEOC" – "180 days." (*Id.* at 3–4, 8.)  The Arbitrator also concluded that "[c]ourts in the Fourth Circuit have strictly construed statutes of limitations for filing charges both with the EEOC and Title VII charges." (*Id.* at 5).  And, the Arbitrator "disagree[d] with Claimant's assertion that the [waiver provision] [is] ambiguous," entitling the Arbitrator to determine waiver. (*Id.* at 8.)  Rather, the waiver provision is "very clear" and "means that untimely claims are waived." (*Id.* at 8.)

For his part, in seeking reconsideration, Claimant adds nothing to warrant a change to this result.  Claimant once again does not cite a single case holding that arbitrators have authority to make exceptions to an arbitration agreement's clear and mandatory terms.  Indeed, Claimant merely re-cites the cases he previously put forth in support of his contention that the Arbitrator may make "*de minimis*" exceptions to the Arbitration Agreement's limitations, filing, and waiver provisions.  (*Compare* Mot. for Reconsideration at 10–12 *with* Opp. to Mot. to Dismiss at 4–7.)  IBM already proved that none of Claimant's cases hold that an arbitration agreement's explicit limitations and waiver provisions may be "lenien[tly]" construed to permit arbitrators to make exceptions thereto.  (Reply at 9–10, 12–14.)  Indeed, the Arbitrator agreed with IBM that these cases are inapposite because, unlike the Arbitration Agreement here, they involve ambiguous contractual terms and "stand[] for the unremarkable proposition that in the absence of clear terms . . . requiring strict enforcement of a statute of limitations, arbitrators have discretion to 'overlook *de minimis* violations' of that agreement."  (*See* Order at 8 n.5 (discussing *Berklee Coll. of Music v. Berklee Chapter of Mass. Fed'n of Teachers, Loc. 4412, AFT, AFL-CIO*, 858 F.2d 31, 32 (1st Cir. 1988)).)

Thus, Claimant's assertion that the Arbitration Procedures' limitations period should be flexibly construed is meritless.

### C.    Fairness Concerns Do Not Permit The Arbitrator To Contradict The Arbitration Agreement's Terms.

Claimant also suggests (again) that the Arbitrator should contravene the Arbitration Agreement's filing, limitations, and waiver provisions "in the interest of justice and fairness." (Mot. for Reconsideration at 25–26.)  Specifically, Claimant asserts that his deadline to demand arbitration should be "equitabl[y] toll[ed]" based on the same "fairness" considerations that Claimant raised in his Opposition:  (i) Claimant's counsel's firm "w[as] working remotely due to

the COVID-19 pandemic . . . and there was no mechanism for regularly sending out correspondence by mail"; and (ii) "timing of mail deliveries [wa]s uncertain . . . during the pandemic." (*Id.* at 1–2.)

The Arbitrator disposed of this argument, finding Claimant's fairness considerations to be lacking. (*See* Order at 1 n.1, 8, 10 n.7.) To begin, "[c]ourts strictly adhere to the time limits . . . and rarely allow equitable tolling of limitations periods." *Eaton v. Dig. Equip. Corp.*, 16 Fed. App'x 95, 96 (4th Cir. 2001). "For equitable tolling to apply, a litigant must establish (1) that he has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Wafraa v. Ali*, 1 F.4th 289, 294 (4th Cir. 2021) (cleaned up). "Its invocation must be reserved for those rare instances where – due to circumstance **external to the party's own conduct** – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.* (emphasis added) (cleaned up).

Here, the Arbitrator held that "Claimant has not provided any finding of a legal, factual or equitable nature to exclude the untimely submission of the Demand." (Order at 8.) Indeed, the Arbitrator found Claimant's purported bases for equitable tolling to be sufficiently unpersuasive as to merit no discussion. (*Id.* at 1 n.1 ("[T]his Order of Dismissal . . . discusses only those legal arguments that the Arbitrator considers necessary to establish the basis for resolution of IBM's motion. To the extent any factual or legal argument is not specifically mentioned herein, the Arbitrator has decided that it is either not persuasive and/or not essential . . . ."), 10 n.7 ("To the extent that any argument has not been addressed in this Order of Dismissal, it has been considered and either rejected or found unnecessary to a determination of the issues in contention.").)

Further, IBM has already established that Claimant's fairness considerations cannot be a basis for equitable tolling. (Reply at 17–20.) Namely, IBM demonstrated that courts routinely

dismiss untimely employment discrimination claims that are late-filed due to attorney error or inadvertence, and even when the late filing is caused by circumstances significantly more dire than those here, including infirmity or medical emergency. (*Id.* at 17–19.) IBM also showed that *Claimant's counsel's error caused Claimant's claim to be untimely.* (*Id.*) As such, equitable tolling cannot apply.[2] (*Id.*)

In sum, in his Order, the Arbitrator answered the question of equitable tolling's applicability, and Claimant has asserted nothing to change the Arbitrator's conclusion.

### D.    The Single-Filing Doctrine Does Not Apply.

Claimant also tries resurrecting his assertion that his claim is timely because "the time he had to file his Arbitration Demand" was "toll[ed]" by the filing of purported "classwide EEOC charge[s]" by the three named plaintiffs in *Rusis*. (*Id.* at 16–21.) Not surprisingly, Claimant's argument on this point is repetitive of his Opposition, and Claimant adds nothing that changes the Arbitrator's decision. (*Compare id.* at 16–21 *with* Opp. to Mot. to Dismiss at 7–9.)

Here, the Arbitrator already rejected application of the single-filing doctrine. (Order at 9–10.) The Arbitrator held, "[t]here are **several** reasons to reject application of the piggybacking doctrine to excuse Claimant's failure to timely provide notice." (*Id.* at 9 (emphasis added).) The Arbitrator explained, "[u]nder the judge-made exception to the requirement that ADEA plaintiffs *exhaust their remedies*, courts have *tolled the filing of EEOC charges* of individual plaintiffs where another's charge 'contained sufficient information to notify prospective defendants of their

---

[2] In his Motion for Reconsideration, Claimant's counsel, Thomas Fowler, asserts for the first time that Claimant's Demand was late-filed because Mr. Fowler was out of the office to attend his father's funeral. (Decl. of T. Fowler in Support of Mot. for Reconsideration at ¶ 5.) While Mr. Fowler's father's passing is unquestionably sad, it is not grounds for equitable tolling. As IBM pointed out in its Reply (at 19), Claimant is not represented by a solo practitioner, but rather by a well-known law firm with numerous attorneys, paralegals, and support staff. Indeed, this is evident from the very fact that Mr. Fowler did not appear on Claimant's Opposition. Rather, two other attorneys at the firm – Michelle Cassorla and Shannon Liss-Riordan – appeared. Simply put, Claimant's counsel's firm had ample resources to mail Claimant's Demand during Mr. Fowler's absence.

potential liability and permit the EEOC to attempt informal conciliation . . . .'" (*Id.* (quoting *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995) (emphasis added).)  Here, however, "[t]he Arbitration Procedures are very explicit . . . that '[t]he filing of a charge or complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration.'" (*Id.* at 4 (quoting Ex. B to Claimant's Demand at 31).)  The Arbitrator continued, "as the *Rusis* court itself noted, because Claimant was not required to file an EEOC charge 'the piggybacking doctrine is wholly inapplicable in the arbitration context.'" (*Id.* (quoting *Rusis v. Int'l Bus. Machs. Corp.*, 529 F. Supp. 3d 178, 193 (S.D.N.Y. 2021)).)  Accordingly, "[t]he issue here is whether Claimant complied with the terms of the Arbitration Procedures, not whether his time to file a charge with the EEOC should be tolled . . . ."  *Id.*  Thus, "the Arbitrator does not agree that the piggybacking doctrine can be applied to modify the terms of the parties' agreement." (*Id.* at 10.)  The Arbitrator should not entertain Claimant's request for reconsideration of a legal issue that was already decided.

In any event, that the Arbitrator correctly rejected Claimant's piggybacking theory.  In its Reply (at 22–28), IBM demonstrated that the single-filing doctrine cannot apply in this arbitration.  Indeed, IBM answered all of Claimant's now-repeated piggybacking suppositions.  (*Id.*)  In the interest of brevity, IBM will only summarize its arguments here, and refers the Arbitrator to its prior briefing.  Claimant's attempt to extend his limitations period by invoking a narrow, judicially-created exception to the EEOC charge-filing requirement is flawed for several reasons.

- *First*, Claimant's argument is a non-starter because the Arbitration Procedures provide that filing a charge does not extend the time for Claimant to file an arbitration demand:  "[F]iling of a charge or complaint with a government agency . . . shall not . . . extend the time for

-11-

submitting a demand for arbitration." (Reply at 22 (quoting Ex. B to Claimant's Arbitration Demand at 31).)

- *Second*, Claimant may not avail himself of tolling from a purported "class" EEOC charge because Claimant agreed to a class action waiver in his Separation Agreement: Claimant may not "receive any recovery from a class or collective action involving [ADEA] claims"; Claimant's ADEA claim may not be "initiated, maintained, heard, or determined on a multiparty, class action basis or collective action basis." (Reply at 22–23 (quoting Ex. B to Claimant's Arbitration Demand at 28).)

- *Third*, Claimant cannot avail himself of piggybacking because the rationale for the piggybacking doctrine does not apply in the context of this arbitration. This is because, under the Arbitration Procedures, Claimant can assert ADEA claims in arbitration without filing an EEOC charge. (*See* Ex. B to Claimant's Arbitration Demand at 31). And, piggybacking "is a judge-made exception to the requirement of administrative exhaustion." *See, e.g.*, *King v. McMillan*, 233 F. App'x 242, 244–45 (4th Cir. 2007). (Reply at 23.)

- *Fourth*, the Fourth Circuit and circuit courts throughout the country hold that piggybacking cannot apply in individual, stand-alone lawsuits. *See, e.g.*, *King*, 233 Fed. App'x at 245; *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 599 (5th Cir. 2006); *Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 900 (7th Cir. 2003); *Bettcher v. Brown Schs., Inc.*, 262 F.3d 492, 495 (5th Cir. 2001); *Whalen v. W.R. Grace & Co.*, 56 F.3d 504, 505–506 (2d Cir. 1995); *Inda v. United Air Lines, Inc.*, 565 F.2d 554, 559 (9th Cir. 1977). This is because allowing individual, stand-alone lawsuits to piggyback off of EEOC charges filed by others

-12-

improperly abrogates the ADEA charge-filing requirement.[3]  *See* 29 U.S.C. § 626(d).  (Reply at 24–26.)

- *Fifth*, the single-filing doctrine is additionally inapplicable because the *Rusis* named plaintiffs' EEOC charges do not give IBM sufficient notice of Claimant's claim.[4]  (Reply at 26–27.)  This is because the *Rusis* charges do not include any assertions that the *Rusis* named plaintiffs are representing a class of similarly-situated individuals.  (Reply at 26–27.)

- *Sixth*, the single-filing rule is also inapplicable because Claimant is not similarly situated to the *Rusis* named plaintiffs.  Namely, Claimant and the *Rusis* named plaintiffs held different

---

[3] For his part, Claimant now relies on *Tolliver v. Xerox Corp.*, 918 F.2d 1052 (2d Cir. 1990) for the proposition that "the piggybacking rule applies, not only in ADEA collective actions, but also in individual ADEA cases . . . ." (Mot. for Reconsideration at 18).  Claimant easily could have made this argument in his Opposition, but did not do so.  In any event, Claimant's reliance on *Tolliver* is misplaced.  *Tolliver*, by allowing individual lawsuits to piggyback off of EEOC charges filed by others, 918 F.2d at 1059–60, improperly abrogates the ADEA charge-filing framework.  *See* 29 U.S.C. § 626(d); *Bettcher v. Brown Schs., Inc.*, 262 F.3d 492, 495 (5th Cir. 2001) (permitting individual lawsuits to piggyback "would allow the single filing exception to consume the statutory rule, which clearly requires all ADEA plaintiffs to file a charge before filing a lawsuit").  Further, *Tolliver* does not involve an arbitration agreement, let alone an arbitration agreement stating that the filing of an EEOC charge does not extend the time for filing an arbitration demand.  Here, too, it would be improper to allow Claimant to abrogate the plain language of his Arbitration Agreement, particularly since Claimant points to no authority for the proposition that piggybacking applies to contravene the terms of an arbitration agreement.

Claimant also contends that "in *Tolliver*, the Second Circuit acknowledged that the impact of the piggybacking rule was to permit individuals to institute lawsuits outside the ADEA's 300 (or 180 day) window" and that "the piggybacking doctrine would toll the time that Claimant had to file his arbitration demand."  (Mot. for Reconsideration at 19 (citing *Tolliver*, 918 F.2d at 1057, 1059), 20.)  Nothing in *Tolliver* suggests this.  To the contrary, *Tolliver* explained that the single-filing doctrine does *not* extend the statute of limitations for ADEA claims:

> Nor need we have concern that application of the single filing rule will oblige [defendant] to defend against stale claims.  The ADEA statute of limitations provides adequate assurance that stale claims will not remain viable.  The charge filing requirement of section 7(d) sets a time limit . . . for the purpose of affording a prompt opportunity to attempt conciliation.  That opportunity existed within the 300 days specified in section 7(d).

*Tolliver*, 918 F.2d at 1059.  Moreover, the *Rusis* court recently rejected this interpretation of the single-filing doctrine: "the piggybacking doctrine neither 'tolls' the statute of limitations nor is it intended to permit otherwise time-barred claims to proceed in litigation."  *Rusis*, 2021 WL 1164659, at *4 n.4.

[4] Claimant additionally asserts that the EEOC's investigation of the *Rusis* named plaintiffs' EEOC charges put "IBM on notice" such that Claimant may piggyback on the *Rusis* named plaintiffs' EEOC charges.  (Mot. for Reconsideration at 19–20)  This is baseless.  As set forth *supra* at 13–14, the *Rusis* named plaintiffs' EEOC charges did not, and cannot, put IBM on notice of Claimant's ADEA claim.  Further, the EEOC investigation, and any alleged notice resulting therefrom, is simply irrelevant.  As set forth *supra* at 12, the single-filing doctrine does not extend to individual, stand-alone lawsuits, let alone individual arbitrations where the arbitration agreement precludes piggybacking.

positions, worked in different job groups, had different managers, and separated from IBM years apart. (Reply at 27–28.) For this same reason, Claimant's contention (Mot. for Reconsideration at 20) that the EEOC's investigation of the *Rusis* named plaintiffs' charges put IBM "on notice" of Claimant's "discrimination allegation" so as to permit piggybacking is baseless.

Thus, the Arbitrator correctly concluded that the single-filing doctrine cannot apply to this arbitration, and Claimant reprisal of his prior arguments does not change this result.

**III.    CLAIMANT'S NEW ARGUMENTS THAT HIS CLAIM IS TIMELY OR NEED NOT BE DISMISSED FAIL.**

Claimant's also makes a series of entirely new arguments in support of his Motion for Reconsideration. Under controlling Supreme Court and Fourth Circuit law, this is plainly improper, and the Arbitrator should reject Claimant's newly-raised arguments on this basis alone. *Supra* at 1–2. Even so, Claimant's new-founded contentions are all meritless.

**A.    The Limitations Period In The Arbitration Agreement Is Not Ambiguous.**

In his Motion for Reconsideration, Claimant asserts for the first time that the Arbitration Agreement's limitations period is "anything but clear." (Mot. for Reconsideration at 7–10.) Namely, Claimant contends that the limitations provision "could be plausibly interpreted to mean . . . 180 days . . . [the period] Claimant had to file a charge with the EEOC . . . or . . . the time that Claimant had to file such a claim in court" – "at least 270 days." (*Id.* at 8–9, 9 n.4.) Claimant easily could have raised this argument in his Opposition to IBM's Motion to Dismiss. But he did not. As such, Claimant cannot raise it now. *Supra* at 2–3.

In any event, IBM *has* proven that the limitations provision provided Claimant 180 days to file his Demand. (Mot. to Dismiss at 1, 5–6.) Indeed, in his Order, the Arbitrator reached this exact conclusion. (Order at 7.) The Arbitrator found that the limitations provision is "clear and

-14-

unambiguous." (*Id.*) The Arbitrator explained, the "Arbitration Procedures include a . . . deadline for initiating an arbitration . . . ." (*Id.* at 3.) "Under the procedures, Claimant agreed to initiate an arbitration by 'submit[ting] a written demand for arbitration to the IBM Arbitration Coordinator . . . no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.'" (*Id.* at 3–4.) The Arbitrator continued, **"[t]he ADEA requires that claimants first file a charge with the EEOC** within a prescribed time period. **For a person like Claimant**, who was employed in North Carolina, **the period for filing an EEOC charge is 180 days**." (*Id. at* 4 (citing 29 U.S.C. § 626(d)) (emphasis added), 5 ("Under the ADEA, Claimant would have had 180 days . . . to file a charge with the EEOC.").)

Further, it is particularly disingenuous for Claimant to assert this new position considering that, in his Opposition to IBM's Motion to Dismiss, Claimant repeatedly conceded that the arbitration agreement gave him 180 days to demand arbitration of his ADEA claim. (*See* Opp. to Mot. to Dismiss at 4 ("There is no dispute that Claimant submitted his demand to JAMS within the 180-day window"), 6 ("In light of all of these circumstances, an exception to the 180-day filing deadline is warranted."). And the Arbitrator *found* that Claimant admitted to the 180-day filing period: "IBM asserts, **without dispute**, that Claimant was employed in North Carolina and that the applicable period for filing in North Carolina is 180 days." (Order at 4 n.4 (emphasis added).) Claimant cannot use a motion for reconsideration to take a position contrary to what he conceded in his Opposition to IBM's Motion to Dismiss. Thus, Claimant's novel ambiguity argument should be dismissed out of hand.

-15-

In any event, Claimant's theory is specious because it violates multiple black-letter tenets of contract interpretation.

### 1. Claimant's Construction Renders Limitations Provision Terms Meaningless.

First, Claimant's proposed construction makes terms therein meaningless and superfluous – a result prohibited by basic principles of contract interpretation.  Arbitration agreements are interpreted "according to state law principles governing contract formation."  *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020).  "Contract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage."  *Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993); *see also Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 277 (4th Cir. 1987) (pointing to "that universal rule of contract law that, in construing language in a contract, an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless") (cleaned up); *PMA Cap. Ins. Co. v. U.S. Airways, Inc.*, 626 S.E.2d 369, 372 (Va. 2006) ("No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.").

Here, the limitations provision contains two clauses, immediately next to each other, that distinguish between the limitations period for claims that are first brought before a government agency, on the one hand, and those that are not.  The Arbitration Agreement provides:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.

-16-

(Ex. B to Arbitration Demand at 31.)  The term "claim[s] . . . which must first be brought before a government agency" must be read in conjunction with the term—"no later than the deadline for the filing of such a claim"—that immediately follows.  (*See id.* at 27.)  And, the term "claim[s] . . . which must first be brought before a government agency" carves out the limitations period for such claims from the first clause's general "statute of limitation (deadline for filing)" for claims that are not first brought before a government agency.  (*See id.*)

For both limitations provision clauses to have meaning, the second clause must prescribe a limitations period for claims that are first brought before a government agency different from the statute of limitations for filing an action in court.  The only reasonable construction of the limitations provision's second clause is the limitations period for submitting a claim to a government agency.  If the limitations provision's second clause is interpreted to mean the limitations period for filing a claim *in court*, then the limitations provision's second clause is same as the first clause and is rendered superfluous.

Claimant's supposition that the limitations provision's second clause "could be plausibly interpreted to mean that the arbitration demand must be filed within the . . . time that the Claimant had to file such a claim in court" (Mot. for Reconsideration at 8) ignores basic principles of contract interpretation.  Simply put, Claimant asserts that the limitations provision's second clause means the same thing as the first clause.  Similarly, Claimant's suggested construction makes the term "claim[s] . . . which must first be brought before a government agency" meaningless.  And, it renders the Arbitration Agreement's inclusion of the two clauses – distinguishing the limitations

-17-

period for claims that must first be brought before a government agency and those that do not – superfluous.[5, 6]

Thus, as a matter of contract law, Claimant's argument that the limitations provision's second clause means the "deadline for a plaintiff to bring a claim in court" fails because such interpretation voids multiple contract terms.

### 2. Claimant's Interpretation Renders The Limitations Period Non-Existent Or Indefinite.

Second, Claimant's suggested construction also makes the limitations period non-existent or, in the alternative, entirely indefinite and unknowable. As a result, Claimant attempts to violate another basic tenet of contract interpretation: Courts should avoid reading contracts in a way that leads to an absurd results and should instead adopt a more reasonable and probable construction. *See, e.g.*, *Levine v. Emps. Ins. Co. of Wausau*, 887 F.3d 623, 632 (4th Cir. 2018) ("Virginia courts will not read contracts to produce absurd results."); *Chi. Title Ins. Co. v. 100 Inv. Ltd. P'ship*, 355 F.3d 759, 764 (4th 2004) ("It is axiomatic under Maryland law that a court should avoid reading in a contract in a way that produces an absurd result, especially when a reasonable interpretation is available.") (cleaned up); *Statoil USA Onshore Props. Inc. v. Pine Res., LLC*, 675 Fed. App'x 285, 290 (4th Cir. 2017) ("West Virginia courts will not interpret a contract in a manner that creates an absurd result.") (cleaned up); *Fairbanks, Morse & Co. v. Twin Cities Supply*

---

[5] Claimant asserts that his ADEA claim is not one "that must first be brought before a government agency" because: (i) Claimant "would not have had to file an EEOC charge . . . because he could have relied on the [*Rusis*] EEOC charges"; and (ii) the Arbitration Agreement "excuses the requirement for Claimant to exhaust his administrative remedy . . . prior to filing an arbitration demand." (Mot. for Reconsideration at 9 n.4.) This does nothing to change the *ADEA's statutory requirement* that, as a precondition to suit, ADEA claims must first be submitted to a government agency.

[6] Claimant additionally contends that the limitations provision provides him with a "choice" as to the deadline for his ADEA claim – either the first or second clause – because the limitations provision employs the conjunction "or." (*See* Mot. for Reconsideration at 9 n.5.) This is an unnatural reading of the limitations provision and a distortion of the word "or." On its face, the limitations provision provides mandatory limitations periods – one for claims that must first be brought before a government agency and one for claims that do not.

-18-

*Co.*, 86 S.E. 1051, 1054 (N.C. 1915) ("All instruments should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results."). In short, Claimant's proposed construction would lead to the absurd result of having no limitations period at all for an ADEA claim in arbitration.

Individuals who work in a non-"deferral" state have 180 days to submit a charge to the EEOC. *See* 29 U.S.C. § 626(d). Claimant worked for IBM in North Carolina, which is a non-deferral state. *See* E.E.O.C, Raleigh District Office, https://www.eeoc.gov/field-office/raleigh/timeliness (last visited Nov. 16, 2021). In the usual course, an individual who files a charge with the EEOC must wait for the EEOC to investigate and then issue a Notice of Right to Sue. Only at that point can the individual bring an ADEA claim in court. After a Notice of Right to Sue is issued, the individual has 90 days to initiate a lawsuit in court. 28 U.S.C. § 626(e); E.E.O.C., Filing a Lawsuit, https://www.eeoc.gov/filing-lawsuit (last visited Dec. 17, 2021) ("Once you receive a Notice of Right to Sue, you must file your lawsuit within 90 days."). The ADEA's 90-day lawsuit filing period does not commence upon the culmination of the 180-day charge-filing period. *See* 29 U.S.C. § 626(e); E.E.O.C., Filing a Lawsuit, https://www.eeoc.gov/filing-lawsuit (last visited Nov. 16, 2021). Rather, it is triggered only when the EEOC issues a Notice of Right to Sue. *See* 29 U.S.C. § 626(e); E.E.O.C., Filing a Lawsuit, https://www.eeoc.gov/filing-lawsuit (last visited Dec. 17, 2021). On average, EEOC investigations "take approximately 10 months," but may take years. *Compare* E.E.O.C., What You Can Expect After You File a Charge, https://www.eeoc.gov/what-you-can-expect-after-you-file-charge (last visited Dec. 17, 2021) *with E.E.O.C. v. Propak Logistics, Inc.*, 746 F.3d 145, 147–51, 152–54 (4th Cir. 2014) (affirming district court decision "ordering [EEOC] pay attorneys' fees

-19-

to a prevailing defendant employer" where defendant "suffered prejudice . . . from the EEOC's" five and one-half year investigation).

Claimant contends that the limitations provision's second clause "could be plausibly interpreted to mean that the arbitration demand must be filed within the . . . time that the Claimant had to file such a claim in court." (Mot. for Reconsideration at 8.)  As a result, Claimant argues, the limitations period is "at least 270 days" – the sum of the 180-day charge-filing period and the 90-day lawsuit filing period.  (*Id.* at 9, 9 n.4.)  But Claimant's interpretation violates a canon of contract interpretation because it would void the limitations provision.  This is because, after the filing of an EEOC charge with a government agency, there is no date-certain deadline for bringing an ADEA action *in court* until *after* the EEOC issues its Notice of Right to Sue.  *Supra* at 14–18.  Thus, Claimant's construction of the arbitration agreement's limitations period – that it may be the same as the deadline to file an ADEA claim *in court* rather than the deadline to submit a charge to a government agency – effectively reads the limitations period out of the agreement.

Therefore, Claimant's construction of the limitations provision renders the limitations period non-existent or, alternatively, indefinite.

### 3.    Ambiguity Cannot Be Construed Against IBM Because The Limitations Provision Is Not Genuinely Ambiguous.

Claimant additionally contends that any ambiguity in the limitations provision "must be construed in Claimant's favor as the non-drafter, meaning that the Arbitrator must apply the interpretation that renders his claim timely." (Mot. for Reconsideration at 3.)  The limitations provision, however, is not genuinely ambiguous.  The North Carolina Supreme Court has explained that "[i]ntent is derived not from a particular contract term but from the contract as a whole." *State v. Philip Morris USA Inc.*, 685 S.E.2d 85, 90 (N.C. 2009).  And "in reviewing the entire agreement, [the court's] task is not 'to find discord in differing clauses, but to harmonize all

clauses if possible.' " *Id.* at 91 (quoting *Peirson v. Am. Hardwar Mut. Ins. Co.*, 107 S.E.2d 137, 139 (N.C. 1959)); *Zagaroli v. Neill*, No. 15 CVS 2635, 2018 WL 1589148, at *21 (N.C. Sup. Ct. Mar. 28, 2018) ("The contract is to be construed consistently with reason and common sense."). Parties can also "differ as to the interpretation of language without its being ambiguous . . . ." *Walton v. City of Raleigh*, 467 S.E.2d 410, 412 (N.C. 1996); *see also Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 379 (N.C. 1986) ("Although it is possible to perceive ambiguity in the [agreement's] language, it strains at logic to do so.").

Here, the Arbitrator has already determined that the limitations provision is "clear and unambiguous" and "include[s] a . . . deadline for initiating an arbitration . . ." – 180 days. (Order at 3, 8.) But, even if it were equivocal – which it is not – any purported ambiguity is easily dispelled. *Supra* at 14–20. Thus, under North Carolina law, any alleged ambiguity in the limitations provision cannot be inferred against IBM.[7]

### B.    The Arbitration Agreement's Limitations Provision And Piggybacking Waiver Do Not Waive A Substantive Right Under The ADEA.

Claimant's next new argument is that the Arbitration Agreement's 180-day limitations period and "waiver" of the "piggybacking rule" are "unenforceable" because they "impermissibly abridge the ADEA limitations period." (Mot. for Reconsideration at 12–16, 21.) Claimant goes so far as to allege that, because of these provisions, "Claimant cannot pursue his ADEA claims **at**

---

[7] Claimant's suggestion that the limitations provision is so "unclear" that the Arbitrator should "substitute a 'reasonable time'" (Mot. for Reconsideration at 10 n.5) is meritless. Here, the Arbitrator has already determined that the limitations provision is "clear and unambiguous" and "include[s] a . . . deadline for initiating an arbitration . . . ." (Order at 3, 8.) In any event, Claimant's cases (Mot. for Reconsideration at 10 n.5) are all distinguishable. Specifically, in *NCR Corp. v. CBS Liquor Control Inc.*, the arbitration agreement did not include any limitations provision at all. 874 F. Supp. 168, 172–73 (S.D. Ohio 1993). And, in *Anthony v. Affiliated Computer Services* and *Hagan v. Katz Communications, Inc.*, the arbitration agreements adopted the applicable statute of limitations but *did not specify separate limitations periods for claims that must first be brought before a government agency and those that do not.* 621 Fed. App'x 49, 51 (2d Cir. 2015); 200 F. Supp. 3d 435, 444–45 (S.D.N.Y. 2016).

-21-

**all** in arbitration." (Mot. for Reconsideration at 16, 21 (emphasis in original).) Claimant's contention fails for multiple reasons.

> ### 1. Under The Arbitration Agreement, The Arbitrator Does Not Have Authority To Adjudicate Enforceability Of The Agreement's Terms.

As a threshold matter, under the clear terms of the Arbitration Agreement and controlling Supreme Court law, the Arbitrator does not have authority to adjudicate enforceability of the Arbitration Agreement's limitations provision or piggybacking waiver. Only a court may do so. (*See* Ex. B to Claimant's Arbitration Demand at 31.)

To begin, under the Federal Arbitration Act ("FAA") and controlling Supreme Court law, the Arbitrator is bound to apply the arbitration agreement according to its terms, including procedures set forth therein. (Reply at 1–2); *see, e.g., Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). "[A]n arbitrator derives his or her powers from the parties' agreement to . . . submit their disputes to private dispute resolution." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010). As such, when "arbitrators . . . give effect to . . . contractual limitations [in arbitration agreements] . . . [they] must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Id.* at 684. Following these first principles, parties cannot be compelled to arbitrate issues that they have not agreed to submit to arbitration. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes – *but only those disputes* – that the parties have agreed to submit to arbitration.") (emphasis in original) (citation and internal quotations omitted); *Volt Info. Scis., Inc. v Bd. of Trs. of Leland Stan. Junior Univ.*, 489 U.S. 468, 478 (1989) ("the FAA does not require parties to arbitrate when they have not agreed to do so, [] nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement") (internal citations omitted). The Supreme Court has also

affirmed that courts **must** adjudicate challenges to the validity or enforceability of an arbitration agreement **unless** the arbitration agreement "clearly and unmistakably" specifies that the arbitrator has authority to do so. *See, e.g.*, *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010); *Granite Rock Co.*, 561 U.S. at 299–300 (noting that, "where a party contests" the "enforceability" of the arbitration agreement, "absent a valid provision specifically committing such disputes to an arbitrator", "the court must resolve the disagreement").

Here, the Arbitration Agreement explicitly states that "[a]ny issue concerning the validity or enforceability of this Agreement . . . shall be decided **only by a court** of competent jurisdiction." (*See* Ex. B to Claimant's Arbitration Demand at 31 (emphasis added).) Thus, under the terms of the arbitration agreement, the Arbitrator lacks authority to decline to enforce any provision of the arbitration agreement. Only a Court may do so.

Of relevance here, in *Rusis*, Claimant's counsel took precisely this position – asking *the court* to find that identical arbitration agreements' limitations provisions and piggybacking waivers – are unenforceable. *See Rusis v. Int'l Bus. Machs. Corp.*, No. 18-CV-8434 (VEC), 2021 WL 1164659 (S.D.N.Y. Mar. 26, 2021). In *Rusis*, "more than 100" former IBM employees – all represented by Claimant's counsel – sought to join the *Rusis* collective action despite having agreed to resolve ADEA claims solely in individual arbitration. *Id*. at *2. IBM promptly filed a motion to dismiss and to compel arbitration in the *Rusis* case. In response, these former employees asked the court to issue a "threshold ruling" that the limitations provision and piggybacking waiver should be deemed "unenforceable." *Id*. at *4. In doing so, the former employees "*stress[ed] that the separation agreements provide that the enforceability of the agreements is an exclusive matter for the courts.*" *Id*. at *6 (emphasis added). The court granted IBM's motion and dismissed these plaintiffs from the case. Thus, Claimant's counsel *has conceded that only a court has authority to*

-23-

*adjudicate enforce*ability.  For this reason, as well, Claimant's argument should be dismissed out of hand.[8]

### 2.    Claimant's Argument That The Limitations Provision And Piggybacking Waiver Prevent Him From Pursuing His ADEA Claim In Arbitration Is Baseless.

In any event, Claimant's supposition that the limitations provision and piggybacking waiver "impermissibly abridge the ADEA limitations period" and prevent Claimant from pursuing his ADEA claim "**at all**" in arbitration (Mot. for Reconsideration at 12–16, 21 (emphasis in original)) are baseless.

First, the Arbitration Agreement does not shorten the limitations period for Claimant's claim, but rather adopts the ADEA statute of limitations.  (*See* Ex. B to Claimant's Arbitration Demand at 31 ("To initiate arbitration, you must submit a written demand . . . if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.").)  Indeed, in court, the Claimant would have precisely the same period to initiate his claim: As a precondition to suit, the ADEA requires Claimant to file a charge with a government agency within 180 days.  *Supra* at 14–15.

Second, the Arbitration Agreement's piggybacking waiver does not shorten the *ADEA's statute of limitations*.  The single-filing doctrine is not part of the statute.  *See* 29 U.S.C. § 626(d).

---

[8] Claimant cites *Graham Constr. Co. v. The Daniel Grp., Inc.*, No. 06CV352, 2006 WL 8448849, at *5 (M.D.N.C. Sept. 29, 2006) for the proposition that the Arbitrator may refuse to enforce the Arbitration Agreement's limitations provision and piggybacking waiver because "questions of timeliness are questions of procedural arbitrability." (Mot. for Reconsideration at 17 n. 10.)  But IBM does not dispute the Arbitrator's authority to adjudicate the *timeliness* of Claimant's claim.  Indeed, in its Motion to Dismiss, IBM asked the Arbitrator to do exactly this – and the Arbitrator held Claimant's claim is untimely.  Claimant, by contrast, is asking the Arbitrator to *invalidate* the Arbitration Agreement's limitations provision and piggybacking waiver.  (Mot. for Reconsideration at 12–16, 21.) This the Arbitrator cannot do.  *Supra* at 19–20.

At any rate, *Graham* is inapposite because the court did not address, nor did any party raise, the enforceability of any arbitral provision.  Rather, the question before the arbitrator was the timeliness of the plaintiff's claim under Tennessee law, and whether the arbitrator could consider a *statutory* exception to the law's statute of limitations. 2006 WL 8448849, at *1, *4–5.

Rather, as the Arbitrator aptly recognized, it is "a judge-made exception to administrative prerequisites." (Order at 9.) *See also, e.g.*, *King v. McMillan*, 233 F. App'x 242, 244–45 (4th Cir. 2007) ("The single-filing rule is a judge-made exception to the requirement of administrative exhaustion.").

*Third*, nothing in the Arbitration Agreement "prevent[s] the effective vindication of Claimant's [ADEA] claim[] in arbitration." (Mot. for Reconsideration at 17, 21.) Here, the *cause for* Claimant's late filing is entirely between Claimant and his counsel. And, Claimant's attempt to redirect blame to IBM must be dismissed out of hand. As the *Rusis* court explained, it was "patently absurd" for the former IBM employees to claim that IBM sought to "prevent [them] from pursuing their claims in any forum." 2021 WL 1164659 at *6 n.8. Those plaintiffs "conveniently ignore[d]" that they could have sought relief if they had "*file[d] timely arbitration demands in the first instance*." *Id.* (emphasis added). They did not "identify any obstacle, let alone one imposed by IBM, that prevented [them] from filing an arbitration demand on their ADEA claims within the . . . deadline established by the separation agreements." *Id.* (emphasis added). Accordingly, the court would "not countenance Plaintiffs' attempts to set the fault at IBM's feet when they need look no further than their own counsel for the appropriate locus of blame." *Id.* This same reasoning applies here.

Thus, the Arbitration Agreement's limitations provision and piggybacking waiver do not shorten the ADEA's statute of limitations and in no way prevent Claimant from pursuing his ADEA claim in arbitration.

**3.    The Arbitration Agreement's Limitations Period And Piggybacking Waiver Do Not Waive A "Substantive Right" Under The ADEA And OWBPA.**

Claimant also now asserts – for the first time – that the limitations provision and piggybacking waiver are unenforceable because they waive Claimant's "substantive rights" under

-25-

the ADEA. (Mot. for Reconsideration at 12–16, 21.) Claimant additionally claims that, to properly obtain a waiver of Claimant's "right" to extend the statutory limitations period through piggybacking, IBM was required to satisfy the information disclosure requirements of the Older Workers Benefit Protection Act ("OWBPA"). (*Id.* at 21–24.) Claimant easily could have advanced these arguments in his Opposition, but did not do so. Regardless, Claimant's contentions fail for multiple reasons.

First, IBM has established that the limitations provision and piggybacking waiver do not truncate the ADEA statute of limitations and the single-filing doctrine is not an ADEA *statutory* right. *Supra* at 9–12.

Second, even if the Arbitration Agreement did truncate the limitations period for Claimant's ADEA claim – which it does not – the limitations provision and piggybacking waiver remain enforceable. Indeed, IBM has demonstrated that courts routinely enforce shortened limitations periods in arbitration agreements, including for ADEA claims. (Reply at 14–15.) *See, e.g.*, *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 480 (6th Cir. 2005); *Wilkerson v. Fed. Express*, 2011 WL 2176823, at *1, *4 (D. Md. June 2, 2011); *Lugihibl v. Fifth Third Bank*, 2015 WL 1235221, at *1 (N.D. Ill. Mar. 16, 2015).

Third, it is well-settled that the limitations period is a procedural right – and not a substantive right – under the ADEA. *See, e.g.*, *Browning v. AT&T Paradyne*, 120 F.3d 222, 225 (11th Cir. 1997) ("[T]he ADEA limitations period is a procedural rather than substantive requirement . . . ."); *Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 665 (8th Cir. 1995) ("ADEA statute of limitations is 'a procedural rather than substantive requirement.'") (internal citations omitted); *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 891 (2d Cir. 1995) (ADEA statute of limitations not a "substantive right[]").

-26-

For his part, Claimant relies on *Thompson v. Fresh Products, LLC*, 985 F.3d 509 (6th Cir. 2021) and *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019), to support his claim that "contractually shortenin[ing] the limitations period of the ADEA" is "unenforceable" because the limitations period is a "substantive" ADEA right. (Mot. for Reconsideration at 13–15, 21–22.) Claimant, however, mischaracterizes *Thompson* and *Logan*. Specifically, *Thompson* and *Logan did not involve arbitration agreements*, and *Logan* expressly carved-out arbitration from its holding. *Logan*, 985 F.3d at 838. To begin, *Thompson* involved an employee handbook and *Logan* involved an employment application, both of which shortened the limitations period for all **lawsuits** to six months. 985 F.3d at 519; 939 F.3d at 826. *Thompson*, following *Logan*, concluded that the handbook's timing provision was unenforceable because it improperly curtailed the plaintiff's **right to sue** under the ADEA. 985 F.3d at 519.

*Logan*, however, ***excluded arbitration agreements from its holding***. The *Logan* court explained that the rationale for striking down contractually-shortened limitations periods for ADEA **lawsuits** is **inapplicable in the arbitral context.** 939 F.3d at 838 ("Through the Federal Arbitration Act, Congress expressly authorized arbitration in lieu of litigation for resolving disputes, including controversies involving federal statutes.") (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 673 n.16 (6th Cir. 2003) (rejecting argument that a truncated limitations period in an arbitration agreement rendered the agreement unenforceable)). Put differently, by choosing arbitration, parties may consent to rules that are "'more limited than that generally allowed in federal district court'" so long as they are not "'unduly burdensome.'" *Id.* (quoting *Morrison*, 317 F.3d at 637 n.16). By contrast, "**outside the arbitration context**, Congress has not authorized litigants to alter the Title VII limitations period." *Id.* (emphasis added). By affirming

-27-

*Logan*, *Thompson* upheld its arbitration carve-out.  Thus, *Thompson* and *Logan* are inapplicable

here.[9]

---

[9] Claimant's remaining authorities (Mot. for Reconsideration at 15–16, 16 n.10) likewise do not help him, and instead involve circumstances far afield from those here or, alternatively,  make clear that *arbitration agreements may truncate the ADEA statute of limitations*:

- *Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294 (E.D.N.Y. 2018) involved the special-damages rule under the Fair Labor Standards Act ("FLSA"), for which there is no ADEA counterpart.  The *Castellanos* court held that the FLSA statute of limitations cannot be shortened because doing so would affect the amount of damages a plaintiff can recover.  Under the FLSA, an employee "can recover damages for pay periods" only "as far back as the statute of limitations reaches."  This unique statutory feature led the court to "conclude[] that arbitration provisions shortening the limitations period to bring FLSA claims are unenforceable."  *Castellanos*, 291 F. Supp. 3d at 299–300.

- In *Wineman v. Durkee Lakes Hunting & Fishing Club, Inc.*, 352 F. Supp. 2d 815 (E.D. Mich. 2005), the court refused to enforce an arbitration agreement that limited the time to bring FLSA claims to six months, far shorter than the FLSA's two-year limitations period (and three-year period for willful claims).  *Id.* at 818, 823.  The Arbitration Procedures, by contrast, do not shorten the period for Claimant's ADEA claim.  In any event, the *Wineman* court focused on the unique legislative purpose of the FLSA, while conceding that "federal courts . . . have found that a six-month limitations period in an employment contract is not per se unreasonable." *Id.* at 820.

- In *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010), a Title VII case, the Second Circuit noted, without deciding the issue, that "[h]ad the defendants attempted to enforce the arbitration agreement as originally written it is not clear that we would hold in their favor."  *Ragone*, 595 F.3d at 125–26.  The potentially offending provisions were the *combination* of a 90-day limitations period for demanding arbitration of a Title VII claim *plus* a fee-shifting provision that required fees to be awarded to the prevailing party.  *See id.*  Here, the Arbitration Procedures neither shorten the limitations period nor shift fees to the prevailing party.

- *Graham Oil Co. v. ARCO Prods. Co., a Div. of Atl. Richfield Co.*, 43 F.3d 1244, 1246 (9th Cir. 1994)*, as amended* (Mar. 13, 1995) did involve an arbitration agreement, but involved a reduction in the one-year statutory limitations period of the Petroleum Marketing Practices Act to just 90 days, which the court found unreasonable.  *Id.* at 1247–48.  Here, the Arbitration Procedures follow the statutory limitations period.

- *O'Phelan v. Fed. Express Corp.*, No. 03 C 00014, 2005 WL 2387647 (N.D. Ill. Sept. 27, 2005) is distinguishable because the case did not involve an arbitration agreement.  Rather, it involved an employment contract that limited the time for filing a Title VII discrimination suit in court to six months. *Id.* at *3.  The court found this problematic because the "EEOC retains exclusive jurisdiction for 180 days" before plaintiff may obtain a right-to-sue letter, thereby "prevent[ing] the plaintiff from having any mechanism for redress" during the contractual limitations period.  *Id.* at *3–4.  The *O'Phelan* court was careful to distinguish this circumstance from that involving an arbitration agreement.  *Id.* at *4 ("arbitration clauses . . . ultimately lead to resolution of a dispute, whereas enforcement of a six month limitation on claims effectively prevents the plaintiff from having any mechanism for redress under Title VII due to the EEOC's administrative requirements").

- In *Salisbury v. Art Van Furniture*, 938 F. Supp. 435, 437 (W.D. Mich. 1996), the court found fault with a similar employment contract provision, limiting the time to file a suit in court, for similar reasons as the *O'Phelan* court.

- *Sanford v. Quicken Loans*, No. 13-11929, 2014 WL 266410, at *1 (E.D. Mich. Jan. 24, 2014) also did not involve an arbitration agreement, but rather an employment contract that reduced the limitations period for ADEA *lawsuits* to one year.  The court held the limitations period was unenforceable because it denied ADEA plaintiffs "a meaningful opportunity to complete the administrative process."  *Id.* at *4.  Under the Arbitration Agreement, by contrast, Claimant is not required to exhaust administrative remedies.

- *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F. Supp. 2d 682, 687 (S.D. Tex. 2013) likewise did not involve an arbitration agreement.  In fact, the court differentiated another case on that very basis: The case "misse[d] the

-28-

Fourth, the law is also clear that the OWBPA disclosure requirements apply only to substantive – and not procedural – ADEA rights. The OWBPA provides that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1). The OWBPA sets forth various disclosure requirements that waivers of ADEA claims must satisfy for a waiver to be knowing and voluntary. *See id.* at §§ 626(f)–(h).

Interpreting the OWBPA, the U.S. Supreme Court has squarely held that not all ADEA "rights" are subject to the OWBPA disclosure requirements. Instead, the Court has clearly delineated a difference between substantive rights (which *are* subject to the OWBPA disclosure requirements), and procedural rights (which are *not* subject to the OWBPA disclosure requirements). *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 259 (2009) ("the agreement to

---

mark . . . because it involved an agreement to arbitrate employment discrimination claims within one year. Enforcement of that provision did not create the catch-22 that having to comply with both EEOC exhaustion and the six-month limitations period creates, because an EEOC filing is not a prerequisite to arbitration." *Id.* at 687. As the *Mazurkiewicz* court recognized, case law rejecting a shorter ADEA limitations period do not implicate arbitration agreements. Regardless, the provision at issue here **mirrors** the ADEA's limitations period.

- *Cole v. Convergys Customer Mgmt. Grp., Inc.*, No. 12-2402, 2012 WL 6047741, at *4 (D. Kan. Dec. 5, 2012) did not involve an arbitration agreement or the ADEA. Rather, it involved an employment agreement that limited the limitations period under Title VII to six months. In finding the shortened statute of limitations unenforceable, the court relied on *O'Phelan* and its rationale.

- *Mabry v. W. & S. Life Ins. Co.*, No. 03 CV 848, 2005 WL1167002 (M.D.N.C. Apr. 19, 2005) likewise did not involve an arbitration agreement, but an employment agreement that limited the statute of limitations under the Americans with Disabilities Act to six months. The court concluded that the provision was unenforceable because it required "a party to prematurely **file suit**" and "would unnecessarily increase the burden on federal courts . . . ." *Id.* at *5 (emphasis added). As discussed, the philosophy underlying that ruling is inapplicable in the arbitral context.

- *Lewis v. Harper Hosp.*, 241 F. Supp. 2d 769, 771–72 (E.D. Mich. 2002) yet again does not involve an arbitration agreement, but rather an employment contract. There, too, the court differentiated litigation and arbitration: "While arbitration ultimately leads to resolution of the complaint, the effect of the limitations clause at issue could ultimately leave Plaintiff without redress given the EEOC filing requirements." *Id.* at 772. So while parties can validly shorten a limitations period in the arbitral context, litigation implicates different policy concerns. *See id.*

-29-

arbitrate ADEA claims is not the waiver of a 'substantive right' as that term is employed in the ADEA"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991) ("[I]f Congress intended the *substantive protection* afforded [by the ADEA] to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history.") (emphasis added) (citation and internal quotation omitted).

Circuit Courts – following the Supreme Court precedent – have likewise held that the OWBPA applies only to substantive – and not procedural – rights under the ADEA. *See, e.g.*, *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1165 (8th Cir. 2017) ("*14 Penn Plaza* thus interprets one of § 626(f)(1)'s references to 'right[s] or claim[s]' to mean substantive rights to be free from age discrimination, not procedural 'rights' to pursue age discrimination claims in court."); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 13 (1st Cir. 1999) (rejecting plaintiff's argument that "OWBPA's reference to 'right' [] include[s] procedural rights" and noting that "[m]ost courts which have considered the issue have interpreted OWBPA's reference to 'any right' to apply to substantive rights"); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 181 (3d Cir. 1998), *overruled on other grounds by Green Tree Fin. Corp.–Al. v. Randolph*, 531 U.S. 79 (2000) ("[T]he protection [] [OWBPA] affords is limited to the waiver of substantive rights under the ADEA."); *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) ("Congress, through the OWBPA, has protected terminated employees who waive their substantive rights under ADEA . . . .").

In contrast to the great weight of authority supporting IBM's position, Claimant cites two district court decisions, *Hammaker v. Brown & Brown, Inc.*, 214 F. Supp. 2d 575 (E.D. Va. 2002) and *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1060 (S.D. Cal. 1999), for the proposition that, under the ADEA and OWBPA, there is no difference between substantive

-30-

and procedural rights. (Mot. for Reconsideration at 24.) But these decisions were overruled by subsequent Supreme Court precedent and are otherwise off point. Neither *Hammaker* nor *Thiele* address whether the limitations period is a substantive right under the ADEA. Rather, *Hammaker* and *Thiele* address only whether the right to a jury trial is a substantive right. 214 F. Supp. 2d at 577–81; 59 F. Supp. 2d at 1063–65. Regardless, these decisions have been overruled by *14 Penn Plaza*, 556 U.S. at 259.[10]

Thus, Claimant's OWBPA argument is similarly baseless.

### C.    The JAMS Minimum Standards Are Inapplicable.

Finally, Claimant argues for the first time that "[a]bridging the ADEA limitations period . . . violates JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, Standard No. 1." (Mot. for Reconsideration at 3, 16.) But the JAMS Minimum Standards are inapplicable here for multiple reasons.

*First*, the JAMS Minimum Standards, on their face, do not apply to this arbitration. "[T]he Minimum Standards of Procedural Fairness . . . apply to arbitrations based on pre-dispute agreements that are required as a condition of employment." (JAMS Minimum Standards at 2.) The arbitration agreement at issue here was not a condition of Claimant's employment. Instead, the arbitration agreement was part of a separation agreement offered to Claimant, which Claimant voluntarily signed after he was advised in writing to "consult with a lawyer before you accept this agreement." (Ex. B to Claimant's Arbitration Demand at 25.)

---

[10] Indeed, courts have rejected Claimant's precise argument that contractually-shortened limitations periods for ADEA claims constitute a waiver of rights that necessitates OWBPA disclosures. *See, e.g.*, *Ravenscraft v. BNP Media, Inc*., 2010 WL 1541455, at *3 (N.D. Ill. Apr. 15, 2010) ("The shortening of a limitations period . . . is not a waiver of a claim" under OWBPA; "[P]laintiff was not giving up any substantive rights. . . . She simply limited the period of time in which to exercise that substantive right.").

*Second*, the JAMS Minimum Standards do not apply because they were not among the rules to which the parties specifically agreed would apply to this arbitration. The FAA permits parties to agree which rules govern an arbitration. Where the parties expressly agree on the rules that apply, the arbitrator must apply *only* those rules. *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1621 (2018) ("[The FAA] requires courts to rigorously enforce arbitration agreements according to their terms, including terms that specify . . . the rules under which that arbitration will be conducted."); *Volt Info. Scis., Inc.*, 489 U.S. at 469 (parties may "specify by contract the rules under which the arbitration will be conducted").

Here, the IBM Arbitration Procedures, which are part of the arbitration agreement, specify that the arbitration be held "in accordance with the JAMS Employment Arbitration Rules & Procedures (***and no other rules***), which are currently available at https://www.jamsadr.com/rules-employment-arbitration." (Ex. B to Claimant's Arbitration Demand at 27 (emphasis added).) The IBM Arbitration Procedures further provide that "[t]o the extent any of the terms, conditions or requirements of the arbitration procedures in this document conflict with the applicable Arbitration Rules, the terms, conditions or requirements of the procedures in this document shall govern." (*Id.*) Thus, the arbitration agreement clearly identifies the governing rules: the IBM Arbitration Procedures, the JAMS Employment Arbitration Rules & Procedures (to the extent they do not conflict with the IBM Arbitration Procedures), and "no other rules." (*Id.*) This is yet another reason that the JAMS Minimum Standards do not apply.

*Third*, even if the JAMS Minimum Standards do apply, the Arbitration Agreement complies with these standards, including Standard No. 1. As discussed, the limitations period (180 days) is the same as that which would apply to any individual who seeks to bring an ADEA claim in court. *Supra* at 14–18. And, the Arbitration Agreement's prohibition on piggybacking

-32-

does not change this conclusion because piggybacking is not part of the ADEA statute of limitations. *Supra* at 10–14. Indeed, in accepting this arbitration, JAMS has already indicated that the arbitration agreement complies with the JAMS Minimum Standards. (*See* JAMS Minimum Standards at 2 (stating that if the JAMS Minimum Standards apply, "JAMS will accept the [arbitration] assignment only if the proceeding complies with the" JAMS Minimum Standards).)

*Fourth*, even if the Arbitration Agreement did *not* meet the JAMS Minimum Standards (which it does), that would not be a proper basis for the Arbitrator to decline to enforce the statute of limitations provision in the contract. Instead, under the JAMS Minimum Standards, all JAMS can do is decline the arbitration assignment. (JAMS Minimum Standards at 2.) **Only a court** has authority to determine that a provision in the arbitration agreement is unenforceable.[11] *Supra* at 22–23.

Thus, the JAMS Minimum Standards are inapplicable.

## CONCLUSION

For the reasons stated here, IBM respectfully requests that the Arbitrator deny Claimant's Motion for Reconsideration and uphold his Order dismissing Claimant's claim with prejudice.

---

[11] JAMS' acceptance of the arbitration assignment is further evidence that the arbitration agreement – in its entirety – complies with the JAMS Minimum Standards.

Dated:  December 17, 2021                    Respectfully submitted,


                                             */s/ Craig S. Friedman*
                                             Craig S. Friedman
                                             JONES DAY
                                             1221 Peachtree Street, N.E., Suite 400
                                             Atlanta, GA 30309
                                             Tel: 404-581-8412
                                             Fax: 404-581-8330
                                             csfriedman@jonesday.com

                                             Ilana R. Yoffe
                                             Christian Bashi
                                             Grace Gale
                                             JONES DAY
                                             250 Vesey Street
                                             New York, NY 10281
                                             Tel: 212-326-3747
                                             Fax: 212-755-7306
                                             iyoffe@jonesday.com
                                             cbashi@jonesday.com
                                             ggale@jonesday.com

                                             *Attorneys for Respondent IBM*


-34-

**App.417**

**PROOF OF SERVICE**

      I hereby certify that on December 17, 2021, I served "Respondent International Business

Machine Corp.'s Brief in Opposition to Claimant's Motion for Reconsideration" by e-mail and e-

filing via JAMS Access on:

> Shannon Liss-Riordan, Esq.
> Thomas P. Fowler, Esq.
> Lichten & Liss-Riordan, P.C.
> 729 Boylston St., Suite 2000
> Boston, MA 02116

Dated:  December 17, 2021

*/s/ Ilana R. Yoffe*
Ilana R. Yoffe

**JAMS ARBITRATION BEFORE THE HON. RICHARD LEVIE**

JAMES OWENS,

     Claimant,

   v.

INTERNATIONAL BUSINESS MACHINES CORP.,

     Respondent.

Reference No. 1410008730

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT IBM'S MOTION TO DISMISS ARBITRATION AS UNTIMELY PURSUANT TO THE PARTIES' SEPARATION AGREEMENT**

Craig S. Friedman
JONES DAY
1420 Peachtree Street
Suite 800
Atlanta, GA 30309
Tel: 404-581-8412
csfriedman@jonesday.com

Ilana R. Yoffe
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: 212-326-3747
iyoffe@jonesday.com

Kyle M. Everett
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Tel: 202-789-3668
keverett@jonesday.com

May 21, 2021

*Attorneys for Respondent IBM*

I.      **INTRODUCTION**

On May 21, 2020, James Owens ("Owens" or "Claimant") was notified that his employment with IBM was being terminated.  Claimant now claims that he was terminated because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.  At the time of his separation from IBM, Claimant signed a Resource Action Separation Agreement (the "Separation Agreement") in which he agreed to arbitrate any claims he might have under, as relevant here, the ADEA.  *See* Owens's Arbitration Demand, Ex. 2.  Claimant agreed to arbitrate such claims pursuant to the IBM Arbitration Procedures attached to and incorporated by reference in the Separation Agreement.  *Id.*  The Separation Agreement unambiguously requires that Claimant serve a written arbitration demand on IBM within the deadline for filing an administrative charge for the claim to be arbitrated – 180 days under the ADEA – or his claim would "be deemed waived."  *Id.* at 27.  At the earliest, on November 18, 2020 – more than 180 days after his notice of termination from IBM – Claimant demanded arbitration of his ADEA claim, which is Claimant's sole claim in this matter.  *See* Owens' Arbitration Demand at 4.  Because Claimant's deadline to initiate arbitration had passed before November 18, 2020, his ADEA claim is untimely.  Accordingly, because Claimant's claim is untimely and he has thus waived his claim pursuant to the parties' Separation Agreement, IBM respectfully moves for the dismissal of this matter.

I.      **RELEVANT FACTUAL BACKGROUND**

On May 21, 2020, Claimant received notice from IBM that his employment would be ending.  IBM's Response to Arbitration Demand at 1.  Claimant signed a Separation Agreement in exchange for certain payments and benefits from IBM.  Owens' Arbitration Demand, Ex. 2.  In the Separation Agreement, Claimant waived and released all claims that he had against IBM, except for certain specified "Covered Claims."  *Id.* at 26.  Covered Claims include claims under

the ADEA.  *Id.*  Claimant agreed that any Covered Claims would "be resolved on an *individual* basis by private, confidential, final and binding arbitration according to the IBM Arbitration Procedures and Collective Action Waiver (which are attached and incorporated as part of this Agreement) and under the auspices of JAMS."  *Id.* (emphasis added).

The IBM Arbitration Procedures and Collective Action Waiver (the "Arbitration Procedures" or "Procedures") prescribe the process for Claimant to initiate arbitration of any Covered Claim and the deadline by which he must do so.  Specifically, Claimant was required to initiate arbitration by "submit[ting] a written demand for arbitration to the IBM Arbitration Coordinator"

> no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one that must be brought before a government agency, no later than the deadline for the filing of such a claim.  If the demand for arbitration is not timely submitted, the claim shall be deemed waived.  The filing of a charge or complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration.

*Id.* at 31.  After the arbitration demand is submitted to the IBM Arbitration Coordinator, IBM "file[s] the demand with the appropriate arbitration administrator."  *Id.*

Here, on or after November 18, 2020, Claimant submitted to the IBM Arbitration Coordinator a written demand to arbitrate his ADEA claim.  Though Claimant's Arbitration Demand is dated November 17, 2020, the printed United States Postal Service shipping and postage label affixed to the envelope containing the Arbitration Demand is dated November 18, 2020:

2

**App.421**



*See* Ex. 1 (United States Postal Service shipping and postage label). This means that the Arbitration Demand could not have been submitted to the IBM Arbitration Coordinator until November 18, 2020 at the earliest.

Tracking information provided by the U.S.P.S. further confirms that the above postage and shipping label was not printed until November 18, 2020. *See* Ex. 2 (United States Postal Service tracking information). This tracking information also shows that the U.S.P.S. did not take possession of the package until November 20, 2020, meaning that the Arbitration Demand could have been served as late as November 20, 2020:

---

November 20, 2020, 2:38 pm
USPS in possession of item
BRIGHTON, MA 02135

---

November 18, 2020, 4:46 pm
Shipping Label Created, USPS Awaiting Item
BOSTON, MA 02116

---

*Id.*

## II.    ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).[1]  "Although for the purposes of a motion to dismiss [the arbitrator] must take all of the factual allegations in the complaint as true, [the arbitrator is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Walker v. Pheasant Ridge Senior Living*, 2018 WL 3539444, at *2 (W.D. Va. July 23, 2018) (dismissing ADEA claim on a motion to dismiss because plaintiff failed to timely file charge with the EEOC within the prescribed time limit).  In resolving a motion to dismiss, an arbitrator may consider documents that are submitted with a Claimant's complaint, or are "integral" to a Claimant's complaint, where authenticity is not disputed.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

---

[1] Under the Arbitration Procedures, "the parties may file and the arbitrator shall hear and decide at any point in the proceeding motions permitted by the Federal Rules of Civil Procedure, including but not limited to . . . motions to dismiss."  Owens's Arbitration Demand,  Ex. B at 31.

4

**App.423**

**A.      Owens 's Claim Should Be Dismissed Because It Is Untimely And Deemed Waived.**

The Arbitration Procedures to which Claimant agreed – and which were attached to his Demand for Arbitration – specify that the limitations period by which he must request or initiate arbitration is the same as that which would govern the claim if it were brought before a governmental agency or in court.  Owens' Arbitration Demand,  Ex. B at 31.  The Arbitration Procedures also specify the procedure for demanding arbitration.  *Id.* at 31-32.  If the Claimant does not demand arbitration by the appropriate deadline according to these procedures, then "the claim shall be deemed waived."  *Id.* at 31.  The Arbitrator must enforce the arbitration agreement, including its filing and limitations requirements, as written.  *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Santoro v. Accenture Fed. Servs., LLC*, 748 F.3d 217, 221 (4th Cir. 2014) ("[The FAA] represents a broad federal policy favoring arbitration agreements, and courts must rigorously enforce arbitration agreements according to their terms.") (internal citations and quotations omitted).

The ADEA specifies the deadline for bringing claims under the statute.  Under the ADEA, as a precondition to suit, individuals are required to file a charge with the EEOC within 180 days of the date of the alleged wrongful act.[2]  42 U.S.C. § 2000e-5(e)(l); 29 U.S.C. §§ 626(d), 633(b); *see also Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 204 L. Ed. 2d 116 (2019).  The 180-day limit begins from the date upon which an employee receives notice of the alleged unlawful employment practice, not at the time that his termination formally becomes effective.  *See Hamilton v. 1st*

---

[2] Prior to filing a lawsuit under the ADEA, an individual must first file a charge with the EEOC or an analogous state agency within 180 or 300 days (depending on the State) of the employment action being challenged. *See* 29 U.S.C. § 626(d) ("[A] charge shall be filed . . . within 180 days after the alleged unlawful employment practice; or [in a deferral state], within 300 days after the alleged unlawful practice occurred . . ."). In North Carolina, the deadline is 180 days.

*Source Bank,* 928 F.2d 86, 89 (4th Cir. 1990) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980)).  This is because the "proper focus" is "the time of the discriminatory act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981). The Fourth Circuit strictly enforces filing deadlines for employment discrimination claims and routinely dismisses at the pleadings stage those even a day late. *See Anderson v. Am. Airlines, Inc.*, 2018 WL 4258505, at *2 (W.D.N.C. Sept. 5, 2018) (granting 12(b)(6) motion to dismiss Title VII claim filed one day late); *Cook v. Unisys Fed. Gov't, Grp.,* 2015 WL 5690928, at *14 (W.D. Va. Sept. 3, 2015), report and recommendation adopted, 2015 WL 5690976 (W.D. Va. Sept. 28, 2015) (same for Title VII, ADEA, and ADA claims); *Douglas v. US Airways Grp., Inc.*, 2011 WL 1769747, at *5 (W.D.N.C. May 9, 2011) (because the complaint was "untimely filed by one day…this [Title VII] action is time barred as a matter of law").

Under the separation agreement, Claimant must "submit a written demand for arbitration to the IBM Arbitration Coordinator" to initiate the proceedings.[3]  *See* Owens' Arbitration Demand, Ex. B at 31-32; *see also Huey v. Dep't of Health & Human Servs*., 782 F.2d 1575, 1578 (Fed. Cir. 1986) (finding an arbitration demand is filed when it is placed in the mail).  Because Claimant did not print the shipping label used to mail the Arbitration Demand to IBM until November 18, 2020, that is the earliest date it could have been submitted.  Additionally, the mail carrier did not mark receipt of the demand until November 20, 2020.  Therefore, the demand was submitted at some point between November 18, 2020 and November 20, 2020 – or, one to three days after the

---

[3] The date that Claimant submitted his arbitration demand *to JAMS* is irrelevant.  The arbitration agreement requires that the demand be submitted to the IBM Arbitration Coordinator within the limitations period, not to the arbitration provider.  The Arbitrator is without authority to alter the requirements of the arbitration agreement. *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ*., 489 U.S. 468, 478 (1989) ("[The Federal Arbitration Act] . . . requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."); *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) ("Consistent with the FAA's text, courts must rigorously enforce arbitration agreements according to their terms . . . .") (internal citation and quotations omitted).

November 17, 2020 deadline to demand arbitration.  Accordingly, as required by the Separation

Agreement, Owens' claim should be "deemed waived" and this matter should be dismissed with

prejudice in its entirety.

## III.    CONCLUSION

For the foregoing reasons, IBM respectfully requests that Claimant's claim in this matter

be dismissed with prejudice.


Dated:  May 21, 2021                              Respectfully submitted,

                                                 */s/ Craig Friedman*
                                                 _____
                                                 Craig S. Friedman
                                                 JONES DAY
                                                 1420 Peachtree Street
                                                 Suite 800
                                                 Atlanta, GA 30309
                                                 Tel: 404-581-8412
                                                 Fax: 404-581-8330
                                                 csfriedman@jonesday.com

                                                 Ilana R. Yoffe
                                                 JONES DAY
                                                 250 Vesey Street
                                                 New York, NY 10281
                                                 Tel: 212-326-3747
                                                 iyoffe@jonesday.com

                                                 Kyle M. Everett
                                                 JONES DAY
                                                 51 Louisiana Ave., N.W.
                                                 Washington, D.C. 20001
                                                 Tel: 202-789-3668
                                                 keverett@jonesday.com

                                                 *Attorneys for Respondent IBM*

## **PROOF OF SERVICE**

I hereby certify that on May 21, 2021, I served Respondent IBM's "Memorandum of Law in Support of Respondent IBM's Motion to Dismiss Arbitration as Untimely Pursuant to the Parties' Separation Agreement" and all attachments thereto by e-filing on JAMS Access and by e-mail on:

Shannon Liss-Riordan
Michelle Cassorla
Thomas Fowler
Lichten & Liss-Riordan, P.C.
729 Boylston St.
Suite 2000
Boston, MA 02116
sliss@llrlaw.com
mcassorla@llrlaw.com
tfowler@llrlaw.com


*/s/ Ilana R. Yoffe*
Ilana R. Yoffe

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                    )
**JAMES OWENS,**                    )
                                    )
    **Petitioner,**           )
                                    )
    **v.**                    )
                                    )    **Case No. 22-cv-00901 (APM)**
**INTERNATIONAL BUSINESS MACHINES** )
**CORP.,**                          )
                                    )
    **Respondent.**            )
———————————————————————— )


———————————————————————
                                    )
**JOHN HOLTMAN,**                   )
                                    )
    **Petitioner,**           )
                                    )
    **v.**                    )
                                    )    **Case No. 22-cv-00852 (APM)**
**INTERNATIONAL BUSINESS MACHINES** )
**CORP.,**                          )
                                    )
    **Respondent.**            )
———————————————————————— )


## MEMORANDUM OPINION

### I.

In these non-consolidated actions, Petitioners ask the court to vacate rulings dismissing as untimely their arbitration requests against Respondent International Business Machines Corporation ("IBM"). The Petitioner in *Owens* is James Owens, a former employee of IBM who worked at the corporation from 1997 to 2020, and the Petitioner in *Holtman* is John Holtman, a former employee of IBM who worked at the corporation from 1983 to 2020.

IBM terminated the Petitioners' employment as part of a layoff in May 2020.  Owens was 50 years old at the time and Holtman was 60.  Petitioners signed a severance agreement, which offered the employees a severance payment in exchange for a waiver of legal claims, other than claims under the Age Discrimination in Employment Act ("ADEA"), which would need to be pursued in individual arbitration.  The arbitration agreement includes a timing provision that states:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.  If the demand for arbitration is not timely submitted, the claim shall be deemed waived.  The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

Owens Mot. to Provisionally Seal Documents, ECF No. 4 [hereinafter Owens Mot. to Seal], Ex. 1, ECF No. 4-3 [hereinafter Owens Ex. 1[1]], at 32; Holtman Mot. to Provisionally Seal Documents, ECF No. 3 [hereinafter Holtman Mot. to Seal], Ex. C, ECF No. 3-3 [hereinafter Holtman Ex. C], at 33.  This provision gave Petitioners 180 days to demand arbitration of ADEA claims, which mirrors the ADEA limitations period.  *See* 42 U.S.C. § 2000e-5(e)(l); 29 U.S.C. § 626(d). Petitioners' last day to timely demand arbitration in writing was on November 17, 2020.

Petitioners attempted to bring an ADEA claim against IBM in arbitration.  Petitioners electronically filed their respective arbitration demands with JAMS, the designated alternative dispute forum, on November 17, 2020, and mailed the required written demands to IBM the *following day* on November 18, 2020.  IBM moved to dismiss both matters as untimely. The

---

[1] ECF pagination is used for all exhibits.

2

arbitrator dismissed the matters on November 19, 2021, and denied Petitioners' Motions for Reconsideration on January 6 and January 7, 2022.

Before this court are the parties' cross-motions, with Petitioners seeking to vacate the arbitrator's dismissals and IBM seeking their confirmation. For the reasons that follow, Petitioners' Motions are denied and Respondent's Motions to Confirm Arbitration Awards are granted.

## II.

Petitioners move to vacate the arbitration rulings pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, which provides narrow grounds for a district court to vacate an arbitrator's decision. Specifically, 9 U.S.C. § 10 provides that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration," including, as relevant here, where "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. §§ 10(a)(3)–(a)(4).

Under the FAA, "judicial review of arbitral awards is extremely limited," *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354, (D.C. Cir. 2006) (quoting *Teamsters Loc. Union v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001)), and the court "must confirm an arbitration award where some colorable support for the award can be gleaned from the record," *LaPrade v. Kidder, Peabody & Co.*, 94 F. Supp. 2d 2, 4 (D.D.C. 2000). "[C]ourts may vacate an arbitrator's

decision only in very unusual circumstances." *Mesa Power Grp., v. Gov't of Can.*, 255 F. Supp. 3d 175, 182 (D.D.C. 2017) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013)).

"Section 10 of the FAA provides the FAA's *exclusive* grounds for vacating an award." *Id.* at 183 (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008)) (emphasis added) (cleaned up). "'[A]s long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000) (quoting *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). And under § 10(a)(4) "'it is only when an arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice' that his decision may be unenforceable.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)) (brackets omitted). In sum, "only if 'the arbitrator acts outside the scope of his contractually delegated authority'—issuing an award that 'simply reflects his own notions of economic justice' rather than 'drawing its essence from the contract'— may a court overturn his determination." *Oxford Health*, 569 U.S. at 569 (quoting *E. Associated Coal*, 531 U.S. at 62) (cleaned up). Therefore, "the sole question" is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

Petitioners also argue that an arbitration ruling may be vacated because it manifestly disregards the law. The Supreme Court has said, however, that Sections 10 and 11 "provide the FAA's exclusive grounds for expedited vacatur and modification." *Hall St.*, 552 U.S. at 584. The D.C. Circuit nevertheless has assumed without deciding that "manifest disregard of the law" survives as a separate ground for vacatur. *Affinity Fin. Corp. v. AARP Fin. Inc.*, 468 Fed. Appx.

4, 5 (D.C. Cir. 2012) ("Assuming without deciding that the 'manifest disregard of the law' standard still exists . . . "). This court also assumes without deciding that "manifest disregard of the law" is a valid ground for vacatur under the FAA. Assuming the doctrine survives, manifest disregard can only be established if "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001).

### III.

At the outset, the court notes that it does not rule on the parties' cross-motions in a vacuum. Various district courts have considered the same arguments made by the same petitioners' counsel against the same respondent. In each instance, these courts have upheld arbitrators' dismissals on timeliness grounds. *See Smith v. IBM*, No. 21-cv-03856-JPB, 2022 WL 1720140, at *7 (N.D. Ga. May 27, 2022); *Chandler v. IBM*, No. 21-cv-6319-JGK, 2022 WL 2473340, at *6–7 (S.D.N.Y. July 6, 2022); *Lodi v. IBM*, No. 21-cv-6336-JGK, 2022 WL 2669199, at *4 (S.D.N.Y. July 11, 2022); *In re IBM Arb. Agreement Litig.*, No. 21-cv-6296-JMF, 2022 WL 2752618, at * 7–9 (S.D.N.Y. July 14, 2022). This court does so, too.

Illustrative is *Smith v. IBM*, a case involving the same petitioner's counsel and nearly identical facts and arguments at issue here—an arbitration demand served one day late. *See* 2022 WL 1720140 at *2. There, the district court dismissed the petition to vacate and granted IBM's motion to confirm. *Id.* at *7. As to FAA § 10(a)(3), the petitioner in *Smith* argued that the arbitrator had ignored factual evidence including a timely JAMS filing and logistical difficulties brought on by the COVID-19 pandemic, but the district court found that the petitioner's arguments were merely "founded on a disagreement with the Arbitrator's conclusion." *Id.* at *3. Further, the

5

petitioner asserted that the arbitrator did not assess the burden of the mailing requirement versus the "prevailing standard for conducting business electronically," but the court found that the arbitrator "was not obliged to do so; rather, his duty was to enforce the terms of the Agreement between the parties."  *Id.* at *4.  As to the petitioner's FAA § 10(a)(4) arguments, including a purported failure to apply equitable tolling, the district court found that the arbitrator had followed the terms of the arbitration agreement in dismissing the petitioner's claim as untimely.  *Id.* at *5.  Lastly, the court found without merit the arguments related to the enforceability of the agreement's timing provision.  *Id.* at *5–7.  This court reaches the same conclusions here.

### A.    FAA Section 10(a)(3)

Petitioners argue that the arbitrator "failed to consider key facts pertinent to this case, including that Petitioner timely filed his demand with JAMS, that the COVID-19 pandemic made same-day mailing impracticable, and that IBM's requirement that Petitioner mail his demand was unreasonable."  Owen's Mot. to Seal, Owens Pet. to Vacate Arb. Award, ECF No. 4-1 [hereinafter Owens Pet.] ¶ 26; *see also* Holtman Mot. to Seal., Holtman Pet. to Vacate Arb. Award, ECF No. 3-1 [hereinafter Holtman Pet.] ¶ 27.  Specifically, as to FAA § 10(a)(3), Petitioners claim that the arbitrator failed "to give *any* consideration to the factual circumstances surrounding Petitioner's submission of his arbitration demand in this case."  Owen's Mot. to Seal., Owens Mot. to Vacate Arb. Award, ECF No. 4-2 [hereinafter Owens Mot.], at 9; Holtman Mot. to Seal., Holtman Mot. to Vacate Arb. Award, ECF No. 3-2 [hereinafter Holtman Mot.], at 10.  But Petitioners are incorrect.  The arbitrator in both cases took into account Petitioners' arguments from the briefing, and the arbitrator simply rejected Petitioners' arguments, stating that Petitioners failed to provide "any persuasive arguments . . . even arguably supporting any finding of a legal, factual or equitable nature to excuse the untimely submission of the Demand."  Owens Mot. at 11; Holtman Mot. at

6

11.  Further, the arbitrator summarized Petitioners' position regarding the JAMS filing in denying the motions for reconsideration, stating "[Petitioner] argues that the Arbitrator should reconsider the Order of Dismissal for the following reasons . . . (1) [b]ecause [Petitioner] filed his Demand with JAMS on the last permissible day of the 180-day limitations period, dismissal is not required (even though [he] did not mail the Demand to IBM until a day or so later)."  Owens Ex. 1 at 132–33; Holtman Ex. C at 133–134.  The arbitrator similarly considered and rejected arguments related to the hardships created by the COVID-19 pandemic, stating "[Petitioner] has not provided evidence to show, or articulated a credible basis to believe, that the difficult circumstances he cites — the closure of [Petitioner's] counsel's office due to the pandemic . . . actually prevented mailing of the Demand on November 17, 2020, particularly as that mailing was accomplished a day later on November 18, 2020 (or shortly thereafter)."  Owens Ex. 1 at 137; Holtman Ex. C at 138.  Further, as in *Smith*, the arbitrator is not obligated to assess the fairness or difficulties of having a mailing requirement instead of permitting electronic filing—the arbitrator's duty is to enforce the terms of the agreement of the parties.  *See Smith*, 2022 WL 1720140, at *4.  Under such circumstances, the arbitrator plainly did not refuse to hear evidence and is not guilty of misconduct.  Petitioners' arguments are mere "disagreement[s] with the Arbitrator's conclusion."  *Id.* at *3.

## B.    FAA Section 10(a)(4)

As to FAA § 10(a)(4), Petitioners argue that the arbitrator "did not follow the procedures set out in IBM's agreement and did not afford Petitioner the rights available to him under the law."  Owens Pet. at 9; Holtman Pet. at 11.  They argue that the arbitrator "exceeded his authority by failing to apply the remedies available," including equitable tolling.  Owens Mot. at 11–12; Holtman Mot. at 12–13; *cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding

7

that the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") is subject to equitable tolling).

Petitioners are again mistaken.  First, filing a charge with the EEOC is not at issue here, nor is it a prerequisite for arbitration under the agreement—therefore, *Zipes* is inapposite.  And in this case, the arbitrator interpreted the plain language of the arbitration agreement.  The agreement prescribes the process for initiating arbitration and the deadline to send the written demand by mail—the Petitioners here did not follow the procedure by the agreed-upon deadline.  The arbitrator referenced the contract procedures in finding the claims untimely and did so again in denying the motion for reconsideration.  Owens Ex. 1 at 93, 136; Holtman Ex. C at 94, 137. Furthermore, the arbitrator did consider Petitioners' equitable arguments and declined to apply the suggested doctrines, stating that Petitioners had not "provided any persuasive arguments even arguably supporting any finding of a . . . equitable nature to excuse the untimely submission of the Demand."  Owens Ex. 1 at 135; Holtman Ex. C at 136.  It is clear that the arbitrator did not dispense his own brand of "industrial justice" in interpreting the plain language of the contract language and refusing to deviate from the *agreed-upon* procedure.  *See Stolt-Nielsen S.A.*, 559 U.S. at 671.

### C.    Enforceability of the Timing Requirement

Petitioners also argue, in the alternative, that even if their claims were untimely, the court should declare unenforceable the provision in IBM's arbitration agreement that purports to waive what is known as the "piggybacking" rule.  Owens Mot. at 13–22; Holtman Mot. at 14–22.  "The single-file [piggybacking] rule allows an individual plaintiff, who has not filed an EEOC charge, to satisfy the administrative exhaustion requirements under Title VII by relying on a charge filed by another plaintiff."  *Campbell v. Nat'l R.R. Passenger Corp.*, 163 F. Supp. 2d 19, 25 (D.D.C. 2001).  Petitioners argue that the piggybacking rule is a non-waivable substantive right, and

therefore, cannot be waived by the arbitration agreement's written demand provision.  Owens Mot. to Provisionally Seal Documents, ECF No. 19, Owens Reply in Support of Mot. to Vacate Arb. Award, ECF No. 19-1 [hereinafter Owens Reply], at 5–6; Holtman Mot. to Provisionally Seal Documents, ECF No. 18, Holtman Reply in Support of Mot. to Vacate Arb. Award, ECF No. 18-1 [hereinafter Holtman Reply], at 5–8 (citing *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 521 (6th Cir. 2021) and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)).  Similarly, Petitioners argue that they could not have waived this right without making requisite disclosures under Older Workers' Benefits Protection Act ("OWBPA").  Owens Mot. at 19–22; Holtman Reply at 6; *see* 29 U.S.C. § 626 (f)(1)(H); 29 C.F.R. § 1625.22(f) (2014); *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426–427 (1998).

Petitioners' challenge fails at the outset because it does not fall within any of the exclusive grounds for vacating an arbitration award.  In *Smith*, in rejecting an identical argument, the district court held "[t]his alone shows Plaintiff failed to carry her burden" on a motion to vacate.  *Smith*, 2022 WL 1720140, at *5.  This court agrees.  Not only does this challenge not fall within the grounds set by the FAA for vacatur, the argument is also meritless.  Here, Petitioners had 180 days to file a claim—the same default filing period provided by the ADEA.  They failed to do so and thus waived their ability to file the claim under the terms of the agreement.  The piggybacking rule has no role to play in the arbitration context, as it only excuses plaintiffs from the requirement to file an administrative charge with the EEOC—which is not at issue here under an agreement that did not include a charge-filing requirement.  *See also Smith*, 2022 WL 1720140, at *6.  Petitioners "could have avoided this entire issue" by filing "timely arbitration demands," which would have avoided the "need to resort to a (far-fetched) argument that the piggybacking doctrine saves their untimely demands."  *Rusis v. IBM*, 529 F. Supp. 3d 178, 194 n.8 (S.D.N.Y. 2021).

Furthermore, "the purported right to take advantage of the piggybacking rule is not a substantive, non-waivable right protected by the ADEA." *Chandler*, 2022 WL 2473340, at *4; *see Gilmer*, 500 U.S. at 26 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.") (alterations in original).  The rule is not even a part of the limitations period in the ADEA—it instead pertains to the administrative exhaustion requirement.  Thus, Petitioners' reliance on *Thompson*, which concluded that the limitations period in the ADEA gives rise to a substantive, non-waivable right, 985 F.3d at 521, is irrelevant.  *See Chandler*, 2022 WL 2473340, at *6 (distinguishing *Thompson* and stating, "the Timing Provision did not shorten the ADEA statute of limitations by not adopting the piggybacking rule because that rule is an exhaustion doctrine, not an aspect of the ADEA statute of limitations, and the plaintiff in this case was not required to exhaust any administrative remedies").

Petitioners similarly were not entitled to protections under the OWBPA.  "The OWBPA provides that an individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." *Chandler*, 2022 WL 2473340, at *5 (internal quotation marks omitted) (quoting *Estle v. IBM.*, 23 F.4th 210, 213 (2d Cir. 2022)).  "If a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer must provide certain information to the individual for the waiver to be knowing and voluntary." *Id.*  Petitioners argue that they could not have waived their right to use the piggybacking rule because IBM did not provide them with the disclosures required under the OWBPA before the they signed the agreement.  However, OWBPA disclosures are only required for waiving substantive rights, and the piggybacking rule is not one of them.  *See Chandler*, 2022

10

WL 2473340, at *5; *Lodi*, 2022 WL 2669199, at *3–5; *In re IBM Arb. Agreement*, 2022 WL 2752618, at *7–8.

### D.    Manifest Disregard of the Law

This court also finds that none of Petitioners' arguments come close to meeting the standard of the arbitrator knowing a legal principle and refusing to apply it or ignoring it altogether. The arbitrator properly construed the timing provision of the agreement by its plain language, and Petitioners cannot blame the arbitrator to undo their untimely request.

### IV.

For the foregoing reasons, Petitioners' Motions to Vacate the Arbitration Awards are denied. Respondent's Motions to Confirm the Arbitration Awards are granted. A final, appealable order accompanies this Memorandum Opinion.

Dated:  December 9, 2022

_____
Amit P. Mehta
United States District Court Judge

11

**App.438**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES OWENS,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. 22-cv-00901 (APM)** |
| ) | |
| **INTERNATIONAL BUSINESS MACHINES** ) | |
| **CORP.,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

## ORDER

For the reasons set forth in the court's Memorandum Opinion, ECF No. 28, Respondent's

Motion to Confirm Arbitration Award, ECF Nos. 15 and 18, are granted.  Petitioner's Motion to

Vacate Arbitration Award, ECF No. 3, is denied.

This is a final, appealable order.

Dated:  December 9, 2022

Amit P. Mehta
United States District Court Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                                      |   |                                |
|--------------------------------------|---|--------------------------------|
| ──────────────────────────           | ) |                                |
| JAMES OWENS,                         | ) | Civil Action No. 1:22-cv-901   |
|                                      | ) |                                |
|                                      | ) |                                |
| Petitioner,                          | ) |                                |
|                                      | ) |                                |
| v.                                   | ) |                                |
|                                      | ) |                                |
| INTERNATIONAL BUSINESS               | ) |                                |
| MACHINES CORP.,                      | ) |                                |
|                                      | ) |                                |
| Respondent.                          | ) |                                |
| ──────────────────────────           | ) |                                |

**NOTICE OF APPEAL**

Petitioner James Owens hereby appeals from this Court's Opinion and Order granting IBM's

Motion to Confirm Arbitration Award and denying Petitioner's Motion to Vacate Arbitration Award

(Dkts. 28, 29).

Dated:  January 9, 2023                    Respectfully submitted,

                                           /s/Shannon Liss-Riordan
                                           Shannon Liss-Riordan (*Admitted Pro Hac Vice*)
                                           Michelle Cassorla, D.C. Bar No. 1022193
                                           LICHTEN & LISS-RIORDAN, P.C.
                                           729 Boylston Street, Suite 2000
                                           Boston, MA 02116
                                           (617) 994-5800
                                           sliss@llrlaw.com
                                           *Attorneys for Petitioner*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 9, 2023, I electronically filed the forgoing paper with the Clerk of Court using the ECF system which will send electronic notification of such filing to all counsel of record for the Parties in this action.

/s/Shannon Liss-Riordan
Shannon Liss-Riordan